**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD GONDA, | : | CIVIL ACTION NO. 00-2286 |
| Plaintiff, | : | |
| v. | : | CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY and WILLIAM FRIEDT, JR. | : | |
| Defendants. | : | |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND WILLIAM FRIEDT'S PRETRIAL STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and William Friedt (collectively "defendants") hereby respectfully submit the following Pretrial Statement in accordance with Local Rule of Court 16.1.4.

**STATEMENT OF FACTS TO BE OFFERED AT TRIAL**

**The Sale of the 1992 Policy**

In March of 1992, plaintiff set up a meeting with MetLife sales representative Friedt at plaintiff's home. Plaintiff knew that Friedt was coming to discuss the sale of life insurance. At this meeting, plaintiff agreed to purchase a whole life insurance policy. Plaintiff knew that an existing Pruco insurance policy would be surrendered to help fund the new whole life policy. Plaintiff cannot remember the substance of any documents presented to him at the sale of the policy.

Plaintiff signed an "Application for Life Insurance" for his 1992 policy on March 25, 1992. Directly above his signature, the application plainly states that sales representatives do not have the authority to change or waive any term of the policy. The application is clearly labeled

in bolded capital letters, **"APPLICATION FOR LIFE INSURANCE."** Plaintiff answered "yes" to question 12(c) on the application, indicating that funds from an existing policy would be used to fund the new policy and noted that the existing Pruco policy would be replaced. On March 25, 1992, Plaintiff also signed a "Notice Regarding Replacement of Life Insurance and Annuities." On the application, plaintiff misrepresented that he is a non-nicotine user. Urinalysis subsequently indicated that plaintiff is, in fact, a nicotine user.

MetLife issued $64,667 Whole Life Insurance Policy No. 925 207 015 A (the "1992 policy") on April 27, 1992, with plaintiff as owner and insured. Plaintiff admits that he received the 1992 policy.

### The Clear and Unambiguous Terms of the 1992 Policy

Plaintiff's policy contains all of the information necessary to determine that payments were not guaranteed to end after ten years, and that his monthly premium did not equal $50 (or $50.50), as plaintiff alleged. In fact, the policy plainly provides that monthly premiums of $100.35 were due for sixty-two years. The policy also provides that the policyholder can use the policy's dividends, **which are not guaranteed**, in four different ways, including applying them toward the payment of premiums. Furthermore, the Table of Values indicates that at plaintiff's age 65 (27 years from the time of purchase), the 1992 policy's guaranteed cash value will be $28,518.15. The Table of Values further provided that values for dates not shown could be provided upon request.

When plaintiff received his policy, he had twenty days within which to return it to MetLife, for any reason (or no reason at all), for a full refund of premiums paid. This twenty-day "free look" provision stated prominently on the cover page of the policy:

> **20-Day Right to Examine Policy** – Please read this policy. You may return the policy to Metropolitan or to the sales representative through whom you bought it within 20 days from the date you

>received it.  If you return it within the 20-day period, the policy
>will be void from the beginning.  We will refund any premium
>paid.

Furthermore, the policy is an integrated contract that contains a merger clause, which provides:

>**The Contract** – This policy includes any riders and, with the
>application attached when the policy is issued, makes up the entire
>contract…

The cover page of the policy provides that premiums are payable for the stated period.

The Premium Schedule for the 1992 policy provides:

>**PREMIUMS ARE DUE ON THE DATE OF THE POLICY
>AND EVERY 1 MONTH(S) AFTER THAT DATE (CHECK-
>O-MATIC)**

|  | PREMIUM AMOUNT | YEARS PAYABE | CLASSIFICATION |
|---|---|---|---|
| LIFE INSURANCE | $110.35 | 62 | STD |
| TOTAL PREMIUM OF | $110.35 | 62 | |

The policy, like the application, also clearly states that sales representatives do not have the authority to change or waive any term of the policy or to make binding promises about the policy.

