**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD GONDA, | : | CIVIL ACTION NO. 00-2286 |
| | : | |
| Plaintiff, | : | |
| v. | : | CHIEF JUDGE AMBROSE |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY and WILLIAM FRIEDT, JR. | : | |
| Defendants. | : | |

**METROPOLITAN LIFE INSURANCE COMPANY'S AND WILLIAM FRIEDT'S BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EXHIBITS 113 AND 114**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and William Friedt (collectively "defendants") hereby submit this Brief in Support of their Motion to Exclude Exhibits 113 and 114.

Plaintiffs have listed on their exhibit list as Exhibit 113 a July 19, 1996 MetLife Corporate Internal Audit regarding Ethics and Compliance (the "1996 Audit Report") and as Exhibit 114 a December 4, 1998 MetLife Corporate Internal Audit regarding policy illustrations (the "1998 Audit Report"). Copies of each are attached as Exhibits A and B, respectively. These audits are wholly irrelevant to this case, as they neither mention nor relate to plaintiff's allegations regarding the sales at issue. Importantly, neither audit focuses on any time frame relevant to this case. The 1996 Audit covers the time frame from February 1994 to April 1996 -- two years after the purchase of the 1992 Policy. Similarly, the 1998 Audit focuses on compliance with an NAIC Regulation that was not enacted until 1997, <u>five</u> years after the purchase of the only policy at issue. Evidence of these unrelated and temporally distant acts is wholly irrelevant under Federal Rule 401 and therefore inadmissible at trial under Federal Rule 402. Further, to the degree these audits refer to any alleged "bad acts" by MetLife, the Court should not allow the introduction of evidence regarding these alleged "bad acts" because they are (i) irrelevant, (ii) prejudicial, and (iii) otherwise inadmissible. The 1996 and 1998 Audit Reports are hearsay and cannot amount to a "finding" of any sort sufficient to establish any "subsequent act" of a similar nature.

Plaintiff undoubtedly will attempt to introduce the 1996 and 1998 Audit Reports in order to raise the inference that MetLife's Enhanced Compliance Program ("Compliance Program"), established in 1994, was somehow deficient or ineffective. In fact, these audits prove that the

Compliance Program was working and that MetLife was taking efforts to remedy any past lapses in compliance. As such, these Audit Reports constitute subsequent remedial measures and should be excluded pursuant to Federal Rule of Evidence 407.

Accordingly, the 1996 and 1998 Audit Reports, and any testimony relating thereto, should be excluded from evidence at trial.

## BACKGROUND

Plaintiff's claims arise from the 1992 sale of a Whole Life insurance policy. Plaintiff alleges that in 1992, MetLife sales representative William Friedt made misrepresentations at the sale of Policy No. 925 207 015 A (the "1992 policy"). Specifically, plaintiff alleges that Mr. Friedt made misrepresentations regarding the replacement of an existing Pruco life insurance policy which was used to partially fund the 1992 policy, and that Mr. Friedt misrepresented that the 1992 policy would be fully funded by making monthly payments of $50.50 for ten years. Plaintiff also alleges that Mr. Friedt represented that the 1992 policy would accumulate a certain cash value and death benefit after forty years. Plaintiff cash surrendered the 1992 Policy in January of 1994 for $671.91

Plaintiff's Proposed Exhibit 113, the 1996 Audit Report, is limited to the time period between February 1994 and April 1996 -- two years after the purchase of the policy at issue, and after plaintiff decided to cash surrender the policy at issue. See Ex. A. The Audit Report focused on the activities of MetLife's Individual Business and Ethics Compliance (IB E&C) Department, rather than the activities of any branch office or representative. Moreover, the findings of the 1996 Audit Report cover issues unrelated to plaintiff's allegations, such as IB E&C's control of internal replacement and compliance with employment requirements for representatives hired after January 1, 1995. See Ex. A at 2.

