**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RONALD GONDA, | : CIVIL ACTION NO. 00-2286 |
| Plaintiff, | : |
| v. | : CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY and WILLIAM FRIEDT, JR., | : |
| Defendants. | : |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND WILLIAM FRIEDT'S BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR "BAD ACTS" OF WILLIAM FRIEDT**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and William Friedt (collectively "defendants") bring this Motion in Limine to Exclude Evidence of Prior "Bad Acts" of William Friedt. Plaintiff has identified Exhibit 35, the sworn statement of Mr. Friedt, taken in preparation for an unrelated wrongful termination case in 1994. See Ex. A. In it, Mr. Friedt discusses the practice of using existing MetLife policy value to fund new MetLife policies, known as "internal replacement," or "churning." Plaintiff has also identified Exhibits 33, 34, 36, 37, 38, and 39, a number of documents related to complaints allegedly filed against Mr. Friedt (and other sales representatives) regarding "internal replacement," and communications and charts detailing Mr. Friedt's rate of internal replacement, known within MetLife as his financed in-force premium rate, or his "FIP ratio." See Ex. B-G. The replacement in this matter was solely external, and thus any evidence of internal replacements is completely irrelevant.

Additionally, plaintiff and his previous insurance provider were aware of the replacement, and received replacement forms in full compliance with Pennsylvania Insurance regulations. Plaintiff has also identified Exhibits 26 and 27, which refer to the mistaken issuance of an unrelated policy with the wrong face value.  See Ex. H & I.  This event has absolutely no commonality with plaintiff's allegations.  Similarly, plaintiff's proposed Exhibits 32 and 40 involve complaints against Mr. Freidt (and other sales representatives) for allegedly selling insurance policies as "50/50 savings plans" or as "Individual Retirement Benefits."  See Ex. J & K.  In his Complaint, plaintiff makes no allegations that he was sold the policy as a "savings" or "retirement" plan.

In sum, none of this evidence refers or relates to plaintiff, plaintiff's policies, or any of plaintiff's claims.  Instead, the evidence is intended to allege "bad acts" or wrongs committed by Mr. Friedt, in an attempt to portray him in a bad light.  This evidence serves no other purpose than to launch a smear campaign, and thus should not be admissible.

As none of the aforementioned evidence mentions or relates to the allegations regarding the transactions at issue, the evidence is irrelevant under Federal Rule of Evidence 401[1] and therefore inadmissible at trial under Rule 402.[2]  The Court should not allow the introduction of evidence regarding other "bad acts" or wrongs because they are (i) irrelevant, (ii) prejudicial,[3] and (iii) otherwise inadmissible.

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[3] Rule 403 provides that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

**BACKGROUND**

Plaintiff's claims arise from the 1992 sale of a whole life insurance policy. Plaintiff alleges that in 1992, MetLife sales representative William Friedt, Jr. made misrepresentations at the sale of a Policy No. 925 207 015 A (the "1992 policy"). Specifically, plaintiff alleges that Mr. Friedt made misrepresentations regarding the replacement of an existing Pruco life insurance policy, which was used to partially fund the 1992 policy, and that Mr. Friedt misrepresented that the 1992 policy would be fully funded by making monthly payments of $50.50 for ten years. Plaintiff also alleges that Mr. Friedt represented that the 1992 policy would accumulate a certain cash value and death benefit after forty years.

**ARGUMENT**

**I.   EVIDENCE OF OTHER ALLEGED "BAD ACTS" UNRELATED TO THE 1992 SALE IS IRRELEVANT TO THE LITIGATION AND INADMISSIBLE.**

Plaintiff's counsel has identified a number of documents as trial exhibits that do not relate to plaintiff or the sales of the policy at issue. These exhibits instead relate to alleged bad acts committed by Mr. Friedt and other MetLife employees who are not involved in this case. For example, plaintiff's proposed Exhibit 35 is the sworn statement of Mr. Friedt that was taken in 1994 for a wrongful termination case brought by former MetLife employee Craig Sabo. In this statement, Mr. Friedt discusses the sales practices of representatives who are not named in this case, nor had any dealings with plaintiff. See Ex. A at 29-33. Further, Mr. Friedt discusses the practice of "churning," or using existing MetLife policy values to fund new MetLife policies. See id. at 36. This alleged practice has no relevance in this case. The replacement in this matter was solely external, and was fully disclosed both to plaintiff and his former insurance provider in keeping with Pennsylvania Insurance regulations. Similarly, plaintiff's proposed exhibits 33, 34, 36, 37, 38, and 39 all relate to alleged internal replacements by Mr. Friedt. See Ex. B-G. For

example, Mr. Friedt's "FIP Ratio" has no bearing on any element of plaintiff's claims, as FIP tracked only internal replacements.  See Ex. D;  see also Solarchick v. Metropolitan Life Ins. Co., Civil Action No. 01-444, Memo. and Order of Court at 2 (W.D. Pa. May 11, 2006) (ruling that testimony which focuses solely on internal replacement is irrelevant to claims involving external replacement).

