# EXHIBIT C

| Civil Penalty Agreement | $20,000,000 Total Penalty | $12,500,000 Initial Payment | $7,500,000 as Directed by Each State CONFIDENTIAL |
|---|---|---|---|
| 1 Alabama | $154,857 | $96,786 | $58,071 |
| 2 Alaska | $419 | $262 | $157 |
| 3 Arizona | $171,598 | $107,249 | $64,349 |
| 4 Arkansas | $392,584 | $245,365 | $147,219 |
| 5 California | $1,108,693 | $692,933 | $415,760 |
| 6 Colorado | $189,595 | $118,497 | $71,098 |
| 7 Connecticut | $277,069 | $173,168 | $103,901 |
| 8 Delaware | $27,623 | $17,264 | $10,359 |
| 9 District of Columbia | $44,364 | $27,728 | $16,636 |
| 10 Florida | $4,257,312 | $2,660,818 | $1,596,494 |
| 11 Hawaii | $3,348 | $2,093 | $1,255 |
| 12 Idaho | $419 | $262 | $157 |
| 13 Illinois | $1,356,883 | $848,052 | $508,831 |
| 14 Indiana | $219,730 | $137,331 | $82,399 |
| 15 Iowa | $91,240 | $57,025 | $34,215 |
| 16 Kansas | $54,828 | $34,267 | $20,561 |
| 17 Kentucky | $336,082 | $210,051 | $126,031 |
| 18 Louisiana | $388,817 | $243,011 | $145,806 |
| 19 Maine | $77,429 | $48,393 | $29,036 |
| 20 Maryland | $544,929 | $340,581 | $204,348 |
| 21 Michigan | $409,743 | $256,090 | $153,653 |
| 22 Minnesota | $158,624 | $99,140 | $59,484 |
| 23 Mississippi | $109,237 | $68,273 | $40,964 |
| 24 Missouri | $287,950 | $179,969 | $107,981 |
| 25 Montana | $1,256 | $785 | $471 |
| 26 Nebraska | $19,253 | $12,033 | $7,220 |
| 27 Nevada | $60,269 | $37,668 | $22,601 |
| 28 New Hampshire | $23,019 | $14,387 | $8,632 |
| 29 New Jersey | $965,555 | $603,472 | $362,083 |
| 30 New Mexico | $44,783 | $27,989 | $16,794 |
| 31 New York | $2,672,331 | $1,670,207 | $1,002,124 |
| 32 North Carolina | $1,220,441 | $762,776 | $457,665 |
| 33 North Dakota | $4,185 | $2,616 | $1,569 |
| 34 Ohio | $662,956 | $414,347 | $248,609 |
| 35 Oklahoma | $359,520 | $224,700 | $134,820 |
| 36 Oregon | $24,693 | $15,433 | $9,260 |
| 37 Rhode Island | $78,266 | $48,916 | $29,350 |
| 38 South Carolina | $124,723 | $77,952 | $46,771 |
| 39 South Dakota | $8,789 | $5,493 | $3,296 |
| 40 Tennessee | $456,619 | $285,387 | $171,232 |
| 41 Texas | $1,258,946 | $786,841 | $472,105 |
| 42 Utah | $46,457 | $29,036 | $17,421 |
| 43 Vermont | $110,074 | $68,796 | $41,278 |
| 44 Virginia | $598,083 | $373,802 | $224,281 |
| 45 Washington | $305,110 | $190,694 | $114,416 |
| 46 West Virginia | $126,815 | $79,260 | $47,555 |
| 47 Wisconsin | $162,391 | $101,494 | $60,897 |
| 48 Wyoming | $2,093 | $1,308 | $785 |
| Totals | $20,000,000 | $12,500,000 | $7,500,000 |

*Excludes Georgia Massachusetts Pennsylvania*

# EXHIBIT D

Metropolitan Life Insurance Company            Docket No.
Market Conduct Examination as of the           MC94-02-11
close of business on December 27, 1993.

## ORDER

A market conduct examination of Metropolitan Life
Insurance Company's ("Referred to herein as Respondent")
Pennsylvania business was conducted in accordance with
Article IX of the Insurance Department Act, 40 P.S. 323.1
et seq, for the period January 1, 1990 through December
31, 1992.  The market conduct Examination Report disclosed
exceptions to acceptable company operations and practices.
Based on the documentation and information submitted by
the Respondent, the Department is satisfied that the
Respondent has taken corrective measures pursuant to the
recommendations of the Examination Report.

It is hereby ordered as follows:

1.  The attached Examination Report will be adopted
and filed as an official record of this Department.  All
findings and conclusions resulting from the review of the
examination Report and related documents are contained in
the attached Examination Report.

2.  Respondent shall comply with Pennsylvania statutes
and regulations.

3.  Respondent shall comply with all recommendations contained in the attached Report.

4.  Respondent shall notify and offer restitution, consistent with the Examination Report's Recommendations to all policyholders determined to be covered by the Examination reporting period.  Proof of such restitution offered and an accounting of acceptances and declinations shall be provided to the Department.  Respondent shall implement the restitution plans referenced in the Report within sixty (60) days from the date of execution of this Order.

