IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD M. GONDA,<br><br>            Plaintiff,<br><br>            v.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY AND WILLIAM GERALD<br>FRIEDT, JR.,<br><br>            Defendants | CIVIL ACTION NO. 00-2286<br><br><br><br>CHIEF JUDGE AMBROSE |

**METROPOLITAN LIFE INSURANCE COMPANY AND WILLIAM GERALD FRIEDT, JR.'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES**

**PRELIMINARY STATEMENT**

Plaintiff seeks punitive damages in this action, in part, on the basis of Metropolitan Life Insurance Company's ("MetLife") allegedly "widespread" conduct, including, but not limited to, claims of undisclosed replacement and "vanishing premium" claims. However, the evidence on whether a fraudulent or negligent misrepresentation was made to Plaintiff in the first instance should be limited at most to the transactions at issue based on the pleadings.

Much of the evidence admissible solely for purposes of considering whether punitive damages would be available is highly prejudicial to Defendants. MetLife already has paid damages and fines punitive in nature for the same alleged "widespread" conduct that Plaintiff seeks to introduce in support of the punitive damages claim. Penalizing MetLife multiple times for the same course of conduct would violate the Due Process Clause. Moreover, as the United States Supreme Court reiterated in <u>State Farm Mutual Automobile Ins. Co. v. Campbell</u>, 538 U.S. 408 (2003), a fact finder may not use evidence of out-of-state conduct to award punitive

damages. Nor may a fact finder use evidence of conduct that does not have a "nexus" to the specific, purported harm to the plaintiff.

## ARGUMENT

I. **THIS COURT SHOULD EXCLUDE PLAINTIFF'S PUNITIVE DAMAGE CLAIM BECAUSE MULTIPLE PUNITIVE DAMAGE AWARDS AGAINST THE SAME DEFENDANT FOR THE SAME COURSE OF CONDUCT IS CONSTITUTIONALLY IMPERMISSIBLE.**

While compensatory damages are intended to redress a concrete loss that a plaintiff has suffered as a result of a defendant's actions, punitive damages serve a broader function – they are aimed at deterrence and retribution. See State Farm, 538 U.S. at 416 (citations omitted). Indeed, while states possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards grounded in the Due Process Clause of the Fourteenth Amendment, which prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. Id. (citations omitted).

"[R]epetitive awards of punitive damages for the same conduct violate a defendant's due process rights." Juzwin v. Amtorg Trading Corp., 718 F. Supp. 1233, 1234 (D.N.J. 1989). It is a basic tenet of fairness that a defendant should not be punished repeatedly for a single wrong. The United States Supreme Court recently affirmed this fundamental concept of fairness in State Farm when it determined that punishment on the basis of "being an unsavory individual or business" "creates the possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains." State Farm, 538 U.S. at 423 (citation omitted). Accordingly, courts consistently have acknowledged that a defendant, once punished fully for particular conduct, cannot be subjected to multiple awards of punitive damages in other cases. See Dunn v. Hovic, 1 F.3d 1371, 1389 (3d Cir. 1993) (assuming that successive punitive damage award would violate due process if the aggregate of

prior awards reached the "maximum amount tolerable"); In re School Asbestos Litig., 789 F.2d 996, 1005 (3d Cir. 1986) (". . . courts shoulder some responsibility for preventing repeated awards of punitive damages for the same acts or series of acts"); Brown v. American Home Prod. Corp., No. 1203, 99-20593, 2000 WL 1222042, *49 n.22 (E.D. Pa. Aug. 28, 2000) (a defendant who already has "been punished enough" may not incur further punitive damages); Juzwin, 718 F. Supp. at 1234.  See also Simpson v. Pittsburgh Corning Corp., 901 F.2d 277, 281 (2d Cir. 1990) (punitive damages not permitted if a prior punitive award was "comprehensive" or if the aggregate of prior awards has reached the due process limit); In re Agent Orange Prod. Liab. Litig., 100 F.R.D. 718, 728 (E.D.N.Y. 1983) ("[t]here must, therefore, be some limit, either as a matter of policy or as a matter of due process, to the amount of times defendants may be punished for a single transaction"); In re: Northern District of Cal. "Dalkon Shield" IUD Prod. Liab. Litig., 526 F. Supp. 887, 900 (N.D. Cal. 1981) ("Common sense dictates that a defendant should not be subjected to multiple civil punishment for a single act or unified course of conduct which causes injury to multiple plaintiffs") vacated for other reasons, In re: Northern District of Cal. "Dalkon Shield" IUD Prod. Litig., 693 F.2d 847, 852 (9th Cir. 1982); Greco v. Ford Motor Co., 937 F. Supp. 810, 817 (S.D. Ind. 1996).

