IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD M. GONDA, | : CIVIL ACTION NO. 00-2286 |
| Plaintiff, | : |
| | : |
| v. | : CHIEF JUDGE AMBROSE |
| | : |
| METROPOLITAN LIFE INSURANCE COMPANY AND WILLIAM GERALD FRIEDT, JR., | : |
| Defendants | : |

**METROPOLITAN LIFE INSURANCE COMPANY AND WILLIAM GERALD FRIEDT, JR.'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING THE PENNSYLVANIA MARKET CONDUCT EXAMINATIONS OF METROPOLITAN LIFE INSURANCE COMPANY AND RELATED DOCUMENTS**

**PRELIMINARY STATEMENT**

Metropolitan Life Insurance Company ("MetLife") and William Gerald Friedt, Jr. bring this Motion in Limine to Exclude Evidence Regarding the Pennsylvania Report of Market Conduct Examination of Metropolitan Life Insurance Company (the "Pennsylvania Report") and Related Documents. Plaintiff has identified the Pennsylvania Report as Plaintiff's Exhibit 55, a copy of which is attached as Exhibit A.[1]

The Pennsylvania Report should be excluded on three grounds. First, it is irrelevant (Rules 401 and 402). Second, even if relevant -- which it is not -- the Pennsylvania Report's probative value is outweighed by the risk of unfair prejudice (Rule 403). Finally, the Pennsylvania Report is inadmissible as classic hearsay (Rule 802).

---

[1] A copy of the Pennsylvania Report is attached to the Motion as Exhibit A.

Defendants were not afforded the due process in the market conduct proceedings to which they are entitled in this Court proceeding. See 40 Pa. P.S. §323.4 (setting forth the procedures applicable to insurance department examinations). Specifically, Defendants were denied: (1) the benefit of a hearing before an impartial trier of fact, (2) the protections of appropriate evidentiary rules, and (3) the opportunity to take sworn testimony subject to cross-examination, particularly of the policyholders referred to in the Pennsylvania Report, or to confront any witnesses.[2] There was no regard for evidentiary rules.

Moreover, in its response to the Pennsylvania Report, MetLife disputed virtually all of the salient findings. In addition, William Gerald Friedt, Jr., the sales representatives in this case, is not mentioned in connection with the market conduct investigations and did not participate in the investigations upon which the Pennsylvania Report was based and had no opportunity to respond. Similarly, neither the Plaintiff nor the Plaintiff's policy is mentioned in the Pennsylvania Report.

The Pennsylvania Report is not only irrelevant, but also contains inadmissible hearsay. In order for evidence regarding the Pennsylvania Report to be admitted into evidence, Plaintiff must satisfy his burden of showing that the Pennsylvania Report fits within an exception to the hearsay rule. Plaintiff cannot meet that burden. The Pennsylvania Report is the product of a one-sided investigation conducted without any of the safeguards of the adversarial process and thus lack the trustworthiness required to come within the official records exception to the hearsay rule. Furthermore, any probative value the Pennsylvania Report could have is outweighed by the overwhelming prejudicial impact on MetLife.

---

[2] Most of the findings in the Report were not based on sworn testimony, and third-party accounts were not subject to cross-examination. Defendants had no opportunity to confront any witnesses. In fact, many of the witnesses upon whom the investigators relied in preparing the Report were anonymous. See Ex. A at 46–58.

Plaintiff may try improperly to use the Pennsylvania Report as evidence of a trait or habit, though it is inadmissible for lack of relevance. Mr. Friedt, the MetLife sales representatives in this case, is not mentioned in the Pennsylvania Report. In addition, neither Plaintiff nor Plaintiff's policy was referenced in the Pennsylvania Report. The Pennsylvania Report is primarily limited to discussions of undisclosed replacement of insurance policies. There is no viable issue of replacement here. Plaintiff acknowledges that he discussed "replacement" with Mr. Friedt. Ex. B, Gonda Tr. at 30:16-31:2. Furthermore, Plaintiff indicated on his application that he would be replacing his Pruco Policy with the 1992 Policy and Plaintiff signed a Notice of Replacement. Plaintiff does not claim he was unaware that the cash value from the Pruco Policy was being used to fund the 1992 Policy. Ex. B, Gonda Tr. at 30:16-25.

Based on the information and arguments set forth above, any evidence regarding the Pennsylvania Report and the underlying investigations should be excluded.

