# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD M. GONDA, | : | CIVIL ACTION NO. 00-2286 |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CHIEF JUDGE AMBROSE |
| | : | |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY and WILLIAM FRIEDT, JR., | : | |
| | : | |
| Defendants. | | |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND
WILLIAM FRIEDT, JR.'S BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO
EXCLUDE THE DEPOSITION TESTIMONY OF WILHELMENIA TAYLOR**

**PRELIMINARY STATEMENT**

Metropolitan Life Insurance Company ("MetLife") and William Friedt, Jr. (collectively, "defendants"), bring this Motion to exclude plaintiff's Exhibits 41 and 42, the deposition testimony of Wilhelmenia Taylor in Ihnat v. Metropolitan Life Insurance Company, dated September 26, 2002, and October 1, 2002.  Copies are attached as Exhibits A and B, respectively.

Plaintiff's claims arise from the sale of Policy No. 925 207 015 A (the "1992 policy"), a whole life insurance policy.  Plaintiff alleges that, in 1992, MetLife sales representative William Friedt made misrepresentations regarding the replacement of an existing Pruco life insurance policy (which was used to partially fund the 1992 policy).  Plaintiff further alleges that Mr. Friedt misrepresented that the 1992 policy would be fully funded by making monthly payments of $50.50 for ten years.  Additionally, plaintiff contends that Mr. Friedt represented that the 1992 policy would accumulate a certain cash value and death benefit after forty years.  On January 1, 1994, plaintiff signed a Service Request Form requesting the full cash surrender of his policy. The policy was cash surrendered shortly thereafter.

The main issue in this case is whether Mr. Friedt made any misrepresentations with respect to the sale of the 1992 policy and whether plaintiff was reasonably justified in relying upon Mr. Friedt's alleged statements.  As such, the proposed testimony of Wilhelmenia Taylor is irrelevant to the specific sale at issue as the testimony focuses on irrelevant issues, such as the determination of dividend scales on whole life insurance policies from the mid-1980s until 1994 and the AP status of whole life policies sold prior to 1992.

Moreover, Ms. Taylor had no knowledge of the transactions at issue.  As Ms. Taylor's testimony does not mention or relate to plaintiff's allegations -- such as the replacement of life insurance policies or the cash value/death benefits of whole life policies after a certain number of

years -- the proposed testimonial evidence is irrelevant under Federal Rule of Evidence 401[1] and

is, therefore, inadmissible at trial under Rule 402.[2]

Because Ms. Taylor lacks any first-hand knowledge of the sale of the policy at issue,

plaintiff will likely try to use the proposed testimony and attached exhibits to allege bad acts or

wrongs allegedly committed by the defendants.  The Court should not allow the introduction of

evidence regarding other bad acts or wrongs because they are (i) irrelevant, (ii) prejudicial, [3] and

(iii) otherwise inadmissible.  Equally prejudicial to the defendants, plaintiff will likely try to use

the proposed testimony to impress upon the jury that any purported inaction on the part of

MetLife somehow constitutes blameworthy irresponsibility or negligence.  As this case only

concerns Mr. Friedt's alleged misrepresentations in the sale of the policy at issue, Ms. Taylor's

testimony with respect to certain decisions made by MetLife management would only confuse

the jury and cloud the essential issues to be tried in this case.  For the reasons set forth in this

Motion, defendants' Motion to exclude plaintiff's Exhibits 41 and 42, the deposition testimony

of Wilhelmenia Taylor in Ihnat v. Metropolitan Life Insurance Company, dated September 26,

2002, and October 1, 2002, should be granted.

### BACKGROUND OF MS. TAYLOR'S DEPOSITION TESTIMONY

Ms. Taylor's September 26, 2002, and October 1, 2002, depositions were taken for the

case of Ihnat v. Metropolitan Life Insurance Company.  Ms. Taylor was a MetLife employee

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[3] Rule 403 states that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

who joined the "Natural Work Team" in 1987 to assist in the "mechanization" of the AP process.

See Ex. A at 6-7.  She worked with the Natural Work Team until, at the latest, October of 1994.

See Ex. B at 111.