<h3 style="text-align:center"><u>Plaintiff's Unsupportable Complaint Allegations</u></h3>

On October 17, 2000, plaintiff filed a Complaint against defendants in the Court of Common Pleas of Allegheny County, Pennsylvania.  Defendants removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332.  In his Complaint, plaintiff seeks damages arising from alleged misrepresentations made to him in connection with the sale of the 1992 policy, as well as punitive damages, interest, and costs.  Specifically, plaintiff alleges that Friedt misrepresented during the sale of the 1992 policy that premiums on the policy would

equal $50 per month and need only be paid for ten years, and that the 1992 policy would achieve a cash value of $125,017.00 after 40 years. Additionally, plaintiff alleges that his Pruco policy was improperly replaced by the 1992 MetLife policy. Plaintiff's Complaint allegations are not supported by either his deposition testimony or the documentary evidence.

Plaintiff asserted causes of action for Negligence (Count I), Common Law Fraud and Deceit (Count II), Violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Counts III and IV), and Negligent Supervision (Count VIII).[1] The Court dismissed plaintiffs' negligent supervision claim by Order dated September 30, 2004. Plaintiffs did not appeal this portion of the September 30, 2004 Order.

## DEFENSES TO PLAINTIFF'S DAMAGES CLAIMS

### A.    Plaintiff's Claims are Time-Barred.

Plaintiff initiated this action by filing a Praecipe for a Writ of Summons on or about November 28, 1995. Here, the undisputed facts compel the conclusion that plaintiff's claims arose in 1992. Pennsylvania applies a two-year statute of limitations for common law fraud and deceit (Count I) and negligence (Count II). As such, plaintiff's claims are time-barred.[2]

Plaintiff's claims began to accrue when he received the 1992 Policy on May 2, 1992, more than three years before he filed this action. Plaintiff's claims rest on the assertion that the true cost and features of the 1992 Policy were not disclosed to him. However, plaintiff knew or should have known that the alleged representations were directly contradicted by the terms of the written insurance contract when he received it in 1992. The 1992 Policy specifically requests

---

[1] This Court dismissed plaintiffs' Breach of Implied Covenant of Good Faith and Fair Dealing, Bad Faith, and Breach of Fiduciary Duty claims by Order dated March 13, 2003.

[2] Pennsylvania courts differ as to whether a two or six year statute of limitations applies to claims arising under the UTPCPL (Counts III and IV). Assuming a two-year statute of limitations applies -- and defendants contend that it does -- plaintiff's UTPCPL claims are also time-barred.

that the insured read the policy and grants a 20-day "free look" period whereby an insured can return the policy if he or she is unsatisfied. It also clearly disclosed its terms, including a monthly premium of $110.35 and that premiums were payable for sixty-two years. Plaintiff did not return the policy within the "free look" period.

Plaintiff cannot rely on the discovery rule to toll the statute of limitations. As in Toy v. Metropolitan Life Ins. Co., 863 A.2d 1 (Pa. Super. 2004) (holding that the plaintiff failed to exercise due diligence by neglecting to take any action or make any inquiries regarding the insurance policy at issue for twenty months), plaintiff here had an extensive amount of time -- more than two years -- in which to exercise due diligence to discover the existence of his alleged injuries. After the policy was issued, it was unreasonable for plaintiff to allegedly continue to believe that his premium obligations were limited to payments of $50.00 per month that would terminate after ten years, or that he was guaranteed a cash value that was not included in the Table of Values. The 1992 policy sets forth the policy's features, which plaintiff now claims were not disclosed to him. By simply glancing at his policy, plaintiff would have been on notice of his claims. Plaintiff simply did not employ "those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests…" See id., 863 A.2d at 7 (citations omitted).

**B.      Plaintiff Cannot Recover "Expectation" or "Benefit of the Bargain" Damages.**

Plaintiff is not entitled to "benefit of the bargain," or "expectation" damages, in this matter. Pennsylvania law is clear, and this Court has held, that expectation damages are not available in actions grounded in fraud. The expert report of Robert B. Carter, which purports to assess plaintiffs' alleged damages, contemplates expectation damages. Plaintiffs should be precluded from introducing any evidence of expectation damages and from recovering

expectation damages.

    **C.    Plaintiff Is Not Entitled to Attorneys' Fees Under the UTPCPL.**

Under Pennsylvania law, attorneys' fees may be awarded for a statutory claim only where the statute explicitly provides for attorneys' fees. The UTPCPL that was in effect during the sale of plaintiff's policy did not provide litigants with the right to attorneys' fees. It was amended in 1996 to allow a court to award attorneys' fees in its discretion. Because the transaction at issue here occurred in 1992, Pennsylvania law mandates that plaintiff's request for attorneys' fees be stricken.