Plaintiff's Proposed Exhibit 116, the 1998 Audit Report, was completed on December 4, 1998 and covered activities at the branch ranging from approximately January 1997 through October 1998 -- <u>five</u> years after the purchase of the policy at issue.  <u>See</u> Ex. B. The 1998 Audit Report exclusively covers MetLife's compliance with an NAIC Model Regulation involving the production and content of Policy Illustrations.  <u>See</u> Ex. B at 2.  This Model Regulation was enacted in January 1997, nearly five years after the sale of the final policy at issue, and thus, the Model Regulation and the Audit regarding it are wholly irrelevant to plaintiff's allegations.

### **ARGUMENT**

I. **THE CONTENT OF THE 1996 AND 1998 AUDIT REPORTS IS BEYOND THE SCOPE OF THE TRANSACTIONS AT ISSUE, IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSIBLE.**

    A.    **The 1996 and the 1998 Audit Reports Are Irrelevant to Plaintiffs' Claims.**

The content of the 1996 and 1998 Audit Reports is well beyond the scope of the transactions at issue and the pleadings in this case.  Plaintiff should not be given the opportunity to introduce irrelevant information beyond the scope of the transactions, including, but not limited to, information regarding findings of noncompliance with issues unrelated to plaintiff's claims and information beyond the temporal scope of the transaction at issue in this case.  Both Audit Reports cover irrelevant time frames, and neither has any bearing on the sole issue in this case:  what Mr. Freidt said – or did not say – to plaintiff at the time of the transaction at issue. Indeed, neither Audit Report mentions Mr. Friedt, or even the Butler branch office out of which he worked.

Rather, the 1996 Audit Report focused on the operations of the IB E&C Department, and made conclusions regarding issues such as the control of <u>internal</u> replacement and compliance with employment requirements for representatives hired after January 1, 1995.  <u>See</u> Ex. A at 2.

Furthermore, the 1996 Audit Report is limited to the time frame between February 1994 and April 1996. The only policy at issue in this case was purchased in March of 1992, nearly two full years prior. Further, plaintiff surrendered his policy in January of 1994. As the policy was not in existence at any time covered by the Audit, the 1996 Audit report is highly irrelevant.

Similarly, insofar as the 1998 Audit Report is limited in temporal scope to the period between January 1997 and October 1998, and the transaction at issue occurred in 1992, it is completely irrelevant to what may or may not have occurred at the time of plaintiffs' transactions. Indeed, the 1998 Audit monitors Company compliance with an NAIC Model Regulation that was not even in effect at the time of the transaction at issue.

In short, the findings and conclusions contained within the Audit Reports have absolutely nothing to do with the transaction at issue or any of plaintiff's allegations. They possess no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and, thus, are inadmissible. See Fed. R. Evid. 401; see, e.g., Michetti v. Linde Baker Material Handling Corp., 969 F.Supp. 286, 287-88 (E.D.Pa. 1997). Accordingly, plaintiff should be precluded from introducing such evidence.

### B. The Probative Value of the 1996 and the 1998 Audit Reports Is Outweighed By the Danger of Unfair Prejudice.

Even if this Court were to determine that the 1996 and 1998 Audit Reports are somehow relevant -- which they are not -- pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Any probative value that the testimony and evidence could possibly possess is negligible when compared to the unduly prejudicial

impact it would have upon the jury.  See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.").  Here, plaintiffs' purpose in referring to the 1996 and 1998 Audit Reports will be to inflame the jurors and prejudice them against defendants.  The evidence will invite the jurors to disregard their duty to decide this case on its facts, rather than on their emotional reaction to the other alleged occurrences.  See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence which is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

Any probative value the 1996 and 1998 Audit Reports could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury.  See Sprague v. Walter, 656 A.2d 890, 918 (Pa. Super. 1995) ("the trial court may properly exclude any evidence whenever its probative value is substantially outweighed by the danger of unfair prejudice, or the trial judge determines that the evidence may confuse the issues or mislead the jury") (citations omitted).

**C.     The 1996 and the 1998 Audit Reports Are Inadmissible Character Evidence.**

The 1996 and 1998 Audit Reports also are inadmissible under Federal Rule of Evidence 404(b).  Under that Rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," except under limited

circumstances not applicable here.  See Pa. R. Evid. 404(b).  In order for "bad acts" evidence to be admissible to establish a common plan, plaintiff must show that the acts "are part of a single series of events.'"  J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992)).  When a proponent of evidence of other crimes, wrongs, or acts contends that it is both relevant and admissible for a proper purpose, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.  Becker v. ARCO Chemical Co., 207 F.3d 176, 191 (3d Cir. 2000).  Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible.  See id.