Plaintiff has also identified Exhibits 26 and 27, which refer to the mistaken issuance of an unrelated policy with the wrong face value.  See Ex. H & I.  This event has absolutely no commonality with plaintiff's allegations.  Similarly, plaintiff's proposed Exhibits 32 and 40 involve complaints against Mr. Freidt (and other sales representatives) for allegedly selling insurance policies as "50/50 savings plans" or as "Individual Retirement Benefits."  See Ex. J & K.  In his Complaint, plaintiff makes no allegations that he was sold the policy as a "savings" or "retirement" plan.[4]

In sum, the introduction of this highly prejudicial evidence unrelated to the transactions at issue goes well beyond the scope of the 1992 transaction at issue, or even the general scope of plaintiff's allegations.  Evidence unrelated to the transactions at issue, such as complaints filed by other individuals, is irrelevant to determining whether Mr. Friedt made misrepresentations to plaintiff regarding the 1992 policy.  It clearly has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and thus is inadmissible.  See Fed. R. Evid. 401.  Plaintiff's purpose in introducing this evidence is to engage in a smear campaign that would unfairly prejudice MetLife and Mr. Friedt.  As such, this evidence should be excluded.  Additionally,

---

[4] Defendants incorporate the arguments contained more fully in their Motion to Exclude References to "Retirement" and "Savings" Sales.

plaintiff should not be permitted to elicit testimony regarding the alleged "bad acts" referenced in the aforementioned exhibits during trial.

### III. ANY PROBATIVE VALUE THAT THE UNRELATED EVIDENCE MAY HAVE IS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.

Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Any probative value that the evidence could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

Here, plaintiff's purpose in using evidence of other alleged "bad acts," such as the "FIP" information and unrelated complaints, will be to inflame the jurors and prejudice them against MetLife and Mr. Friedt. The evidence will inappropriately invite the jurors to disregard their duty to decide this case on its facts. See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence that is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

Plaintiff will attempt to use the evidence of unrelated alleged "wrongs" or "bad acts" of Mr. Friedt, to show that he behaved in the same manner in this case. This evidence would be

inadmissible under Federal Rule of Evidence 404(b).  Under that Rule "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," except under limited circumstances not applicable here.  See Fed. R. Evid. 404(b) (evidence of other wrongs may be admissible to show existence of a "plan").  In order for "bad acts" evidence to be admissible to establish a common plan, plaintiff must show that the acts "are part of a single series of events.'"  J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992).  Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible.  See id.

In J & R Ice Cream, the plaintiff claimed that a franchisor had made misrepresentations concerning its expertise in site selection and the amount of maintenance charges applicable to the site selected for the plaintiff's franchise.  The plaintiff introduced evidence that the franchisor made misrepresentations to other prospective franchisees concerning the amount of revenue a typical franchise could produce.  The Third Circuit held that the introduction of that evidence was improper under Federal Rule of Evidence 404(b) because "the jury could have used the highly prejudicial, indeed almost inflammatory evidence to conclude that [the defendant] used misrepresentations in multiple aspects of its sales efforts."  Id. at 1269.

Similarly, to show that improper bad acts evidence is admissible to show intent, "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'"  Becker, 207 F.3d at 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999))(emphasis added).  In Becker, the plaintiff initiated an action against his former employer under the Age Discrimination in Employment Act and the Pennsylvania Human

Relations Act, contending that his former employer discriminated against him on the basis of his age by terminating his employment. Id. at 179. The plaintiff sought to introduce evidence of his former employer's "manner" in which it had terminated another employee. Id. The Third Circuit ruled that such evidence is only admissible if the proponent can articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged. Applying this test, the Court held that the evidence in question failed the test because the evidence of the employer's manner of terminating another of its employees was not relevant on the issue of whether it discriminated against the plaintiff absent the inference that the employer had a propensity to act in a certain way, and that it acted in conformity with this prior conduct when it terminated the plaintiff.

Likewise, evidence that Mr. Friedt engaged in some "scheme" having nothing to do with the types of transactions or allegations at issue in this case would be impermissible character evidence under Federal Rule of Evidence 404(b) and is therefore inadmissible at trial. The Rule states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of testimony or evidence of alleged "bad acts" committed by William Friedt.

        Respectfully Submitted,

        s/ B. John Pendleton, Jr.
        B. John Pendleton, Jr.
        McCARTER & ENGLISH, LLP
        Four Gateway Center
        100 Mulberry Street
        Newark, NJ 07102
        (973) 622-4444

        Attorneys for Defendants
        Metropolitan Life Insurance Company
        and William Friedt, Jr.

Dated: June 19, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the electronic filing service, on this 19th day of June 2006, on the following counsel of record:

> Kenneth R. Behrend, Esq.
> Behrend and Ernsberger, P.C.
> Union National Bank Building
> 306 Fourth Avenue, Suite 300
> Pittsburgh, PA  15222

                                      __s/ B. John Pendleton, Jr. _____