5.  Respondent shall ensure similarly situated policyholders outside of the Examination reporting period who come forward are accorded restitution consistent with the Report's Recommendations.

6.  Respondent shall pay one million five hundred thousand dollars ($1,500,000) to the Commonwealth of Pennsylvania in settlement of all exceptions identified in the Report.  Payment of this matter shall be made by check payable to the Commonwealth of Pennsylvania.  Payment should be directed to Sharon L. Harbert, Administrative Assistant, Bureau of Enforcement, 1321 Strawberry Square, Harrisburg, PA 17120.  Payment must be made no later than thirty (30) days after the date of this Order.

7.  Respondent shall file affidavits executed by each of its directors stating under oath that they have received a copy of the adopted Report and related orders within thirty (30) days of the date of this Order.

The Department, pursuant to Section 905(e)(1) of the Insurance Department Act, will continue to hold the content of the Examination Report as private and confidential information for a period of thirty (30) days from the date of this Order.


BY:   Insurance Department
      Commonwealth of Pennsylvania


_____ / February 11, 1994
Thomas S. Buzby, Deputy Insurance Commissioner
Office of Consumer Services and Enforcement

# EXHIBIT E

 

## THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

RUTH MALESKI, individually and as )
Executrix for the Estate of EMIL E. )
MALESKI, )
      Plaintiffs )
           .vs. )
       )
METROPOLITAN LIFE INSURANCE )
COMPANY, JOEL SHERMAN, and )
JOSEPH PHILLIPS, )
      Defendants )

Civil Division

No. A.D. 95-10451

Hancher, J.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER OF COURT

AND NOW, this _____ day of April, 2004, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant MetLife and Joseph Phillips' Motion in Limine to Bifurcate and Limit Plaintiffs' Claim for Punitive Damages is Granted in part. We will bifurcate the punitive damages section of the trial, in accordance with Pennsylvania Rule of Civil Procedure 213(b). In addition, within the punitive damages section of trial, plaintiffs are limited to evidence occurring within the Commonwealth only. *State Farm Mutual Automobile Ins. Co. v. Campbell*, No. 01-1289, 2003 WL 1791206 (S. Ct. 2003). The remaining issues will be deferred to trial.

### BY THE COURT:

George H. Hancher, Judge

4/6/04 Copies of Order mailed to: Kenneth R. Behrend, Marilyn J. Larrimer, Kimberly A. Brown - William M. Wycoff - David J. Montgomery - Thorp Reed & Armstrong LLP, Penelope M. Taylor, Clare M. Bello - Melissa A. Barrett

# EXHIBIT F

## THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

| | |
|---|---|
| RUTH MALESKI, individually and as Executrix for the Estate of EMIL E. MALESKI,<br>　　　　Plaintiffs ) ) ) ) ) | Civil Division<br><br>No. A.D. 95-10451 |
| vs. ) ) | |
| METROPOLITAN LIFE INSURANCE COMPANY, JOEL SHERMAN, and JOSEPH PHILLIPS,<br>　　　　Defendants ) ) ) ) | |

Hancher, J.                        November 15, 2004

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OPINION AND ORDER OF COURT

AND NOW, before this Court for consideration is Plaintiffs' Motion for Post-Trial Relief. For the reasons set forth below, Plaintiffs' Motion is DENIED.

Defendants argue that Plaintiffs failed to comply with the Pennsylvania Rules of Civil Procedure as Plaintiffs untimely filed the Post-Trial Relief Motion, and Plaintiffs failed to specify the grounds upon which relief may be granted in the Motion. Pa.R.C.P. No. 227.1 (b)(2) & (c)(1).

Rule 227.1 (c) of the Pennsylvania Rules of Civil Procedure addresses Post-Trial Relief, and provides:

(c) Post-trial motions shall be filed within ten days after

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial....

Pa.R.C.P. No. 227.1 (c)(1).

NOV 1 7 2004

1

With respect to Defendant Sherman, this Court granted his Motion for Compulsory Nonsuit by Order of Court dated May 14, 2004. Plaintiffs did not file a Post-Trial Relief Motion regarding issues with Defendant Sherman until June 1, 2004. Such motion was untimely as it was filed more than ten days after the nonsuit in a jury trial. Defendants MetLife and Phillips admit in their Opposition to Plaintiffs' Motion for Post-Trial Relief that the time for filing post-trial motions concerning MetLife and Phillips was June 1, 2004. A verdict was entered into on May 19, 2004 and the time for filing post-trial motions is ten days from the rendering of the verdict. However, since May 29, 2004 is a Saturday, and Monday, May 31, 2004 is Memorial Day, the filing date was extended until June 1, 2004. Plaintiffs post-trial motion was not untimely with respect to Defendants MetLife and Phillips. Therefore, the Plaintiff has waived all claims of error against Defendant Sherman.