Courts have recognized the inherent danger of punitive damage "overkill" if plaintiffs are permitted to "punish" the same defendant, over and over, for the same conduct.  Each injured plaintiff is entitled to just compensation.  However, punitive damages do not compensate, they punish, and due process curbs excessive civil punishment.

Courts recognize two primary situations in which multiple punitive awards can violate due process.  First, a subsequent punitive award is improper when a prior punitive award against a defendant was comprehensive and designed to punish the defendant for the full extent of its

-3-

wrongful conduct. See Juzwin, 718 F. Supp. at 1234-35. A prior award is considered comprehensive if it is based upon consideration of the "full scope and consequences" of the defendant's conduct. Id. at 1235.

Secondly, a subsequent punitive award is improper if the aggregate of prior punitive awards has reached the maximum amount tolerable under the Due Process Clause. See Dunn, 1 F.3d at 1389; Simpson, 901 F.2d at 280-81. Basically, a court must determine whether the previous awards, in total, are "grossly excessive." See, e.g., Owens-Corning Fiberglas Corp. v. Wasiak, 972 S.W. 2d 35, 51 (it would violate due process to repeatedly punish the same defendant for the same course of wrongful conduct).

The Amended Consolidated Class Action Complaint filed in Metropolitan Life Ins. Co. Sales Practices Litig., Misc. Dkt. No. 96-179, MDL No. 1091 (W.D. Pa.) (the "MDL"), contained a series of global "pattern and practice" and "scheme" allegations against MetLife including, but not limited to, "savings and retirement" claims.[1] See Ex. A Findings of Fact and Conclusions of Law, In re Metropolitan Life Ins. Co. Sales Practices Litig., Misc. Dkt. No. 96-179, MDL No. 1091 (W.D. Pa. Dec. 28, 1999). The class specifically sought to recover punitive damages to punish MetLife for this alleged global misconduct. Id. Significantly, the class took extensive discovery on the global allegations. MetLife corporate executives were deposed and MetLife prepared a voluminous document production that included documents pertaining to the general "scheme" allegations. Thus, the class utilized the MDL class action to explore and consider the full extent of MetLife's nationwide sales practices. As a result, the parties

---

[1] At a minimum, the global "pattern and practice" and "scheme" allegations should be limited to those relevant to Plaintiff's claims.

-4-

negotiated the settlement based upon the "full scope and consequences" of MetLife's nationwide actions.[2]

The MDL settlement specifically contemplated the resolution of claims for damages of any type, including punitive damages, by releasing:

> any and all causes of action, claims, damages, awards . . . including, without limitation, claims for . . . all damages of any kind, including those in excess of actual damages[.]

See Ex. B Final Order Approving Class Action Settlement, In re Metropolitan Life Ins. Co. Sales Practices Litig., Misc. Dkt. No. 96-179, MDL No. 1091 (W.D. Pa. Dec. 28, 1999). Ultimately, the settlement resolved claims relating to seven million policies and annuities.

The MDL settlement had a total value in excess of $1.645 billion to the class. See Findings of Fact and Conclusions of Law at 19.[3] Importantly, the settlement figure was determined before the number of opt-outs was known, and accordingly, the settlement was designed to resolve all of the damage claims against MetLife (compensatory and punitive), not just the claims of the plaintiffs who remained in the class. Thus, MetLife already has resolved, "comprehensively," all claims for relief arising from the global class allegations. See Juzwin, 718 F. Supp. at 1234.

MetLife also paid over $20 million in fines to various state insurance departments to resolve alleged improper sales practices. See Ex. C Listing of Civil Penalties Paid in Forty-Eight Jurisdictions. MetLife further specifically paid $1.5 million to the Pennsylvania Department of

---

[2] Behrend & Ernsberger, P.C. was coordinating counsel for state court plaintiffs in the class action litigation, did not object to the settlement, and received a fee of $1.7 million.