## **BACKGROUND**

**I.     THE TRANSACTION AT ISSUE**

Plaintiff's claims arise from the 1992 sale of a Whole Life insurance policy. Plaintiff alleges that in 1992, MetLife sales representative William Friedt made misrepresentations at the sale of Policy No. 925 207 015 A (the "1992 policy"). Specifically, Plaintiff alleges that Mr. Friedt made misrepresentations regarding the replacement of an existing Pruco life insurance policy which was used to partially fund the 1992 policy, and that Mr. Friedt misrepresented that the 1992 policy would be fully funded by making monthly payments of $50.50 for ten years. Plaintiff also alleges that Mr. Friedt represented that the 1992 policy would accumulate a certain cash value and death benefit after forty years.

**II.     THE PENNSYLVANIA REPORT**

The Pennsylvania Report was issued on December 27, 1993 by the Pennsylvania Insurance Department Market Conduct Division. The examination covered the period from January 1, 1990 through December 31, 1992. Ex A at 4. The purpose of the examination was to review MetLife's management, marketing and sales practices and procedures. Id. As part of the examination, the Department reviewed copies of complaints, audit reports, and FIP reports. Id at 38. The Pennsylvania Report is primarily limited to discussions of undisclosed replacement of insurance policies.

## ARGUMENT

**I.     THE PENNSYLVANIA REPORT CONSTITUTES INADMISSIBLE HEARSAY.**

The Pennsylvania Report is classic hearsay. In order for evidence regarding the Pennsylvania Report to be admitted into evidence, Plaintiff must satisfy the burden of showing that the Pennsylvania Report fits within an exception to the hearsay rule. Plaintiff simply cannot meet that burden.

Plaintiff may claim that the Pennsylvania Report falls within the "official records" exception to the general hearsay rule. Federal Rule of Evidence 803(8)(c) provides that public records are, under certain circumstances, admissible as an exception to the general hearsay rules "unless [their] sources of information or other circumstances indicate lack of trustworthiness." Fed R. Evid. 803(8)(c) (emphasis added); see also Swietlowich v. Bucks County, 610 F.2d 1157, 1165 (3d Cir. 1979). Because the Pennsylvania Report fails to satisfy the requirement of trustworthiness, it constitutes inadmissible hearsay and should be excluded from evidence.

The Advisory Committee Notes to Rule 803(8) set forth four key indicia of trustworthiness: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when the Pennsylvania Reports are

4

prepared with a view to possible litigation.  Fed. R. Evid. 803(8), Advisory Committee Notes.  The Supreme Court in Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 168 n.11 (1988), noted that "[t]his trustworthiness inquiry . . . was the [Advisory] Committee's primary safeguard against the admission of unreliable evidence, and it is important to note that it applies to all elements in the Pennsylvania Report.  Thus, a trial judge has the discretion, and indeed the obligation, to exclude an entire part or portions thereof . . . that she determines to be untrustworthy.  Moreover, safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative Pennsylvania Reports or portions of them."  Id. at 167-68.

Two of these key indicia -- whether a hearing was held and possible motivational problems such as bias -- are clearly implicated in this case and compel the exclusion of the Pennsylvania Report and any other evidence or testimony regarding the Pennsylvania Report.  First, no hearings were ever held on the purported "findings" in the Pennsylvania Report.  Thus, the Pennsylvania Report's broad "conclusions" are without specific factual support and are based on nothing more than bare allegations and unsworn statements by policyholders reported second-hand by the examiners.  Because the actual claims of specific individual policyholders were never subjected to the scrutiny of adversarial proceeding, the Pennsylvania Report lacks the requisite level of trustworthiness needed to be admissible.  See, Ex. C Drummond v. Alia – The Royal Jordanian Airline Corp., 11 Fed. R. Evid. Serv. 1904, 1908-10 (W.D. Pa. 1982) (finding that an accident report prepared by the government of Qatar concerning an airline crash was untrustworthy because, among other reasons, "one can conclude that since there was no hearing conducted, there were very few procedural safeguards to protect against the inclusion of hearsay and irrelevant evidence.  It is very possible that a large amount of hearsay and irrelevant evidence was included in the report.  This results in hearsay within hearsay and the admission of

other inadmissible evidence, which serve to undercut the trustworthiness of the report"); Denny v. Hutchinson Sales Corp., 649 F.2d 816, 822 (10th Cir. 1981) (affirming exclusion of government report based on its "untrustworthiness" where report's findings resulted from ex parte investigation with no formal procedures and no opportunity to cross-examine witnesses); Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 303 (11th Cir. 1989) (citing cases in support of the "fact that no hearing was held in making [a] report affects its trustworthiness").  The findings in the Pennsylvania Report are based almost entirely on the hearsay statements of third parties and on a review of MetLife documents that have nothing to do with Plaintiff's allegations.  The Pennsylvania Report is not based on any transactions or purported sales practices actually observed by the examiners.