Ms. Taylor's testimony focuses exclusively on her work with AP-related issues during

her tenure with the Natural Work team.  See Ex. A, Ex. B.  Specifically, Ms. Taylor testified

about the system by which MetLife would determine if policyholders were eligible for the AP

arrangement.  See Ex. A at 8-18.  Ms. Taylor also testified briefly about brochures and sales

documents that were presented to prospective policyholders from the 1980s until 1994.  See Ex

A at 18-26.  A large portion of Ms. Taylor's testimony was devoted to the status of whole life

policies that were sold prior to 1992, when dividends dropped for the first time.  See Ex. B at 45-

69.

## ARGUMENT

I.    **THE TESTIMONY OF MS. TAYLOR IS IRRELEVANT TO THIS LITIGATION,
      UNFAIRLY PREJUDICIAL TO DEFENDANTS, AND INADMISSIBLE.**

The crux of this case is whether Mr. Friedt made any misrepresentations with respect to

the sale of the 1992 policy and whether plaintiff was reasonably justified in relying upon Mr.

Friedt's alleged statements.  The proposed evidence is irrelevant to the plaintiff in this case, the

policy at issue, and what Mr. Friedt allegedly said or did not say to the plaintiff.  It goes beyond

the scope of the transactions at issue and the pleadings in this case against defendants.  In short,

the proposed testimony has no appreciable relevance to this litigation and would only serve to

antagonize the jurors against the defendants.  Accordingly, plaintiff should not be permitted to

introduce such evidence at trial.

For the most part, Ms. Taylor testified generally about the "mechanization" of the AP

process, which she described as a way of determining if a policy was eligible to use the AP

arrangement.  See Ex. A at 7 and 34.  There is no evidence in the record that plaintiff was

induced to purchase his policy as a result of representations involving how MetLife

"mechanized" the AP process.  Furthermore, Ms. Taylor testified about the sale and AP status of

policies purchased before 1992, when dividends dropped for the first time.[4]  See Ex. B at 45-69.

Plaintiff did not purchase his policy until March/April of 1992, when the dividend scale was no

longer at its peak.  Additionally, plaintiff cash surrendered his policy less than two years after he

purchased it.  He never gave the policy an opportunity to perform according to his purported

expectations.  Thus, he should not be permitted to manipulate Ms. Taylor's testimony for his

benefit -- years after he unilaterally decided to cancel his policy -- when her testimony cannot

possibly shed light on how his policy would have performed had he not cancelled it.

Even though Ms. Taylor testified briefly about brochures and sales documents that were

presented to prospective policyholders from the 1980s until 1994, plaintiff's deposition

testimony establishes that he does not recall any documents shown to him by Mr. Friedt or any

information contained on those documents.  See Ex A at 18-26; see also R. Gonda Tr., 18-19.

Thus, Ms. Taylor's testimony on that subject is irrelevant.  Moreover, it would be speculative, at

best, and would inappropriately influence the juror's consideration of sales materials not alleged

by plaintiff to have been provided by Mr. Friedt.

---

[4] Also, Ms. Taylor was questioned extensively regarding documents produced by and relating to
former MetLife employee James Rayl.  See Ex. B.  Many of these documents were entered into
her deposition as exhibits.  Plaintiff has offered many of these documents independently as
Exhibits in this case.  For the reasons set forth more fully in defendants' briefs in support of their
motions to exclude documents relating to James Rayl, those documents also are irrelevant,
prejudicial and otherwise inadmissible.  See Defendants' Metropolitan Life Insurance
Company's and William Friedt, Jr.'s Brief In Support Of Motion In Limine To Exclude From
Evidence Plaintiff's Exhibit Nos. 33, 34, 35, 41, 47, 48, 51, 54, and 61, Documents Authored By
And Relating To James Rayl.

Ms. Taylor's testimony regarding matters unrelated to plaintiffs' allegations is irrelevant to this case and, therefore, inadmissible under Federal Rules of Evidence 401 and 402.  She has no firsthand knowledge of the transaction at issue.  Rather, she is an employee of MetLife and testified only as to the facts of her employment and her knowledge of management in general, none of which is particularly relevant to the claims of replacement and performance asserted by plaintiff.