    **D.    Plaintiff's Claim for Treble and Punitive Damages Should Be Limited and Bifurcated.**

Plaintiff seeks punitive damages in this action, in part, on the basis of MetLife's allegedly "widespread" conduct, including, but not limited to, "vanishing premium" claims. However, the evidence should be limited, at most, to the transactions at issue based on the pleadings, the previous orders in this case, and the Due Process Clause. MetLife already has paid damages and fines punitive in nature for the same alleged "widespread" conduct that plaintiff seeks to introduce in support of the punitive damages claim. Penalizing MetLife multiple times for the same course of conduct violates the Due Process Clause. Moreover, as the United States Supreme Court reiterated in State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), a fact finder may not use evidence of out-of-state conduct to award punitive damages. In addition, a fact finder is not permitted to use evidence of conduct that does not have a "nexus" to the specific, purported harm to the plaintiff.

Moreover, this Court should bifurcate the liability and compensatory damage portion of the trial from any claim for punitive damages, and exclude evidence outside the scope of plaintiffs' transactions from the first phase of the trial. Bifurcation would permit any evidence

relating to any alleged widespread activity on behalf of MetLife, and not specifically related to plaintiffs, to be reserved for the punitive damages portion of trial. Such a division both promotes judicial economy, and protects defendants from undue prejudice.

## DEFENSE WITNESSES

**Liability Witnesses**

Ronald Gonda
220 Hinchberger Road
Butler, Pennsylvania 16002

William Friedt
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Joseph Paros
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

**Damages Witnesses**

Joseph Paros
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Gregory Snider
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

**Expert Witnesses**

Kenneth Daniels
8375 Valley Tarn
Atlanta, Georgia 30350
(MetLife's expert report is attached as Exhibit 1)

In addition to the witnesses listed above, defendants may call any of plaintiff's witnesses.

## DEFENDANTS' EXHIBITS

A list of defendants' proposed exhibits is attached as Exhibit 2. In addition to the listed exhibits, defendants may introduce at trial exhibits identified by plaintiffs. Defendants also may use demonstrative evidence at trial. The demonstrative evidence may include, but is not limited to, summaries of the policy transactions at issue.

**LEGAL ISSUES TO BE ADDRESSED AT THE FINAL PRETRIAL CONFERENCE**

Defendants plan to file the following motions in limine, which should be considered at the Final Pretrial Conference or otherwise prior to the commencement of trial:

1. Motion in Limine To Exclude Evidence Regarding The Pennsylvania, Florida, and Connecticut Market Conduct Examinations of Metropolitan Life Insurance Company;

2. Motion in Limine to Exclude the Report and Testimony of Plaintiffs' Proposed Expert Witness;

3. Motion in Limine to Bifurcate and Exclude Plaintiffs' Claim for Punitive Damages;

4. Motions in Limine to Exclude Evidence Unrelated to the Transaction at Issue and Testimony of Proposed Witnesses Who Lack Knowledge of the Transaction at Issue;

5. Motion in Limine To Exclude Evidence of MetLife's Financial Condition, Net Worth and Wealth;

6. Motion in Limine to Strike Demand for Attorneys' Fees under Plaintiffs' Unfair Trade Practices and Consumer Protection Law Claim; and

7. Motion in Limine to Preclude Evidence Regarding the Recovery of Purported Expectation Damages.

                              Respectfully Submitted,

By:    s/ B. John Pendleton, Jr.
         B. John Pendleton, Jr.
         McCARTER & ENGLISH, LLP
         Four Gateway Center
         100 Mulberry Street
         Newark, NJ 07102
         (973) 622-4444

         Attorneys for Defendants
         Metropolitan Life Insurance Company and
Dated: June 12, 2006    William Friedt.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on this date on the following counsel of record:

>Kenneth R. Behrend, Esq.
>Behrend and Ernsberger, P.C.
>Union National Bank Building
>306 Fourth Avenue, Suite 300
>Pittsburgh, PA  15222

Dated:  June 12, 2006                                    s/  B. John Pendleton, Jr.____