In this case plaintiff does not -- and cannot -- articulate how the "bad acts" evidence contained in the Audit Reports is logically connected to their specific claims.  Indeed, the findings of the 1996 and 1998 Audit Reports do not even comport with the "bad acts" alleged by plaintiff.  Rather, plaintiff clearly is attempting to introduce these Audits in an effort to raise the inference that MetLife has some propensity to commit bad acts.  Accordingly, plaintiff cannot establish that the Audit Reports are in any way sufficiently similar to the allegations in this case to merit their introduction.

**II.    THE 1996 AND 1998 AUDIT REPORTS CONSTITUTE INADMISSIBLE HEARSAY.**

The Federal Rule of Evidence 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE 801(c).  Because the 1996 and 1998 Audit Reports are indisputably out-of-court statements being offered as proof of the matters asserted therein, they are classic hearsay.  See id.  As a result, plaintiff must satisfy the burden of showing that the

1996 and 1998 Audit Reports fit within an exception to the hearsay rule in order to be admitted into evidence. See FRE 803. Plaintiff simply cannot meet that burden.

Plaintiff may claim that the 1996 and 1998 Audit Reports fall within the "business records" exception to the general hearsay rule pursuant to Federal Rule of Evidence 803(6). Under this exception, a record that otherwise would constitute hearsay is admissible if "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity" to create the record "all as shown by the testimony of the custodian or other qualified witness . . . unless the sources of information or other circumstances indicate lack of trustworthiness." FRE 803(6). However, plaintiff have offered no evidence to meet their burden of proving that the 1996 and 1998 Audit Reports fall within the "business records," or any other exception to the hearsay rule.

### III. THE 1996 AND 1998 AUDIT REPORTS ARE EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES, AND THUS, SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 407.

The 1996 and 1998 Audit Reports should be excluded because they are evidence of MetLife's subsequent remedial measures. See Exhibit A. Rule 407 provides in relevant part that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, . . .[or] culpable conduct."[1] The policy behind Rule 407 is "to encourage remedial measures." Patrick v. South Central Bell Tel. Co., 641 F.2d 1192, 1196 (6th Cir. 1980).

---

[1] While Rule 407 permits evidence of subsequent remedial measures when offered for another purpose, "such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment," none of these exceptions apply to the facts presented here.

As part of its agreement with the Pennsylvania Department of Insurance, MetLife agreed to conduct regular and thorough audits of its compliance procedures.  Here, the 1996 and 1998 Audit reports were prepared at least in part due to MetLife's participation in the Compliance Program.  Thus, they are clearly examples of subsequent measures taken by MetLife to remedy its allegedly lax prior auditing procedures.  Further, the thorough and candid nature of these Audit Reports indicate the success MetLife was having in complying with the self-evaluation requirements of the Compliance Program.  Plaintiffs proffer no evidence that MetLife failed to act on the recommendations and findings made by the Audit Reports.

Because the Audit Reports are clearly evidence of subsequent remedial measures taken by MetLife, this Court should exclude them from evidence.  The remedial value of the Compliance Program, and the purpose of Rule 407 would be entirely frustrated by using the Company's efforts against it.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court exclude the 1996 Audit Report and the 1998 Audit Report from use at trial.

Respectfully submitted,

By:  s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
PA I.D. No. 41162
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
Attorneys for Defendant
Metropolitan Life Insurance Company

Dated:  June 19, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of June, 2006, a true and correct copy of **DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S AND WILLIAM FRIEDT'S BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EXHIBITS 113 AND 114** was served upon the following via the electronic filing system:

> Kenneth R. Behrend, Esquire
> BEHREND & ERNSBERGER, P.C.
> Union National Bank Building, 3rd Floor
> 306 Fourth Avenue
> Pittsburgh, Pennsylvania 15222
> Attorneys for Plaintiff

s/ B. John Pendleton, Jr.