With respect to the Defendants' remaining procedural arguments, this Court will disregard such alleged procedural defects pursuant to Pennsylvania Rule of Civil Procedure No. 126, which provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. No. 126. Accordingly, this Court will address the substance behind Plaintiffs' Post-Trial Relief Motion's remaining issues.

2

In the Brief in Support of the Motion for Post-Trial Relief and in argument presented during the hearing, Plaintiffs raised the following claims:

I.    This Court erred by granting Defendants' motion in limine to bifurcate the trial between a liability phase and a punitive damages phase;

II.   The rulings excluding the habits, customs, and business practices of the Defendants were an abuse of this Court's discretion;

III.  This Court erred when it permitted a jury charge of contributory negligence;

IV.   This Court erred when it overruled Plaintiffs' objections to the reference or use by Defendants of a policy language disclaimer and words of limitation defense when there was no duty to read the policies;

V.    This Court erred when it granted Defendant MetLife's and Phillips' Motion to Dismiss the Plaintiffs' Unfair Trade Practices and Consumer Protection claims; and,

VI.   This Court erred when it granted Defendant Sherman's motions for summary judgment as to the fraud, negligence, Unfair Trade Practices and Consumer Protection Law and breach of fiduciary duty claims.

Those remaining issues that counsel for the Plaintiff neither briefed nor argued at the hearing on post-trial motions are waived, and, therefore, are not properly preserved for review. See Commonwealth v. Williams, 383 A 2d 503, 510 fn. 11 (Pa. 1978).

3

## I. Bifurcation

The Plaintiffs argue that this Court improperly bifurcated the trial between a liability phase and a punitive damages phase. Plaintiffs further claim that they were prejudiced as they were prevented from presenting relevant and material evidence concerning the ongoing business practices of the Defendants during the liability phase, which in turn hindered their ability to prove their claims.

The trial court has the discretionary power to regulate the order of proof, and in particular, to bifurcate the issues of liability and damages by compelling the plaintiff to produce all of his or her evidence upon the issue of the defendant's liability before calling any witnesses to testify solely to the extent of the injury or damages. Pa.R.C.P. No. 224. Pennsylvania Rule of Civil Procedure 213 (b) specifically addresses bifurcation and provides that a court may order a separate trial of any claim or separate issue. That section reads:

> (b) The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

Pa.R.C.P. No. 213 (b).

In determining whether bifurcation is appropriate, the court must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources. Emerick v. United States Suzuki Motor Corp., 750 F.2d 19, 22 (3rd Cir. 1984), citing Lis v. Robert Packer Hospital, 579 F.2d 819, 824 (3rd Cir.), cert. denied, 439 U.S. 955, 99 S.Ct. 354, 58 L.E.2d 346 (1978). In Emerick, the court explained that allowing the question of punitive damages and the inquiry into conduct to be litigated at the

4

liability stage of the trial would confuse the jury and unfairly prejudice the defendants. The trial court in that case noted that the plaintiffs were not entitled to submit the issue of punitive damages to the jury until they first established the defendants' liability for compensatory damages.

In accordance with the foregoing, bifurcation in the present case made it possible for this Court to postpone resolution of issues of punitive damages until the Court first heard the evidence pertaining to liability for compensatory damages. The division of issues protected the Defendants from undue prejudice and promoted judicial economy. Evidence outside of the scope of the Plaintiffs' transactions was excluded, as it had no bearing on whether or not Defendants were liable to Plaintiffs and would only serve to confuse and mislead the jury.

Additionally, this Court ordered for the evidence outside of the scope of the Plaintiffs' transactions to be excluded from the punitive damages section of trial. Plaintiffs were limited to presenting evidence that occurred within the Commonwealth only. The United States Supreme Court explained in State Farm Mutual Automobile Ins. Co. v. Campbell, 123 S.Ct. 1513, 1522-1523 (U.S. 2003), that a jury may not use evidence of out-of-state conduct to award punitive damages. It is within this context that Plaintiffs were prevented from presenting evidence during the punitive damages phase of trial, which related to any alleged widespread activity on behalf of MetLife and defendants that occurred out-of-state.

The Plaintiffs are not entitled to post-trial relief on the aforementioned issue.

**II. Custom, Habit, and Business Practices**

Within the second issue, the Plaintiffs object to this Court's rulings in regards to the following:

1.  Order Granting Defendant Phillips' and Denying Defendant MetLife's Motion in Limine to Exclude Evidence Regarding the Pennsylvania Report of Market Conduct Examination dated April 6, 2004;

2.  Order Excluding Evidence of Consumer Complaints against J. Joel Sherman dated April 6, 2004;

3.  Order Excluding Evidence of "bad acts" as to Defendant Phillips dated April 6, 2004;

4.  Order Excluding Evidence of Action by Pennsylvania Insurance Commission Against Sherman dated April 6, 2004;

5.  Order Excluding Evidence of Indicia of Sales Practices as against J. Joel Sherman during the liability phase of trial dated April 26, 2004;

6.  Order Precluding Testimony and Records of Crosby Engel dated April 26, 2004;

7.  Exclusion at trial of Plaintiffs' offer of the Accelerated Payment Plan; and,

8.  Exclusion at trial of Plaintiff's offer of the facts that MetLife knew that its dividend rates were going to be reduced.