[3] With respect to Pennsylvania class members who elected General Relief, MetLife has paid Settlement Death Benefits and Accidental Death Benefits in the amount of $16,904,106 as of November 3, 2004. With respect to Pennsylvania class members who elected Claim Evaluation and whose claims were categorized and referred to the Claim Review Process, MetLife has paid $30,036,404 in cash and/or policy/account credits and Enhanced Settlement Death Benefits in the amount of $5,507,461 as of November 3, 2004. With respect to Pennsylvania class members who elected Claim Evaluation and whose claims were categorized and referred to the Part VIII ADR

Insurance in response to the Department's allegation that certain improper sales practices occurred within the Commonwealth.[4] See Ex. D February 11, 1994 Order of Insurance Department of the Commonwealth of Pennsylvania. The Due Process Clause of the Fourteenth Amendment forecloses Plaintiffs' attempt to individually punish MetLife based on allegations for which MetLife has already been held accountable.

MetLife already has been punished for the "global" pattern and practice allegations, including those alleged by Plaintiff, which Plaintiff seeks to support with evidence beyond the scope of the transactions at issue. It would be "grossly excessive" to continually and repeatedly punish MetLife for the alleged companywide sales practices.

## II.   THIS COURT SHOULD EXCLUDE ALL EVIDENCE OF CONDUCT THAT OCCURRED OUTSIDE OF THE FORUM STATE.

Should this Court determine that Plaintiff may proceed with his claims for punitive damages this Court should exclude all evidence of conduct that occurred outside the forum state. As a general rule, state courts do not "have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." State Farm, 538 U.S. at 421. This is because the proper adjudication of conduct that occurred to other individuals outside the state would require their inclusion in the lawsuit. Id. Pursuant to BMW of North American, Inc. v. Gore, punitive damages may not be awarded as punishment for any conduct that occurred outside the forum state. 517 U.S. 559 (1996). Therefore, punitive damages should not be used to punish and alter conduct outside of a state's borders.

---

Process or the Part IX Arbitration Process, MetLife has paid $158,765 in cash and/or policy/account credits as of November 3, 2004.

[4] To the extent Plaintiff attempts to rely on findings of the Pennsylvania Report of Market Conduct Examination of Metropolitan Life Insurance Company (the "Pennsylvania Report") as conclusive and binding, so too is the $1.5 million fine imposed by the Pennsylvania Department of Insurance and the remedial measures undertaken by MetLife as a result of the Pennsylvania Report.

> We think it follows from these principles of state sovereignty and comity that a State may not impose economic sanctions on violators of its law with the intent of changing the tortfeasor's lawful conduct in other states. . . . To avoid such encroachment, the economic penalties that a State such as Alabama inflicts on those who transgress its laws, whether the penalties take the form of legislatively authorized fines or judicially imposed punitive damages, must be supported by the State's interest in protecting its own consumers and its own economy.

Id. at 572.

To protect the sovereignty of each state, the Supreme Court has held that "no state can legislate except with reference to its own jurisdiction. Each state is independent of all the others in this particular." Bonaparte v. Tax Court, 104 U.S. 592, 594 (1881). See also Bigelow v. Virginia, 421 U.S. 809, 823-24 (1975) (State of Virginia possessed no authority to regulate conduct in State of New York). Accordingly, the principles of federalism restrict and confine the regulatory powers of a state to interests within its own borders. A state "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 822 (1985). By awarding punitive damages based upon out-of-state conduct, state courts essentially would be regulating out-of-state conduct. This result offends the basic federalist structure of our government.

Likewise, the commerce clause prevents a state from regulating, through punishment or otherwise, commercial activities – such as sales practices – which occur in another state. Healy v. Beer Inst., 491 U.S. 324, 335-36 (1989) (the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the state).

Both the State Farm decision, the BMW decision, as well as a decision in Butler County, Pennsylvania (See Ex. E, Maleski v. Metropolitan Life Ins. Co., et al, A.D. No. 95-10451,

Memo. Op. and Order of Court (C.C.P. Butler Cty. April 6, 2004) (granting motion in limine to bifurcate punitive damage phase of trial and limiting evidence to evidence occurring within the Commonwealth of Pennsylvania only); Ex. F, Maleski, Memo. Op. and Order of Court dated November 15, 2004)) confirm that a state cannot award punitive damages based upon lawful or unlawful out-of-state conduct. Any such award would constitute impermissible extra-territorial regulation which would be an affront to state sovereignty.