In addition, the Insurance Commissioner under whose tenure the Pennsylvania Report was issued has been found to be biased by the only previous court to have considered the contents of the Pennsylvania Report.  A former MetLife sales representative sought to enjoin the Insurance Department from proceeding with any action against him related to the Pennsylvania Report.  See Ex. D, Sherman v. Maleski, No. 309 M.D. 1994 (Pa. Cmwlth. Aug. 30, 1994), vacated, 664 A.2d 221 (1995).  The court in its initial order granted the injunction to the sales representative and concluded that the sales representative could not have received a fair hearing by the Insurance Department in his license revocation proceeding because it had prejudged his guilt:

> The [Pennsylvania] Report, which named Sherman and concluded that he had violated sections of Pennsylvania's insurance laws and regulations, became a final administrative decision of the Department.  The Department, then, through the power vested in the Commissioner, decided against Sherman without according him notice or an opportunity to defend himself before a fair and impartial tribunal.  Thereafter, the Commissioner publicly condemned the rampant misrepresentation of the agents, stating that the evidence against them was "indisputable."  We believe that

6

>the Pennsylvania Report and the Commissioner's statement, taken together, indicate that the Commissioner has prejudged Sherman.

Slip op. at 15-16 (Ex. D).  Having been found by the Commonwealth Court to reflect bias against a former MetLife employee, the Pennsylvania Report is not properly admissible in this case against Defendants as an official record.  See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1342 (3d Cir. 2002) ("[m]ost notably, a report may be untrustworthy if the report appears to have been made subject to a suspect motivation.  For example, if the public official or body who prepared the report has an institutional or political bias, and the final report is consistent with that bias") (internal quotation marks omitted).

The Pennsylvania Report contains numerous opinions expressed by the Pennsylvania Insurance Department on various aspects of MetLife's operations.  See Ex. A at 38-39, 58, 71-72, 96-97, 150-160, 164-165 (compiling "Findings," "Conclusions," and "Recommendations" of the Pennsylvania Report).  Defendants, however, will have no opportunity to cross-examine the authors of these opinions.  Accordingly, the Pennsylvania Report, and evidence regarding the Pennsylvania Report, should be excluded from the trial.  See Wilson v. Attaway, 757 F.2d 1227, 1245 (11th Cir.1985) (the report excluded because, among other reasons, it failed to afford possibility of cross-examination); Hines, 886 F.2d at 303-304 (inability to cross-examine investigator who prepared report is "a proper factor to take into consideration when deciding trustworthiness" of the report) (citations omitted).

The Pennsylvania Report is also rife with hearsay statements regarding interviews with unnamed policyholders.  Hearsay statements of third parties do not become admissible simply because they appear in an official record.  All such hearsay within hearsay is plainly inadmissible.

Because the Pennsylvania Report fails to satisfy the requisite indicia of trustworthiness, contain unauthorized expressions of opinions, and are rife with double hearsay, it fails to meet the hearsay exception for admissibility as a government Pennsylvania Report and, therefore, must be excluded from evidence.

Plaintiff may also erroneously contend that the Pennsylvania Report is admissible under Federal Rule of Civil Procedure 406 to show MetLife's routine practice. To the contrary, federal courts, including this Court, interpreting Rule 406 consistently hold that for evidence to be admitted as a corporation's routine practice, the conduct in question must be a "regular response to a specific situation."[3] <u>Becker v. ARCO Chem. Co.</u>, 207 F.3d 176, 204 (3d Cir. 2000) (holding that evidence that a business had a tendency to use pretenses when firing employees was not admissible as habit evidence under Rule 406, because it was not the sort of <u>semi-automatic, situation-specific evidence</u> that the rule admits); <u>Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services, Inc.</u>, 45 F.3d 96 (5th Cir. 1995) (To admit evidence as routine practice, there must be a sufficient pattern of conduct so that it is considered a uniform and regular response to a repeated situation); <u>McCarrick v. New York City Off-Track Betting Corp.</u>, No. 91 Civ. 5626, 1995 WL 261516, at *5 (S.D.N.Y. May 3, 1995) ("[i]n order to be admissible under [Rule 406] . . . the conduct at issue must constitute a 'regular response to a repeated specific situation.'") (quoting <u>Thompson v. Boggs</u>, 33 F.3d 847, 854 (7th Cir.1994)).