Simply put, none of Ms. Taylor's testimony has any bearing on the sole issue in this case: what Mr. Friedt said -- or did not say -- to plaintiff at the time of the transactions at issue.  Indeed, not once in her deposition does Ms. Taylor mention Mr. Friedt, or even the branch office out of which he worked.  In fact, Ms. Taylor testified generally throughout the depositions about MetLife customers and/or policyholders, who were undoubtedly a large and faceless group of individuals with myriad insurance needs who purchased their policies under numerous circumstances.  See Ex. B at 37-38.  This case is about plaintiff, Mr. Gonda, and the one policy he purchased.  Ms. Taylor's testimony does not even remotely concern him or the sale that occurred at his home.  In other words, her testimony possesses absolutely no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and, thus, is inadmissible.  See Fed. R. Evid. 401; see, e.g., Michetti v. Linde Baker Material Handling Corp., 969 F.Supp. 286, 287-88 (E.D.Pa. 1997).

**III.     ANY PROBATIVE VALUE THAT THE UNRELATED TESTIMONY OF MS. TAYLOR MAY HAVE IS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.**

If this Court determines that Ms. Taylor's testimony has any relevance -- which it should not -- it should nevertheless be excluded.  Federal Rule of Evidence 403 states that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Any probative value that Ms. Taylor's testimony could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury.  See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

Here, plaintiff's purpose in using the testimony of Ms. Taylor would be to inflame the jurors and prejudice them against the defendants.  The evidence will inappropriately invite the jurors to disregard their duty to decide this case on its facts.  See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence which is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

Plaintiff will likely attempt to use the testimony of Ms. Taylor to show unrelated alleged "wrongs" or "bad acts" of MetLife to show that MetLife behaved in a similar manner in this case.  Such evidence is inadmissible under Federal Rule of Evidence 404(b).  Under that Rule,

"[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person

in order to show action in conformity therewith," except under limited circumstances not

applicable here.  See Fed. R. Evid. 404(b) (evidence of other wrongs may be admissible to show

existence of a "plan").  In order for "bad acts" evidence to be admissible to establish a common

plan, plaintiff must show that the acts "are part of a single series of events.'"  J & R Ice Cream

Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government

of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992).  Evidence concerning other

bad acts that are not connected to the transaction at issue is inadmissible.  See id.

        Ms. Taylor's testimony regarding her role in the "Natural Work Team" and MetLife's

dividend scale from the 1980s through 1994 has nothing to do with plaintiff's purchase of the

policy at issue.  Plaintiff likely will use this testimony in an attempt to raise the inference that

MetLife was engaged in a scheme to keep its dividend scale artificially inflated.  Even if this

scheme existed -- which it did not -- it would have had no bearing on the transaction at issue,

which occurred after the dividend scale dropped for the first time.

        Ms. Taylor was also questioned about the absence of a "tracking system" for AP

arrangement policies.  See Ex. A at 20; see also Ex. B at 28.  Plaintiff alleges no facts upon

which a tracking system, or the absence thereof, would have been relevant.  Furthermore, Ms.

Taylor was asked to testify as to why MetLife did not send out notices informing customers that

the dividend scale was changed.  See Ex. A at 26.  Again, plaintiff makes no allegations with

respect to MetLife's failure to notify him of any dividend scale changes.  Regardless, Ms. Taylor

explained that customers were informed of the dividend scale changes either on their billing or

anniversary statements.  Id. at 27.   Here, plaintiff's attempt to introduce irrelevant testimony

clearly is not to prove the claims asserted in his complaint but, rather, to obfuscate the issues that

the jury should consider.  Undoubtedly prejudicial to the defendants, plaintiff will likely try to

use the proposed testimony to impress upon the jurors that any purported inaction or decision on

the part of MetLife somehow constitutes blameworthy irresponsibility or negligence.  As this

case only concerns Mr. Friedt's alleged misrepresentations in the sale of the policy at issue, Ms.

Taylor's testimony with respect to certain decisions made by MetLife management would only

confuse the jury and cloud the essential issues to be tried in this case.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Honorable Court enter

an Order barring the introduction or use of plaintiff's Proposed Exhibits 41 and 42.


Respectfully Submitted,


s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendant
Metropolitan Life Insurance Company

Dated:  June 19, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the electronic filing service, on this 19th day of June, 2006, on the following counsel of record:

        Kenneth R. Behrend, Esq.
        Behrend and Ernsberger, P.C.
        Union National Bank Building
        306 Fourth Avenue, Suite 300
        Pittsburgh, PA  15222

        s/ B. John Pendleton, Jr.