This Court limited evidence at the liability phase of trial to the specific transactions at issue, while evidence of habits, customs, and business practices of MetLife and its employees was reserved for the punitive phase of trial. As the jury found no

6

misrepresentations in the present case, which is an essential element for both the negligence claim and the fraud claim raised by the Plaintiffs, a punitive damages phase of trial did not take place. Therefore, such evidence is irrelevant and inadmissible against the Defendants pursuant to Pennsylvania Rule of Evidence 401.

Plaintiffs contend that the excluded evidence is habit evidence governed by Pennsylvania Rule of Evidence 406 that should have been admitted during the liability phase of trial. That rule provides: "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Pa.R.E. 406. The case of Baldridge v. Matthews, 378 Pa. 566, 106 A.2d 809, 811 (Pa. 1954) discusses habit evidence and explains that "[w]hether evidence of such usage or habit is admissible to show what occurred in a specific instance depends on the 'invariable regularity' of the usage or habit. To be admissible the usage must have 'sufficient regularity to make it probable that it would be carried out in every instance or in most instances." (citations omitted). This court finds that the various evidence put forth by the Plaintiffs is not habit evidence or business practices contemplated by the Rule.

Furthermore, Plaintiffs contend that such evidence is relevant to the liability phase of trial in accordance with the case of Hutchinson v. Luddy, 763 A.2d 826 (Pa.Super. 2000). Hutchinson, however, is inapposite. The Court in that case permitted evidence of the pedophilic pattern or practice in reference to a negligent hiring and supervision claim. Such evidence was related to the issue of whether the Defendants in that case had notice or knowledge of the improper conduct. This Court dismissed the Plaintiffs' negligent

7

supervision claims by Order dated April 6, 2004. Therefore, the Plaintiffs are incorrect when arguing that the Maleskis had to prove knowledge on the part of MetLife resulting from some form of notice (Plaintiffs' Brief in Support of Plaintiffs' Motion for Post Trial Relief, p. 10).

Plaintiffs also contend that prior bad acts of the Defendants should be admitted for credibility purposes. Pennsylvania Rule of Evidence 404 governs this type of evidence and reads: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). However, such evidence may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident, only upon a showing that the probative value of such evidence outweighs the potential prejudice. Pa.R.E. 404(b)(2) &(3). Such evidence fails to show any of the exceptions to Pa.R.E. 404(b)(1) and thus is inadmissible.

## III. Jury Charges

The next issue under consideration is the Plaintiffs' claim that this Court improperly permitted a jury charge for contributory negligence and improperly denied Plaintiffs' requested jury charged based upon the holding in Aiello v. Ed Saxe Real Estate Inc., 499 A. 2d 282 (Pa. 1985).

Plaintiffs cite the case of Silverman v. Bell Savings & Loan Association, 367 Pa.Super. 464, 533 A.2d 110 (1987) to support their claim that the contributory negligence charge was improper. The court found that the jury charge of comparative negligence was inappropriate in that specific case because "where a plaintiff has

8

justifiably relied upon a fraudulent misrepresentation, his recovery is neither barred nor can it be reduced because of his own negligence." Id. at 115, fn3. The Silverman case, though, was an action in equity for recession because of fraudulent misrepresentations and there were no negligence and fraud claims as in the present case. In the present case, the jury found no negligence at the outset, so the issue of contributory negligence was in essence moot before the jury would have reviewed such charge. The submission of the contributory negligence charge to the jury was, therefore, irrelevant to the outcome of the case.

The Plaintiffs' proposed Aiello charge concerned the responsibility of an employer for the actions of its employees for fraudulent misconduct. This charge is inappropriate given the fact that the negligent supervision claims by Plaintiffs were dismissed and no agent was found to be negligent by the jury.

### IV. Disclaimer Language

Next, Plaintiffs claim that this Court inappropriately allowed the Defendants to introduce disclaimers contained in the policies and annuities sold to them by Defendants. This Court permitted Defendants to cross-examine Ruth Maleski and Plaintiffs' expert Phillip Bieluch regarding the words of limitation in the policy at trial, and denied the Plaintiffs' Motion in Limine objecting to the reference or use by Defendants of a policy language disclaimer and words of limitation defense.