At a minimum, Plaintiff should be barred from recovering punitive damages based upon conduct that occurred outside the State of Pennsylvania[5] and, accordingly, no evidence should be introduced based upon such conduct.

### III. THIS COURT SHOULD EXCLUDE ALL EVIDENCE OF CONDUCT THAT DOES NOT HAVE A "NEXUS" TO THE SPECIFIC HARM TO PLAINTIFF.

State Farm dramatically limited the extent to which a plaintiff can rely on conduct directed at non-parties. Overruling the Utah state court's rationale supporting a punitive damage award, the Supreme Court held:

> The [Utah] courts awarded punitive damages to punish and deter conduct that bore no relation to the Campbells' harm. A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct; for the usual case nonparties are not bound by the judgment some other plaintiff obtains. . . . in the context of civil actions courts must ensure the conduct in question replicates the prior transgressions.

---

[5] Plaintiff is a resident of Pennsylvania. The policy at issue was purchased in Pennsylvania.

538 U.S. at 423 (citations omitted). Accordingly, evidence of dissimilar "sales practices" conduct is irrelevant to the punishment setting function of punitive damages, and would be highly prejudicial.

State Farm involved a third-party automobile insurance claim, where the Campbells asserted claims of bad faith against State Farm for refusal to settle an insurance claim, and further refusal to pay the verdict in excess of the coverage limits. Id. at 415. The trial court permitted evidence of a "national scheme to meet corporate fiscal goals by capping payouts on claims company wide." Id. Evidence relating to this alleged scheme spanned more than twenty years of State Farm's business practices. Id. However, "[m]ost of these practices bore no relation to third-party automobile insurance claims, the type of claim underlying the Campbells' complaint against the company." Id. The Supreme Court held that:

> the Utah court erred here because evidence pertaining to claims that had nothing to do with a third-party lawsuit was introduced at length. Other evidence concerning reprehensibility was even more tangential. For example, the Utah Supreme Court criticized State Farm's investigation into the personal life of one of its employees and, in a broader approach, the manner in which State Farm's policies corrupted its employees. The Campbells attempt to justify the courts' reliance upon this unrelated testimony on the theory that each dollar of profit made by underpaying a third-party claimant is the same as a dollar made by underpaying a first-party one. For the reasons already stated, this argument is unconvincing. <u>The reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance, which in this case extended for a 20-year period.</u>

Id. at 423-424 (emphasis added) (citations omitted).

In a similar matter pending before this Court, Judge Ambrose granted MetLife's motion to exclude evidence of punitive damages. See, Ex. G, Kintner v. Metropolitan Life Ins. Co., Civil Action No. 01-1725, Memo. Op. and Order of the Court (W.D. Pa. March, 11, 2005). The court held that evidence of MetLife's national sales practices were dissimilar to the plaintiff's claim of

alleged misrepresentations that their premium payments would cease. The judge determined that evidence of a dissimilar nature should not properly be considered for a punitive damages award.

Just as <u>State Farm</u> determined that widespread evidence relating to an alleged broad scheme to cap payouts on claims was not sufficiently similar to the Campbells' bad faith refusal to pay on a third-party claim, so too are allegations of alleged "nationwide sales practices" insufficiently similar to Plaintiff's claims.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Plaintiff's claim for punitive damages be excluded. Moreover, should this Court determine that evidence beyond Plaintiff's transactions may be considered in awarding punitive damages, MetLife further requests that evidence of conduct outside of Pennsylvania and/or evidence of conduct that does not have a "nexus" to the specific, purported harm to Plaintiff be excluded at trial.

                Respectfully Submitted,

                <u>s/ B. John Pendleton, Jr.</u>
                B. John Pendleton, Jr.
                McCARTER & ENGLISH, LLP
                Four Gateway Center
                100 Mulberry Street
                Newark, NJ 07102
                (973) 622-4444

                Attorneys for Defendants
                Metropolitan Life Insurance Company
                and William Gerald Friedt, Jr.

Dated: June 19, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic submission, on this 19th day of June 2006 on the following counsel of record:

> Kenneth R. Behrend, Esq.
> Behrend and Ernsberger, P.C.
> Union National Bank Building
> 306 Fourth Avenue, Suite 300
> Pittsburgh, PA  15222

　　__s/ B. John Pendleton, Jr._____