Moreover, Plaintiff's potential contention that the Federal Rule of Evidence 404(b) permits this type of evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" is likewise without merit. To show that improper

---

[3] Moreover, it cannot be that the Pennsylvania Report, concerning an insignificant number of transactions when compared with company wide sales practices, could be used to show routine. The Pennsylvania Report focused on transactions in only six counties in Pennsylvania.

bad acts evidence is admissible to show intent, this Court has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, <u>no link of which may be the inference that the defendant has the propensity to commit the crime charged.</u>'"  <u>Becker</u>, 207 F.3d at 191 (3d Cir. 2000) (quoting <u>United States v. Morley</u>, 199 F.3d 129, 133 (3d Cir. 1999)) (emphasis added).  In <u>Becker</u>, the plaintiff initiated an action against his former employer under the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act, contending that his former employer discriminated against him on the basis of his age by terminating his employment.  <u>Id.</u> at 179.  The plaintiff sought to introduce evidence of his former employer's "manner" in which it had terminated another employee.  <u>Id.</u>  This Court ruled that such evidence is only admissible if the proponent can articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.  Applying this test, the Court held that the evidence in question failed the test because the evidence of the employer's manner of terminating another of its employees was not relevant on the issue of whether it discriminated against the plaintiff <u>absent</u> the inference that the employer had a propensity to act in a certain way and that it acted in conformity with this prior conduct when it terminated the plaintiff.

Similarly, Plaintiff cannot articulate how the Pennsylvania Report fits into a chain of logical inferences pointing towards MetLife's purported intent without involving the inference that because MetLife allegedly acted a certain way in the past, it acted that way during sale of Plaintiff's policy.  Thus, the Pennsylvania Report is inadmissible to establish MetLife's alleged intent.

Also at issue in <u>Becker</u> was whether the evidence regarding the employer's manner of terminating another employee was admissible as evidence of a common plan or scheme.  This Court stated that in order to admit Rule 404(b) evidence as reflecting a plan or scheme, the

9

crimes must be part of a common or continuing scheme; the plan must encompass or include both crimes; and the crimes must be connected, mutually dependent and interlocking. Moreover, both crimes must be steps toward the accomplishment of the same final goal. Additionally, the Court noted that to be admissible under Rule 404(b), it is insufficient to show that each crime was "planned" in the same way. Instead, there must be an overall scheme of which each of the crimes is but a part. Id. at 197 (citation omitted).

The Court found in Becker that the evidence at issue was not admissible as proof of the defendants' plan based on these principles as there was no evidence presented that the two terminations were connected, mutually dependent or part of any larger goal of the former employer. See also J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (In order for prior bad act evidence to be admissible to establish a common plan, plaintiffs must show that the acts "are part of a single series of events'") (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992)).[4] Here, Plaintiff has failed to show that the alleged acts of MetLife contained in the Pennsylvania Report are part of a single series of events.

II. **THE INTRODUCTION OF THE PENNSYLVANIA REPORT IS IRRELEVANT, HIGHLY PREJUDICIAL, AND BEYOND THE SCOPE OF THE TRANSACTIONS AT ISSUE.**

    a. **The Pennsylvania Report Should Be Excluded Because It Is Irrelevant and Has No "Nexus" to Plaintiff's Allegations.**

---

[4] In J & R Ice Cream, the plaintiff claimed that a franchisor had made misrepresentations concerning its expertise in site selection and the amount of maintenance charges applicable to the site selected for the plaintiff's franchise. The plaintiff introduced evidence that the franchisor made misrepresentations to other prospective franchisees concerning the amount of revenue a typical franchise could produce. The Third Circuit held that the introduction of that evidence was improper under Rule 404(b) because "the jury could have used the highly prejudicial, indeed almost inflammatory evidence to conclude that [the defendant] used misrepresentations in multiple aspects of its sales efforts." 31 F.3d at 1269.