As we explained in our Memorandum Opinion on the Motion in Limine, this case is a dispute grounded in certain policies and annuities, so the entire documents are relevant, pursuant to Pennsylvania Rule of Evidence 401. Furthermore, we asserted that the

9

presentation of this evidence would not be prejudicial and confusing to the jury, under Rule 403 of the Pennsylvania Rules of Evidence. The allowance of the disclaimers is not outweighed by any of these concerns. These concerns are further downplayed by the fact that at trial, Ruth Maleski testified that she did not look at any of the illustrations when she purchased the 1989 Whole Life Policies. See May 12, 2004 Tr. at 109: 9-15. Moreover, while the disclaimer language is relevant so as to establish whether the element of justifiable reliance was met, the jury found that there were no misrepresentations. The Plaintiffs' objection is therefore misplaced.

### V. Unfair Trade Practices and Consumer Protection Claims

Plaintiffs argue that this Court erred when it granted Defendant MetLife's and Phillips' Motion to Dismiss the Unfair Trade Practices and Consumer Protection claims. The Pennsylvania Supreme Court established that "[t]o bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 2004 WL 1618851 (Pa. 2004), citing Weinberg v. Sun Co., 565 Pa. 612, 777 A.2d 442, 446 (2001). In Weinberg, the Supreme Court noted "[n]othing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." Weinburg, 565 A.2d at 446.

In their Post-Trial Motion, Plaintiffs contend that their claims under several sections of the Uniform Trade Practices and Consumer Protection Law claims (UTPCPL) do not require misrepresentations for recovery. Specifically, the Plaintiffs claim that their

10

Second Amended Complaint, paragraphs 216 (a)(2), 216 (a)(4), and 216 (b), fall under the unfair, deceptive, business practices of Section 3 of the UTPCPL. However, as expressed in our Memorandum Opinion of May 21, 2004, as pled, these allegations are based on misrepresentations and must fail due to the jury's finding that no misrepresentations took place. Plaintiffs failed to present sufficient evidence to establish a finding under the UTPCPL.

### VI. Summary Judgment

Plaintiffs claim that this Court erred when it granted Defendant Sherman's Motion for Summary Judgment as to the fraud, negligence, Unfair Trade Practices and Consumer Protection Law and breach of fiduciary claims duty prior to trial. Additionally, Plaintiffs claim that this Court erred when it granted Defendant MetLife's and Phillips' Motion for Summary Judgment as to the breach of fiduciary duty claims prior to trial.

A court's ruling upon summary judgment, however, is an improper basis for a post-trial motion. The Note to Pa.R.C.P. 227.1(c) by the Civil Procedural Rules Committee reads: "A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motion for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial. See *U.S. National Bank in Johnstown v. Johnson,* 506 Pa. 622, 487 A.2d 809 (1985)."

Therefore, this Court will not reconsider its summary judgment rulings on the Post-Trial Motion.

## VII. Collateral Estoppel

In the Supplemental Brief in support of the Post-Trial Motion, Plaintiffs assert that a recent unpublished opinion in Toy v. Metropolitan Life Insurance Company, No. 7 WDA 2004 (Pa.Super. Sept. 22, 2004), has collateral estoppel effects on this case. The Toy opinion, however, addressed the issue of justifiable reliance and the jury in the present case determined that no negligence occurred and no misrepresentations were made in connections with the transactions, so the element of justifiable reliance was never reached. The Toy opinion is not instructive on the present case.

Additionally, the first element of collateral estoppel requires that "the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine." Commonwealth v. Holder, 805 A.2d 499 (Pa. 2002). The Plaintiffs have not met the elements of collateral estoppel, as the facts in the present case and Toy are not sufficiently similar.

Furthermore, the Superior Court decision on which Plaintiffs rely has been withdrawn by Order of Court dated October 8, 2004. As such, this Court will not address the issue of collateral estoppel as raised by Toy.

Accordingly, we enter the following:

## ORDER OF COURT

AND NOW, this 15th day of November, 2004, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiffs' Motion for Post-Trial Relief is hereby DENIED.

### BY THE COURT:

George H. Hancher, Judge

13

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MAX W. KINTNER and MARY L.           )
PLASKA, husband and wife,            )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )        Civil Action No. 01-1725
                                     )        CHIEF JUDGE AMBROSE
METROPOLITAN LIFE INSURANCE          )
COMPANY,                             )
                                     )
                Defendant.           )

## OPINION AND ORDER

This is an action filed by a husband and wife who
purchased insurance policies from MetLife in Texas in 1991.
Plaintiffs allege that the MetLife agent who sold them the
policies promised that payments would be necessary for only seven
(7) years, and that the policies would then become self-funding.
The complaint is in five (5) counts: (1) Negligence/Willful
Disregard; (2) Common Law Fraud and Deceit; (3) Violation of the
Texas Deceptive Trade Practices Consumer Protection Act; (4)
Violation of the Texas Insurance Code; and (5) Negligent
Supervision.   Trial is scheduled to commence in this matter on
March 29, 2005.  Presently before the court are several motions in
limine filed by MetLife.  They will be addressed seriatim.