Plaintiff should not be permitted to alter the scope of this case with irrelevant documents and testimony. Federal Rule of Evidence 401 defines "relevant evidence" as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Nothing in the Pennsylvania Report has any bearing on establishing what occurred regarding Plaintiff's purchase of the policy at issue. Neither Plaintiff nor Plaintiff's policies are mentioned in the Pennsylvania Report. In addition, the sales representative, Mr. Friedt, is not mentioned in the Pennsylvania Report. The Pennsylvania Report is primarily limited to discussions of undisclosed replacement of insurance policies. There is no viable issue of replacement here. Plaintiff acknowledges that he discussed "replacement" with Mr. Friedt. Ex. B, Gonda Tr. at 30:16-31:2. Furthermore, Plaintiff indicated on his application that he would be replacing his Pruco Policy with the 1992 Policy and Plaintiff signed a Notice of Replacement. Plaintiff does not claim he was unaware that the cash value from the Pruco Policy was being used to fund the 1992 Policy. Ex. B, Gonda Tr. at 30:16-25.

In fact, evidence as to the Pennsylvania Report was excluded in nearly all[5] of the cases coordinated by Judge Wettick that were part of the September 2005 trial term in the Court of Common Pleas of Allegheny County, Pennsylvania. See, e.g. Adams v. Metropolitan Life Ins. Co., consolidated at G.D. No. 95-9120, (C.C.P. Allegh. Cty.); Adams v. Metropolitan Life Ins. Co., 95-16710; Alston v. Metropolitan Life Ins. Co., G.D. No. 95-17516 (C.C.P. Allegh. Cty.). Thus, it is completely irrelevant to Plaintiff's claims.

---

[5] To the extent that the Pennsylvania Report was allowed into evidence, it was only in cases in which the defendant sales representatives were named in the report.

To the extent that Plaintiff asserts that the Pennsylvania Report is evidence of a trait or habit, such evidence is inadmissible under Federal Rule of Evidence 406 if that trait or habit is not relevant to the claims or defenses at issue. See Petrokehagias v. Sky Climber, Inc., 2000 WL 1469334 (E.D. Pa. 2000). As previously noted, the purported sales practices at issue in the Pennsylvania Report are unrelated to the sale to Plaintiff, and therefore, cannot constitute admissible evidence of trait or habit.

### b. The Pennsylvania Report Should Be Excluded Because It Is Highly Prejudicial to MetLife.

Even if this Court were to determine that the Pennsylvania Report has relevant information to offer at trial -- which it does not -- pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; see also Ex. C Drummond, 11 Fed. R. Evid. Serv. at 1912-1913 (noting that Rule 403 "vests the court with discretion to exclude relevant evidence if its probative value is outweighed by the danger of unfair prejudice" and holding that the accident report at issue should be excluded because it "contain[ed] conclusions as to the cause of the accident [and thus] . . . creat[ed] the potential for the jury to be unduly prejudiced by the report and to adopt the conclusion of another tribunal as its own rather than making an independent determination based on the facts as presented").

The Pennsylvania Report discusses matters that are of no relevance to Plaintiff's claims and are highly prejudicial to Defendants. For example, the Pennsylvania Report recites the $1.5 million civil penalty[6] that MetLife paid to the Pennsylvania Insurance Department (Ex. A,

---

[6] Defendants reserve their right to assert the relevance of the fine and MetLife's extensive remedial efforts with respect to the issue of punitive damages.

Pennsylvania Report, Feb. 11, 1994 Order at ¶ 6), even though no adversary proceedings were held.

In addition, the stamp of governmental authority for the Pennsylvania Report, whether appropriate or not, would most likely unfairly sway the jurors, improperly inviting them to determine the facts of this case based on allegations that have never been proved by any sort of hearing. Admission of the Pennsylvania Report would serve only to distract the jurors from the task at hand -- deciding whether or not Plaintiff was defrauded and if so, whether the alleged fraud caused Plaintiff any damages. The potential for distraction is particularly significant given that any similarity of the allegations in this case to the allegations address in the Pennsylvania Report is minimal at best.

Accordingly, based on the foregoing arguments, the Pennsylvania Report, and any information regarding the Pennsylvania Report, should be excluded.

## CONCLUSION

For the foregoing reasons, MetLife respectfully requests that this Court exclude the Pennsylvania Report and any evidence regarding the Pennsylvania Report from use at trial.

Respectfully Submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendants
Metropolitan Life Insurance Company
and William Gerald Friedt, Jr.

Dated: June 19, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic case filing system, on this 19th day of June 2006 on the following counsel of record:

>Kenneth R. Behrend, Esq.
>Behrend and Ernsberger, P.C.
>Union National Bank Building
>306 Fourth Avenue, Suite 300
>Pittsburgh, PA  15222


>__s/ B. John Pendleton, Jr. _____