1.   MetLife's motion to exclude evidence of punitive damages
     (Docket #46), and its motion, in the alternative, to
     bifurcate the claim for punitive damages (Docket #37).

AO 72A
(Rev. 8/82)

MetLife seeks first to exclude all evidence concerning punitive damages.  While it is true that the instant litigation, involving nationwide sales practices, and with hundreds of opt-out plaintiffs pursuing individual actions, certainly presents the potential for MetLife to be subject to multiple awards of punitive damages, it is only when such awards _in the aggregate_, reach the "maximum amount tolerable" are due process concerns implicated. Dunn v. Hovic, 1 F.3d 1371, 1389 (3d Cir. 1993).  Here, it is true, MetLife may be subject to multiple awards of punitive damages, all for the same underlying conduct, i.e., an alleged nationwide pattern and practice of deceptive marketing.  However, the court has before it no evidence from which it can conclude that such awards have already reached the "maximum tolerable level."  In the same fashion, the court cannot speculate that any award of punitive damages will be made in this case, or that any such award would, ultimately, be sufficient to render the aggregate of punitive damages against MetLife beyond the level which would violate due process.  Thus, this motion must be denied.

MetLife also argues, however, that a punitive damage award cannot be made on the basis of evidence of out-of-state activity, lawful or not. MetLife relies in this respect on State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003).  The holding in State Farm, however, was more limited than MetLife would have it:

- 2 -

AO 72A
(Rev. 8/82)

"Lawful out-of-state conduct may be probative [on the issue of punitive damages]' when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff. A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred.

534 U.S. at 421. Thus, there is no blanket prohibition on out-of-state conduct to establish entitlement to punitive damages. Rather, so long as a nexus exists between the harm inflicted within the forum state, and MetLife's out-of-state conduct, then such evidence is permissible. In this case, evidence that MetLife encouraged or permitted similar sales techniques in other states, and that such techniques have a nexus with the harm suffered by plaintiffs in Texas, renders that evidence admissible. The court disagrees that a blanket ban on evidence of out-of-state activities is appropriate in this case, and will deny the motion in this respect.

The last issue presented by MetLife is whether the evidence of conduct by MetLife has a sufficient "nexus" to plaintiffs' harm to permit a punitive damage award. MetLife asserts that "national sales practices" which are "insufficiently similar" to plaintiffs' claims of promises that their premium payments would cease to be necessary after a certain period of time, are not properly considered for a punitive damage award. State Farm, 538 U.S. at 423. I agree. Dissimilar acts of a defendant cannot be the basis for a punitive damages award. Other

- 3 -

instances of marketing "vanishing premium" policies would be relevant and admissible.  Therefore, the motion is denied as to evidence of other instance of marketing "vanishing premiums" and is granted as to other alleged deceptive marketing techniques.

MetLife next seeks to bifurcate the trial, leaving the question of punitive damages separate from the underlying liability and compensatory damages in this case.  The difficulty is that evidence of corporate practice and corporate approval or encouragement of deceptive sales techniques is relevant both to the occurrence of the alleged fraud in this case, and is also relevant to the issue of punitive damages.  Thus, there really would be no benefit in holding separate proceedings for liability and then punitive damages.  Further, any prejudice to MetLife will be minimal for the same reason, since the evidence will necessarily overlap significantly.  Thus, the motion to bifurcate will be denied as well.

2.    MetLife's motion to exclude evidence of MetLife's financial condition, net worth and wealth (Docket #44).

This evidence, which may briefly be entered into the record by the defendants, is relevant to the issue of punitive damages.  The motion will be denied.

AO 72A
(Rev. 3/82)

3.    **Defendants' motion to exclude the testimony of plaintiffs'
      expert witness Michael Dupay (Docket #42).**

MetLife asserts that plaintiffs' expert, Michael Dupay,
does not offer relevant or helpful testimony, that he lacks
expertise, and that his testimony will not assist the jury.
Plaintiffs point out, however, that Mr. Dupay has extensive
experience in the insurance industry, making him qualified to
discuss the standards and practices in the industry.  Thus, for
example, he could properly comment upon whether the sales
practices used here complied with industry standards, and whether
these practices had the potential to mislead.  As MetLife points
out, however, use of inflammatory rhetoric (which occurs only a
few times during Mr. Dupay's report) will not be countenanced by
the court.  Objections to such language will be sustained, but can
await the event.

MetLife also asserts that Dupay improperly comments upon
the credibility of witnesses.  Indeed, there are some instances
when this seems to be the case.  While it is appropriate for an
expert to offer an opinion when there is conflicting evidence, the
expert should indicate which version of the facts he has accepted
for purposes of rendering that opinion.  Kozak v. Smith, 531 A.2d
420, 422 (Pa. 1987).  Experts are not permitted, however, to make
credibility assessments or to comment upon the credibility of a
witness.  Crowley v. Chait, 322 F.Supp.2d 530, 553-54 (D.N.J.
2004).  Thus, to the extent that Mr. Dupay makes such credibility
assessments, an objection to such testimony will be sustained.

%AO 72A
(Rev. 8/82)

- 5 -

Therefore, although there are aspects of Mr. Dupay's report which are objectionable, no specific portion thereof need be withheld from the jury. Mr. Dupay's testimony at trial should not include any credibility determinations, and any intemperate language used in his expert report should not be repeated before the jury. This motion is, therefore, granted in part and denied in part.

4.  Defendants' motion seeking to exclude the Pennsylvania and Florida Market Conduct Examinations (Docket #39).

MetLife's sales practices during the early 1990's were the focus of an investigation by the Pennsylvania Insurance Department, which issued a Market Conduct Examination Report on February 11, 1994 (Docket #41, Exhibit A). The scope of the investigation was defined in the report as follows:

> A targeted market conduct examination has been performed on Metropolitan Life Insurance Company, hereinafter referred to as "MetLife", at their Johnstown, Pennsylvania office and through interviews conducted with various consumers, insurance agents and MetLife employees located principally within a six (6) county Western Pennsylvania Region, and a Report thereon is submitted as follows:
>
> The examination covered the period January 1, 1990 through December 31, 1992, unless otherwise noted. The purpose of the examination was to review MetLife's management, marketing and sales practices and procedures in Western Pennsylvania. Western Pennsylvania was defined as the counties of Armstrong, Allegheny, Beaver, Butler, Westmoreland, and Washington. However, some areas of review were expanded beyond Western Pennsylvania when initial findings indicated the activities appeared to occur throughout Pennsylvania.

- 6 -

In order to obtain a thorough perspective on MetLife's marketing practices, the examination was conducted in three (3) phases:

    (1)   MetLife's Johnstown, Pennsylvania office was visited by examiners to review copies of requested applications and consumer complaint files, as well as securing additional data relative to the examination.

    (2)   Interviews were conducted with various consumers, agents and MetLife employees in Western Pennsylvania concerning MetLife marketing practices and procedures.

    (3)   Interviews were conducted with principal MetLife corporate officials having management or supervisory responsibility for the insurer's marketing and sales operations.

The examination included, but was not limited to, the following areas of MetLife operations:
- Sales and Advertising
- Consumer Complaints
- Replacements
- Forms Filing and Approval.

(Id., Exhibit A at 4-5).

The genesis of the investigation were complaints made by MetLife customers in March, 1993, that they had been induced through misrepresentations to replace existing MetLife policies with new policies, thereby incurring additional costs and fees (Id., at 8). There were also customer allegations of deceptive marketing of insurance policies as retirement and savings plans (Id.). The report details numerous interviews, and includes copies of the marketing materials utilized in several individual cases.

- 7 -

MetLife asserts that this report is "classic hearsay" which should not be admitted at trial. Plaintiffs respond that the report may be admitted under Fed.R.Evid. 803(8)(C) as an official record. That rule permits admission of documents reflecting "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." See, e.g., Goodman v. Pennsylvania Turnpike Commission, 293 F.3d 655, 669 fn. 10 (3d Cir. 2002)(report Legislative Budget and Finance Committee admissible).

MetLife argues that there are several indicia of untrustworthiness in the report, including that: (1) MetLife was not offered a hearing before an impartial trier of fact; (2) there were no evidentiary rules; (3) none of the policy holders quoted in the report were subject to cross-examination; (4) plaintiffs were not mentioned in the report; and (5) the report does not address MetLife conduct in Texas, where the instant transaction occurred.

The court, then, must first determine whether the factual findings set forth by the Commission in the Market Conduct Report lack trustworthiness. In this respect, the relevant findings of the Commission are summarized in the following concluding paragraph:

> Although the examination could not identify in detail the full extent of the market penetration gained by MetLife through use of the various retirement/savings/investment plan solicitations, testimony of consumers and MetLife agents contacted

- 8 -

> during the examination indicated the misleading
> solicitation methods were used routinely to solicit
> Whole Life, Life to 95, and Life to 98 policies
> sold by MetLife.    It is clear that the various
> forms of advertising developed and used by MetLife
> sales representatives were designed to preclude
> proper    disclosure    of    insurance    sales    to
> Pennsylvania customers.    It was also noted, while
> the focus of the examination was on a six (6)
> county Western Pennsylvania Region, the various
> marketing schemes and practices occurred throughout
> Pennsylvania.

(Docket #56, Exhibit A at 96-97).

MetLife argues that two of the four "key indicia" of trustworthiness set forth in the Advisory Committee's notes to Rule 803(8)(C) are lacking here.    The Advisory Committee identified: (1) the timeliness of the investigation; (2) the investigator's skill and experience; (3) whether a hearing was afforded; and (4) possible bias.    First, the investigation covers the same time period during which the insurance policies at issue here were sold.    Second, the Insurance Commission is certainly qualified to conduct an investigation concerning the marketing strategies used by insurance companies within Pennsylvania. MetLife, though, points to the lack of a hearing in this case, to possible bias, and to the fact that the underlying transaction occurred in Texas, while the report was specifically limited in scope to activities occurring in Pennsylvania.

First, although no hearing was held by the Pennsylvania Insurance Commission, that was due at least in part to MetLife's decision not to challenge the findings contained in the report.

AO 72A
(Rev. 8/82)

Thus, the court does not view the lack of a hearing to be a controlling consideration in this case.

Second, MetLife points to the ruling in <u>Sherman v. Majeski</u>, No. 309 M.D. 1994 (Pa.Cmwlth. Aug. 30, 1994), <u>vacated</u>, 664 A.2d 221 (1995), where the court determined that public comments by the Insurance Commissioner made it appear that the Commissioner had "prejudged" one of the agents involved. That ruling, however, does not indicate that any bias existed with respect to MetLife. Therefore, MetLife has not shown any basis for believing that the report was biased and the court finds no basis for excluding the Pennsylvania Market Conduct Report from evidence for this reason. The court does, however note that the rule permits factual findings made by the Commission, and does not necessarily support wholesale admission of the report and all matters contained therein. This, however, is an issue to left for trial.

A more troubling aspect of the instant situation, however, is that the transactions in this case took place in Texas. The Pennsylvania Insurance Commission did not purport to speak concerning MetLife activity in Texas during the relevant time period. Further, while it is true that the report may have some value in establishing a pattern and practice on the part of MetLife, or a corporate culture encouraging deceptive sales techniques, there is some potential for juror confusion, since the report is focused on activity within Pennsylvania.

- 10 -

With respect to the Florida report, MetLife argues that
it centered largely on the conduct of Rick Urso, Manager of the
District Sales Office for the Southeastern Head Office Branch of
MetLife.    Urso's scheme to sell insurance policies as "Nurses
Retirement Savings Plans" is detailed in the report, and
complaints about that program were the genesis for same (Docket
#4, Exhibit B at 1-2).    The deceptive marketing is alleged to
have occurred nationwide (Id., at 2).    There is, however, no
indication that the report addresses any conduct in Texas similar
to that which is alleged in this case, i.e., that insurance
policies were sold on the promise that premiums would be payable
for a limited time, after which the policies would become self-
funding.    Indeed, the focus of the Florida report was the
marketing of insurance policies as retirement accounts, a
situation in which the very nature of the transaction was
misrepresented.    MetLife indicates that the agent who sold the
policies in this case, Dudley, did not work in Urso's department.

The court concludes that the Florida report, which
addresses almost exclusively the "Nurses Retirement Savings Plan"
marketed by Urso, has some relevance, particularly since it
concludes that MetLife's supervision of its agents led to improper
sales tactics on a national level.    However, the specific type of
misrepresentation alleged by plaintiffs here does not appear to
have been included in the Florida report.    Thus, there is
potential to confuse the jury.

- 11 -

In conclusion, while both reports contain relevant evidence, evidence of distinct or different alleged sales practices would have a tendency to confuse the jury and, therefore, to unfairly prejudice MetLife. Therefore, the court will permit use of both the Pennsylvania and Florida marketing reports only to the extent that such reports discuss or make findings concerning sales practices similar to the "vanishing premium" allegations contained in the Kintner's complaint.

5.    **Defendants' motion to preclude evidence and testimony of various witnesses (Docket #48).**

This motion will be denied without prejudice. Some of the witnesses MetLife objects to are former or present MetLife employees who, plaintiffs assert, will be able to testify concerning MetLife's corporate knowledge of relevant business practices. There are also some exhibits which will be addressed to the same corporate knowledge issue. The court cannot rule at this point that such witnesses and/or evidence should be excluded.

An appropriate order follows:

AND NOW, this 15th day of March, 2005,

IT IS HEREBY ORDERED that MetLife's motion to exclude evidence concerning punitive damages (Docket #46) is DENIED; MetLife's motion to bifurcate the issue of punitive damages (Docket #37) is DENIED; MetLife's motion to exclude evidence of its net worth (Docket #44) is DENIED; MetLife's motion to exclude the testimony of plaintiffs' expert witness Michael Dupay (Docket

- 12 -

AO 72A
(Rev. 8/82)

#46) is GRANTED IN PART AND DENIED IN PART; MetLife's motion seeking to exclude the Pennsylvania and Florida Market Conduct Examinations (Docket #39) is GRANTED IN PART AND DENIED IN PART; MetLife's motion to preclude certain documentary evidence and testimony (Docket #48) is DENIED WITHOUT PREJUDICE to MetLife's right to challenge individual exhibits and witnesses upon an offer of proof at trial.

DONETTA W. AMBROSE
CHIEF UNITED STATES DISTRICT JUDGE

cc: Kenneth R. Behrend, Esquire
Behrend & Ernsberger
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222

B. John Pendleton, Jr., Esquire
McCarter & English
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101

- 13 -

AO 72A
(Rev. 8/82)