# EXHIBIT C

CONFIDENTIAL

MP401107083

## DISTRIBUTION LIST

**New York Home Office**

| | |
|---|---|
| McDermott, Marcia | Area 5E |
| Shuman, Ira | 315 Park Ave, So. |

**Warwick**

Arnold, Bob
Beaudreau, Janice
Farugia, Charles
Glittone, Barbara
Knott, Paula
Schoos, Kathy
Smith, Alice
Stewart, Mary

**Bridgewater**

| | |
|---|---|
| La Badia, Tom | Area 2E |
| Barnewold, Bill | Area 3E |
| Brennan, Bob | Area 2E |
| Di Piazza, Mike | Area 1N |
| Doby, Greg | Area 1N |
| Harwood, Mike | Area 1N |
| Kandel, Alan | Area 1N |
| Kapolovics, Sol | Area 2E |
| Kerr, Barbara | Area 1N |
| Kirk, Kevin | Area 1N |
| McLoughlin, Patricia | Area 3E |
| Nugent, Gina | Area 1N |
| Riggio, Bob | Area 1E |
| Schwartz, Toby | Area 1N |
| Stoddart, Jane | Area 3E |
| Zeldin, Marian | Area 1E |

**Tampa**

Cue, Tom,

**Princeton**

Wasilewski, Al

**Tulsa**

Eidschun, Jean
Fager, Cheryl
Fobbs, Kimberly
Grant, Lori
Hornsby, Theresa
Rayl, Jim
West, Darlene
Westerlund, Karin

**Scranton**

Corrente, Tony
Craven, Kathy
Delaney, Russ
Godlewski, Bill
Grotzinger, Dan
Hodel, John
Kocis, Ed
Kubick, Rich
Lovelace, Terry
Magnot, Wayne
Rightor, Janet
Tyson, Jim
Wasser, Eric

Please review the attached material in preparation for the Accelerated Payment Arrangement Options meeting scheduled for 1/15/97.

Thanks.

Jim Ancharski
1/8/97



DEPOSITION
EXHIBIT
4 2

MP401107083 4

Re    Accelerated Payment Arrangement (AP) Option Program

To    The Field Force

The November 4, 1996 letter discussing the 1997 dividend scale for individual (ordinary) life insurance policies referred to an enhanced Accelerated Payment Arrangement option program. The purpose of this letter is to introduce that program. Many of the features of the program are currently available and are being introduced now. Other features will be introduced as soon as they're available.

There are currently more than 175,000 customers who have elected the Accelerated Payment Arrangement. Based on the 1997 dividend scale, less than 1/3 of those customers will have to make additional out-of-pocket premium payments at some point in order to keep their policy on this arrangement. More than 15,000 will be expected to make out-of-pocket premium payments within the next five years. Of course, there are other customers (we currently can not identify) who, based on sales illustrations provided at issue, may be planning to elect the Accelerated Payment Arrangement but may not be able to begin it as early as planned because of insufficient policy values.

The goal of the AP Option Program is to equip you with materials to help you explain why dividends have been reduced, as well as to provide clients with options to adjust their premium payment patterns.

Details of the AP Option Program are provided on the following pages. The program was developed based on substantial research and input from your field associates. We think it's a great program, but that doesn't mean it can't be improved. If you have any ideas along these lines, please let me know.

Sincerely,


Executive Vice-President
December 29, 1996

Attachment

CONFIDENTIAL

*DETAILS*

## YOUR ACCELERATED PAYMENT ARRANGEMENT CUSTOMERS

Lists of all current Accelerated Payment Arrangement policyholders will be distributed next month to your Regional Vice-President, who will in turn get this information to you. Those customers whose values are insufficient based on the 1997 dividend scale to pay all future premiums will be separately identified. In addition, the report will indicate the year in which additional out-of-pocket premium payments are expected to be needed for these customers. The listing will identify customers assigned to an active account representative regardless of where the policyholder resides. Policyholders who are not currently assigned to an active account representative and who reside in your region/ agency will also be listed. The listings will include information about other MetLife products in-force in the household. This information will be distributed annually at the beginning of each year (approximately, January 15th in 1997). Appendix A shows a sample report.

In addition, you will receive advance notification on a monthly basis via anniversary statement/billing processing about policies which, based on the 1997 dividend scale, are expected to become "insufficient" within 5 years. Additional details are provided below under "Anniversary Processing".

**THE OPTIONS**

*Pay None*

- "Wait & See"
  Existing policy values may be sufficient to pay premiums for several more years before any out-of-pocket premium payments will be necessary. Because capital markets are so dynamic, there is a possibility that dividend scales in the future could increase sufficiently such that, by waiting, no out-of-pocket premium payments may be needed. By waiting, however, if dividends don't increase, the total out-of-pocket premium payment required would be more than if some out-of-pocket premium payments were made now.

  This option is probably not a good choice for a policyholder who would have to make an out-of-pocket premium payment within the next three years. This option involves risk of further policyholder concerns because premium dollars paid today will provide substantially more value than future premiums would.

- "Reduce the Amount of Coverage"
  By reducing the amount of coverage by no more than 25% of the original amount, we can guarantee that no further out-of-pocket premium payments will be needed. Depending on the policy type and the issue year, this option will consist of either a reduced paid-up nonforfeiture option or a 1035 exchange to a newly designed universal life policy, whichever is more beneficial to the policyholder. The universal life policy will not be available until July or later because of insurance department filing requirements.

  The "Reduce Face" option is only available to policyholders who have paid premiums out-of-pocket in full for at least 7 years after issue. It is not available for policies with outstanding policy loans or for which the dividend option at

**CONFIDENTIAL**

any time since Issue has been other than Additional Insurance or Dividends With Interest.

*Pay Some*

*Remember: The more premiums paid the more total life insurance protection and cash value; also, the more cushion against the need to pay unexpected premiums in the future.*

- **"Pay Full Premium"**
  By paying a premium now and maybe for a few more years, values could increase sufficiently based on the current dividend scale to enable the Accelerated Payment Arrangement to fully engage again in the future.

- **"Pay the Difference"**
  The out-of-pocket premium needed would be the difference between the full premium and the current annual dividend. While this out-of-pocket premium payment is less than the full premium, it would result in out-of-pocket premium payments being needed for a longer period of time than the "Pay Full Premium" option described above.

- **"Pay Part of the Full Premium"**
  The out-of-pocket premium calculated will be the out-of-pocket premium needed each year for the remaining number of policy years, based on the current dividend scale, to make up the shortfall that the Accelerated Payment Arrangement is insufficient to pay. Once calculated, the premium must be paid for the remainder of the life of the policy. While this out-of-pocket premium payment is less than the full premium, it would result in out-of-pocket premium payments being needed for a longer period of time than the "Pay Full Premium" option described above.

- **"Pay A Full Premium Every 4 Years"**
  This "Leap Year" option is only available when current policy values are determined to be sufficient, based on the current dividend scale, to pay premiums in the other three years via the Accelerated Payment Arrangement.

**SUPPORT**

The following mechanisms have been or are being developed to support these options.

| | |
|---|---|
| Inforce Illustrations Until April, 1997 | The illustration system as it currently exists has to be used. Currently, the in-force illustration system provides either an Accelerated Payment (AP) or Summary/Ledger (S/L) input option. Under the AP input option: (a) if the Accelerated Payment Arrangement is already effective, a sufficiency type of illustration (the "Wait & See" illustration described below) is produced; or (b) if the Accelerated Payment Arrangement is not in effect, the illustration will show the earliest year in which the Accelerated Payment Arrangement can be elected (based on the current dividend scale). |
| **CONFIDENTIAL** | |
| | The S/L input option will have to be used to illustrate other than the "Wait & See" option. The S/L illustrations allow a |

MP4011070836



schedule of withdrawals to be input allowing you to mimic the system that will be available in April, e.g., input a withdrawal of X% of the annual premium each year. It is a trial and error process and it's recommended the analysis be done prior to visiting a client. Instructions on how to maneuver the S/L input option are provided in Appendix B.

**Inforce Illustrations From April, 1997 Until July, 1997**

By April, 1997 the traditional life in-force illustration system will have been enhanced to eliminate the trial and error approach. It will allow you to much more simply illustrate the options described above for policies whose values under the Accelerated Payment Arrangement are no longer sufficient.

The enhancements to the current in-force illustration facility will apply only to an existing policy on which the Accelerated Payment Arrangement is in effect and will:
- Apply only when the current dividend option is AI
- Ignore any scheduled PUAR payments
- Not allow changes in dividend options
- Apply only to policies without an outstanding loan balance
- Apply beginning on the next policy anniversary. Thus, you will be required to input requests for these illustrations/options prior to the current policy anniversary.

The AP input option will provide the following options based on the current dividend scale for policies whose values are no longer sufficient. In each situation, the "Wait & See" illustration will always be produced. In addition, you may choose other illustrations to correspond with the option chosen.

⇒ <u>Wait & See</u>–The illustration will indicate how many more years existing values would be sufficient to pay premiums and, therefore, the year when additional out-of-pocket premiums are expected to be needed.

⇒ <u>Pay Full</u>–The illustration will solve for the number of additional years out-of pocket premium payments would be needed to eliminate the insufficiency.

⇒ <u>Dividend Reduction</u>–The illustration will indicate the out-of-pocket premium payment required based on the current dividend scale. It will show the year when out-of-pocket premiums could be stopped, if ever, based on the payment pattern.

⇒ <u>Partial Payment Each Year</u>–The illustration will solve for the amount of out-of-pocket premium payment required each year in conjunction with the balance of the premium being paid by the Accelerated Payment Arrangement.

⇒ <u>"Leap Year"</u>–The illustration will indicate when values are sufficient for this option to be chosen.

It is important to note that the full and partial payment

CONFIDENTIAL

MP401107083 7

MP401107083B

 Illustrations will solve conservatively so that if, for example, based on the current dividend scale it is calculated that 1 more premium is needed to make the policy sufficient for the Accelerated Payment Arrangement the illustration will indicate 2 premiums are needed; or, if 9% of the premium needs to be paid out-of-pocket for the balance to be paid under the Accelerated Payment Arrangement, the illustration will indicate 15% is needed. This provides some cushion for any future dividend reductions

**Inforce Illustrations From July, 1997** Illustration capability will become available for policies for which premiums have been paid at least seven years regardless of whether current and projected dividend balances are expected to be sufficient to elect the Accelerated Payment Arrangement. In addition, the following option will be able to be illustrated:
⇒ <u>Reduce Face</u>–The illustration will indicate the amount of face reduction required to eliminate the need for further out-of-pocket premium payments.

*Anniversary Processing (Billing)*

**Changes to Anniversary Processing Immediately Available** For policies on the Accelerated Payment Arrangement, the anniversary statement will, when an additional out-of-pocket premium payment is expected to be needed within 5 years, indicate the expected insufficiency. This information will be provided to you at least two weeks prior to being released to the policyholder.

**Changes to Anniversary Processing Available By June, 1997** In addition, by June, 1997, via SONIC, the following information will be provided:
⇒ A new AP year until which out-of-pocket premiums must be paid based on the current dividend scale.
⇒ The out-of-pocket percent of premium payment needed for the remaining number of policy years with the balance of the premium being paid by the Accelerated Payment Arrangement.
⇒ If 1 out-of-pocket premium is paid, the Accelerated Payment Arrangement will then pay premiums until (date).
⇒ If 2 out-of-pocket premiums are paid, the Accelerated Payment Arrangement will then pay premiums until (date).
⇒ If 3 out-of-pocket premiums are paid, the Accelerated Payment Arrangement will then pay premiums until (date).

**Changes to Anniversary Processing Available 1998 and later** Once an option is elected, future (i.e., 1998 and later) billing notices/anniversary statement will recognize the option elected. For example, if the policyholder elected to pay 25% of the annual premium out-of-pocket, the bill will request payment of 25% of the premium and state that the balance will be deducted from their dividend/PUAR balance. There will always be an option to pay the full premium out-of-pocket. Further, if future dividend scale reductions occur, such that the 25% out-of-pocket premium payment becomes insufficient, the bill will indicate the new date of insufficiency.

CONFIDENTIAL

*Option Election Form*

An easy to complete request for a modified Accelerated Payment Arrangement has been developed and is now available. A sample is provided in Appendix C.

**PACKAGING**

To help you understand and explain the Accelerated Payment Arrangement option program we have developed the following materials:
- Track Book [order # APTP (1/97)]
- Video [order # APVIDEO (1/97)]
- Customer Brochure [order # APBRO (1/97)]
- Option Election Form [order # APELECT (1/97)]

These materials are available as a package [order # APPACK 1/97)]. Each piece can also be ordered separately.

**CONFIDENTIAL**

MP04011107039

Appendix A

Re    Household Information Regarding Policies Under the Accelerated Payment
      Arrangement

The report will be distributed to Regional Vice-President and will include the
following information:
- For each agency the policies for which the Accelerated Payment Arrangement
  has been elected
- For those policyholders with a policy on which the Accelerated Payment
  Arrangement has been elected, other MetLife products in-force in the
  household

There will be separate reports for agency managers and for the servicing agents.
The agency manager report will include a control list indicating the number of
policies assigned to an active servicing account representative in the agency,
regardless of where the policyholder resides. It will also include orphaned
contracts that have to be assigned to an agent. The number of policies will be
broken down to show those whose values are still sufficient and those with
insufficient values. It will look like the following:

| Manager's Control List | | | |
|---|---|---|---|
| Policies Under the Accelerated Payment Arrangement | | | |
| Sales Office: A18 (Alderwood, WA) | | | |

This list contains the agencies in your sales office with policies under the Accelerated Payment
Arrangement which are assigned to an active servicing agent. Orphaned policies are listed on a
separate page and should be assigned to an active agent. The number of policies which are
sufficient and the number insufficient are shown separately.

| Agency Index | Name of Servicing Agent | # of Sufficient Policies | # of Insufficient Policies | # Insufficient Within 5 Years |
|---|---|---|---|---|
| xxxx-y | John Doe | 4 | 2 | 1 |
| aaa-b | Sally Smith | 1 | 3 | 0 |
| Total | | 14 | 9 | 3 |

For each policy under the Accelerated Payment Arrangement a household report
for each account representative will be provided in duplicate--one for the
account representative and one for the agency manager. The report will look like
the following:

Sales Office: A18 (Alderwood, WA)
Servicing Agent: xxx   John Doe

| Address | Policy | Suffix | Owner | Plan | Issue Date | Acct Bal/ Face Amt | Date When Insufficient | Date Phoned | Appt Date |
|---|---|---|---|---|---|---|---|---|---|
| 123 Street Any City, State Tel:1111111111 | 1234567 A 4567890 O 3425678 AB | | Name Name Name | Life MPC Pen | 5/2/87 9/17/91 11/2/83 | 150,000 67,444 | 5/2/03 | -/-/- | -/-/- |
| 456 Street Any City, State Tel:1111111111 | 2345677 A 6785321 AB | | Name Name | Life Pen | 10/16/65 12/1/71 | 50,000 36,743 | NA | -/-/- | -/-/- |

**CONFIDENTIAL**

MP4011070840

Appendix B

Re     Maneuvering the S/L Input Option In-Force Illustration System

MP401107084l

**CONFIDENTIAL**

Appendix C

Re    Request for a Modified Accelerated Payment Arrangement

MP4011070842

---

**REQUEST FOR A MODIFIED ACCELERATED PAYMENT ARRANGEMENT**

Sales Office / and Name: _____    Agency: _____
Policy /: _____
Policyholder's Address: _____ Suffix: _____    Policyholder's Name: _____
                                                             Insured's Name (if Different): _____
Telephone /: _____    Current Dividend Option: _____
                                    Taxpayer ID: ☐ ☐ ☐  ☐ ☐  ☐ ☐ ☐ ☐

By signing this form I certify under penalties of perjury that my taxpayer ID is correctly shown on this form and I am not subject to a backup withholding order issued by the Internal Revenue Service.

**PAY NONE**

☐ I understand my policy's values might not be sufficient to pay all subsequent annual premiums when due, but I elect to *Wait and See* what happens.

☐ I elect to *Reduce My Face Amount* of Insurance coverage to $_____. I understand by electing this option I won't ever have to pay another premium out-of-pocket for coverage under this policy. I further understand that once reduced, I cannot reinstate coverage under this policy. Finally, I understand this option is available only if I have paid premiums in full for at least seven years, my only dividend option since issue has been AI or DWI, and I have never made a withdrawal or loan from my policy.

**PAY SOME**

☐ I elect to pay the next __ annual premium(s) for the above policy out-of-pocket with the balance being paid as indicated below.

☐ I elect to pay $_____ of my annual premium for the above policy out-of-pocket each year with the balance being paid as indicated below

☐ I elect to use dividends to reduce the amount of annual premium I pay each year and to pay the balance of my annual premium(s) for the above policy out-of-pocket each year.

☐ I elect to pay my annual premium for the above policy out-of-pocket once every 4 years and to pay the annual premium in the other three years by a withdrawal from the policy's dividend balance.

**PAY BALANCE**

☐ I authorize that each year the balance of the annual premium for the above policy that I do not pay out-of-pocket be paid via a withdrawal of the policy's dividend balance 1st. If the cash value of the dividend balance is not sufficient to pay the full premium, the balance of the premium should then be paid by a withdrawal from the cash value of the Paid-Up Additions Rider.

☐ I authorize that each year the balance of the annual premium for the above policy that I do not pay out-of-pocket be paid via a withdrawal from the policy's dividend balance only.

☐ I authorize that each year the balance of the annual premium for the above policy that I do not pay out-of-pocket be paid via a withdrawal from the cash value of the Paid-Up Additions Rider only. I understand this will result in the crediting of smaller future dividends for the PUAR.

☐ I authorize that each year the balance of the annual premium for the above policy that I do not pay out-of-pocket be paid via a withdrawal from the cash value of the Paid-Up Additions Rider. If the cash value of the PUAR is not sufficient to pay the full premium, the balance of the premium should then be paid by a withdrawal of the policy's dividend balance. I understand this will result in the crediting of smaller future dividends for the PUAR.

With regard to any of the "PAY SOME" options, I understand that future dividends are not guaranteed. If future dividends scales decrease and/or I make a withdrawal from or take a loan against the policy, it may not be possible to have future premiums paid under the Accelerated Payment Arrangement. In such case, I understand that the Accelerated Payment Arrangement will terminate and if I want the policy to remain in effect, out-of-pocket premium payments will be required.

**SIGNATURE**



_____                    _____
(Signature of Policyowner)                             (Date)

---

**CONFIDENTIAL**

**≥M≤ MetLife®**

# Metropolitan Life Insurance Company
## New York, New York

CONFIDENTIAL

MF401070843

**MetLife®**

# REVIEWING YOUR WHOLE LIFE POLICY

The goal of our meeting is to:

- Review your life insurance program.

- Discuss your Whole Life policy's features and benefits.

- Evaluate options to help ensure your policy's performance in the future.

CONFIDENTIAL

MP401107O844

**MetLife®**

# WHOLE LIFE INSURANCE—A CHOICE TO LAST A LIFETIME

You purchased your Whole Life policy to meet your needs throughout your life.

Whole Life is the *only* type of insurance that provides you with *guaranteed* protection and benefits at a *guaranteed* premium level – no matter how long you live.

## CERTAIN

 Your premium is guaranteed not to increase.

 Your death benefit is guaranteed as long as premiums are paid.

Your policy's cash values are guaranteed to grow at a minimum rate as long as premiums are paid.

## UNCERTAIN

Dividends





Premium Cash Outlay

CONFIDENTIAL




DIVIDENDS

UNCERTAIN

GUARANTEED PREMIUM
GUARANTEED DEATH BENEFIT
CASH VALUE

CERTAIN

MF401107O845

# THE ACCELERATED PAYMENT ARRANGEMENT

## MetLife®

Your Whole Life premiums must be paid each year to ensure your policy's guarantees. Premiums can be paid:

- Out-of-pocket

  or

- Through the option you selected, the Accelerated Payment Arrangement.

The Accelerated Payment Arrangement is based on dividend performance. Increases or decreases in dividends from those originally illustrated can impact the actual year in which out-of-pocket premium outlays can stop and the Accelerated Payment Arrangement can take over.

In our example at the left, the policy was originally illustrated as having sufficient dividends to end out-of-pocket payments in year 10. Because the dividend scale was reduced, out-of-pocket premiums are now required through year 15 as shown in our example at right. If however, dividends had been greater than illustrated, fewer out-of-pocket premium cash payments may have been required.

### ORIGINALLY ILLUSTRATED



Premiums

Policy Years

Whole Life Insurance Policy

### ACTUAL PERFORMANCE

Premiums

Policy Years

Whole Life Insurance Policy

CONFIDENTIAL

MP401107046

MP401107084 7

## How Dividends Are Determined

**MetLife®**

Each year, MetLife declares dividends on new and in force policies. Dividends do not depend *solely* on earnings, but are determined based on the following factors:

**Premiums
+
Interest income**

The new money received to be used to provide benefits and be invested.

Earnings on investments, which are dependent upon interest rates and other changes in the financial markets.

**− Expenses**

Our cost of doing business, including taxes.

**− Mortality**

The amount of death claims we pay each year and reserves for future death claims.

**= Dividends**

*It is the net effect of these factors that determines the dividend level.*



CONFIDENTIAL

# DIVIDENDS AND THE METLIFE PORTFOLIO*

**‡‡‡ MetLife**

A particular component of dividends can have a significant impact on their overall performance, as is the case with the interest income portion of the "dividend pie." It is the investments in the MetLife portfolio that help determine the dividend interest rate. This rate is actually the combined result of all the rates of return for all investments (bonds, stocks, etc.) in the portfolio.

The MetLife portfolio is comprised of a mix of investment vehicles, with the largest portion of funds invested in bonds with medium- to long-term maturities.

## METLIFE'S PORTFOLIO

65% of MetLife's portfolio is comprised of Bonds, 98.1% of which are investment grade.*

...with medium- to long-term maturities.







\* As of 12/31/95

CONFIDENTIAL

MP441010048

## **MetLife®**

## DIVIDENDS — A LONG-TERM VIEW

Interest rates were at double digit levels in the late 70s and early 80s. However, rates began to decline sharply by the mid-80s. Because of the longer-term maturities in our portfolio, we were able to weather these declines and did not have to lower our dividend scales until 1992.

This is because as market rates fell ↓ older investments in the port-folio continued to earn higher rates ↑ and therefore helped keep the overall dividend interest rate above current rates for a time.

Conversely, if market rates were to ↑ rise, the dividend interest rate might not increase for several years ↓ as older investments in the portfolio still earn lower rates.

This is also why interest rates in the economy in a given year do not have a one-to-one correlation with dividend interest rates.



CONFIDENTIAL

MPA0110708_9

**MetLife®**

## PAYMENT OPTIONS

■ PAY NONE

■ PAY SOME

CONFIDENTIAL

MP4011070850





CONFIDENTIAL

**PAYMENT OPTIONS**

You have a variety of options to help ensure your policy's benefits and guarantees will remain in place. As you examine your payment options, you also need to carefully consider what the right choice is for you.

**PAY NONE**

**PAY SOME**

MP40110708S2

9

## MetLife

# ☒ PAY NONE — NO OUT-OF-POCKET OUTLAY REQUIRED

## Reduce the Face Amount

The Face Amount of your policy is permanently reduced under this option to ensure you do not have to make further out-of-pocket payments.

**PROS**
- Cash outlay is eliminated. Regardless of interest rates and other capital market fluctuations, we will never require you to make further out-of-pocket premium cash outlays.

**CONS**
- The Death Benefit is reduced and, once reduced, cannot be reinstated.
- The cash value of your policy will not grow as fast as a premium paying policy, and could eventually decrease to zero.

## Wait and See

Depending on your policy, you may have some time to monitor the situation and then determine whether to begin making full or partial out-of-pocket payments if this becomes necessary.

**PROS**
- The capital markets could change over the next several years, so that future out-of-pocket premium cash outlays won't be needed.

**CONS**
- You are likely to have to pay more out-of-pocket if you wait.



**CONFIDENTIAL**

MF4011070853

# **MetLife**

## 💲 PAY SOME — OUT-OF-POCKET OUTLAY REQUIRED

### Pay Some Additional Premiums

Under this option, you pay the full premium out-of-pocket for one or more years, and a new Accelerated Payment date is calculated.

**PROS**
- Maintains original Death Benefit.
- Requires some current cash outlay but is less costly over the long term.

**CONS**
- Cash outlay required now.
- There may be a need to revisit these options in the future.

### Pay the Difference

Your cash outlay under this option would be the difference between the full premium and the current dividend.

**PROS**
- Maintains original Death Benefit.
- Less current out-of-pocket than full premium.

**CONS**
- Cash outlay required now.
- You are likely to pay more out-of-pocket than if you pay the full premium.



CONFIDENTIAL

11

## 💲 PAY SOME — OUT-OF-POCKET OUTLAY REQUIRED

**MetLife®**

### Pay A Percentage Of Your Premium

You'll make ongoing cash outlays, but at only a specified percentage of the actual full premium due at the time you elect this option.

**PROS**
- Maintains original Death Benefit.
- Less current out-of-pocket than full premium.

**CONS**
- Cash outlay required now.
- You are likely to pay more out-of-pocket than if you pay the full premium.

### Pay Every 4 Years

You'll pay the full premium under this option, but only every fourth year.

**PROS**
- Maintains original Death Benefit.
- Less overall out-of-pocket than full premium each year.

**CONS**
- Cash outlay required now.
- You are likely to pay more total out-of-pocket than if you pay the full premium each year.



CONFIDENTIAL

MP401107085A

ML003 LeaveBehind/qk  12/30/9?  2:40 PM  Page 1

# Your MetLife Policy and the Accelerated Payment Arrangement

CONFIDENTIAL

**MetLife**

MP4011070855

ML003 LeaveBehind/qk  12/30/96 2:40 PM  Page 2

MP4011070856

## UNDERSTANDING YOUR POLICY— AND YOUR OPTIONS.

When you purchased your whole life policy from MetLife, you took steps necessary to provide valuable protection for you and your family. You chose the only type of insurance that provides you with guaranteed protection and benefits no matter how long you live.

That protection will be there throughout your life, as long as you need it, if you continue to pay premiums. *You'll also be assured that:*

- *Your premium will never increase*
- *Your death benefit will be in effect when you die*
- *Your policy's cash values will be maintained and will grow.*

### THERE ARE BASICALLY TWO WAYS TO PAY YOUR WHOLE LIFE PREMIUMS:

*Cash:* Making out-of-pocket payments of the guaranteed annual premium.

*The Accelerated Payment Arrangement:* Using a combination of your current and accumulated dividends to pay future annual premiums after you have paid premiums out-of-pocket for a number of years.

It is important for you to understand the impact that your Accelerated Payment Arrangement has on the insurance protection and cash value provided by your policy. This guide is designed to give you some of the information needed to make the right decision regarding your policy. It contains a series of questions and answers on topics relevant to your policy and information on the options you have to keep it in place.

1

CONFIDENTIAL

*Q.* Can you review how the Accelerated Payment Arrangement Works?

*A.* To be eligible to elect the Accelerated Payment Arrangement, you have to pay your premiums out-of-pocket for a number of years. You also have to elect a dividend option that applies the dividends to your policy. This is usually the Additional Paid-Up Insurance dividend option.

When the current dividend balance, together with all future dividends, is illustrated to be sufficient to pay all future premiums (based on the current dividend scale), you can elect to pay premiums through the Accelerated Payment Arrangement.

This method of paying premiums does not automatically mean the policy is now paid for. It also does not reduce the number of years premiums must be paid. It simply allows you to pay your premiums automatically using the policy's dividends (as long as the dividend balance is sufficient) instead of paying them out-of-pocket.

*Q.* What affects my Accelerated Payment Arrangement?

*A.* A number of things can impact this Arrangement. First, it is important to understand that the Accelerated Payment Arrangement is completely dependent on dividends, which are not guaranteed. The Accelerated Payment Arrangement illustration you originally received was based on future performance. Increases and decreases in dividends from those originally illustrated will impact the actual year in which out-of-pocket premium outlays can stop and the Accelerated Payment Arrangement can take over.

*In this example, the policy was originally illustrated as having sufficient dividends to end out-of-pocket payments in year 10.*



Any increase in dividends may allow you to elect the Accelerated Payment Arrangement sooner than originally anticipated. On the other hand, a decrease in dividends could require you to make more out-of-pocket payments than expected. That could result in your having to pay a portion of some premium payments in cash or even resume full premium payments after the Accelerated Payment Arrangement has started.

2

3

CONFIDENTIAL

MP401107085?

*If actual dividends for the policy are lower than expected, out-of-pocket premiums will have to be paid longer, as in the following example where payments extend to year 15.*



**Q.** Since dividends have such an impact on my Accelerated Payment Arrangement, can you tell me more about how they work?

**A.** Your whole life policy is what is called *a partici-pating policy.* One of its important features is that it can generate dividends. Unlike the premium, death benefit and cash values of your policy, *dividends are not guaranteed.* The dividend we pay each year is based on the following formula:

4

## Premiums + Investment Income – Expenses – Mortality = Dividends

*Premiums:* The new money we receive which is used to provide benefits and which we use to invest.

*Investment Income:* Our investment earnings, which depend upon interest rates and other changes in financial markets. It is a weighted average of our rates of return on our investment portfolio from interest, dividends and capital gains.

*Expenses:* Our cost of doing business, including operating expenses and the taxes we pay.

*Mortality:* The amount of death claims we pay each year and reserves for future claims.

It is the net effect of these dividend components that determines if overall dividends will increase, decrease or stay the same during the following year. For example, even if the expenses and mortality are both favorable, a significant decrease in the investment component, such as one resulting from a decrease in interest rates, could have the net effect of a dividend reduction.

**Q.** What kind of an impact have interest rates had on MetLife's dividends?

**A.** Interest rate trends have had a considerable effect on MetLife's dividends in the last few years. That effect is not much different from what individual investors and the economy in general have experienced.

As you know, interest rates were at double-digit levels in the 1970's and early 1980's. However, rates began to decline sharply by the mid-1980's.

5

CONFIDENTIAL

MP401107085B

MetLife's philosophy, and our legal obligation, is to protect the long-term interests of our policyholders. Therefore, much of our portfolio is invested in longer-term maturities which have enabled us to weather these declines for a number of years. Although MetLife's dividends have decreased somewhat in the past few years, the investment results reflected in our dividend scales have shown a solid return over time as compared to a number of investment and capital market indices, such as those shown on the chart below. Because of that return, MetLife did not have to lower dividend rates until 1992.



**Q.** Have other companies lowered their dividends?

**A.** Yes. Trends in interest rates have had an impact on individuals and companies, including most life insurers. As a result, many have made changes in their dividend scales over the last few years. In addition to the negative impact from the investment portion of dividends, taxes have also had an effect. The Deferred Acquisition Cost (DAC) Proxy Tax, which began in 1992, represents a considerable federal income tax liability which the entire insurance industry has shared. The combined effect has forced many life insurers to reduce their actual dividend interest scales. This has had

6

an impact on their policies which rely on dividends for their illustrative values.

**Q.** If interest rates start to increase, would dividends increase also?

**A.** They could, but probably not immediately. Interest rates in the economy in a given year do not have a one-to-one correlation with the interest component of dividends in that same year. This is because as market rates rise, the dividend interest rate may not increase for a period of time as older investments in the portfolio still earn lower rates.

Conversely, as market rates fall, older investments in the portfolio will continue to earn higher rates until they mature. Therefore, the overall dividend interest rate will remain above current rates for a time.

**Q.** Where are MetLife's investments?

**A.** MetLife's portfolio is comprised of a mix of investment vehicles and other assets. A major part of our portfolio (65%) consists of bonds* with medium-to long-term maturities. Of those bonds, 98.1% are investment grade (of the highest quality).

The performance of these investments determines the portfolio rate which is actually the combined effect of the rates of return for each investment (so it is not the same as a money market or CD rate). For example, if you purchased a 10-year bond in the same amount each year for 10 years, each bond would still have its own interest rate (the "new money" rate) but the overall rate your entire portfolio of bonds would earn is the average of all the bonds in that portfolio.

*As of 12/31/95

7

CONFIDENTIAL

MP401107D859

ML003 LeaveBehind/qk  12/30/96 2:41 PM  Page 8

MP401107060

As we've stated, our investment philosophy is to protect the long-term interests of our policyholders. The mix in our portfolio reflects that philosophy while minimizing the amount of risk that we take to obtain favorable results.



*65% of MetLife's portfolio is comprised of bonds, 98.1% of which are investment grade\**

...with medium- to long-term maturities.



% of Bond Portfolio

**Q.** What are my options when it comes to keeping my policy in place?

**A.** You have a number of options that will help ensure that your policy's benefits and guarantees will remain intact. It's important that you understand each option and how it can effect your policy. Just as you based the purchase of your whole life policy on your needs, you must evaluate these options carefully and select the one that is right for you.

You have at least six options to consider that fall into two basic categories. You can either not pay any additional premium now, or choose to make some payments. Your options are:

8

## PAY NONE
- *Reduce the Face Amount of Your Policy*
- *Do Nothing Right Now—Wait and See*

## PAY SOME
- *Pay the Full Premium for a Specified Additional Number of Years*
- *Pay the Difference Between the Full Premium and the Current Dividend*
- *Pay A Percentage of Your Premium*
- *Pay The Full Premium Once Every Four Years*

The following chart details each of these options and the pros and cons associated with each.

### PAY NONE

*Reduce the Face Amount*

**Pros:** Cash outlay is eliminated. Regardless of interest rates and other capital market fluctuations, we will never require you to make further out-of-pocket premium cash outlays.

**Cons:**
- The death benefit is reduced and, once reduced, cannot be reinstated.
- The cash value of your policy will not grow as fast as a premium paying policy, and could eventually decrease to zero.

*Wait and See*

**Pros:** The capital markets could change over the next several years so that future out-of-pocket premium cash outlays won't be needed.

**Cons:** You are likely to eventually pay more out-of-pocket if you wait.

### PAY SOME

*Pay Some Additional Premiums*
**Pros:**
- Maintains the original death benefit.
- Requires some current cash outlay but is less costly over the long term.

*(Chart continued on next page)*

9

CONFIDENTIAL

## PAY SOME, CONTINUED

*Cons:*
- Requires cash outlay now.
- There may be a need to revisit these options in the future.

### Pay the Difference

*Pros:*
- Maintains the original death benefit.
- Smaller current out-of-pocket outlay than full premium.

*Cons:*
- Requires cash outlay now.
- You are likely to pay more out-of-pocket than if you pay the full premium.

### Pay A Percentage of Your Premium

*Pros:*
- Maintains the original death benefit.
- Smaller current out-of-pocket outlay than full premium.

*Cons:*
- Requires cash outlay now.
- You are likely to pay more out-of-pocket than if you pay the full premium.

### Pay Every Four Years

*Pros:*
- Maintains the original death benefit.
- Less current out-of-pocket.

*Cons:*
- Requires cash outlay now.
- You are likely to pay more total out-of-pocket than if you pay the full premium each year.

***Q.*** Which option would allow me to pay premiums for the same number of years as I had originally planned?

***A.*** It depends on your policy. You may have sufficient time to see if there is a significant enough

10

change over the next few years to eliminate the need for additional out-of-pocket payments. However, keep in mind that a rise in interest rates may not necessarily result in an increase, or even a continuance, of dividends. As a result, you may still ultimately need to select one of the "Pay Some" options.

You can also opt to reduce your face amount. Under this option, your cash outlay will be eliminated. Regardless of interest rates and other capital market fluctuations, MetLife will never require you to make further out-of-pocket premium payments.

***Q.*** If I elect to "Pay Some" now, how long will I need to make payments?

***A.*** With two of the "Pay Some" options, you will have additional cash outlays for a limited time. In turn you will receive a newly-calculated date, based on the current dividend scale, upon which your Accelerated Payment Arrangement takes over. This pertains to both the "Pay Some Additional Premiums" and the "Pay the Difference" options.

For the other two "Pay Some" options, you will make payments throughout the life of the policy. If you decide to "Pay A Percentage of Your Premium," you will continue to make payments for the life of the policy. However, the payments will be at a specified percentage of the current premium based on your policy. If the dividend rate decreases in the future, you may need to pay a higher percentage than originally projected in order to maintain the guarantees and benefits your policy provides.

"Pay Every Four Years" requires a full premium payment once every four years.

None of the "Pay Some" options is guaranteed.

11

**CONFIDENTIAL**

MFP401107086I

ML003 LeaveBehind/qk  12/30/96 2:41 PM  Page 12

**Q.** How do I know which option is right for me?

**A.** Your decision about which option to choose depends on what's right for you! Each option entails different degrees of risk. You need to determine if you are comfortable waiting to see if conditions change, or if you can or want to make payments now and how much.

You bought your policy because of specific needs and for the guaranteed protection it provides for you and your family. But the only way to ensure that protection is to maintain premiums without interruption. This will maximize your policy's insurance protection and cash value.

Your choice was most likely also based on your current personal and financial situation and what you anticipated for the future. Choosing one of these options is, in a way, a chance to reevaluate what you need now, and may need down the road.

**Q.** Should I be worried about my policy or MetLife?

**A.** Both your policy and MetLife will continue to provide the protection you need.

As a mutual company, MetLife is able to share favorable performance with policyholders in the form of dividends, which it has done continuously on its new and in force policies since it became a mutual company in the early 1900's.

The overall strength and stability of the company is at the center of any decisions made regarding dividends. Our earnings must be sufficient to maintain capital for long-term solvency and future growth. Changes in our dividend scale are normal and are intended to ensure that the necessary capital is provided regardless of performance experienced

by different policies. *Our future is assured through our strengths:*

- A strong capital base of assets over liabilities
- Diversity of investments to limit risk
- Sufficient liquidity of assets
- Growth of both capital and surplus.

The way for you to assure the future of your policy is to carefully review the options we have outlined here and decide which is right for you. Choosing an option that ensures your premiums keep getting paid will mean that your policy will be there when you need it to provide the guaranteed death benefit and cash values you intended.

You can also rest assured that the company behind your policy will continue to provide protection, just as it has since it became a mutual company in 1915.

*To discuss these options or if you have additional questions, speak with your MetLife account representative, or call 1-800-MET-LIFE.*

12

13

MP40110708662

CONFIDENTIAL

ML003 LeaveBehind/qk  12/30/9 2:41 PM  Page 14



CONFIDENTIAL



**MetLife**

Metropolitan Life Insurance Company
New York, New York

APBKO (1/97)                96121 MWG (exp. 1299) MLIC-LD

MP401107 0863





# Calling the BOMB SQUAD

*by Sean Armstrong*

**H**i, Bob. Do you remember that life insurance policy I sold you in 1984? Yeah, back when Bobby Jr. was in little league. Anyway, you know how I said you'd be able to stop paying premiums in 10 years. Well, it's going to be a little longer than that. Ah—actually, quite a bit longer. Could be as much as 10 years. Oh, by the way, did Bobby's baseball scholarship come through?"

CONFIDENTIAL



MP4011070865



It's a financial adviser's nightmare: You felt comfortable projecting a 10-year vanish on your client's whole life policy when you sold it. It all made sense. You'd heard the mantra a hundred times, "This company has not lowered its dividends in 50 years." Well, times have changed drastically, and if you're an agent or a company executive and you have clients who bought life insurance thinking their premiums were going to go away, you may be sitting on a time bomb.

Forget about NAIC regulations and "plain English" illustrations. The real problem is potentially more damaging. Although one company is going to spend $10 million to contact policyholders throughout the country, the industry has failed to alert thousands of other customers who can't hear the time bomb ticking. It's impossible to tell how many cases there are, but the wide popularity of the vanishing premium concept in the mid-to late-1980s, coupled with the fact that the typical vanish period was between seven and 10 years, paints a disturbing picture. Today, that same premium is unlikely to "vanish" before the 12th and, sometimes, the 18th year or longer.

Unfortunately, what began as a simple and understandable concept in the marketing department of now-defunct Executive Life Insurance Co., Los Angeles, mutated in the heat of competition. Then technology set the monster loose. Able to generate illustrations from their personal computers, agents caught ledger fever. What started as agent abuse became part of built-in policy mechanics. It got to the point where agents could be misleading even if they were going by the book. "I don't think companies paid much attention to this as a big lie," says Roger Heath, a principal at Towers Perrin's insurance general management consulting practice, Dallas.

The high inflation of the 1970s began to ebb toward the end of the decade. Interest rates peaked in 1982 and began declining steadily. Because of a lag effect on company investment returns,

it took agents and companies several years to digest the fact that rates would no longer continue their steady uphill climb. "We were all kind of in a period of blissful unawareness," says Richard Weber, chairman of the American Society of CLU & ChFC's life insurance illustration questionnaire task force. "And everyone's shocked when, in 1987, Northwestern Mutual lowers its dividend scale. In 1988, a few more companies lowered their dividends. Everyone was in shock."

As with other interest-sensitive products, a small adjustment in an interest rate will amplify over time, resulting in an enormous difference between reality and expectations. It's the derivatives debacle on a personal scale. But many agents reacted to the news by ignoring the problem, according to Weber. Many, according to Heath, simply went on plugging the same high interest rates into their illustrations.

When they began to get a grasp of the problem, agents were confused and anxious. "I think that troubled a lot of us. The idea of going back to clients and having to say 'remember that illustration we looked at? Well it didn't work out,'" says Weber. Ideally, agents would have clearly explained that an illustration was not a guarantee. However, perhaps out of ignorance, or to keep the sales pitch

simple, agents misle their clients. "Now we'got to go back and sa those things," says Webe "and it's embarrassing and we're concerne about getting blamed an concerned about lettin down clients."

Thomas Wolfe, a w known agent and autho echoed these concerns a speech delivered at t American Society of CL & ChFC's annual mee ing in October. He sa there is a huge amount life insurance, sold usi the vanishing premiu concept, that's just wa ing to blow up. Comp nies most at risk are tho that aggressively push the vanishing premiu concept in their sales forts. Wolfe says agents la support from carriers in t effort to contact unwitti policyholders. Many carri have directed their agents conduct in-force reviews, b most have not made it mandatory

Weber says the only compa that's developed a program to that fect is Manulife Financial of Toron According to John Barr, in-force ma agement director, Manulife plans have its agents and representative visit each of its 35,000 policyho ers in the United States by Decemb 1995. The goal of the project, with estimated price tag of $10 million, is explain the effect of lower interest ra on each customer's policy. "We kn the majority of the policies were s on a vanish basis," Barr says. "In m cases, we do have some original ill trations on them. We plan to tr them and go from there."

Even at Manulife, the effort is j beginning. "There's a lot of busin out there where the client hasn't b contacted yet," says Weber. Deliver the news is not going to be ea Agents have to prepare themsel psychologically for a hostile situatic "There is going to be anger," he sa But the reality is: If agents or compa representatives don't make the ca no matter how ugly the conversat may turn out to be—they may soon hearing from angry customers. worse yet, their lawyers.

CONFIDENTIAL

CONFIDENTIAL

MP4011070866

Attorney Thomas Tew of Tew & scia-Pedrosa, who masterminded a massive lawsuit against Metropolitan Life Insurance Co., New York, and its agents, costing the company more than $20 million in fines, says the environment has changed. A recent case illustrates the threat. In October, an Alabama state court judge upheld a jury award of $25.4 million against Prudential from a couple who claimed they were defrauded by the company and one of its former agents. In the suit, the plaintiffs, Leslie and Rebecca Gallant of Eufala, alleged that agent Charlie Whatley told them their policy would be paid up in 10 years. They later found out that payments would be due for the rest of their lives. After the MetLife case, Tew says he's been getting a lot of phone calls, the majority of which are from companies seeking to insulate themselves from similar lawsuits.

When companies turn to their nemesis for advice, it's a good indication they're scared. Of course, all company approved illustrations include footnotes explaining that they are used on many non-guaranteed performance variables and that, technically, a premium will be due as long as the policyholder lives. "The courts are not looking so much to the contract," says Weber. "They're saying, 'What was the substance of what was communicated to this client, not only in the contract but in the illustration.'"

Because of the agents' autonomy in the sales process, companies have no way of knowing how the product was presented. The safest sales pitch would point out that illustrations are not predictions of future performance. Weber says. Rather they are meant to show a policyholder how his pattern of premium payments and the carrier's future experience might interact. Weber demonstrates the dangerous approach: "There are eight premiums here and don't worry about all that footnote stuff. This company has never decreased its

dividend scale. I can tell you, what's in my illustration is conservative. It's not aggressive." In response to the dangerous example, Weber says, "I think you've got yourself a lawsuit there."

Despite the growing risk of legal action, the typical insurance company, according to Heath, is not giving this problem the attention it should. Now that time has elapsed, Heath says he's starting to see big lawsuits like the one in Alabama. He says he gets one or two calls a month from consumer plaintiffs looking for advice. He also gets one or two calls a month from insurance companies asking for litigation support.

## ALERTING POLICYHOLDERS

Some companies still don't know there's a problem, according to Heath. Customers are unaware that if they have stopped paying premiums in accordance with the illustrated plan, the policy may be headed toward a lapse. It's a slow process that won't show up on in-force statements. They may not know there's a problem until they get a termination notice in the mail. A lot depends on how a company's service department works, according to Heath. But the situation may be out of control. "Insurance companies have

let attorneys who are rabble rousing create expectations for large punitive damages," he says.

According to Tew, there has been no major change in the underlying liability inherent in illustrations. What's changed, he says, is an awareness among policyholders that certain illustrations may be suspect and that they may have been exploited by an unscrupulous agent. "There is a growing consumer awareness that they ought to be a little more skeptical," he says. "The premium isn't vanishing. The policy is cannibalizing itself."

Tew says new attention to compliance within companies and the government is being driven by lawsuits. "Do you think we would have this reform if there weren't lawsuits like this? I don't think so." He foresees more cases like the Gallants'. He says companies are handicapped by tension between management and company marketing departments. "No one wants to tell marketing the bad news," he says. And it is bad news for salespeople. As in MetLife's case, a sweeping overhaul of compliance procedures and sales practices can severely curtail sales. Tew says sometimes the only person who can deliver that news is an outsider.

Policyholders are equally in the dark. The annual statement they get from their insurance companies showing cash values and dividends doesn't tell policyholders what they need to know. Many people who bought insurance in the mid-80s with the expectation that they would pay eight or 10 premiums have no way of knowing that number has probably gone up to between 12 and 18 premium payments, according to Weber. "The customer gets the premium notice, and they say, 'Wait a minute. I wasn't supposed to pay this,' and they call the company and they call the agent," says Weber. "And, of course, the company has no idea what the custom-



Richard Weber, chairman of the American Society's illustration task force, predicts growing problems with vanishing premiums that don't go away.

CONFIDENTIAL

**MetLife**

**Marketing Communications**
MetLife Individual Sales

Re    Accelerated Payment (AP) Arrangement Customer
      Communications

To    The Field Force

Effective, timely communication is an important component of
customer service.  The AP Natural Work Team, representing
key business units within the Individual Life Insurance and
MetLife Individual Sales organizations, has made
communicating how the AP arrangement works to our
policyholders on a proactive basis one of its primary goals.

As part of an ongoing, multi-level customer communications
strategy developed by the work team, a series of customer
letters was created in March to automatically update
policyholders about any change in the status of their AP
arrangements or to inform them when their policies become
eligible for this arrangement.  These letters are being
mailed to AP policyholders as circumstances warrant.

On December 28, new policyholder correspondence will be
available to cover additional situations that may affect the
AP arrangement.  The first set of letters, AP-1A through AP-
1F, will let the policyholder know that as a result of
certain actions, such as a policy withdrawal or failure to
pay loan interest, there will not be a sufficient amount of
accumulated dividends to pay the premiums via AP for the
life of the policy.  The letters will pinpoint the specific
policy anniversary year -- based on our current dividend
scale -- when the dividend balance will become insufficient.

The second set of letters, AP-2A through AP-2F, are more
urgent in nature.  These letters inform the policyholder
that as a result of his or her recent policy transaction,
there are no longer enough accumulated dividends to pay the
policy's next premium using the AP arrangement.  As a
result, the policyholder must resume making out-of-pocket
premium payments.

Both sets of letters have been installed on the Daily
Reports System in Scranton and will be sent to policyholders

(See Reverse Side)

-2-

on an as-needed basis. You will not receive copies of these letters as they are sent to your clients, but you will be notified via the Accelerated Payment Arrangement Report on SONIC.

A copy of the AP Arrangement Report can be obtained by having a sales support associate access the Administrative Transactions Menu, 03 Print Reports Selection Menu, and key in selection 14, Accelerated Payment Arrangement Report.

This report will also automatically print for the entire office through normal print manager facilities, and correspondence activity will be reported on separate pages for each Field Representative Number.

Attached are copies of each of these new customer letters. Each letter has an alpha-numeric code in the bottom right-hand corner that corresponds to its identification on the AP Arrangement Report. A sample of how the letters will be listed on the AP Arrangement Report is also attached.

Watch for additional announcements concerning future enhancements and activities planned by the AP Natural Work Team.

If you have any questions regarding this new policyholder correspondence or the AP arrangement, please contact Alan Kandel, Product Manager, Life Product Planning, Individual Life Insurance, in the Bridgewater office at (908) 253-1240 or Roberta Steve, Manager, Customer Communications and Inforce Marketing Programs, Marketing Communications, MetLife Individual Sales, in the Bridgewater office at (908) 253-1122.

December 28, 1995

Attachments

CONFIDENTIAL

9507T84(expl196)MLIC-LD

MP4011070869

## AP Arrangement Report

| Version | Description |
|---------|-------------|
| 1A | LOAN-AP TIL 2000 |
| 1B | LOAN-AP TIL 2000 |
| 1C | LOAN-AP TIL 2000 |
| 1D | LN-CAP/AP TIL 00 |
| 1E | DV WTH-AP TIL 00 |
| 1F | PUAR WTH-AP 2000 |
| 2A | LOAN-AP INSUFF |
| 2B | LOAN-AP INSUFF |
| 2C | LOAN-AP INSUFF |
| 2D | LN/CAP/AP INSUFF |
| 2E | DV WTH-AP INSUFF |
| 2F | PUAR WTH-AP INSF |

Note:

Six of the above SONIC messages show a "year" in their one-list description which refers directly to information in the policyholder letter. These letters have been sent to policyholders to inform them that, based on the current dividend scale, it is anticipated that the AP arrangement will continue paying annual premiums until the policy anniversary in the year shown. At that time, the policyholder may have to begin making out-of-pocket premium payments again.

In the examples shown above for AP letters 1A, 1B, 1C and 1F, that year is "2000." The SONIC Report descriptions for these particular AP letters will always show the four-digit year -- for example, 1995, 1998, 2000, 2001.

In the examples shown above for AP letters 1D and 1E, the year "2000" is shown as "00." Due to space restrictions, the descriptions for these letters will indicate the year by the last two digits -- "95 for "1995," "98" for "1998," "01" for "2001," and so on.

**CONFIDENTIAL**

er is talking about." Weber cites one case where a customer found out he would have to pay 32 annual premiums, when the illustrated projection was nine. The problem, warns Weber, is huge. "There isn't a single illustration that was based on current assumptions in 1985 through 1989 that is going to come true."

Not sure who's to blame, companies haven't decided whether they or their agents should be breaking the bad news. In many cases, they realize that they need the agents' cooperation. Agents have information the carrier doesn't. They know how the sales pitch was made. "So I think there's a turf disagreement as to who should be doing what," says Weber. Agents claim they are not getting enough support from the companies. But the carriers might not think they're getting the cooperation they need from agents. Or the information may simply not be there: With agents leaving the business all the time, there are a lot of orphan policyholders who may not know their coverage is about to vanish.

### CREATING POSITIVE SPIN

There is a way to put a positive spin on this difficult situation. Weber cites one agent who handled it this way: "Five years ago," he said to the client, "we identified this estate liquidity need, and you were delighted to be able to solve that problem for 20 cents on the dollar. There was no other product or investment you could make that could solve your problem so inexpensively. Now I'm coming back to you today, and it's going to cost you 30 cents on the dollar. It's still a good deal. There still isn't anything that comes close to doing what you need it to do when you need to do it for as low a price, even though that price tag has gone up substantially."

Beyond dumping more money into the contract, reactivating a vanished premium or reducing face amounts, Manulife policyholders may opt for underwriting-free conversions to certain term or variable life products. Of course, conversion to term involves using the cash value in a permanent policy to pay premiums for a non-permanent one. With the variable option, policyholders—by taking on the policy's investment risk—may be able to achieve the originally projected performance.

Weber has conducted focus groups with dozens of policyholders who owned substantial amounts of life insurance. In a mock-up of a communication to policyholders, researchers explained that the amount of premiums

> *"There isn't a single illustration that was based on current assumptions in 1985 through 1989 that is going to come true."*

they had expected to pay was now going to increase substantially. "The reactions we got from them," he says, "were a valuable learning experience. The first lesson: A customer is never happy about bad news. But they are much more accepting of it when it comes from the person who sold them the policy." The other extreme, according to Weber, is that the people are angriest who get bad news come from an impersonal letter from some president whose name is scrawled by a machine at the bottom of the page. "That was important for us because we were about to do a mail campaign, and what they told us was no, it's got to be face-to-face contact," he says.

The other lesson was that customers want to hear the bad news as soon as the agent knows it. And they want to know specifically how it affects them. The agent has to go to the client, explain the impact and then help the client determine whether the original needs still exist. There is a reason that may not still exist: That client may have bought a lot of insurance with anticipation of a lot of inflation, which would increase the value of their estate along with their future tax liability. "If inflation didn't continue, it's not there. Maybe they don't need so much insurance any longer," says Weber. Perhaps that client's solution is to reduce the number of premium payments to the original number by decreasing the death benefit. "This may not be appropriate for everyone, but we certainly have seen it," says Weber.

The end result, according to Weber, is a new way of looking at life insurance. Trying to teach agents and brokers that a life insurance policy is simply another asset that has to be managed. When I came into the business in 19.., it was still true that when you bought life insurance, you bought it, you signed the paperwork and you put it in a place, and you never looked at it again. You can't do that anymore. Too much has happened in the last 15 years. Agents vanish, companies vanish, premium does not vanish."

## THE BEST MAILING LISTS FOR THE INSURANCE AND FINANCIAL SERVICE INDUSTRIES

### LISTS FOR RECRUITING
**LICENSED INSURANCE AGENTS AND FINANCIAL PLANNERS**

| | | | |
|---|---|---|---|
| Life & Disability Agents | 1,063,492 | Life Insurance Agencies | 256,877 |
| Fire & Casualty Agents | 488,603 | Property & Casualty Agencies | 271,742 |
| Financial Planners, CLU's, MDRT's | 87,795 | Insurance Company Home Offices | 3,651 |

Send For Free Brochure Showing Breakdowns By Sectional Centers

### LISTS FOR PROSPECTING

| | | | |
|---|---|---|---|
| Age & Income | Homeowners | Top Executives | Small Business Owners |
| New Move-Ins | Working Women | Senior Citizens | School Children |
| Real Estate Agents | Doctors, Lawyers | Military Retirees | Stockbrokers |
| Accountants, Bankers | Postal Workers | Opportunity Seekers | Nurses, Teachers |
| Investors | Affluent Americans | | |

Call Us For All Your List Needs'— If the List Exists, We Can Get It for You

**GEORGE STERNE AGENCY**
254 E. Grand Ave.
Escondido, CA 92025
Phone 800/772-8174
619/432-6913
Fax 619/432-9570

CONFIDENTIAL

**❖MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

MP401107087I

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re <u>013 456 789 MS</u>            <u>JOHN Q POLOWNER</u>
      Policy Number                          Name of Insured

Dear Policyowner

We are writing to let you know how your recent loan, which included borrowing against your dividend balance, affects the Accelerated Payment (AP) arrangement.

Based on our current dividend scale, it is anticipated that the AP arrangement will only continue paying the annual premiums until your policy anniversary in 2000. At that time you may have to begin making out-of-pocket premium payments again.

Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this date. An increase in dividends could result in a later date while a decrease in dividends could result in an earlier date.

Please keep in mind that certain transactions can impact, or even terminate, your AP arrangement. For example, if you increase your policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments even sooner.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-1A

**❄️ MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

MP401107U8872

FOR QUESTIONS OR
SERVICE, PLEASE (
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re 023 456 789 A                    JOHN Q POLOWNER
   Policy Number                         Name of Insured

Dear Policyowner

We are writing to let you know how your recent loan, which included borrowing against your
Paid-Up Additions Rider, affects the Accelerated Payment (AP) arrangement.

Based on our current dividend scale, it is anticipated that the AP arrangement will only continue
paying the annual premiums until your policy anniversary in 2000. At that time you may have to
begin making out-of-pocket premium payments again.

Since the current dividend scale is not guaranteed for the future, it is important to remember that
any fluctuation in future dividend scales may change this date. An increase in dividends could
result in a later date while a decrease in dividends could result in an earlier date.

Please keep in mind that certain transactions can impact, or even terminate, your AP
arrangement. For example, if you increase your policy loan, fail to pay loan interest, withdraw
from policy values, change your dividend option, or change your frequency of payment to other
than annual, you may need to resume out-of-pocket premium payments even sooner.

If you have questions about the AP arrangement or your insurance coverage in general, please call
your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-1B

**MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?

Contact your MetLife
Representative:
☎ 800-638-5000

Sales Office / Agency:
D41/023

MP401107087J

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re 033 456 789 MS          JOHN Q POLOWNER
Policy Number                   Name of Insured

Dear Policyowner

We are writing to let you know how your recent loan, which included borrowing against your dividend balance and Paid-Up Additions Rider, affects the Accelerated Payment (AP) arrangement.

Based on our current dividend scale, it is anticipated that the AP arrangement will only continue paying the annual premiums until your policy anniversary in 2000. At that time you may have to begin making out-of-pocket premium payments again.

Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this date. An increase in dividends could result in a later date while a decrease in dividends could result in an earlier date.

Please keep in mind that certain transactions can impact, or even terminate, your AP arrangement. For example, if you increase your policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments even sooner.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-1C

**MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

MP4011070874

FOR QUESTIONS OR
SERVICE, PLEASE C;
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re <u>043 456 789 M</u>          <u>JOHN Q POLOWNER</u>
   Policy Number                Name of Insured

Dear Policyowner

We are writing to let you know how your recent nonpayment of loan interest, which has been added
to your outstanding loan, affects the Accelerated Payment (AP) arrangement.

Based on our current dividend scale, it is anticipated that the AP arrangement will only continue
paying the annual premiums until your policy anniversary in 2000. At that time you may have to
begin making out-of-pocket premium payments again.

Since the current dividend scale is not guaranteed for the future, it is important to remember that
any fluctuation in future dividend scales may change this date. An increase in dividends could
result in a later date while a decrease in dividends could result in an earlier date.

Please keep in mind that certain transactions can impact, or even terminate, your AP
arrangement. For example, if you increase your policy loan, fail to pay loan interest, withdraw
from policy values, change your dividend option, or change your frequency of payment to other
than annual, you may need to resume out-of-pocket premium payments even sooner.

If you have questions about the AP arrangement or your insurance coverage in general, please call
your MetLife Representative at the telephone number listed above.

Sincerely

*Peggy Clark*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
DEC 05, 1995

**CONFIDENTIAL**

AP-ID

Thank you
for
Insuring
with
MetLife

**MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

MP401107O875

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re 063 456 789 M
Policy Number

JOHN Q POLOWNER
Name of Insured

Dear Policyowner

We are writing to let you know how your recent withdrawal from your Paid-Up Additions Rider affects the Accelerated Payment (AP) arrangement.

Based on our current dividend scale, it is anticipated that the AP arrangement will only continue paying the annual premiums until your policy anniversary in 2000. At that time you may have to begin making out-of-pocket premium payments again.

Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this date. An increase in dividends could result in a later date while a decrease in dividends could result in an earlier date.

Please keep in mind that certain transactions can impact, or even terminate, your AP arrangement. For example, if you make additional withdrawals from policy values, take a policy loan, fail to pay loan interest, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments even sooner.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-1F

**❖ MetLife**®

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?
Contact your MetLife
Representative:
☎. 800-638-5000
Sales Office / Agency:
D41/023

MP401107087 6

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

FOR QUESTIONS OF
SERVICE, PLEASE
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

Re  053 456 789 M
Policy Number

JOHN  Q  POLOWNER
Name of Insured

Dear Policyowner

We are writing to let you know how your recent dividend withdrawal affects the Accelerated
Payment (AP) arrangement.

Based on our current dividend scale, it is anticipated that the AP arrangement will only continue
paying the annual premiums until your policy anniversary in 2000. At that time you may have
begin making out-of-pocket premium payments again.

Since the current dividend scale is not guaranteed for the future, it is important to remember that
any fluctuation in future dividend scales may change this date. An increase in dividends could
result in a later date while a decrease in dividends could result in an earlier date.

Please keep in mind that certain transactions can impact, or even terminate, your AP
arrangement. For example, if you make additional withdrawals from policy values, take a policy
loan, fail to pay loan interest, change your dividend option, or change your frequency of payment
to other than annual, you may need to resume out-of-pocket premium payments even sooner.

If you have questions about the AP arrangement or your insurance coverage in general, please call
your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-1E

**MetLife®**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

MP401107087?

FOR QUESTIONS OR
SERVICE, PLEASE C
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re 073,456 789 MS
Policy Number

JOHN Q POLOWNER
Name of Insured

Dear Policyowner

We are writing to let you know that as a result of your recent loan, which included borrowing against your dividend balance, you will not be able to use the Accelerated Payment (AP) arrangement to pay your next annual premium.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due DEC 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Peggy Clark*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
DEC 05, 1995

**CONFIDENTIAL**

Thank you for insuring with MetLife.

AP-2A

**MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

FOR QUESTIONS OR
SERVICE, PLEASE C
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re 083 456 789 A          JOHN Q POLOWNER
   Policy Number              Name of Insured

Dear Policyowner

We are writing to let you know that as a result of your recent loan, which included borrowing against your Paid-Up Additions Rider, you will not be able to use the Accelerated Payment (AP) arrangement to pay your next annual premium.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due DEC 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Peggy Clark*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-2B

**❖ MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions?

Contact your MetLife
Representative:
**800-638-5000**
Sales Office / Agency:
**D41/023**

MP401107087.9

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re 093 456 789 A                    JOHN Q POLOWNER
        Policy Number                             Name of Insured

Dear Policyowner

We are writing to let you know that as a result of your recent loan, which included borrowing against your dividend balance and Paid-Up Additions Rider, you will not be able to use the Accelerated Payment (AP) arrangement to pay your next annual premium.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due DEC 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-2C

**✿MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

MP040110708800

FOR QUESTIONS OR
SERVICE, PLEASE C/
· 1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re 103 456 789 M
       Policy Number

JOHN Q POLOWNER
       Name of Insured

Dear Policyowner

We are writing to let you know that as a result of your recent nonpayment of loan interest, which has been added to your outstanding loan, you will not be able to use the Accelerated Payment (AP) arrangement to pay your next annual premium.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due DEC 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-2D

**✿ MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

MP401070881

FOR QUESTIONS OR
SERVICE, PLEASE C.
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

Re <u>113 456 789 PR</u>          JOHN Q POLOWNER
Policy Number                         Name of Insured

Dear Policyowner

We are writing to let you know that as a result of your recent dividend withdrawal, you will not be able to use the Accelerated Payment (AP) arrangement to pay your next annual premium.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due DEC 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Peggy Clark*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
DEC 05, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-2E

**MetLife**

700 QUAKER LANE PO BOX 300
WARWICK, RI 02887-0300

Questions ?
Contact your MetLife
Representative:
☎ 800-638-5000
Sales Office / Agency:
D41/023

JOHN Q POLOWNER
1 MAIN ST
HOMETOWN NY 12345

FOR QUESTIONS OR
SERVICE, PLEASE C
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

Re <u>123 456 789 MS</u>          <u>JOHN Q POLOWNER</u>
    Policy Number                      Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent withdrawal from your Paid-Up Additions Rider, you will not be able to use the Accelerated Payment (AP) arrangement to pay your next annual premium.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due DEC 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
DEC 05, 1995

**CONFIDENTIAL**

Thank you
for
insuring
with
MetLife.

AP-2F

**MetLife**

**Marketing Communications**
MetLife Individual Sales

Re    Accelerated Payment (AP) Arrangement Customer
      Communications

To    The Field Force

Beginning this month, important changes will appear on the
anniversary statements mailed to policyholders whose premiums
are being paid under the Accelerated Payment (AP) arrangement.
The changes represent a major enhancement to MetLife's
communications with policyholders about the status of their AP
arrangements.

In October, "collapse" date messages were added to the bills
and anniversary statements of AP policyholders whose dividend
and/or Paid-Up Additions Rider (PUAR) balances would be
insufficient to pay premiums for their policies sometime
within the next five years.  Now, we have taken a critical
step forward -- the statements have been completely revised
with a new look and additional information that make them
easier to read and understand.

The customers whose AP arrangements will be insufficient in
the next five years will have messages printed directly on
their anniversary statements clearly outlining the three
payment options available to them in this situation.  What's
more, these messages will be "personalized" to provide
specific information for each policyholder regarding each
option.  This information will help these policyholders
understand their alternatives and make the best decision for
their particular circumstance.  However, policyholders whose
AP arrangements will not work to pay the next premium due will
receive a Notice of Payment Due for the full premium in place
of the Anniversary Statement.

The three payment options include:

* Paying the entire premium due out-of-pocket;
* Paying part of the premium with the current dividend and the
  balance out-of-pocket; or
* Allowing the AP arrangement to pay the premium for the
  current year.

The new messages will explain to each affected AP policyholder
the exact impact each choice would have on the number of years
the AP arrangement will work to pay future premiums.

**CONFIDENTIAL**

(See Reverse Side)

MP4011070883

- 2 -

Samples of the front page of the AP anniversary statements, which include examples of the messages your clients may receive, are attached. The attachments show the different types of accelerated payment that your customers may have.

Attachment 1 -- Accelerated Payment Type 1

With this AP type, the AP arrangement will pay premiums by withdrawals from only the PUAR.

Attachment 2 -- Accelerated Payment Type 2

This AP type pays premiums by withdrawals -- first from the PUAR and then from the dividends. Option 3 on the sample statement explains that if the policyholder uses the AP arrangement to pay the premium, the PUAR will be reduced to $0.00. This will terminate the policyholder's right to use this rider. The policyholder can use the dividend to purchase Additional Paid-Up Insurance or leave it to accumulate with interest.

Attachment 3 -- Accelerated Payment Type 2

Again, this AP type will pay premiums by withdrawals -- first from the PUAR and then from the dividends. On this sample statement, Option 3 explains that if the policyholder uses the AP arrangement to pay the premium, the PUAR balance will be reduced, but the rider will remain active. The policyholder has the choice of using the dividend to purchase Additional Paid-Up Insurance or leaving it to accumulate with interest.

Attachment 4 -- Accelerated Payment Type 3

With this AP type, the AP arrangement will pay premiums by withdrawals -- first from the dividends and then from the PUAR. The policyholder can choose to use the dividend to purchase Additional Paid-Up Insurance or leave it to accumulate with interest.

Attachment 5 -- Accelerated Payment Type 4

This AP type will pay premiums by withdrawals from dividends only. In this example, the dividends are used to purchase Additional Paid-Up Insurance.

Attachment 6 -- Accelerated Payment Type 4

Again, this AP type will pay premiums by withdrawals from dividends only. In this example the dividends are left to accumulate with interest.

Printed on the reverse side of each sample AP Anniversary Statement are samples of the corresponding SONIC screens that

CONFIDENTIAL

MP4011070884

- 3 -

Account Representatives can access through the **Accelerated Payment Billing Report** on SONIC. These screens notify you which policyholders have been informed that their dividend and/or PUAR balances will be insufficient to pay premiums sometime in the next five years.

A copy of the AP Billing Report can be obtained by having a sales support associate access the Administrative Transactions Menu, 03 Print Reports Selection Menu, and key in either selection 17 or 18, Accelerated Payment Billing.

While these new messages will make it easier for customers to understand their AP arrangements and the payment options available to them, you may still receive calls from your clients who require additional information. For this reason, you should be prepared to discuss the payment options with them and help your AP clients determine the best course of action that will allow them to maintain their valuable insurance protection.

This important policyholder communication effort further demonstrates MetLife's commitment to full disclosure and represents a major cooperative effort by representatives of key business and administrative units in Individual Life Insurance and MetLife Individual Sales who make up the AP Natural Work Team. The team has made proactive communication to our policyholders about this payment arrangement one of its primary goals.

Watch for additional announcements concerning future enhancements to our policyholder communications and activities planned by the AP Natural Work Team.

If you have any questions regarding this new policyholder information initiative or the AP arrangement, please contact Alan Kandel, Product Manager, Life Product Planning, Individual Life Insurance, in the Bridgewater office at (908) 253-1240 or Roberta Steve, Manager, Customer Communications and Inforce Marketing Programs, Marketing Communications, MetLife Individual Sales, in the Bridgewater office at (908) 253-1122.

December 14, 1995

Attachments

**CONFIDENTIAL**

MP401107088

**MetLife**

METROPOLITAN LIFE INS. CO.
12902 E.51 ST. PO BOX 500
TULSA OK 74102

Contact your MetLife Representative:
☎ 313-995-1966

Sales Office/Agency:
019/834

### Accelerated Payment Anniversary Statement

| | |
|---|---|
| Amount Due | $641.80 |
| Date Due | January 3, 1996 |
| Policy Number | 123 901 408 A |
| Face Amount Of Insurance | $35,000 |
| Payment Mode | Annual |

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

Name of Insured: POLLY C HOLDER
Plan: WHOLE LIFE
WITH THE ENRICHER/PAID-UP ADDITIONS RIDER (PUAR)

Amount Paid/Date Paid

### Dividend Summary

Please place this statement with your policy.

Your 1996 dividend will be used to buy Additional Paid-up Insurance if premiums are paid to January 3, 1996.

| | |
|---|---|
| 1996 Dividend: | $92.43 |

Additional Paid-Up Insurance
| | |
|---|---|
| Prior Balance: | 864.30 |
| Additional Insurance Earned on Prior Balance: | 33.71 |
| Amount Purchased by Current Dividend: | 270.82 |
| Total Additional Paid-Up Insurance (AI): | 1,168.83 |

### Payment Information

| | |
|---|---|
| Amount Due (Premium): | $641.80 |

Please refer to other side for important information.

As requested, if you do not pay this premium out-of-pocket, it will be paid by the Accelerated Payment (AP) arrangement (See Option 3). However, please be aware that your PUAR and dividends are not sufficient to pay premiums for the life of the policy. Dividends are not guaranteed. These calculations are based on the current dividend scale and are therefore subject to change in the future.

The following payment options are available:

1. Pay this year's premium out-of-pocket. The AP arrangement would pay premiums until the year 2001.

2. Use the 1996 dividend of $92.43 plus $549.37 out-of-pocket to pay this year's premium. Your total AI would be reduced to $898.01. The AP arrangement would pay premiums until the year 2001.

3. Allow the premium to be paid by the AP arrangement. The premium would be withdrawn from the PUAR reducing the PUAR amount of insurance to $6,285.00. The AP arrangement would pay premiums until the year 2000.

Thank you for insuring with MetLife.

You will be receiving an Annual Statement detailing the value of your Paid-up Additions Rider shortly after January 3, 1996.

For questions or service, please contact your MetLife Account Representative or call 1-800-MET-5000 (1-800-638-5000). Our busiest day is Monday, so it is best to call Tuesday through Friday, if possible.

---

**MetLife**    Accelerated Payment - Type 1    ▲ Detach here and return with your payment

Sales Office/Agy.
019/834

| Policy No. | | | | Premium | Dividend |
|---|---|---|---|---|---|
| 123901408 A | 345 | 1 000 | | 641.80 | 92.43 |

Name of Insured
POLLY C HOLDER

| | |
|---|---|
| | Date Due |
| | January 3, 1996 |
| | Amount Due |

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

$    641.80
Unscheduled Payment

Please make check or money order payable to **MetLife**
Mail to: METROPOLITAN
P O BOX 435
WARWICK RI 02887-0435

$
Amount Enclosed

$

CONFIDENTIAL

MP401107086

MP401107087

```
Sample Sc  ; Screen.  Will Not Appear on Ac  l Statement.
```

CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
ACCELERATED PAYMENT BILLING ACTIVITY - RUNDATE    11/21/1995

```
DISTRICT  019      AGENCY  834    DATE PRODUCED        11/21/1995
POLICY NO.  123 901 408 A         ANNIVERSARY DATE  01/03/1996
POLICYOWNER NAME        POLLY C HOLDER
POLICYOWNER ADDRESS     123 MAIN ST
                        ANYTOWN PA 12345
INSURED'S NAME          POLLY C HOLDER
PREMIUM        $641.80      1996 DIVIDEND         $92.43
CASH VALUE OF AI        $399.90        AI BALANCE       $1,168.83
CASH VALUE OF PUAR      $2,150.06      PUAR BALANCE       $6,285.00
***** AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000 *****
POLICYOWNER PAYMENT OPTIONS
    1. PAY THIS YEAR'S PREMIUM OUT-OF-POCKET -
       AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2001
    2. USE THE 1996 DIVIDEND OF        $92.43 PLUS
       OUT-OF-POCKET AMOUNT OF        $549.37 -
       AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2001
    3. ALLOW THE AP ARRANGEMENT TO PAY THIS YEAR'S PREMIUM -
       AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000
```

This side of your Anniversary Statement contains important information about your policy. If you have any questions on this information, please contact your MetLife Representative at the telephone number on the front of this Statement.

In the following sections, "you" and "your" mean the policyholder of the policy to which this Anniversary Statement applies. "Metropolitan," "MetLife" and "we" mean the Metropolitan Life Insurance Company.

Payments made by check or money order are considered paid when the full amount of the premium is received by MetLife from the collecting bank(s). Your check or money order must be payable in U.S. dollars only.

Please do not send cash.

For policies with The Enricher℠ (The Paid-Up Additions Rider) only: Within certain limits, you can make an Unscheduled Payment to The Enricher, increasing your insurance protection and your policy's cash value. The amount you decided to pay to The Enricher is already included in the Amount Due. If you would like to pay more, enter the amount under "Unscheduled Payment" on the return portion of this Notice. Contact your MetLife Representative for more information.

Voting for the Board of Directors: You are entitled to vote for the Directors of the MetLife beginning with the first election held after your policy has been in force for one year, and continuing as long as your policy remains in force. The election is held annually on the second Tuesday of April at MetLife's home office, One Madison Avenue, New York, NY 10010-3690. You can vote in person or by mail, and you will receive a ballot before each year's election. You are entitled to one vote only, no matter how many MetLife policies or contracts you own. For more information, please write to the Secretary at the MetLife home office.

Nomination of Directors: In accordance with Section 4210 of the New York Insurance Law, the Board of Directors must nominate candidates (described as the "Administration Ticket") not less than five months before the election of Directors. Groups of policyholders and contract holders may also nominate Directors, but not less than five months before the election.

To be valid as a receipt, this form must be countersigned by the MetLife Representative to whom payment is made.

Receipt of $ _____ is hereby acknowledged with thanks.

Countersignature _____  Date_____ 19 _____

CONFIDENTIAL

MP401107088

**MetLife**

METROPOLITAN LIFE INS. CO.
12902 E.51 ST. PO BOX 500
TULSA OK 74102

questions?
Contact your MetLife
Representative:
☎ 501-753-8236

Sales Office/Agency:
C31/805

### Accelerated Payment Anniversary Statement

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

*Sample*

| | |
|---|---|
| Amount Due | $887.20 |
| Date Due | January 8, 1996 |
| Policy Number | 123 138 100 A |
| Face Amount Of Insurance | $40,000 |
| Payment Mode | Annual |
| Amount Paid/Date Paid | |

Name of
Insured  POLLY C HOLDER

Plan  LIFE PAID UP AT AGE 95
WITH THE ENRICHER/PAID-UP ADDITIONS RIDER (PUAR)

### Dividend Summary

Your 1996 dividend will be used to buy Additional Paid-up Insurance if premiums are paid to January 8, 1996.

1996 Dividend:                                          $340.89

Additional Paid-Up Insurance
  Prior Balance:
  Additional Insurance Earned on Prior Balance:          6,083.08
  Amount Purchased by Current Dividend:                   145.99
  Total Additional Paid-Up Insurance (AI):              1,247.66
                      7,476.73

### Payment Information

Amount Due (Premium):                                   $887.20

As requested, if you do not pay this premium out-of-pocket, it will be paid by the Accelerated Payment (AP) arrangement (See Option 3). However, please be aware that your PUAR and dividends are not sufficient to pay premiums for the life of the policy. Dividends are not guaranteed. These calculations are based on the current dividend scale and are therefore subject to change in the future.

The following payment options are available:

1. Pay this year's premium out-of-pocket. The AP arrangement would pay premiums until the year 2003.

2. Use the 1996 dividend of $340.89 plus $546.31 out-of-pocket to pay this year's premium. Your total AI would be reduced to $6,229.07. The AP arrangement would pay premiums until the year 2002.

3. Allow the premium to be paid by the AP arrangement. The premium would be withdrawn from the PUAR and AI. The total AI bought by the dividends would be reduced to $6,566.80. The PUAR amount of insurance would be reduced to $0.00. This would terminate your right to buy Paid-up Additional Insurance under this rider. The AP arrangement would pay premiums until the year 2000.

You will be receiving an Annual Statement detailing the value of your Paid-up Additions Rider shortly after January 8, 1996.

For questions or service, please contact your MetLife Account Representative or call 1-800-MET-5000 (1-800-638-5000). Our busiest day is Monday, so it is best to call Tuesday through Friday, if possible.

Please place this statement with your policy.

Please refer to other side for important information.

Thank you for insuring with MetLife.

---

**MetLife**    Accelerated Payment – Type 2    ▲ Detach here and return with your payment

Sales Office/Agy.
C31/805

Policy No.
123138100 A    343  1 000
Name of Insured
POLLY C HOLDER

| Premium | Dividend |
|---|---|
| 887.20 | 340.89 |

Date Due
January 8, 1996

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

Amount Due
$    887.20

Unscheduled Payment
$

Please make check or money order payable to MetLife
Mail to:  METROPOLITAN
    P O BOX 435
    WARWICK RI 02887-0435

Amount Enclosed
$

**CONFIDENTIAL**

```
          Sample S   C Screen   Will Not Appear on A   l Statement

    CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
                     INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
             ACCELERATED PAYMENT BILLING ACTIVITY - RUNDATE    11/21/1995

    DISTRICT  C31      AGENCY  805     DATE PRODUCED      11/21/1995
    POLICY NO.  123 138 100 A          ANNIVERSARY DATE  01/08/1996
    POLICYOWNER NAME      POLLY C HOLDER
    POLICYOWNER ADDRESS   123 MAIN ST
                          ANYTOWN PA 12345
    INSURED'S NAME        POLLY C HOLDER
    PREMIUM        $887.20      1996 DIVIDEND      $340.89
    CASH VALUE OF AI        $2,042.27      AI BALANCE        $7,476.73
    CASH VALUE OF PUAR        $638.65      PUAR CEASED PREMIUM PAYING
    ***** AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000 *****
    POLICYOWNER PAYMENT OPTIONS
       1. PAY THIS YEAR'S PREMIUM OUT-OF-POCKET -
              AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2003
       2. USE THE 1996 DIVIDEND OF        $340.89 PLUS
          OUT-OF-POCKET AMOUNT OF         $546.31 -
              AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2002
       3. ALLOW THE AP ARRANGEMENT TO PAY THIS YEAR'S PREMIUM -
              AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000
```

This side of your Anniversary Statement contains important information about your policy. If you have any questions on this information, please contact your MetLife Representative at the telephone number on the front of this Statement.

In the following sections, "you" and "your" mean the policyholder of the policy to which this Anniversary Statement applies. "Metropolitan," "MetLife" and "we" mean the Metropolitan Life Insurance Company.

Payments made by check or money order are considered paid when the full amount of the premium is received by MetLife from the collecting bank(s). Your check or money order must be payable in U.S. dollars only.

Please do not send cash.

For policies with The Enricher℠ (The Paid-Up Additions Rider) only: Within certain limits, you can make an Unscheduled Payment to The Enricher, increasing your insurance protection and your policy's cash value. The amount you decided to pay to The Enricher is already included in the Amount Due. If you would like to pay more, enter the amount under "Unscheduled Payment" on the return portion of this Notice. Contact your MetLife Representative for more information.

Voting for the Board of Directors: You are entitled to vote for the Directors of the MetLife beginning with the first election held after your policy has been in force for one year, and continuing as long as your policy remains in force. The election is held annually on the second Tuesday of April at MetLife's home office, One Madison Avenue, New York, NY 10010-3690. You can vote in person or by mail, and you will receive a ballot before each year's election. You are entitled to one vote only, no matter how many MetLife policies or contracts you own. For more information, please write to the Secretary at the MetLife home office.

Nomination of Directors: In accordance with Section 4210 of the New York Insurance Law, the Board of Directors must nominate candidates (described as the "Administration Ticket") not less than five months before the election of Directors. Groups of policyholders and contract holders may also nominate Directors, but not less than five months before the election.

To be valid as a receipt, this form must be countersigned by the MetLife Representative to whom payment is made.

Receipt of $_____ is hereby acknowledged with thanks.

Countersignature  _____  Date_____  19 _____

**CONFIDENTIAL**

MP401107089

NYHO-K08308

**MetLife**

METROPOLITAN LIFE INS. CO.
12902 E. 51 ST, PO BOX 500
TULSA OK 74102

..estions?
Contact your MetLife
Representative.
☎ 918-665-3330

Sales Office/Agency:
B81/837

### Accelerated Payment Anniversary Statement

Amount Due
**$1,177.25**

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

*Sample*

Date Due
**January 8, 1996**

Policy Number
**123 133 099 A**

Face Amount Of Insurance
**$25,000**

Name of Insured POLLY C HOLDER

Payment Mode
**Annual**

Plan
WHOLE LIFE
WITH THE ENRICHER/PAID-UP ADDITIONS RIDER (PUAR)

Amount Paid/Date Paid

### Dividend Summary

Please place this statement with your policy.

Your 1996 dividend will be used to buy Additional Paid-up Insurance if premiums are paid to January 8, 1996.

1996 Dividend:                                                    $332.76

Additional Paid-Up Insurance
  Prior Balance:
  Additional Insurance Earned on Prior Balance:          2,317.79
  Amount Purchased by Current Dividend:                       90.39
  Total Additional Paid-Up Insurance (AI):                545.73
                                                                  2,953.91

### Payment Information

Please refer to other side for important information.

Amount Due (Premium):                                   $1,177.25

As requested, if you do not pay this premium out-of-pocket, it will be paid by the Accelerated Payment (AP) arrangement (See Option 3). However, please be aware that your PUAR and dividends are not sufficient to pay premiums for the life of the policy. Dividends are not guaranteed. These calculations are based on the current dividend scale and are therefore subject to change in the future.

The following payment options are available:

1. Pay this year's premium out-of-pocket. The AP arrangement would pay premiums until the year 2002.

2. Use the 1996 dividend of $332.76 plus $844.49 out-of-pocket to pay this year's premium. Your total AI would be reduced to $2,408.18. The AP arrangement would pay premiums until the year 2001.

3. Allow the premium to be paid by the AP arrangement. The premium would be withdrawn from the PUAR reducing the PUAR amount of insurance to $262.00. The AP arrangement would pay premiums until the year 1999.

You will be receiving an Annual Statement detailing the value of your Paid-up Additions Rider shortly after January 8, 1996.

Thank you for insuring with MetLife

For questions or service, please contact your MetLife Account Representative or call 1-800-MET-5000 (1-800-638-5000). Our busiest day is Monday, so it is best to call Tuesday through Friday, if possible.

---

**MetLife**           Accelerated Payment - Type 2    ▲ Detach here and return
                                                        with your payment

Sales Office/Agy.
B81/837

Policy No.
**123113099 A    342  1 000**
Name of Insured
**POLLY C HOLDER**

Premium        Dividend
**1177.25**        **332.76**

Date Due
**January 8, 1996**

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

Amount Due
$ **1,177.25**
Unscheduled Payment

**CONFIDENTIAL**

Please make check or money order payable to MetLife
Mail to: METROPOLITAN
         P O BOX 435
         WARWICK RI 02887-0435

$
Amount Enclosed
$

MP401107080

MP401107091

```
Sample SOURCE Screen.  Will Not Appear on Actual Statement.

CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
              INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
        ACCELERATED PAYMENT BILLING ACTIVITY - RUNDATE    11/21/1995

DISTRICT  861     AGENCY  837     DATE PRODUCED        11/21/1995
POLICY NO.  123 133 099 A         ANNIVERSARY DATE  01/08/1996
POLICYOWNER NAME      POLLY C HOLDER
POLICYOWNER ADDRESS  123 MAIN ST
                     ANYTOWN PA 12345
INSURED'S NAME       POLLY C HOLDER
PREMIUM      $1,177.25    1996 DIVIDEND         $332.76
CASH VALUE OF AI      $1,801.47    AI BALANCE        $2,953.91
CASH VALUE OF PUAR         $159.56    PUAR CEASED PREMIUM PAYING
***** AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 1999 *****
POLICYOWNER PAYMENT OPTIONS
     1. PAY THIS YEAR'S PREMIUM OUT-OF-POCKET -
        AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2002
     2. USE THE 1996 DIVIDEND OF       $332.76 PLUS
        OUT-OF-POCKET AMOUNT OF        $844.49 -
        AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2001
     3. ALLOW THE AP ARRANGEMENT TO PAY THIS YEAR'S PREMIUM -
        AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 1999
```

This side of your Anniversary Statement contains important information about your policy. If you have any questions on this information, please contact your MetLife Representative at the telephone number on the front of this Statement.

In the following sections, "you" and "your" mean the policyholder of the policy to which this Anniversary Statement applies. "Metropolitan," "MetLife" and "we" mean the Metropolitan Life Insurance Company.

Payments made by check or money order are considered paid when the full amount of the premium is received by MetLife from the collecting bank(s). Your check or money order must be payable in U.S. dollars only.

Please do not send cash.

For policies with The Enricher℠ (The Paid-Up Additions Rider) only: Within certain limits, you can make an Unscheduled Payment to The Enricher, increasing your insurance protection and your policy's cash value. The amount you decided to pay to The Enricher is already included in the Amount Due. If you would like to pay more, enter the amount under "Unscheduled Payment" on the return portion of this Notice. Contact your MetLife Representative for more information.

Voting for the Board of Directors: You are entitled to vote for the Directors of the MetLife beginning with the first election held after your policy has been in force for one year, and continuing as long as your policy remains in force. The election is held annually on the second Tuesday of April at MetLife's home office, One Madison Avenue, New York, NY 10010-3690. You can vote in person or by mail, and you will receive a ballot before each year's election. You are entitled to one vote only, no matter how many MetLife policies or contracts you own. For more information, please write to the Secretary at the MetLife home office.

Nomination of Directors: In accordance with Section 4210 of the New York Insurance Law, the Board of Directors must nominate candidates (described as the "Administration Ticket") not less than five months before the election of Directors. Groups of policyholders and contract holders may also nominate Directors, but not less than five months before the election.

To be valid as a receipt, this form must be countersigned by the MetLife Representative to whom payment is made.

Receipt of $ _____ is hereby acknowledged with thanks.

Countersignature _____    Date_____ 19 _____

**CONFIDENTIAL**

MP4011070892

**MetLife**

METROPOLITAN LIFE INS. CO.
12902 E. 51 ST. PO BOX 500
TULSA OK 74102

estions?
Contact your MetLife
Representative:
☎ 409-832-6344

Sales Office/Agency:
K51/801

### Accelerated Payment Anniversary Statement

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

*Sample*

| | |
|---|---|
| Amount Due | $967.35 |
| Date Due | January 2, 1996 |
| Policy Number | 123 132 431 A |
| Face Amount Of Insurance | $100,000 |
| Payment Mode | Annual |
| Amount Paid/Date Paid | |

Name of Insured  POLLY C HOLDER
Plan
LIFE PAID UP AT AGE 95
WITH THE ENRICHER/PAID-UP ADDITIONS RIDER (PUAR)

Please place this statement with your policy.

Please refer to other side for important information.

Thank you for insuring with MetLife.

### Dividend Summary

Your 1996 dividend will be used to buy Additional Paid-up insurance if premiums are paid to January 2, 1996.

1996 Dividend:                                              $540.82

Additional Paid-Up Insurance
   Amount Purchased by Current Dividend:                    7,831.07
   Total Additional Paid-Up Insurance (AI):                 7,831.07

*Sample*

### Payment Information

Amount Due (Premium):                                       $967.35

As requested, if you do not pay this premium out-of-pocket, it will be paid by the Accelerated Payment (AP) arrangement (See Option 3). However, please be aware that your PUAR and dividends are not sufficient to pay premiums for the life of the policy. Dividends are not guaranteed. These calculations are based on the current dividend scale and are therefore subject to change in the future.

The following payment options are available:

1. Pay this year's premium out-of-pocket. The AP arrangement would pay premiums until the year 2001.

2. Use the 1996 dividend of $540.82 plus $426.53 out-of-pocket to pay this year's premium. Your total AI would be reduced to $.00. The AP arrangement would pay premiums until the year 1999.

3. Allow the premium to be paid by the AP arrangement. The premium would be withdrawn from the PUAR and AI. The total AI bought by the dividends would be reduced to $.00. The PUAR amount of insurance would be reduced to $2,464.00. The AP arrangement would pay premiums until the year 1997.

You will be receiving an Annual Statement detailing the value of your Paid-up Additions Rider shortly after January 2, 1996.

For questions or service, please contact your MetLife Account Representative or call 1-800-MET-5000 (1-800-638-5000). Our busiest day is Monday, so it is best to call Tuesday through Friday, if possible.

---

**MetLife**          Accelerated Payment - Type 3          ▲ Detach here and return
                                                              with your payment

| | | | |
|---|---|---|---|
| Policy No. | | Premium | Dividend |
| 123132431 A    348  1 000 | | 967.35 | 540.82 |

Sales Office/Agy.
K51/801

Name of Insured
POLLY C HOLDER

*Sample*

Date Due
January 2, 1996

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

Amount Due
$   967.35

Please make check or money order payable to MetLife

Unscheduled Payment
$

Mail to: METROPOLITAN
         P O BOX 435
         WARWICK RI 02887-0435

Amount Enclosed
$

**CONFIDENTIAL**

MP401070893

```
Sample SC   C Screen.  Will Not Appear on Actual Statement.

CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
                   INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
           ACCELERATED PAYMENT BILLING ACTIVITY - RUNDATE    11/21/1995

DISTRICT  K51     AGENCY  801     DATE PRODUCED       11/21/1995
POLICY NO.  123 132 431 A         ANNIVERSARY DATE  01/02/1996
POLICYOWNER NAME        POLLY C HOLDER
POLICYOWNER ADDRESS     123 MAIN ST
                        ANYTOWN PA 12345
INSURED'S NAME          LANGSTON SCOTT ADAMS
PREMIUM        $967.35    1996 DIVIDEND       $540.82
CASH VALUE OF AI         $540.81   AI BALANCE       $7,831.07
CASH VALUE OF PDAR       $402.54   PDAR CEASED PREMIUM PAYING
***** AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 1997 *****
POLICYOWNER PAYMENT OPTIONS
  1. PAY THIS YEAR'S PREMIUM OUT-OF-POCKET -
        AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2001
  2. USE THE 1996 DIVIDEND OF      $540.82 PLUS
     OUT-OF-POCKET AMOUNT OF       $426.53 -
        AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 1999
  3. ALLOW THE AP ARRANGEMENT TO PAY THIS YEAR'S PREMIUM -
        AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 1997
```

This side of your Anniversary Statement contains important information about your policy. If you have any questions on this information, please contact your MetLife Representative at the telephone number on the front of this Statement.

In the following sections, "you" and "your" mean the policyholder of the policy to which this Anniversary Statement applies. "Metropolitan," "MetLife" and "we" mean the Metropolitan Life Insurance Company.

Payments made by check or money order are considered paid when the full amount of the premium is received by MetLife from the collecting bank(s). Your check or money order must be payable in U.S. dollars only.

**Please do not send cash.**

For policies with The Enricher℠ (The Paid-Up Additions Rider) only: Within certain limits, you can make an Unscheduled Payment to The Enricher, increasing your insurance protection and your policy's cash value. The amount you decided to pay to The Enricher is already included in the Amount Due. If you would like to pay more, enter the amount under "Unscheduled Payment" on the return portion of this Notice. Contact your MetLife Representative for more information.

Voting for the Board of Directors: You are entitled to vote for the Directors of the MetLife beginning with the first election held after your policy has been in force for one year, and continuing as long as your policy remains in force. The election is held annually on the second Tuesday of April at MetLife's home office, One Madison Avenue, New York, NY 10010-3690. You can vote in person or by mail, and you will receive a ballot before each year's election. You are entitled to one vote only, no matter how many MetLife policies or contracts you own. For more information, please write to the Secretary at the MetLife home office.

Nomination of Directors: In accordance with Section 4210 of the New York Insurance Law, the Board of Directors must nominate candidates (described as the "Administration Ticket") not less than five months before the election of Directors. Groups of policyholders and contract holders may also nominate Directors, but not less than five months before the election.

To be valid as a receipt, this form must be countersigned by the MetLife Representative to whom payment is made.

Receipt of $_____ is hereby acknowledged with thanks.

Countersignature _____ Date_____ 19_____

**CONFIDENTIAL**

**❄ MetLife®**

METROPOLITAN LIFE INS. CO.
700 QUAKER LANE   PO BOX 300
WARWICK RI 02887

*questions?*
Contact your MetLife
Representative:
☎ 404-934-7393

Sales Office/Agency:
212/814

## Accelerated Payment Anniversary Statement

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

| | |
|---|---|
| **Amount Due** | $329.45 |
| **Date Due** | January 2, 1996 |
| **Policy Number** | 123 130 231 A |
| **Face Amount Of Insurance** | $10,892 |

| | |
|---|---|
| **Name of Insured** POLLY C HOLDER | **Payment Mode** Annual |
| **Plan** LIFE PAID UP AT AGE 90 | **Amount Paid/Date Paid** |

### Dividend Summary

Your 1996 dividend will be used to buy Additional Paid-up Insurance if premiums are paid to January 2, 1996.

1996 Dividend:

Additional Paid-Up Insurance                                    $142.36
 Prior Balance:
 Additional Insurance Earned on Prior Balance:            1,045.70
 Amount Purchased by Current Dividend:                       26.67
 Total Additional Paid-Up Insurance:                            253.40
                                                                            1,325.77

### Payment Information

Amount Due (Premium):                                              $329.45

As requested, if you do not pay this premium out-of-pocket, it will be paid by the Accelerated Payment (AP) arrangement (See Option 3). However, please be aware that your dividends are not sufficient to pay premiums for the life of the policy. Dividends are not guaranteed. These calculations are based on the current dividend scale and are therefore subject to change in the future.

The following payment options are available:

1. Pay this year's premium out-of-pocket. The AP arrangement would pay premiums until the year 2027.

2. Use the 1996 dividend of $142.36 plus $187.09 out-of-pocket to pay this year's premium. Your total AI would be reduced to $1,072.37. The AP arrangement would pay premiums until the year 2002.

3. Allow the premium to be paid by the AP arrangement. The premium would be withdrawn from the total AI reducing it to $739.90. The AP arrangement would pay premiums until the year 2000.

For questions or service, please contact your MetLife Account Representative or call 1-800-MET-5000 (1-800-638-5000). Our busiest day is Monday, so it is best to call Tuesday through Friday, if possible.

Please place this statement with your policy.

Please refer to other side for important information.

Thank you for insuring with MetLife.

---

**❄ MetLife®**     Accelerated Payment – Type 4     ▲ Detach here and return with your payment

| | | | |
|---|---|---|---|
| **Policy No.** 123130231 A  344 1 000 | | **Premium** 329.45 | **Dividend** 142.36 |
| Sales Office/Agy. 212/814 | **Name of Insured** POLLY C HOLDER | | **Date Due** January 2, 1996 |

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

**CONFIDENTIAL**

Please make check or money order payable to MetLife
Mail to:  METROPOLITAN
          P O BOX 435
          WARWICK RI 02887-0435

| | |
|---|---|
| **Amount Due** | $  329.45 |
| **Unscheduled Payment** | $ |
| **Amount Enclosed** | $ |

MP401107O894

```
          Sample S(  c Screen, Will Not Appear on Ac  ] Statement.

    CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
                    INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
          ACCELERATED PAYMENT BILLING ACTIVITY - RUNDATE      11/21/1995

    DISTRICT 212     AGENCY  814    DATE PRODUCED      11/21/1995
    POLICY NO.  123 130 231 A               ANNIVERSARY DATE  01/02/1996
    POLICYOWNER NAME        POLLY C HOLDER
    POLICYOWNER ADDRESS     123 MAIN ST
                            ANYTOWN PA 12345
    INSURED'S NAME          RONNIE A HOLIFIELD
    PREMIUM        $329.45    1996 DIVIDEND        $142.36
    CASH VALUE OF AI          $745.51      AI BALANCE        $1,325.77
    ***** AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000 *****
    POLICYOWNER PAYMENT OPTIONS
       1. PAY THIS YEAR'S PREMIUM OUT-OF-POCKET -
            AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2027
       2. USE THE 1996 DIVIDEND OF        $142.36 PLUS
          OUT-OF-POCKET AMOUNT OF         $187.09 -
            AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2002
       3. ALLOW THE AP ARRANGEMENT TO PAY THIS YEAR'S PREMIUM -
            AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000
```

This side of your Anniversary Statement contains important information about your policy. If you have any questions on this information, please contact your MetLife Representative at the telephone number on the front of this Statement.

In the following sections, "you" and "your" mean the policyholder of the policy to which this Anniversary Statement applies. "Metropolitan," "MetLife" and "we" mean the Metropolitan Life Insurance Company.

Payments made by check or money order are considered paid when the full amount of the premium is received by MetLife from the collecting bank(s). Your check or money order must be payable in U.S. dollars only.

Please do not send cash.

For policies with The Enricher™ (The Paid-Up Additions Rider) only: Within certain limits, you can make an Unscheduled Payment to The Enricher, increasing your insurance protection and your policy's cash value. The amount you decided to pay to The Enricher is already included in the Amount Due. If you would like to pay more, enter the amount under "Unscheduled Payment" on the return portion of this Notice. Contact your MetLife Representative for more information.

Voting for the Board of Directors: You are entitled to vote for the Directors of the MetLife beginning with the first election held after your policy has been in force for one year, and continuing as long as your policy remains in force. The election is held annually on the second Tuesday of April at MetLife's home office, One Madison Avenue, New York, NY 10010-3590. You can vote in person or by mail, and you will receive a ballot before each year's election. You are entitled to one vote only, no matter how many MetLife policies or contracts you own. For more information, please write to the Secretary at the MetLife home office.

Nomination of Directors: In accordance with Section 4210 of the New York Insurance Law, the Board of Directors must nominate candidates (described as the "Administration Ticket") not less than five months before the election of Directors. Groups of policyholders and contract holders may also nominate Directors, but not less than five months before the election.

To be valid as a receipt, this form must be countersigned by the MetLife Representative to whom payment is made.

Receipt of $ _____ is hereby acknowledged with thanks.

Countersignature _____ Date _____ 19 _____

**CONFIDENTIAL**

MP401107095

MP401107089G

**MetLife**

METROPOLITAN LIFE INS. CO.
700 QUAKER LANE   PO BOX 300
WARWICK RI 02887

Questions?
Contact your MetLife
Representative:
☎ 813-847-2550

Sales Office/Agency:
B80/855

### Accelerated Payment Anniversary Statement

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

*Sample*

| | |
|---|---|
| Amount Due | $128.75 |
| Date Due | January 4, 1996 |
| Policy Number | 123 162 621 A |
| Face Amount Of Insurance | $25,000 |
| Payment Mode | Annual |
| Amount Paid/Date Paid | |

Name of Insured  POLLY C HOLDER
Plan  WHOLE LIFE

### Dividend Summary

Your 1996 dividend will accumulate with interest if premiums are paid to January 4, 1996.

1996 Dividend:                                          $38.50

Dividends With Interest
  Prior Balance:
  Interest on Prior Balance:                         330.46
  Current Dividend:                                  14.87
  Total Dividends With Interest (DWI):               38.50
                                                     383.83

*Sample*

### Payment Information

Amount Due (Premium):                                   $128.75

As requested, if you do not pay this premium out-of-pocket, it will be paid by the Accelerated Payment (AP) arrangement (See Option 3). However, please be aware that your dividends are not sufficient to pay premiums for the life of the policy. Dividends are not guaranteed. These calculations are based on the current dividend scale and are therefore subject to change in the future.

The following payment options are available:

1.  Pay this year's premium out-of-pocket. The AP arrangement would pay premiums until the year 2006.

2.  Use the 1996 dividend of $38.50 plus $90.25 out-of-pocket to pay this year's premium. Your total DWI would be reduced to $345.33. The AP arrangement would pay premiums until the year 2004.

3.  Allow the premium to be paid by the AP arrangement. The premium would be withdrawn from the total DWI reducing it to $255.08. The AP arrangement would pay premiums until the year 2000.

For questions or service, please contact your MetLife Account Representative or call 1-800-MET-5000 (1-800-638-5000). Our busiest day is Monday, so it is best to call Tuesday through Friday, if possible.

Please place this statement with your policy.

Please refer to other side for important information.

Thank you for insuring with MetLife.

---

**MetLife**      Accelerated Payment - Type 4   ▲ Detach here and return with your payment

Policy No.
123162621 A    347  1 000
Name of Insured
POLLY C HOLDER

Sales Office/Agy.
B80/855

POLLY C HOLDER
123 MAIN ST
SOMEWHERE USA

*Sample*

| | |
|---|---|
| Premium | 128.75 |
| Dividend | 38.50 |
| Date Due | January 4, 1996 |

Amount Due
$ 128.75
Unscheduled Payment
$
Amount Enclosed
$

Please make check or money order payable to MetLife
Mail to: METROPOLITAN
P O BOX 435
WARWICK RI 02887-0435

**CONFIDENTIAL**

MP401107089 7

Sample St  C Screen.  Will Not Appear on Ac  l Statement.

CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
ACCELERATED PAYMENT BILLING ACTIVITY - RUNDATE    11/21/1995

```
DISTRICT  B80      AGENCY  855    DATE PRODUCED      11/21/1995
POLICY NO.  123 162 621 A         ANNIVERSARY DATE  01/04/1996
POLICYOWNER NAME      POLLY C HOLDER
POLICYOWNER ADDRESS  123 MAIN ST
                     ANYTOWN PA 12345
INSURED'S NAME       JOHN CARUSO III
PREMIUM      $128.75     1996 DIVIDEND        $38.50
DWI BALANCE       $383.83
***** AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000 *****
POLICYOWNER PAYMENT OPTIONS
   1. PAY THIS YEAR'S PREMIUM OUT-OF-POCKET -
         AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2006
   2. USE THE 1996 DIVIDEND OF       $38.50 PLUS
      OUT-OF-POCKET AMOUNT OF          $90.25 -
         AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2004
   3. ALLOW THE AP ARRANGEMENT TO PAY THIS YEAR'S PREMIUM -
         AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 2000
```

This side of your Anniversary Statement contains important information about your policy. If you have any questions on this information, please contact your MetLife Representative at the telephone number on the front of this Statement.

In the following sections, "you" and "your" mean the policyholder of the policy to which this Anniversary Statement applies. "Metropolitan," "MetLife" and "we" mean the Metropolitan Life Insurance Company.

Payments made by check or money order are considered paid when the full amount of the premium is received by MetLife from the collecting bank(s). Your check or money order must be payable in U.S. dollars only.

Please do not send cash.

For policies with The Enricher℠ (The Paid-Up Additions Rider) only: Within certain limits, you can make an Unscheduled Payment to The Enricher, increasing your insurance protection and your policy's cash value. The amount you decided to pay to The Enricher is already included in the Amount Due. If you would like to pay more, enter the amount under "Unscheduled Payment" on the return portion of this Notice. Contact your MetLife Representative for more information.

Voting for the Board of Directors: You are entitled to vote for the Directors of the MetLife beginning with the first election held after your policy has been in force for one year, and continuing as long as your policy remains in force. The election is held annually on the second Tuesday of April at MetLife's home office, One Madison Avenue, New York, NY 10010-3690. You can vote in person or by mail, and you will receive a ballot before each year's election. You are entitled to one vote only, no matter how many MetLife policies or contracts you own. For more information, please write to the Secretary at the MetLife home office.

Nomination of Directors: In accordance with Section 4210 of the New York Insurance Law, the Board of Directors must nominate candidates (described as the "Administration Ticket") not less than five months before the election of Directors. Groups of policyholders and contract holders may also nominate Directors, but not less than five months before the election.

To be valid as a receipt, this form must be countersigned by the MetLife Representative to whom payment is made.

Receipt of $ _____ is hereby acknowledged with thanks.

Countersignature _____ Date _____ 19 _____

CONFIDENTIAL



TO:        Distribution

FROM:      William T. Barnewold
           ILI Customer Services
           Bridgewater Area 3E X2202

DATE:      December 8, 1995

RE:        Accelerated Premium (AP) arrangement

The attached summarizes several accomplishments of our AP Natural
Work Team and outlines other key items close to being installed.
Additionally, some of the AP (new and old) items are mentioned
which will be addressed in 1996.

At the next Board of Directors meeting on December 19, 1995, John
Tweedy will be updating the members on what is being done to
overcome the concerns associated with "Vanishing Premium" cases.
Our AP NWT actions will be one of the initiatives cited by Mr.
Tweedy at that meeting.

So, it is appropriate to provide all of you with this same
information and to recognize the outstanding work performed by
all participating AP NWT representatives.

CC: LaBadia, Doby

**CONFIDENTIAL**

**REDACTED - ATTORNEY
CLIENT**

MP401107089B

CONFIDENTIAL

TO:        Thomas LaBadia
           Vice-President
           ILI Customer Services
           Bridgewater

FROM:      William Barnewold
           Project Manager
           ILI Customer Services
           Bridgewater Area 3E X2202

DATE:      December 4, 1995

Re:        Accelerated Payment (AP) arrangement Policies

We electronically reviewed the Notice Business Policy Master file and Paid Up Additions Rider file to obtain current statistics about our active AP cases. Using the 1996 dividend scale, we determined how many policies are eligible for AP and how many will collapse before the life expectancy of the policy is reached. For policies whose AP arrangements will collapse, we categorized the number of policies into groupings by year.

The following AP information was determined as of 11/27/95:

     149,482 policies is the total number of active AP cases
     114,647 are fully sufficient for the life expectancy of policy
      34,835 will collapse before reaching life expectancy of policy
       7,945 will collapse after 10 years
      13,588 will collapse somewhere between 5 and 10 years
       8,760 will collapse somewhere between 2 and 5 years
       4,542 will collapse within 2 years

On March 10, 1995, using the 1995 dividend scale, there were a total of 122,777 active AP policies. Of that number, 100,811 were determined to be fully sufficient and 21,966 would collapse. The expected rate of collapse then was 18% of the policies that are active on MetLife's AP arrangement.

Using the 1996 dividend scale, it is now expected that 23% of our AP arrangements will collapse before the policy life expectancy is reached.

The following AP NWT activities were pursued in an effort to better educate our policyholders about MetLife's AP arrangement, to prepare them if their AP arrangement doesn't meet expectations and to offer alternatives that will keep AP arrangements afloat.

MP40110708699

Completed and Installed:

1.  In October 1994, Billing Notices started informing policy holders that AP arrangements cannot pay their next premium.

    Policyholders are advised to pay premiums out of pocket or contact their MetLife sales rep about making alternate payment arrangements. The field release instructed sale reps to use current year dividend for paying partial premium but the balance of the premium due must be paid out of pocket by policyholders. This method of payment will cease being a manual procedure when AP options are installed next month. There were between 5-15 policies each week that were offered this alternative in their billing notice between October 1994 and November 1995. The AP NWT representatives in Marketing and Customer Service Centers have reported that this enhancement was hardly noticeable by the field force and policyholders since it was implemented judging by the number of inquiries received.

2.  In March 1995, AP letters were introduced and mailed to policyholders directly when they terminate their AP arrangement or change their policy, mode of payment or dividend option. A SONIC message is sent to sales offices.

3.  AP arrangement stuffers in letters 4/95; Annual Notices 8/95

    The MetLife AP arrangement 1 page stuffer contains the same information that is in MetLife's multi-page AP arrangement brochure. In April 1995, we started mailing the stuffer to policyholders with their AP Eligibility letters and Welcome to AP letters. In August 1995, we mailed the stuffer with AP Anniversary Statement/Billing Notice. The latter will continue for 1 year. The multi-page brochure is given to policyholders primarily by sales reps and customer service reps as opportunities present themselves.

4.  In October 1995, Billing Notices started showing Collapse Date when AP arrangements are within 5 years of being insufficient to pay premiums.

    Additional wording was included to advise policyholders that their AP arrangements will collapse and indicates the future anniversary date when collapse will occur. They are told to contact their MetLife sales rep if they have questions and to inquire about payment alternatives. A SONIC message is sent to the sales office.

**CONFIDENTIAL**

MP040110906U

5.    ABCs of Dividends and Outlook

The ABCs of Dividends brochure was reprinted and advertised in Outlook which was mailed to policyholders on a regular basis during the 2nd Quarter of 1994 through the 1st quarter of 1995. Information about AP arrangements was one of the sections in ABCs that was included in Outlook. Recipients were instructed to call or return a tear off in the same envelope with their premium payment if they wanted a copy of ABCs. Marketing Communications informed us that they received 6,271 requests for single and multiple copies of ABCs of Dividends.

Pending completion and installation

1.    As of December 1995, we will start mailing AP Letters directly to policyholders at the time they disrupt their AP arrangement by taking loans, withdrawing dividends or making PUAR withdrawals. This policyholder action causes the AP arrangement to collapse before the life expectancy of the policy. The Customer Service Reps are already alerted to this fact on PIOS before entering the transaction and are in a position to advise policyholders beforehand. A SONIC message will be sent to sales office for each AP letter mailed to a policyholder.

2.    Starting with February 1996 policy anniversaries, the Billing Notice portion of the Anniversary Statements will offer options to policyholders whose AP arrangements are collapsing within 5 years.

The AP options are 1) pay this year's premium out of pocket 2) use current year dividend to pay part of this year's premium and pay the remainder out of pocket or 3) allow premium to be paid by the AP arrangement.

Each option will show the year to which AP arrangement will pay premiums if that option is chosen by the policyholder. A SONIC message showing this same information will be sent to the sales office.

The AP Billing Notice will state that dividends are not guaranteed and that calculations shown are based on current scales and are therefore subject to change in the future.

3.    Additional Survivorship Whole Life policy support is being developed and close to installation whereby premiums will be paid electronically through the AP arrangement. SWL policies already have AP support installed to determine eligibility and send billing notices.

**CONFIDENTIAL**

MP401107090l

Future AP work to be started in 1996

1.   Add wording as required to AP annual notices.

a. For policies within the 5 year collapse window, and as long as they remain inside a 5 year window, continue to provide updated options and date information on those Billing Notices each year. Policies that subsequently move outside the 5 year window will cease to receive information about options and collapse.

b. Add "dividends are not guaranteed" wording to annual notices sent to 1) fully sufficient AP cases and 2) those who will collapse but are outside the 5 year window and not being offered options.

NOTE: eventually all communications mailed to policyholders containing dividend information will have the "dividends are not guaranteed" phrase included in their text in 1996.

2.   Explore further how Administrative systems can capture and store meaningful AP information on electronic files which is indicative of the understanding reached between sales rep/broker and policyholder at time of illustration and policy issue. Some information is already being captured in signed illustrations and put on microfilm.

At the time of illustration and policy issue, information such as type of AP arrangement and start up year to automatically test for AP eligibility has to be recorded on Administration files. Automated letter correspondence would be required to verify this information with the policyholder or rep/broker shortly after issuance of a policy. Future correspondence to inform policyholders, sales reps/brokers of eligibility and disposition of their AP arrangement at time of activation will be necessary too.

3.   Provide additional AP arrangement systems support for Flexible Whole Life plans, for new L98 with Paid Up Additions Riders and for Flexible Additional Insurance Riders.

4.   Expand the electronic calculation of AP eligibility and other systems support to include payment of rider premiums as part of our AP arrangement processing (other than PUAR and FLAIR).


In addition to all that is mentioned above, there are other AP activities being worked on by ILI units besides the NWT. One of these activities is the New Business Placement Call Out program which is ongoing and being conducted by Johnstown. Policyholders are asked about their policy including questions about AP. There is also a Policyowners Manual, being developed by ILI Prod Mkt Dev, that will soon be given out with every new issue of Life at 98 policies. This document also contains information about AP.

**CONFIDENTIAL**

MP4011070902

In summation, our AP NWT has made significant progress by implementing much needed support at a time when MetLife is being questioned by its policyholders, the media, outside legalities, insurance departments as well as by members of our own legal, ethical and compliance units. The AP activities that are installed and those close to being completed have reached that point because of the determination of our NWT to overcome the obstacles that we faced.

A main obstacle was securing/maintaining the discipline required by our NWT to work on AP while also working on their own day to day jobs. All of our members have other high priority work that must be completed on a timely basis. No one is exclusively assigned to work solely on the AP effort. We, like many other NWTs, are faced with being spread out between remote sites including Tulsa, Warwick, Scranton, New York and Bridgewater. We accomplished our objectives with very minimal travel. Instead, but not without difficulty, we maximized the use of teleconferencing. Through all of this, the AP NWT managed to accomplish its most meaningful objectives which I outlined above.

William Barnewoll

CONFIDENTIAL

Jim Rayl
Director
Customer Services & Communications
MetLife Customer Service Center
Tulsa, OK

Your memo on APP was of great interest. Can you give me some details on the number of calls about going on APP and the number about resuming premium payments?

On the broader issue of providing customer service, please have faith and don't get hung up if someone mentions expense. We're making progress and we're still on track and you deserve a lot of the credit for changing attitudes.

Francis P. Lynch
Senior Vice-President
Customer Services
Individual Life Insurance

November 9, 1995

CONFIDENTIAL

MP401107 0904

MP4011070905

## ACCELERATED PAYMENT (AP) ARRANGEMENT

**Tulsa Customer Services**

B. Gardner
D. West    *
C. Pager   *
D. Lyons
J. Eidschun *
L. Grant   *

**Warwick Customer Services**

C. Farugia *
K. Schoos *
A. Smith
B. Glittone  *
T. Thomas  *
P. Knott   *

**I.L.I. Financial Mgmt.**

| | |
|---|---|
| R. Schlanger | BRW 3E |
| G. Fallahee | BRW 3E |
| T. Weigand | BRW 3E |
| A. Compasano | BRW 1N |
| R. Flanagan | BRW 1N |
| R. Musen | BRW 1E |

**I.L.I. Career Agy. Oper.**

| | |
|---|---|
| M. Harwood | BRW 1E |
| K. Kirk    * | BRW 1N |
| B. Kerr  * | BRW 1N |

**I.L.I. Product Planning**

| | |
|---|---|
| A. Kandel * | BRW 1N |
| M. Kaplan | BRW 1N |

**I.L.I. Marketing**

| | |
|---|---|
| R. Steve * | BRW 1NW |
| D. McGrath * | BRW 1NW |

**Law**

| | |
|---|---|
| I. Shuman  * | NYHO 7G |

cc AP nwt

**I.L.I. Customer Services**

| | |
|---|---|
| T. LaBadia | BRW 2E |
| S. Kopolovics | BRW 2E |
| J. Hodel | SCC |
| R. Delaney  * | SCC |
| R. Schramm | BRW 3E |
| W. Barnewold * | BRW 3E |
| R. Brennan * | BRW 2E |
| T. Brownlee  * | SCC |
| A. Corrente  * | SCC |
| K. Craven * | SCC |
| N. Giacometti | SCC |
| R. Kubick * | SCC |
| E. Kocis   * | SCC |
| L. Kochis | SCC |
| K. Gawel | SCC |
| J. Kozlowski * | BRW 3E |
| T. Lovelace  * | SCC |
| W. Magnot * | SCC |
| J. McClurg | SCC |
| R. Ruggieri  * | BRW 3E |
| J. Tyson * | SCC |
| B. DeSandre  * | BRW 3E |
| P. McLoughlin * | BRW 3E |
| M. McCleneghan* | SCC |
| K. Panzino  * | BRW 3E |
| J. Rightor | SCC |
| E. Wasser  * | SCC |

**I.L.I.  Consulting Services**

| | |
|---|---|
| L. Vranka | NYHO 5E |
| M. McDermott* | NYHO 5E |

**Canadian Operations**

| | |
|---|---|
| C. Ferguson | CCC |
| C. Hanrichs | Can.Hd Off. |
| P. Roy | Can. Hd. Off. |

* - AP NWT MEMBERS

**CONFIDENTIAL**

PAGE.023

MP401070906

### Accelerated Payments

The following AP actions are contemplated for 1995. Activity
number 3 requires further concurrence by additional members of
top management. Target dates for completion and installation are
provided in most cases.

1.  The stuffer version of the AP arrangement brochure has been
    printed and a supply of about 85,000 has been delivered to
    Scranton. Another 15,000 brochures will be attached to the
    field release.

    All active AP policyholders will have the stuffer version of
    the brochure mailed to them in the same envelope with their
    AP Anniversary Statement. It will take a calendar year to
    reach them all.

    The Welcome to AP letters, which installed on March 9, 1995,
    will now have a stuffer included in the envelope as they
    are mailed.

    ██████████████████████████████████████████ The mailings will
    begin in early April 1995.

2.  Special runs are being made to determine how many base
    policies with/without PUAR have an AP arrangement that is
    going to collapse before the life expectancy of the policy
    is reached. Policies are going to be valued by PHIOS/Engine
    to determine how many are going to collapse. The policies
    will be categorized as collapsing within a year, within 2
    years, within 5 years, within 10 years and 10 years or more.
    Policy numbers and other information will be extracted from
    the master files.

3.  If an AP arrangement is expected to "collapse" at the
    anniversary after next, then "collapse" year will be shown
    on Anniversary Statements. It is intended not to show
    "collapse" year information when an AP arrangement is more
    than two anniversaries away from "collapse". Additional
    testing is underway to enable this type of collapse year
    sensitivity. The 2 year anniversary threshold may be
    temporary but it is a planned to reach those who are closer
    to "collapse".

    Additional members of top management have to approve this
    threshold strategy and the collapse year parameter selected.
    Based on results of item 2. above and experience with the 2
    year anniversary threshold policies, a decision can be made
    to stay with 2 years or alert policyholders when within 5,
    10 or more anniversary years of the expected collapse.

**CONFIDENTIAL**                        **REDACTED - ATTORNEY
                                         CLIENT**

Billing documents will continue to be used to advise policyholders when their AP arrangement becomes and remains "insufficient" to pay the next anniversary's premium.

4.  A new SONIC message has to be developed which can be sent to sales offices everytime an "insufficient" date is shown on Billing documents and when "collapse" year is shown on an Anniversary Statement. A link between the Daily Reports Trail and Weekly Anniversary trail will be needed to accomplish this task.  The text of a new SONIC message must be developed and approved. It is believed that additional LD approval won't be needed for the SONIC message wording. System development investigation has begun but it is expected to take sometime to implement this requirement.

5.  The 12 AP letters and SONIC messages that show "collapse" year and "insufficient" information are being tested and checked out. These letters will advise policyholders at the time when they take a loan or make a withdrawal that has disrupted their AP arrangement. The "collapse" year in the letters, unlike the anniversary statements, will be the projected date of collapse regardless how many years that is beyond the upcoming anniversary.

███████████████████████████ A date for installation is being targeted for mid-April 1995. There are no plans to mail stuffers with these AP letters.

6.  One day turn around for placing eligible policies on AP is actively being developed. Target dates for completion are expected shortly.

    This may require some change in wording or in the mailing schedules for "AP Eligibility" and "Welcome to AP" letters. It may be desirable to combine wording from both types of letters and have a single mailing in these situations.

7.  Systems development is continuing for the 4 options that will be offered to policyholders whose AP arrangements will collapse or become insufficient. The purpose of the options is to extend the tenure of the AP arrangement. Target dates for completing this effort are expected shortly.

    Option 1 was mentioned several times in the preceding paragraphs. This shows "collapse" year on AP anniversary statements.

    The wording for Option 1 on the AP anniversary statement will be expanded somewhat to advise that use of current dividend can be applied to pay premiums until the dividends are depleted. If there is a PUAR, cash values are used in a similar manner. The AP arrangement can be kept afloat until YYYY at which time payments may have to be made out of

**CONFIDENTIAL**                    REDACTED - ATTORNEY
                                     CLIENT

MP401070907

pocket. "Collapse" year will be recalculated prior to each anniversary.

Option 2 will be offered on Billing documents if there is a current dividend or cash value in a PUAR. The AP arrangement can be kept afloat if the policyholder makes a partial out-of-pocket payment to supplement the residual monies in the policy and/or PUAR. Partial support for this option installed last October but involves manual intervention. Extra systems support is required to automate the procedure that will combine dividend, cash value and partial payment to keep the AP arrangement afloat.

Option 3 will be offered when there is PUAR. The Billing document has to show exactly how much money must be dumped into the PUAR to keep the AP arrangement afloat.

Option 4 will appear on the Billing document. It advises the policyholder to pay the entire premium out of pocket.

The brochure and stuffer version of "MetLife's Accelerated Payment arrangement" will have to be revised to include the above mentioned options to coincide with the implementation of the systems support.

The reprinted stuffers will be mailed with "Welcome to AP" letters and with anniversary statements.

8.   AP arrangement processing for SWL/SIB - targeted for 8/95.

9.   AP arrangement processing for FWL/AIB.

10.  AP arrangement processing for new PUAR.

11.  AP arrangement processing for new L98.

12.  AP arrangement processing for FAIR.


*Bill Barnewold*
Bill Barnewold

March 28, 1995


**CONFIDENTIAL**

MP401107090B

·MAR 28 '95 19:06

PAGE.001

CONFIDENTIAL

✿ MetLife

MP401107090909

FAX # (908) 253-2984

### TELECOPIER TRANSMITTAL LETTER

PLEASE DELIVER THE FOLLOWING PAGES

TO:

NAME   CHERYL FAVER

LOCATION   TULSA CSC

TELEPHONE   8 - 252 - 8847

RE   AP ARRANGEMENTS - FOR DISUSSION AT
     THE WEDNESDAY 3/29/95 MEETING
     AT 10ᵃᵐ

FROM:

NAME   Bill BARNEWOLD

TELEPHONE   8 - 253 - 2202

DATE   3/28/95

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET   5

PLEASE GIVE COPIES TO THE AP NWT MEMBERS
IN YOUR OFFICE.

Bill
3/28/95

Metropolitan Life Insurance Company
Metropolitan Insurance and Annuity Company
Metropolitan Tower Life Insurance Company

MP4011070910

## ACCELERATED PAYMENT (AP) ARRANGEMENT

| Tulsa Customer Services | | P.I. Customer Services | |
|---|---|---|---|
| B. Gardner | | T. LaBadia | BRW 2E |
| J. Rayl | | S. Kopolovics | BRW 2E |
| D. West * | | J. Hodel | SCC |
| C. Fager * | | R. Delaney * | SCC |
| D. Lyons | | R. Schramm | BRW 3E |
| J. Eidschun * | | W. Barnewold * | BRW 3E |
| L. Grant * | | R. Brennan | BRW 2E |
| | | T. Brownlee * | SCC |
| Warwick Customer Services | | A. Corrente * | SCC |
| | | K. Craven * | SCC |
| J. Abela | | N. Giacometti | SCC |
| C. Farugia * | | R. Kubick * | SCC |
| K. Schoos * | | E. Kocis * | SCC |
| A. Smith | | L. Kochis | SCC |
| B. Glittone * | | K. Gawel | SCC |
| T. Thomas * | | J. Kozlowski * | BRW 3E |
| P. Knott * | | T. Lovelace * | SCC |
| | | W. Magnot * | SCC |
| P.I. Financial Mgmt. | | J. McClurg | SCC |
| | | R. Ruggieri | BRW 3E |
| H. Blakeslee | BRW 3E | B. DeSandre * | BRW 3E |
| E. Reiter | BRW 3E | P. McLoughlin * | BRW 3E |
| G. Fallahee | BRW 3E | M. McCleneghan* | SCC |
| T. Weigand | BRW 3E | K. Panzino * | BRW 3E |
| A. Compasano | BRW 1N | C. Rapisarda | SCC |
| R. Flanagan | BRW 1N | J. Rightor | SCC |
| R. Musen | BRW 1E | E. Wasser * | SCC |

| P.I. Career Agy. Oper. | | P.I. Consulting Services | |
|---|---|---|---|
| M. Levine | BRW 1E | L. Vranka | NYHO 5E |
| K. Kirk * | BRW 1N | M. McDermott* | NYHO 5E |
| B. Kerr * | BRW 1N | J. O'Connor | NYHO 5E |

| P.I. Product Planning | | Canadian Operations | |
|---|---|---|---|
| A. Kandel * | BRW 1N | C. Ferguson | CCC |
| M. Kaplan | BRW 1N | C. Hanrichs | Can.Hd Off. |
| | | P. Roy | Can. Hd. Off. |

| P.I. Marketing | | | |
|---|---|---|---|
| R. Steve * | BRW 1NW | * - AP NWT MEMBERS | |

**CONFIDENTIAL**

MF401107091

Barbara Gardner, ACS
Vice President
MetLife Customer Service Center - Tulsa


Re    AP - Accelerated Payment arrangement


Barbara, in the fall of 1993, an AP NWT was established to address the growing concerns associated with the AP arrangement. Even at that time, there was clear recognition that immediate attention must be given to educating our policyholders about AP.

Since many of these policyholders believe that their policy is *paid-up* or at the very least that *no further premiums will ever be due*, it was the goal of the AP NWT to initiate an educational program. This program included: a *Welcome* letter that would be sent out on every policy placed on AP and any policy changes that affected the AP arrangement would generate a letter to the policyholder. In addition, the billing documents and anniversary statements would contain information about the projected *collapse date* for the AP arrangement.

Even with all these efforts, I have a concern that we are not doing enough nor are we doing it fast enough. For example: an AP Consumer Brochure was developed to provide information about the AP arrangement and how it works. The original intent of this brochure was to send it to all new AP policyholders along with the AP *Welcome* letter. However, I have recently learned that it is only going to be given to our field associates. While I agree that this brochure should be available to the field, it should also accompany the *AP Welcome* letter. We can't continue to always rely on our field associates to communicate policy provisions to our policyholders. We have to start ensuring that all affected policyholders are notified in a uniform and informed manner.

Also, in the next couple of weeks, the billing documents to carry the AP *collapse date*. Our policyholders **will not understand**. Attached is a copy of a memo from Jim Rayl stating his concerns about how we are communicating this information. <u>I am in complete agreement.</u> A short statement on a billing document is not enough. We need to be providing a complete explanation about the AP problems <u>before</u> we place any information on the billing documents.

In today's environment, if we are not careful how and what we communicate, the situation will become explosive. To further illustrate that this is not a problem to be taken lightly, I am attaching an article from the December issue of Best's Review on this very subject. If we are going to provide *World Class Customer Service*, we have to do a better job of informing our policyholders.


Darlene West, ACS
Manager
Cash/Loan/Dividend/Maturities
MetLife Customer Service Center - Tulsa


January 11, 1995                                    **CONFIDENTIAL**

**✿ MetLife®**

**Marketing Communications**
MetLife Individual Sales

Re  Accelerated Payment (AP) Arrangement Customer
    Communications

To  The Field Force

In order to assure that our policyholders are fully informed
about their MetLife insurance policies and have complete
information for keeping their protection in force, there will
be a change in procedure regarding Accelerated Payment (AP)
arrangement billing documents.

As previously announced to the Field Force via a SONIC
electronic mail message, we have begun alerting Individual Life
Insurance customers if, based on the current dividend scale,
their AP arrangements will cease paying premiums within the
next five years.  On Monday, October 16, we began printing
these notifications directly on policyholders' AP Anniversary
Statements.  The messages are designed to inform customers of
this situation ahead of time so that they may determine, with
the help of their Account Representatives, how best to keep
their valuable coverage in force.

This enhancement to our policyholder communications will impact
policies for which the AP arrangement is currently in effect,
but for which dividend and/or Paid-Up Additions Rider (PUAR)
balances together with annual dividends will be insufficient to
pay premiums, based on the current dividend scale.  Prior to
this change, policyholders were notified only when their AP
arrangements were insufficient to pay the amount of premium
currently due.

Samples of an AP billing document and AP Anniversary Statement,
which include examples of the messages your clients may
receive, are attached.  These messages will inform policy-
holders of the specific reasons why there are insufficient
funds in their policies.

The messages that appear on the AP billing documents and
Anniversary Statements encourage policyholders with questions
about their AP arrangements to call their Account
Representatives for service.  The Anniversary Statements also
offer customers the option of speaking with a Customer Service
Representative by calling 1-800-MET-5000.  In the event that
you receive phone calls from clients regarding this

**CONFIDENTIAL**                    (See Reverse Side)

MP401107091Z

- 2 -

notification, you should be prepared to discuss payment options that will allow them to maintain their valuable insurance protection in the long run.

You will be notified which policies are affected through the Accelerated Payment Billing Report on SONIC beginning this week. Samples of the SONIC screens for this report are printed on the reverse side of the attached sample AP billing document and Anniversary Statement. They include examples of policy information and the kinds of messages you may receive about your clients' AP arrangements.

A copy of the AP Billing Report can be obtained by having a sales support associate access the Administrative Transactions Menu, 03 Print Reports Selection Menu, and key in either selection 17 or 18, Accelerated Payment Billing.

This important policyholder communication effort reflects MetLife's commitment to full disclosure and represents the work of the AP Natural Work Team, which is made up of represent- atives from key business and administrative units in Individual Life Insurance and MetLife Individual Sales. The team has made proactive communication to our policyholders about this payment arrangement one of its primary goals.

Watch for additional announcements concerning future enhancements to our policyholder communications and activities planned by the AP Natural Work Team.

If you have any questions regarding this new policyholder information initiative or the AP arrangement, please contact Alan Kandel, Product Manager, Life Product Planning, Individual Life Insurance, in the Bridgewater office at (908) 253-1240 or Roberta Steve, Manager, Customer Communications and Inforce Marketing Programs, Marketing Communications, MetLife Individual Sales, in the Bridgewater office at (908) 253-1122.

October 25, 1995.

Attachments

CONFIDENTIAL

9510YWB(exp1096)MLIC-LD

**MetLife®**

METROPOLITAN LIFE INS. CO.
8 EXECUTIVE DR SU 150 PO 4370
FAIRVIEW HEIGHTS IL 62208

Questions?

Contact your MetLife
Representative:

☎ 618-624-228!

## NOTICE OF PAYMENT DUE

| | |
|---|---|
| Amount Due | $    236.60 |
| Date Due | NOV 12, 199! |

POLLY C HOLDER
101 MAIN STREET
SOMEWHERE USA

| | |
|---|---|
| Policy Number | 123103884 A |
| Face Amt. of Insurance | $   10,000 |
| Payment Mode | ANNUAL |

Keep this part for your records.

| | |
|---|---|
| Name of Insured | Sales Office/Agency |
| POLLY C HOLDER | 232 / 869 |
| Plan | Amount Paid, Date Pai! |
| 20 PAYMENT LIFE | $ |

| POLICY BALANCES: | | DETAILS: | |
|---|---|---|---|
| ADDITIONAL PAID-UP INSURANCE | $409.33 | PREMIUM | $236.60 |
| | | AMOUNT DUE | $236.60 |

Please refer to other side for important information.

Thank you for insuring with MetLife.

YOUR POLICY WILL RECEIVE A DIVIDEND OF $128.90 ON NOVEMBER 12,
1995, PROVIDED PREMIUMS ARE PAID TO THAT DATE. THE EARNINGS ON
THE CASH VALUE OF YOUR PRIOR ADDITIONAL PAID-UP INSURANCE OF
$49.24 WILL PURCHASE $1.75 OF ADDITIONAL PAID-UP INSURANCE, PLUS
$358.34 OF INSURANCE PURCHASED BY THIS YEAR'S DIVIDEND.

THE ACCELERATED PAYMENT (AP) ARRANGEMENT IS IN EFFECT FOR THIS
POLICY. HOWEVER, THE DIVIDENDS ARE NOT SUFFICIENT TO PAY THIS
PREMIUM. THEREFORE, YOU MUST PAY THE AMOUNT DUE SHOWN ABOVE OR
CONTACT YOUR METLIFE REP TO DISCUSS OTHER PAYMENT ALTERNATIVES.

Sales Office/Agency
232/869

**MetLife®**

▲ Detach here and return
this part with your payment

| Policy No | Premium | Div Ded | Loan Interest |
|---|---|---|---|
| 123103884 A | 343.14 000 | 236.60 | |

| | |
|---|---|
| Name of Insured | Date Due |
| POLLY C HOLDER | NOV 12, 1995 |

POLLY C HOLDER
101 MAIN STREET
SOMEWHERE USA

| | |
|---|---|
| Amount Due | 236.60 |
| Loan Repayment | $ |

Please make check or money order payable to **MetLife**
Mail to:

METROPOLITAN
P O BOX 435
WARWICK  RI 02887-0435

| | |
|---|---|
| Unscheduled Payment | $NOT AVAILABLE |
| Amount Enclosed | $ |

Please do not write below this line

CONFIDENTIAL

MP401107091A

MP401107091S

CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
ACCELERATED PAYMENT BILLING ACTIVITY - RUNDATE    10/ 6/1995

```
DISTRICT    232   AGENCY   869        DATE PRODUCED     10/ 5/1995
POLICY NO.  123 103 884 A             ANNIVERSARY DATE  11/12/1995
POLICYOWNER NAME          POLLY C HOLDER
POLICYOWNER ADDRESS       101 MAIN STREET
                          SOMEWHERE USA
INSURED'S NAME            POLLY C HOLDER
PREMIUM      $236.60             1995 DIVIDEND      $128.90
CASH VALUE OF AI        $147.55             AI BALANCE           $409.33
****** DIVIDENDS INSUFFICIENT FOR ACCELERATED PAYMENT BILLING *******
```

CONFIDENTIAL

❖**MetLife**

METROPOLITAN LIFE INS. CO.
3893 RESEARCH PK DR PO BX 1083
ANN ARBOR MI 48106

Questions?

Contact your MetLife
Representative:

☎  313-995-19

| Amount Due | |
| --- | --- |
| $ | .179.9 |

| Date Due | |
| --- | --- |
| NOV 17 199 | |

Policy Number
123165092 A

# ANNIVERSARY STATEMENT

POLLY C HOLDER
101 MAIN STREET
SOMEWHERE USA

Face Amt. of Insuranc
$        10,00

Payment Mode
ANNUA

| Name of Insured | Sales Office/Agency |
| --- | --- |
| POLLY C HOLDER | 019 / 84 |

| Plan | Amount Paid, Date Pa |
| --- | --- |
| ENDOWMENT AT AGE 65 | $ |

| ADDITIONAL | | PREMIUM | $179.9 |
| --- | --- | --- | --- |
| PAID-UP INSURANCE | $431.45 | | |

YOUR POLICY WILL RECEIVE A DIVIDEND OF $109.90 ON NOVEMBER 17,
1995, PROVIDED PREMIUMS ARE PAID TO THAT DATE. THE EARNINGS ON
THE CASH VALUE OF YOUR PRIOR ADDITIONAL PAID-UP INSURANCE (AI) O
$193.78 WILL PURCHASE $6.88 OF AI, PLUS $230.79 OF INSURANCE
PURCHASED BY THIS YEAR'S DIVIDEND.

AS REQUESTED, IF YOU DO NOT WISH TO PAY THIS PREMIUM, IT WILL
BE PAID BY THE ACCELERATED PAYMENT (AP) ARRANGEMENT.
YOU CAN THEN DISCARD THE RETURN PORTION OF THIS STATEMENT.

YOUR DIVIDENDS WILL PAY THE PREMIUMS UNTIL 1996. AS DIVIDENDS AR
NOT GUARANTEED, THIS IS BASED ON THE CURRENT DIVIDEND SCALE. IF
THE PREMIUM IS PAID BY THE AP ARRANGEMENT, YOUR ADDITIONAL
PAID-UP INSURANCE WILL BE REDUCED TO $55.01. IF YOU DECIDE TO PA
THE PREMIUM, YOUR ADDITIONAL PAID-UP INSURANCE WILL BE THE AMOUN
SHOWN ABOVE.

FOR QUESTIONS OR SERVICE, PLEASE CONTACT YOUR METLIFE ACCOUNT
REPRESENTATIVE OR CALL 1-800-MET-5000 (1-800-638-5000).  OUR
BUSIEST DAY IS MONDAY, SO IT IS BEST TO CALL TUESDAY THROUGH
FRIDAY, IF POSSIBLE.

CONFIDENTIAL

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

❖**MetLife**

▲ Detach here and return
this part with your payme

| Policy No | | Premium |
| --- | --- | --- |
| 123165092 A | 348 11,000 | 179.90 |

| Name of Insured | Date Due |
| --- | --- |
| POLLY C HOLDER | NOV 17 199 |

| | Amount Due |
| --- | --- |
| POLLY C HOLDER | 179.9 |
| 101 MAIN STREET | |
| SOMEWHERE USA | |

Please make check or money order payable to **MetLife**
Mail to:

METROPOLITAN
P O BOX 435
WARWICK  RI 02887-0435

Amount Enclosed
$

Please do not write below this line

CONFIDENTIAL: PROPERTY OF METROPOLITAN LIFE AND AFFILIATED COMPANIES
INDIVIDUAL LIFE INSURANCE WEEKLY LISTING OF
ACCELERATED PAYMENT BILLING ACTIVITY — RUNDATE    10/ 6/1995

```
DISTRICT    019   AGENCY  840      DATE PRODUCED    10/ 5/1995
POLICY NO.  123 165 092 A          ANNIVERSARY DATE 11/17/1995
POLICYOWNER NAME         POLLY C HOLDER
POLICYOWNER ADDRESS      101 MAIN STREET
                         SOMEWHERE USA
INSURED'S NAME           POLLY C HOLDER
PREMIUM       $179.90              1995 DIVIDEND    $109.90
CASH VALUE OF AI          $206.19          AI BALANCE          $431.45
******      AP ARRANGEMENT WILL PAY PREMIUMS UNTIL 1996      *******
```

MP041007091

**CONFIDENTIAL**

CONFIDENTIAL

**❖ MetLife**

**Marketing Communications**
MetLife Individual Sales

**Re**  Accelerated Payment (AP) Arrangement Customer Communications

**To**  The Field Force

Communication is an integral component of outstanding customer service.  The effectiveness of our communication depends on how well and how consistently we provide our customers with important information about their MetLife policies.

This communication process is especially meaningful when it serves to educate policyholders about the value of the MetLife products and services that are available to them.

To help educate policyholders regarding MetLife's **Accelerated Payment (AP) arrangement**, an easy-to-read, question-and-answer consumer brochure was developed and introduced to the Field Force last year.  This eight-page brochure, entitled "MetLife's Accelerated Payment Arrangement..." (Form 18000121938), examines how the AP arrangement works and defines the crucial role that dividends play in the arrangement.

In order to ensure that <u>all</u> AP policyholders receive this vital information, this brochure has been redesigned as a one-page insert that will be mailed with anniversary statements to policyholders already active on the AP arrangement beginning in April.  Also beginning in April, all policyholders who become newly active on the AP arrangement will now receive a copy of the insert along with a "Welcome to AP" customer letter.

Although the format and design of the brochure has been altered to meet postage requirements, the text of the one-page AP insert is identical to the text of the legally-approved consumer brochure.  A sample of the insert version of the brochure is attached for your information.

For the past several months, the AP Natural Work Team, representing key business units within the Individual Life Insurance and MetLife Individual Sales organizations, has been implementing a multi-level, proactive customer communications strategy.  Future announcements will follow outlining when and how additional information regarding the AP arrangement will be provided to policyholders.

March 27, 1995

Attachment                              9503L03(exp0695)MLIC-LD

# MetLife's Accelerated Payment Arrangement...

## ...an alternative to paying premiums out-of-pocket

**When You Purchase A MetLife Whole Life Insurance Policy, You Receive:**

- insurance protection that's guaranteed for a lifetime;
- level premiums;
- attractive dividends;
- guaranteed cash value buildup;
- loan and withdrawal provisions.

While you can certainly appreciate the benefits of whole life insurance, you probably aren't looking forward to paying premiums for the rest of your life. Now you can get whole life insurance protection without spending your whole life paying for it.

**The Accelerated Payment Arrangement**

MetLife offers a premium payment arrangement that allows you to systematically apply a portion of accumulated dividends to pay your annual premiums after you have paid premiums out-of-pocket for a number of years. This arrangement, known as the Accelerated Payment (AP) arrangement, eliminates the need for you to pay your premiums by cash, check or money order.

**Let Your Dividends Work For You...**

One of the most attractive features of participating life insurance is that it pays dividends. Although dividends are never guaranteed, MetLife has a long and distinguished history of making dividend payments to policyholders, going all the way back to the early 1900s.



CONFIDENTIAL

Some policyholders look forward to receiving their dividend check in the mail, while others take advantage of the other dividend options we offer. Among these are allowing the dividends to accumulate with interest, or using them to purchase additional paid-up insurance.

**Dividends And The Accelerated Payment Arrangement**

Although not a dividend option, you can also use your dividends to pay premiums through our Accelerated Payment (AP) arrangement. To be eligible for this premium payment arrangement, you must pay premiums out-of-pocket for a certain number of years. You must also leave the policy's dividends with MetLife, usually under the Additional Paid-Up Insurance dividend option. When the dividend balance, together with all future dividends (based on the then current dividend scale) is sufficient to pay all future premiums, you can elect to pay premiums through the AP arrangement.

**Can I Use Any Other Policy Values To Pay Premiums Under The Accelerated Payment Arrangement?**

Yes. If your policy includes MetLife's Paid-Up Additions Rider (PUAR), you can use the cash value of this rider, along with your dividends, to pay your premiums under the AP arrangement.

**The Accelerated Payment Arrangement Sounds Too Good To Be True. What's The Catch?**

There isn't any. However, it's important to understand that because the AP arrangement is completely dependent on dividends, it is not guaranteed. Think of dividends as the fuel for this payment vehicle. Any fluctuations in dividends will directly impact this payment arrangement. Any increase in dividends may allow you to elect the AP arrangement sooner than originally anticipated. On the other hand, a decrease in dividends could require you to make more out-of-pocket payments than expected before becoming eligible for the AP arrangement. Also, subsequent reductions in dividends may result in your having to pay a portion of some premium payments in cash or even resuming full premium payments years after you started using the AP arrangement.

**What Impact Does The AP Arrangement Have On My Policy Values?**

When you choose the AP arrangement your policy's guaranteed cash value will continue to grow as stated in your policy. However, your accumulated dividends will be reduced as compared to what they would have been if you had paid premiums out of your pocket. Therefore, you might prefer to pay the premiums yourself so that dividends may continue to increase the value of the policy.



MP401107O919

CONFIDENTIAL



**Does Taking Advantage Of The Accelerated Payment Arrangement Mean
That I Have A Fully Paid-Up Policy?**
No. This method of paying premiums does not make the policy "paid-up" or reduce the number
of years premiums must be paid. It simply allows you to pay your premiums using the policy's
dividends, as long as the dividend balance is sufficient, instead of paying them out-of-pocket.

**How Does This Payment Arrangement Differ From The Premium
Reduction Dividend Option?**
Under the Premium Reduction dividend option, only the current year's dividend is used to offset, or
completely pay, the current premium. Therefore, if the premium is greater than the dividend, you
will need to make a partial premium payment out-of-pocket. When the annual dividend is greater
than the current premium, the total premium is paid by the dividend. With the AP arrangement, the
annual premium will be paid by your entire dividend balance, not just the current year's dividends.

**If Dividends Aren't Guaranteed, Then What Is?**
If the premiums are paid when due, we will pay the beneficiary the death benefit stated in the
policy. That's not a promise — it's a guarantee. We will provide that benefit whenever the insured
dies — whether it's next week, next year or 70 years from now. In addition, the policy has a cash
value that is guaranteed to increase over time.

**When My Premiums Are Paid Through The Accelerated Payment Arrangement,
Will I Receive A Statement?**
Yes, you will receive an anniversary statement approximately four weeks before your policy's
anniversary date. This statement will show the amount due as well as how long your policy can
remain on the AP arrangement, based on the current dividend scale.

You will be given the option of either paying the premium out-of-pocket or having it paid under
the AP arrangement. If not paid by you, the premium will be paid through the AP arrangement
21 days after its due date.

**How Can I Find Out When I Can Begin Paying My Premiums Using
The Accelerated Payment Arrangement?**
You must contact your MetLife Representative and let him or her know that you would like to pay
your life insurance premiums through the AP arrangement. A determination will be made regarding
whether or not your policy's dividend and/or PUAR balance(s) are sufficient to implement this
payment arrangement. You can also call 1-800-MET-5000 during regular business hours and speak
to one of our Customer Service Representatives.

**Aside From A Fluctuation In Dividends, What Other Factors Can Cause Me To
Pay Premiums Out-Of-Pocket After I Begin The Accelerated Payment Arrangement?**
There are certain transactions that may adversely affect this payment arrangement.
Here are some examples:
- if you take a policy loan or fail to pay loan interest;
- if you withdraw policy values.

There are also certain transactions that can cancel the AP arrangement. Some examples include:
- if you change your dividend option;
- if you change your frequency of payment from annual to some other mode of payment.

**What Happens If All My Future Premiums Can't Be Paid Through
The Accelerated Payment Arrangement?**
If all of your future policy premiums can no longer be paid through the AP arrangement, MetLife will
notify you regarding the year that you have to once again begin paying your premiums out-of-pocket.
You should contact your MetLife Representative to discuss alternative payment arrangements.

It's important to understand that the AP arrangement may not be a permanent way to
eliminate out-of-pocket premiums. And it will impact the growth of your policy. If you have any
questions about dividends or the Accelerated Payment arrangement, please call your MetLife
Representative, or call 1-800-MET-5000 during regular business hours. We will be happy to
assist you.

**✪MetLife**
Metropolitan Life Insurance Company
One Madison Avenue, New York, NY 10010

J9000125863 (0195) Printed in U.S.A.                    9409AFU (exp0696) MLIC-LD

CONFIDENTIAL

**❄ MetLife**

**Marketing Communications**
MetLife Individual Sales

Re  Accelerated Payment (AP) Arrangement Customer Communications

To  The Field Force

A great deal of industry discussion has centered on the manner in
which accelerated premium payments have been communicated to
policyholders.  At MetLife, this option is available to
policyholders via the Accelerated Payment (AP) arrangement.  In
particular, renewed emphasis has been placed on educating
policyholders about the impact of dividends or other policy
changes on these payment arrangements -- especially when dividend
reductions or policy changes mean that the policyholder will have
to make additional out-of-pocket payments.

At MetLife, we are committed to providing the very best service
to our customers.  An important part of providing superior
service is to communicate clearly, effectively and promptly with
our policyholders.  For the past several months, key business
units within the Individual Life Insurance and MetLife Individual
Sales organizations have been working together through the AP
Natural Work Team to develop enhanced communications materials
that will help to explain the AP arrangement to our
policyholders.

As part of this effort, the AP Natural Work Team has created a
series of customer correspondence designed to update
policyholders about any change in the status of their AP
arrangements or their policies' eligibility for this arrangement.
Beginning in March, these letters will be sent to AP
policyholders as circumstances warrant.

Attached you will find samples of this new correspondence.  These
letters are written in simplified language that should help to
clarify this sometimes misunderstood arrangement for many
policyholders.  Each letter encourages policyholders to contact
their Account Representative for more information.

The first six letters will be produced by the Consolidated
Warrant System (CWS) in Scranton and will be mailed in response
to policyholders who have inquired about their eligibility for
the AP arrangement.

You will not receive copies of the letters as they are sent to
your clients, but you will be notified via reports on SONIC.  To
find information concerning the six CWS letters, sign on to the
Administrative Transaction main menu and choose Selection 3,
Print Reports.  On the Print Reports Control Menu screen, choose

(See Reverse Side)

- 2 -

MP4011070922

Selection 6, CASS/Payment Report.  This is an existing report, which will now contain updates regarding AP inquiries.  The CASS/Payment Report is updated daily and will automatically print for your whole office through normal print manager activities.  A sample of the report screen follows the six CWS sample letters.

The following series of nine letters will be produced by the Daily Reports System in Scranton once a policy is placed on the AP arrangement.  These letters will welcome the policyholder to the AP arrangement or notify them whenever the arrangement is affected by a variety of policy transactions.

To find information concerning the nine Daily Reports System letters, you can access the new **Accelerated Payment Arrangement Report** by entering the Administrative Transaction main menu. Choose Selection 3, Print Reports.  On the Print Reports Control Menu screen, key in Selection 14, the AP Arrangement Report. This report will also automatically print for the entire office through normal print manager facilities and correspondence activity will be reported on separate pages for each Field Representative Number.  A sample of the AP Arrangement Report follows the nine sample Daily Reports System letters.

The report will list policy number (with suffix), policyowner name and an alpha-numeric code and letter description that corresponds to the alpha-numeric code in the bottom right-hand corner of each letter.

The Accelerated Payment Arrangement Report will be updated weekly, on Friday night, to be available on Saturday morning for printing.  Policy information will remain on the report for three weeks and then be removed.

Watch for future releases that will announce additional policyholder correspondence enhancements concerning the AP arrangement.

If you have any questions regarding this new policyholder correspondence or the AP arrangement, please contact Alan Kandel, Product Manager, Life Product Planning, in the Bridgewater office at (908) 253-1240 or Roberta Steve, Manager, Customer Communications and Inforce Marketing Programs, in the Bridgewater office at (908) 253-1122.

March 10, 1995

Attachments

**CONFIDENTIAL**

9503K6F(exp1295)MLIC-LD

**Metropolitan Life Insurance Company**
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**❁ MetLife**

February 9, 1995

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY  12345

Re: Policy # 111 111 111 A      Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums.  We have determined that your policy is now eligible for this payment arrangement.  This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until Feb. 22, 1995.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's dividend balance. This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid.  Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this arrangement.  A future decrease in dividends could require you to make additional out-of-pocket premium payments.

Certain transactions can impact, or even terminate, your AP arrangement.  For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

**CONFIDENTIAL**

MP401107O923

MP401107092A

Please complete and return the enclosed form if you would like to have your premiums paid by the AP arrangement.  The form should be signed by you.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at (999) 999-9999 or contact me at the above return address.  You may also call our toll-free customer service number, 1+800+MET-5000 (1+800+638-5000).  Our busiest day is Monday, so the best time to call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
MetLife Customer Service Center - Tulsa

**CONFIDENTIAL**

**Metropolitan Life Insurance Company**
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**MetLife**

MP401107092S

February 9, 1995

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY  12345

Re: Policy # 222 222 222 A        Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums.  We have determined that your policy is now eligible for this payment arrangement.  This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until Feb. 22, 1995.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's dividend and Paid-Up Additions Rider balances.  This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

> This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid.  Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.
>
> Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this arrangement.  A future decrease in dividends could require you to make additional out-of-pocket premium payments.
>
> Certain transactions can impact, or even terminate, your AP arrangement.  For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

**CONFIDENTIAL**

MP401107092G

Please complete and return the enclosed form if you would like to
have your premiums paid by the AP arrangement.  The form should be
signed by you.

If you have questions about the AP arrangement or your insurance
coverage in general, please call your NetLife Representative at
(999) 999-9999 or contact me at the above return address.  You may
also call our toll-free customer service number, 1+800+MET-5000
(1+800+638-5000).  Our busiest day is Monday, so the best time to
call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
NetLife Customer Service Center - Tulsa

**CONFIDENTIAL**

Metropolitan Life Insurance Company
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**MetLife**

February 9, 1995

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY  12345

Re: Policy # 333 333 333 A      Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums.  We have determined that your policy is now eligible for this payment arrangement.  This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until Feb. 22, 1995.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's Paid-Up Additions Rider balance.  This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

> This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid.  Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

> Certain transactions can impact, or even terminate, your AP arrangement.  For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

Please complete and return the enclosed form if you would like to have your premiums paid by the AP arrangement.  The form should be signed by you.

**CONFIDENTIAL**

4221PLP        enclosure

MP401107092B

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at (999) 999-9999 or contact me at the above return address.  You may also call our toll-free customer service number, 1+800+MET-5000 (1+800+638-5000).  Our busiest day is Monday, so the best time to call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
MetLife Customer Service Center - Tulsa

**CONFIDENTIAL**

**Metropolitan Life Insurance Company**
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**MetLife**

February 9, 1995

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY  12345

Re: Policy # 444 444 444 A        Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums. We have determined that your policy will become eligible for this payment arrangement on June 10, 1996. This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until the eligibility date.

Once you are eligible, this payment arrangement will allow your annual premium to be paid by withdrawing the premium amount from your policy's dividend balance. This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

   This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

   Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this eligibility date. An increase in dividends could result in an earlier date while a decrease in dividends could extend it further into the future.

   Certain transactions can impact your eligibility for the AP arrangement: for example, taking a policy loan, failing to pay loan interest, withdrawing from policy values, changing your dividend option, or changing your frequency of payment to other than annual.

**CONFIDENTIAL**

4421FLR

MP401107092S

If on June 10, 1996, you still wish to have your premiums paid by
the AP arrangement, please contact your MetLife Representative.
We will then verify whether or not your policy is still eligible for
this arrangement.

If you have questions about the AP arrangement or your insurance
coverage in general, please call your MetLife Representative at
(999) 999-9999 or contact me at the above return address.  You may
also call our toll-free customer service number, 1+800+MET-5000
(1+800+638-5000).  Our busiest day is Monday, so the best time to
call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
MetLife Customer Service Center - Tulsa

**CONFIDENTIAL**

MET00110709560

**Metropolitan Life Insurance Company**
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**ΩMetLife**

February 9, 1995

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY  12345

Re: Policy # 555 555 555 A        Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums. We have determined that your policy will become eligible for this payment arrangement on July 20, 1997. This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until the eligibility date.

Once you are eligible, this payment arrangement will allow your annual premium to be paid by withdrawing the premium amount from your policy's dividend and Paid-Up Additions Rider balances. This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this eligibility date. An increase in dividends could result in an earlier date while a decrease in dividends could extend it further into the future.

Certain transactions can impact your eligibility for the AP arrangement: for example, taking a policy loan, failing to pay loan interest, withdrawing from policy values, changing your dividend option, or changing your frequency of payment to other than annual.

**CONFIDENTIAL**

4221FLR

MP4011070932

If on July 20, 1997, you still wish to have your premiums paid by the AP arrangement, please contact your MetLife Representative. We will then verify whether or not your policy is still eligible for this arrangement.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at (999) 999-9999 or contact me at the above return address.  You may also call our toll-free customer service number, 1+800+MET-5000 (1+800+638-5000).  Our busiest day is Monday, so the best time to call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
MetLife Customer Service Center - Tulsa

**CONFIDENTIAL**

**Metropolitan Life Insurance Company**
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**MetLife**

February 9, 1995

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY  12345

Re: Policy # 666 666 666 A      Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums.  We have determined that your policy will become eligible for this payment arrangement on August 1, 1998.  This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until the eligibility date.

Once you are eligible, this payment arrangement will allow your annual premium to be paid by withdrawing the premium amount from your policy's Paid-Up Additions Rider balance.  This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

> This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid.  Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

> Certain transactions can impact your eligibility for the AP arrangement: for example, taking a policy loan, failing to pay loan interest, withdrawing from policy values, changing your dividend option, or changing your frequency of payment to other than annual.

If on August 1, 1998, you still wish to have your premiums paid by the AP arrangement, please contact your MetLife Representative. We will then verify whether or not your policy is still eligible for this arrangement.

**CONFIDENTIAL**

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at (999) 999-9999 or contact me at the above return address. You may also call our toll-free customer service number, 1+800+MET-5000 (1+800+638-5000). Our busiest day is Monday, so the best time to call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
MetLife Customer Service Center - Tulsa

**CONFIDENTIAL**

MP401070934

CONFIDENTIAL:  NEITHER THIS DOCUMENT NOR THE INFORMATION CONTAINED HEREON IS TO
BE COPIED OR USED FOR ANY PURPOSE OTHER THAN METROPOLITAN BUSINESS.

CWS NOTICE OF CASH QUOTES, MATURITIES, AUTOMATIC PREMIUM LOANS, PENDING CAS
PAYMENTS, AND ACCEL PAY INQUIRIES SUBMITTED FROM OTHER OFFICES.    02/09/9

| POLICY NO/SUFF/ACTION | HO | PAYEE NAME / ADDRESS / POLICYOWNER | CASH VALUE |
|---|---|---|---|
| 111 111 111 A<br>ACCEL PAY ELIGIBILITY<br>INQUIRY - POLICY IS<br>ELIGIBLE | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 100.00 |
| 222 222 222 A<br>ACCEL PAY ELIGIBILITY<br>INQUIRY - POLICY IS<br>ELIGIBLE | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 200.00 |
| 333 333 333 A<br>ACCEL PAY ELIGIBILITY<br>INQUIRY - POLICY IS<br>ELIGIBLE | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 300.00 |
| 444 444 444 A<br>ACCEL PAY ELIGIBILITY<br>INQUIRY - POLICY IS NOT<br>ELIGIBLE UNTIL 06/10/96 | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 400.00 |
| 555 555 555 A<br>CCEL PAY ELIGIBILITY<br>NQUIRY - POLICY IS NOT<br>ELIGIBLE UNTIL 07/20/97 | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 500.00 |
| 666 666 666 A<br>ACCEL PAY ELIGIBILITY<br>INQUIRY - POLICY IS NOT<br>ELIGIBLE UNTIL 08/01/98 | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 600.00 |
| 888 888 001 A<br>CASH QUOTE | NEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 800.00 |
| 888 888 002 A<br>PENDING CASH SURRENDER | NEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 800.00 |
| 888 888 003 A<br>INITIAL MATURITY | NEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 800.00 |
| 888 888 004 A<br>CASH QUOTE AND<br>REQUEST FORM SENT | TELE | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY  12345<br>POLLY C HOLDER | 800.00 |

THIS REPORT HAS BEEN PREPARED FOR INFORCE DISTRICT XXX, AGENCY 999

**CONFIDENTIAL**

MP401107093S

**MetLife**
4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401107G936

FOR QUESTIONS OR
SERVICE, PLEASE CAL
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>193 456 789 PR</u>          JANE POLOWNER
     Policy Number                Name of Insured

Dear Policyowner

We are pleased to inform you that future annual premiums for this policy will be paid by the
Accelerated Payment (AP) arrangement.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium
amount from your policy's dividend balance. This will eliminate the need for you to pay your
premiums by cash, check or money order.

However, you will continue to receive a billing notice approximately four weeks before the
anniversary date of your policy. At that time, you will have the option of either paying the
premium yourself or having it paid by the AP arrangement. If not paid by you, the premium will
be paid by the AP arrangement 21 days after the due date.

It is important for you to understand the following with respect to the AP arrangement:

> This method of paying premiums <u>does not</u> make the policy "paid-up" nor does it
> reduce the number of premiums that must be paid. Instead, the AP arrangement
> simply allows you to pay your premiums using policy values as long as those values
> are sufficient.

**CONFIDENTIAL**

> Since the current dividend scale is not guaranteed for the future, it is important to
> remember that any fluctuation in future dividend scales may change this
> arrangement. A future decrease in dividends could require you to make additional
> out-of-pocket premium payments.

> Certain transactions can impact, or even terminate, your AP arrangement. For
> example, if you take a policy loan, fail to pay loan interest, withdraw from policy
> values, change your dividend option, or change your frequency of payment to other
> than annual, you may need to resume out-of-pocket premium payments.

If you have questions about the AP arrangement or your insurance coverage in general, please call
your MetLife Representative at the telephone number listed above.

Thank you
for
insuring
with
MetLife.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES                                   AP-A
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

**MetLife**
4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401107093?

FOR QUESTIONS OR
SERVICE, PLEASE C
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>203 456 789 PR</u>          <u>JANE POLOWNER</u>
     Policy Number                          Name of Insured

Dear Policyowner

We are pleased to inform you that future annual premiums for this policy will be paid by the Accelerated Payment (AP) arrangement.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's dividend and Paid-Up Additions Rider balances. This will eliminate the need for you to pay your premiums by cash, check or money order.

However, you will continue to receive a billing notice approximately four weeks before the anniversary date of your policy. At that time, you will have the option of either paying the premium yourself or having it paid by the AP arrangement. If not paid by you, the premium will be paid by the AP arrangement 21 days after the due date.

It is important for you to understand the following with respect to the AP arrangement:

**CONFIDENTIAL**

This method of paying premiums <u>does not</u> make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this arrangement. A future decrease in dividends could require you to make additional out-of-pocket premium payments.

Certain transactions can impact, or even terminate, your AP arrangement. For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Thank you
for
insuring
with
MetLife.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK

AP-B

**❖ MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions ?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401107093B

---

FOR QUESTIONS OR
SERVICE, PLEASE CALL
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re  213 456 789 PR
    Policy Number

JANE POLOWNER
      Name of Insured

Dear Policyowner

We are pleased to inform you that future annual premiums for this policy will be paid by the Accelerated Payment (AP) arrangement.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's Paid-Up Additions Rider balance. This will eliminate the need for you to pay your premiums by cash, check or money order.

However, you will continue to receive a billing notice approximately four weeks before the anniversary date of your policy. At that time, you will have the option of either paying the premium yourself or having it paid by the AP arrangement. If not paid by you, the premium will be paid by the AP arrangement 21 days after the due date.

It is important for you to understand the following with respect to the AP arrangement:

> This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

> Certain transactions can impact, or even terminate, your AP arrangement. For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-C

**MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions ?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP4011070939

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re 133 456 789 PR          JANE POLOWNER
    Policy Number          Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent policy change, the premiums for this
policy will no longer be paid by the Accelerated Payment (AP) arrangement.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making
out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call
your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

**CONFIDENTIAL**

Thank you
for
insuring
with
MetLife.

AP-3A

**⚙️MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions ?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401107094O

FOR QUESTIONS OR
SERVICE, PLEASE CAL
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re 143 456 789 PR          JANE POLOWNER
_____        _____
   Policy Number              Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent request, the premiums for this policy
will no longer be paid by the Accelerated Payment (AP) arrangement.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making
out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call
your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
JAN 09, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-3B

**❄️ MetLife**
4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?
Contact your MetLife
Representative:
☎ **817-776-2520**
Sales Office / Agency:
**D41/023**

FOR QUESTIONS OR
SERVICE, PLEASE CA
**1-800-MET-5000**
**(1-800-638-5000)**
OR THE TELEPHONE
NUMBER ABOVE.

MP4011070941

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>153 456 789 PR</u>          <u>JANE POLOWNER</u>
    Policy Number                        Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change to the Premium Reduction dividend option, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement. In order for this payment arrangement to remain in effect, the dividend option must be either Additional Paid-Up Insurance or Dividends to Accumulate at Interest.

Therefore, in order to keep your policy in full benefit, it may be necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

**CONFIDENTIAL**

Thank you
for
insuring
with
MetLife.

AP-3C

**۞MetLife®**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?

Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401107042

FOR QUESTIONS OR
SERVICE, PLEASE CALL
 1-800-MET-5000
 (1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>163 456 789 PR</u>          <u>JANE POLOWNER</u>
    Policy Number                Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change to the Cash dividend option, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement. In order for this payment arrangement to remain in effect, the dividend option must be either Additional Paid-Up Insurance or Dividends to Accumulate at Interest.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
JAN 09, 1995

Thank you
For
insuring
with
MetLife.

**CONFIDENTIAL**

AP-3D

**❄ MetLife®**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>173 456 789 PR</u>
Policy Number

<u>JANE POLOWNER</u>
Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change in the frequency of your premium payments, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement. In order for this payment arrangement to remain in effect, premiums must be paid annually.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-3E

MP4011070943

**MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?

Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP4011070944

FOR QUESTIONS OR
SERVICE, PLEASE CALL
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re 183 456 789 PR          JANE POLOWNER
   Policy Number                Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change in the frequency of your premium payments, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement. In order for this payment arrangement to remain in effect, premiums must be paid annually.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

Your next premium is due MAR 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
JAN 09, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-3F

CONFIDENTIAL: NEITHER THIS DOCUMENT NOR THE INFORMATION CONTAINED HEREON IS TO
BE COPIED OR USED FOR ANY PURPOSE OTHER THAN METROPOLITAN BUSINESS.

E11.80  REPORTS SENT LETTERS ON ACCELERATED PAYMENT ARRANGEMENT POLICIES TO
POLICYOWNERS LISTED BELOW

POLICY NUMBER/SUFF        POLICYOWNER                    VERSION/DESCRIPTION   DATE SENT

| | | | | |
|---|---|---|---|---|
| 213 456 789 | PR | JOHN Q POLOWNER | C WELCOME AP PUAR | 01/09/95 |
| 203 456 789 | PR | JOHN Q POLOWNER | B WLCME AP DV/PUAR | 01/09/95 |
| 193 456 789 | PR | JOHN Q POLOWNER | A WELCOME AP DIV | 01/09/95 |
| 183 456 789 | PR | JOHN Q POLOWNER | 3F MODE CHG-SP ACT | 01/09/95 |
| 173 456 789 | PR | JOHN Q POLOWNER | 3E MODE CHG-SEMI | 01/09/95 |
| 163 456 789 | PR | JOHN Q POLOWNER | 3D OPT CHG CASH | 01/09/95 |
| 153 456 789 | PR | JOHN Q POLOWNER | 3C OPT CHG-PRM RED | 01/09/95 |
| 143 456 789 | PR | JOHN Q POLOWNER | 3B CANC-REQ BY PH | 01/09/95 |
| 133 456 789 | PR | JOHN Q POLOWNER | 3A POLICY CHANGE | 01/09/95 |

DISTRICT:          AGENT:                      REPORT DATE: 01/09/95

MP401107094S

CONFIDENTIAL

**MetLife® Tulsa — Customer Services & Communications**



**OUTSTANDING SERVICE**
*Through Quality Service Skills*

We're Building Our Future On It

**To**    All Training, Resource & Second Tier CSRs

**Re**    "AP" (Accelerated Payment) Cases
          UL Policies With Inadequate Target Premiums

There has been a lot of dialogue about the impact of the changing dividend scale on "AP" cases. As you know, we get lots of complaints because policies are not eligible on the originally anticipated date.

The one issue we have not addressed is the fact that there are 83,000 policies that WERE eligible and placed on "AP," but because dividend scales changed AFTER they were on AP, they would now not be eligible. At some point in the future, premiums may again be required. It is estimated that 25% (20,750 policies) fall into this category.

One area that has not been discussed to any extent is that we have a very similar situation with UL policies. "Target" premiums were established on the basis of anticipated earnings and interest rates. However, now because of the changing economy, these earnings will not be realize. Consequently - AT SOME POINT IN THE FUTURE - the COI will exceed the amount available in the Accumulation Fund if only the "Target Premium" is being paid.

The attached material is some of what has come up because of the Accelerated Payment Natural Work Team. I didn't it was appropriate for everyone, but I at least wanted you to be aware that these issues are finally receiving attention at the Senior Management level.

April 28, 1994

**CONFIDENTIAL**

APR 21 '94  8:01  FROM METLIFE                TO 82528047        PAGE.003

MP4011070947

ATTACHMENT
4

| To: | Frank Lynch | |
| | Senior Vice-President | **CONFIDENTIAL** |
| | PI Customer Services | |
| | NYHO, Area - 5H | |

From:    Thomas M. La Badia
         Vice-President
         PI Customer Services
         Bridgewater, Area - 2E

Re:      *Request From Mr. Tweedie Concerning UL Customers*
         *With Target Premiums Inadequate To Carry Policies*

I have had several quick meetings on this subject and the related Traditional Business issues (e.g. Vanishing Premium/APP, Impact of Reduced Dividend Scales on Purchase Assumptions, etc.).

The most proper and comprehensive method of providing our customers with the impact of changes to dividend scales, interest rates and cost of insurance charges would require several major long term initiatives included in which are the following:

　　1.  Capture at Issue all information related to how a case was sold including purchase assumptions related to expected cash flow in and out of the contract. Retain and react to these assumptions whenever disturbed by changes in our inforce pricing(e.g. Dividend Scale Change, UL Interest Rate, Cost of Insurance Rate, etc.). Relate these changes to the policyholder life cycle goals such as College Funding, Pension Maximization, etc.

　　2.  Communicating changes to the policyholder along with possible alternative actions would require the restoration of a main frame inforce illustration system which could be generated by the Administrative Systems loading of necessary data to reflect changes and alternatives. This is presently only available via a Sales Representative entering necessary data and "what if" alternatives into a PC based inforce illustration system.

Both of the above initiatives are being addressed by people involved in major compliance activity, however, preliminary estimates indicate that a very lengthy and expensive effort will be required.

1

MP401107094B

As an alternative, I have asked my units to quickly devise a short term strategy based upon data and information presently available. We expect to have several proposals very shortly.

Among the alternatives being addressed are:

1. A redesigned bill having 3 alternatives which minimize the risk of unexpected premium being required for those already on APP.

2. More complete and direct notification to UL policyholders who may not be aware that their policies may not be supported by the planned, target premium and/or present cash flow into the accumulation fund.

3. Etc.

When the proposals are completed, we will forward them to you as well as to the various units, task forces and committees that are addressing the longer term strategy.

Thomas M. La Badia

March 30, 1994

cc  Tweedie, Miller, Kelly, Doby, Stadler, Kopolovics, Delaney, Loquasto, Ruggieri, Barnewold

CONFIDENTIAL

APR 21 '94  8:02  FROM METLIFE           TO 82528847        PAGE.005

Mr. Greg Doby
Vice-President


Re    Accelerated Payment Plan -- Alternatives


Greg, Bill Barnewold called and provided me with his estimate of
the cost and timeframe for implementing the APP alternatives
outlined in the attached memorandum.  In his estimation, the
changes could be made in  two-three months for a cost of
approximately $45,000.  However, If these changes are implemented
as part of the Fall 1994 portfolio changes, the cost would be about
$10,000 less.  Please let me know how we should proceed.


Wilhelmenia J. Taylor
Product Manager
Life Product Planning
Bridgewater, NJ, Ext. 1250


April 14, 1994


Attachment


cc:  Barnewold, DiPiazza, LaBadia, McLoughlin, Rigby


**CONFIDENTIAL**

MP401107C949

Mr. Greg Doby
Vice-President


Re    Accelerated Payment Plan -- Payment Options


This memo supplements our recent meeting with Tom LaBadia,
Mike DiPiazza, Bill Barnewold and Pat McLoughlin.  The goal of
this meeting was to develop a quick strategy for improving our
communications with policyholders already on APP.

As you know, the current situation is as follows:

> Situation #1:
>
> When a policyholder initially requests APP, a "full
> eligibility test" is performed.  This test determines if the
> annual premium can be paid for the remaining "life of the
> policy."  If the policy fails this test, the policyholder
> is told that the policy cannot go on APP and the the full
> annual premium must be paid out-of-pocket until such time as
> the policy does become eligible.  This is true even when
> there is a substantial dividend balance to pay the annual
> premium for a number of years, e.g. 15 years.
>
> Situation #2:
>
> When a policy passes the initial eligibility test, premiums
> are paid each year through the APP arrangement provided the
> policy passes a "sufficiency test."  We refer to this test
> as a "sufficiency test" because it simply verify that the
> dividend/PUAR balance is "sufficient" to pay the annual
> premium due that year.  It does not check to see if this can
> be done for the remaining life of the policy.  When a policy
> fails this sufficiency test, it is taken off the APP
> arrangement and the policyholder is sent a regular bill for
> payment of the premium.

Our goal is to reduce negative feelings on the part of our
customers regarding this payment arrangement by offering them
other payment alternatives.  The specific group we intended to
initially target are the policyholders described in situation #2.
However, I believe we should take the same approach for the
policyholders described in situation #1.


**CONFIDENTIAL**

MET01070950

MP401107095l

-2-

I have attached a copy of Mike Rigby's January 11, 1994 memorandum wherein Company records indicate nearly 83,000 policies are currently on APP as of year-end 1993. Of those, 25% do not have sufficient dividends/dividend balances to remain on APP for the "life of the contract." It is also important to note that these figures do not include policies with a Paid-Up Additions Rider (4,551). However, Mike conducted a sampling of 25 such policies and 21 of the PUAR policies or 84%, failed the eligibility test.

As discussed at the meeting, for each policy already on APP, a "full" eligibility test would be conducted as part of the anniversary processing. We agreed on the following approach for polices that fail the eligibility test.

Offer the policyholder the following options:

#1.   MetLife pays the full annual premium from dividends and/or PUAR for as many years as the balance(s) is sufficient. Include the calendar year in which the dividend/PUAR balance(s) will not be sufficient to pay the full premium. It is important to note that this date may change based on dividend scale decreases or increases.

We should, also let them know that thereafter, we can or will use the annual dividend credited each year toward the payment of the premium.

From what I have seen of policies that fail the eligibility test, the projected annual dividend for the "APP failure year," is substantial and is often only a year or two prior to the year in which the annual dividend would exceed the premium, i.e., crossover year. For example:

| | | |
|---|---|---|
| Annual Premium | $7315 | |
| Annual Div. "APP Failure Yr." | $7055 | (18th Year) |
| Crossover Year Dividend | $7520 | (19th Year) |

#2.   policyholder pays a partial premium -- the difference between the annual dividend and the annual premium.

Although this payment option mirrors the Premium Reduction Dividend option on the surface, the existing dividend option (AI or DWI) would not be changed.

#3.   policyholder pays the full annual premium out of pocket

CONFIDENTIAL

MP4011070952

-3-

An additional option could be offered to clients whose policies fail the eligibility test, but includes the Paid-Up Additions Rider (PUAR):

    #4.  policyholder makes a lump sum payment to the PUAR that would allow the policy to go on APP effective with that anniversary

The anniversary eligibility test will be based on the dividend scale then in effect.  Therefore, any increase or decrease in our dividend scale may:

    •change the policy year provided in payment option #1.

    •cause a policyholder who re-established eligibility when they originally elected payment option 4 (lump sum PUAR payment) to again become ineligible because of the dividend scale reduction.

Options #1, #2 and #3 do not attempt to re-establish eligibility but instead offer alternatives to eligibility.  Each year the policyholder will be offered all three options and provided with the most current information in order to make an informed decision.

When presenting these payment options to policyholders, we should also tell them the effect each option will have on their dividend/PUAR values.  Based on the amount of data that would be included on the APP Anniversary Statement, I believe we should change the size of the existing form to an 8 1/2" X 11" form with an additional perforated return stub.  See sample attached.

The anniversary statement should include wording along the following lines :

**CONFIDENTIAL**

    "The premiums for this policy are being paid through our Accelerated Payment Plan.  Under this payment plan, the annual premium is paid by withdrawing the premium amount from the [policy's dividend balance], as long as the balance is sufficient.

    Based on our current dividend scale, we have determined that the full annual premium can be paid until mo/day/year.  As a result, we offer you the following payment options:

    Option #1                )
    Option #2                ) Specific wording for each
    Option #3                ) option will be developed
    Option #4  (PUAR cases only)  )

    [ ] varies based on the APP Type selected by policyholder.

-4-

The following is a list of the four APP types available:

AP Type 1              Withdraw PUAR values only to pay annual
                       premiums

AP Types 2 & 3         Withdraw dividends and PUAR
                       values to pay annual premium

                       Type 2 = withdraw PUAR first,
                       followed by dividends

                       Type 3 = withdraw dividends first,
                       followed by PUAR

AP Type 4              Withdraw only dividends to pay premiums
(AI or DWI)

If you have any questions, please give me a call on Ext. 1250 in
Bridgewater.


Wilhelmenia J. Taylor
Product Manager
Life Product Planning
Bridgewater, NJ

April 4, 1994

cc:  B. Barnewold, M. DiPiazza, T. LaBadia
     P. McLoughlin, M. Rigby


CONFIDENTIAL

## FUTURE STATUS OF POLICIES ON THE ACCELERATED PAYMENT PLAN

A policy level projection of policies on the accelerated payment plan (APP) as of 11/93 was completed based on year end 1993 information. This analysis involved 82,778 policies and showed that 25% of the policies currently on APP have insufficient dividends and dividend balances to remain on APP. Attached is a breakdown by year of the dates of failure of these policies.

In my analysis of policies on APP I have excluded 4,551 policies with a paid up additions rider (PUAR). I will continue to work on these as time permits. A random sample of 25 policies with PUAR were tested using the online CWS APP quote system and 21 policies failed to sustain APP.

The following assumptions should be noted:

1) The 1994 dividend scale will continue unaltered.

2) Policies with both AI and DWI balances will use both dividend balances to remain on APP.

3) Policy holders will not withdraw any dividend balances other than for the APP arrangement.

4) No policyholder deaths,disabilities or cash surrenders.

In addition, some of the policies on APP as of 11/93 had become non-premium paying by 12/31/93.  Some had their cash-value paid while 180 policies were on extended term implying they had reached there anniversary after 11/93 and had insufficient dividends and dividend balances to pay their 1993 premium.

*M K R*

Michael K. Rigby
Actuarial Associate

1/11/94

**CONFIDENTIAL**

APR 21 '94  8:04  FROM METLIFE                    TO 82528847          PAGE.011

MP4011070955

## NUMBER OF POLICIES BY YEAR
## FALLING OFF APP STATUS
### (Excludes policies with PUAR)

| YEAR | POLICIES |
|------|----------|
| 1994 | 517 |
| 1995 | 878 |
| 1996 | 1,595 |
| 1997 | 2,153 |
| 1998 | 2,484 |
| 1999 | 2,575 |
| 2000 | 2,390 |
| 2001 | 2,064 |
| 2002 | 1,282 |
| 2003 | 962 |
| 2004 | 807 |
| 2005 | 735 |
| 2006 | 627 |
| 2007 | 477 |
| 2008 | 359 |
| 2009 | 279 |
| 2010 | 270 |
| 2011 | 160 |
| 2012 | 111 |
| 2013 | 60 |
| 2014 | 68 |
| 2015 | 23 |
| 2016 | 28 |
| 2017 | 16 |
| 2018 | 5 |
| TOTAL | 20,925 |

**CONFIDENTIAL**

APR 21 '94  8:04  FROM METLIFE          TO 82528847          PAGE.012

MP401107O956

**MetLife**

METROPOLITAN LIFE INSURANCE CO
41 PERIMETER CTR E SO 620
ATLANTA GA 30346

Questions?
Contact your MetLife Representative
404-399-9260
Sales Office (Agency):
3M6/671

**Payment Reminder for The Enricher.**
**MetLife's Paid-Up Additions Rider**

Anniversary Date
**March 28, 1994**

JOHN POLICYHOLDER
123 ANY STREET
APT A
ANYWHERE USA

Policy Number
**123456789 PR**

Enricher Issue Date
**March 28, 1993**

Enricher Status
**ISSUED NO PMTS**

Name of Insured
JOHN POLICYHOLDER

Face Amount of Insurance
**$250,000**

Plan
WHOLE LIFE WITH THE ENRICHER

Amount Paid, Date Paid

When you purchased the life insurance policy indicated above, you also chose to add The Enricher – our Paid-Up Additions Rider – to your policy. With this valuable rider, you can accumulate additional cash value, earn attractive dividends and increase your insurance protection.

Our records indicate that we have not yet received a payment for The Enricher.

According to the terms of this rider, in order to retain the right to purchase additional insurance, a payment must be made before the first anniversary date of the policy. If you do not make a payment by the anniversary date listed above, your right to make future payments will end. However, you will continue to receive basic protection under the terms of your life insurance policy.

If you wish to make a payment to The Enricher, please indicate the amount on the bottom portion of this notice and return it with your payment in the enclosed envelope.

If you have any questions, please call your MetLife Representative at the telephone number listed above.

At MetLife, we value your business and look forward to providing you with quality service – now and in the years ahead.

**MetLife**

Enricher® Payment

Mail to:

METROPOLITAN LIFE INSURANCE CO
P O BOX 436
WARWICK RI 02887-0436

Sales Office (Agency):
3M6/671

Policy Number:
123456789 PR

Name of Insured
JOHN POLICYHOLDER

JOHN POLICYHOLDER
123 ANY STREET
APT A
ANYWHERE USA

**CONFIDENTIAL**

MP401070957

To:   Frank Lynch
      Senior Vice President
      PI Customer Services
      NYHO
      Area - 5H

Re:   *Referral of Accelerated Payment Plan as "Paid Up"*

In reference to your note and Jim Rayl's 12\23 memorandum (copies attached). I have been working with Pam Duffy and Mike Harwood on this issue and the related "Reappearing Premiums" that are occurring because of lower dividend scales, higher cost of insurance charges, and lower UL interest rates.

Pam Duffy responded to Jim Rayl last month on his proposal to retest all policies on APP and notify all those who no longer pass the eligibility test. In lieu of that, marketing is creating an education program with material to be sent to the field and policyholders on APP explaining how it works and why it is important to periodically recheck eligibility through their field office.

Sincerely,

Thomas M. La Badia
Vice President
P.I. Customer Services                    **CONFIDENTIAL**
Bridgewater
Area - 2E

January 12, 1993

cc:   Pam Duffy, Barbara Gardner, Jim Rayl



**GET MET. IT PAYS.**

© 1958 United Feature Syndicate, Inc.

Memorandum from . . . FRANCIS P. LYNCH

To: Tom Le Brica

With whom in marketing
are you working?

Frank,
/14.

MP4011070958

**CONFIDENTIAL**

**✍)**                              CONFIDENTIAL

MP401107095

Thomas La Badia
Vice-President
P. I. Customer Services
Bridgewater  Area 2-E


RE:  Reappearing UL Premiums – Accelerated Payment Cases


We have reviewed Jim Rayl's November 7, 1992 memorandum and your
memorandum dated November 11, 1992.

We agree with all the points made in Jim's memorandum.

Ongoing eligibility testing for policies currently operating on
Accelerated Payment has become a necessity because of current
economic conditions.  Even if we undergo an economic recovery
which will allow us to increase our dividend scales in future
years, the lowering of the 1992 and 1993 dividend scales could
impact policies currently operating on AP, after the recovery has
taken place.

Our customers will be more accepting of the problem if they are
notified while lower returns on investments are a reality.  If we
wait until after economic recovery to tell them that a policy is
no longer eligible for AP because of something that happened in
the past, we could create more ill-will.  We do not want to
unnecessarily alarm our customers.  However, we feel we owe it to
our customers to notify them as soon as we become aware of a
problem.

We strongly agree that some type of letter or brochure that fully
explains AP should be sent to a customer as soon as his/her
policy is placed on AP.  Too many policyholders interpret AP as
making their policy "fully paid up".  So, when they are told
their policy is no longer eligible for AP due to lowered dividend
scales or dividend withdrawals, they almost immediately start to
complain or accuse the sales representative of lying.

Tom, we do not feel Jim is crying "wolf".  We have had to address
many of the situations he describes.  We feel a proactive
approach is the best approach.

*Kathy Schoos*

Kathy Schoos
Director
Customer Services & Communications
MetLife Customer Service Center – Warwick

December 17, 1992

cc:  J. Abela, J. Rayl, B. Glittone, P. Knott


*ac/me swi*

Pamela J. Duffy
Vice-President

Re: Reappearing UL Premiums and APP Cases

Tom LaBadia received the attached memo from Jim Rayl of the Tulsa Customer Service Center regarding APP situations. The memo provides additional information with regards to Jim's previous statements that policyholders believe that a policy is "paid-up" when the APP arrangement is operative and may be unaware that premiums are being paid by dividends and or PUAR value.

This information may be useful to you in preparing your communications on how APP really works.

Richard W. Schramm, FLMI
Manager
Personal Insurance Customer Services
Bridgewater Area (3E)   Ext. 2316
December 11, 1992

cc:  (Cover memo only)  B. Gardner (Tulsa), T. LaBadia, J. Rayl (Tulsa)

**CONFIDENTIAL**

Thomas LaBadia
Vice-President
Policy Administration & Customer Services
P.I. Customer Services
Bridgewater — AREA 2-E

Re   "Reappearing UL Premiums" - Accelerated Payment Cases

Tom, the article which follows appeared in the *National Underwriter* and it dealt with the idea of "reappearing premiums" on UL policies. Of equal or perhaps even greater concern to me are the reappearing premiums we are likely to encounter on existing "AP" cases. I raised this issue with Paul Garavaglia and John Hodel during their recent visit so perhaps it is being addressed. But I had not heard anything and this article prompted me to think about it again.

As I'm sure you're aware, as a result of the change in dividend scale this year we had cases where eligibility quotes were done by our sales offices at year end 1992 which indicated policies were eligible. However, when they came into us in early 1993 after our electronic systems had been modified for the new scale, these cases became ineligible and could not be placed on AP. This change in dividend scale has undoubtedly impacted the eligibility status of many of the policies currently on AP. I'm sure it goes beyond those that were placed on AP last year but would have been declared ineligible this year. As I understand it, once a policy is placed on AP, there is no ongoing "eligibility testing."

In some cases, it may not surface for several years that the dividends have become inadequate to fund the policy premiums. The point I tried to make to John and Paul was that it would be a lot easier to explain this situation to our policyholders now than it might be in the future. In otherwords, the national economy and the dramatic decline in interest *(and earnings)* rates is very obvious. If we notify these policyholders now that they may well have a problem in the future, they should be able to recognize what is happening in our economy. If, on the other hand, we wait until their policies run out of dividend values, it might be at a time when the economy and interest rates are much higher. And it would be more difficult to explain and harder for the policyholder to accept.

We are currently dealing with many complaints where policies were sold on the basis that they would be eligible for AP in "X" years. "X" years is now here and, because of the dividend scale change, eligibility has been pushed into the future. In spite of the "disclaimer" on the illustration about dividend projections, the policyholders get pretty upset and want to claim "misrepresentation." But, we have found that if you can get them to calm down and "look around" at what has happened, they will usually accept it. This would not be the case if the changes that have taken place in the economy weren't so obvious.

**CONFIDENTIAL**

NOTE:    THE CURRENT PROBLEM IS ALSO COMPOUNDED BY THE WAY THESE POLICIES WERE SOLD.  IN
THE VAST MAJORITY OF CASES WE SEE, "AP" WAS SOLD AND EXPLAINED BY THE
REPRESENTATIVE THAT THE POLICY WOULD BECOME "PAID-UP" IN "X" YEARS.  WHILE THIS
MAY HAVE BEEN THE EASIEST WAY TO EXPLAIN THE CONCEPT TO THE POLICYHOLDER, IT ONLY
COMPLICATES OUR EXPLANATION OF CURRENT INELIGIBILITY.  WE NEED TO PROVIDE
POLICYHOLDERS WITH A BETTER UNDERSTANDING AND EXPLANATION OF "AP" AS WELL AS THE
POTENTIAL IMPACT OF ECONOMIC CONDITIONS.  WE WOULD BE MUCH BETTER OFF TO EXPLAIN
THIS AT THE TIME THE POLICY IS PLACED ON "AP" THAN AT SOME POINT IN THE FUTURE WHEN
DIVIDENDS BECOME INADEQUATE TO COVER PREMIUMS.

Tom, my recommendation would be to run new eligibility tests on all cases *currently
on AP*.  If they fail the eligibility testing or perhaps are even close to failing, we
should notify those policyholders <u>NOW</u> that they may run into a problem in the
future.  I think our explanation will be much more readily accepted now.  On the
other hand, if any significant number of policyholders are so affected in the future,
it could do great damage to our image of financial stability and all the great strides
we have made in becoming a customer oriented Company.  For cases where eligibility
is inadequate or "close," we could recommend that the policyholder pay one *(or
more)* additional year's premium.

I would also recommend a couple other steps.  One, we may wish to consider
"tightening" up our eligibility testing.  I have heard that we may be going to have
another change in dividend scale.  If this occurs, we will have another whole block
of policies that could potentially have the same problem.

In addition, I think some type of letter or a little brochure should be prepared and sent
to policyholders when they place their policies on AP.  It should explain the AP
concept in plain english as well as where dividends come from and why they are
impacted by the general economy.  In doing so, this would help to reinforce the initial
disclaimer on dividend projections.

We cannot afford to leave policyholders with the impression that AP is a *"done deal"*
or that their policies are *"paid-up"* and no future premiums will ever be required
unless we can be absolutely, positively sure of it *(assuming the policyholder leaves the
dividend balance undisturbed)*.  This is the impression many of them have because of
the way the policies were sold or explained.

Tom, perhaps I'm crying "wolf" a little too soon, but from where I'm sitting and what
I see, I think this could be a real problem unless we take some proactive measures
to deal with it.

J. L. Rayl
Director
Customer Services & Communications
MetLife Customer Service Center - Tulsa

**CONFIDENTIAL**

November 7, 1992

cc   Barbara Gardner

Page 2

MP401107096? [vertical text, right margin]

# Cc ..panies Are Tacl ..ng 'Reappearing' Premiums

**BY LINDA KOCO**

"It's not a pretty story, but it's a real story, and one we're going to hear about more in the future," said Ben Hannum, a partner of Safe Harbor Financial brokerage in Philadelphia.

He was referring to the arrival of so-called "reappearing" premiums on universal life policies that were written on a vanish- or single-premium basis during the 1980s.

News reports have recently surfaced about companies notifying owners of such policies that they'll have to pay additional premiums—sometimes whopping ones—just to keep their policies in force. The reason most often cited is lower-than-projected investment performance, stemming from the nation's falling interest rate environment, and sometimes complicated by policy loans, skipped premiums, or failure to pay dump-in premiums as intended.

Mr. Hannum tells of one man with a $50,000 single premium UL who was upset to learn that "he will run out of policy by the time he is 67 years old, even if he lowers the face amount to $25,000." To keep the policy in force, the man had to deposit more money.

"Four or five years ago, I don't think agents or companies ever envisioned this would happen," he said.

The extent to which it is happening is a matter of dispute. Company executives contacted by *National Underwriter* indicated that most of their companies' existing UL policies have "no problems." This may be because their companies wrote very little vanish-premium business in the 1980s or because they used conservative interest assumptions, the executives said.

Some also questioned the implications which UL critics draw from reappearing premium stories. The premiums may have come back due to heavy policy loan activity rather than lower-than-expected investment performance, they said.

Even so, the executives indicated that if today's low interest rate environment continues much longer, there will be more reappearing—and more increasing—UL premiums, and policy lapses may follow as angry and financially-strapped policyholders cancel out. Because of this, a number of companies are taking steps to "preempt" the problem.

Penn Mutual Life, for instance, is piloting a program that will detect existing contracts with declining cash values. "We will send a letter to the client and agent that will say what might happen if there is no change in the future," said Tom Harr, assistant vice president and product manager of the Philadel-

*Cont'd on Page 18*

CONFIDENTIAL

MP4011070963

# Cos. Go Proactive On Reappearing UL Premiums

Cont'd from Page 15

phia insurer. Included will be recommendations about "what can be done to stop the decline, and maybe even create growth."

This is like the company's lapse notification procedure, he added, "only now, we'll do it sooner."

The pilot is in addition to the company's existing practice of giving rate projections, on both a current and guaranteed basis, in the annual statement sent to policyholders and inquirers, complete with a feature showing when the policy will lapse on both a guaranteed and current basis.

Another proactive program comes from New England Mutual Life, Boston. The strategy, says Michael Ridge, assistant officer of traditional product management, is to suggest that certain customers "delay the vanish point" for one to three years. This way, the customer will pay an additional premium now and avoid having a larger premium reappear later on. To do this, the company sends its agents a list of targeted clients; the agents then work with the cli-

ents on what to do.

New England is also focusing on field force education. "Through seminars and classroom training, we talk about how vanish works, why it breaks down, how our old-pay vanish program works," and other optional changes, said Mr. Ridge. This helps build agent confidence in discussing the subject with clients, he said.

Kemper Life Cos., Long Grove, Ill., is sending letters to clients. "We explain that interest rates are down, and we remind customers that the vanish is based on interest rates," said Robert A. Miller, director-marketing services. When the company started the program two years ago, he added, "we did have some lapses, but that has flattened out now."

Agents are instrumental in keeping businesses on the books, Mr. Miller added, explaining that their personal relationship with clients puts them in a position to help clients understand. Also, he said the contact about potential reappearing premiums, provide the agent with a good opportunity to work with clients on "active management" of their ULs.

Other companies are currently looking into proactive programs. For example, Alexander Hamilton Life, Farmington Hills, Mich., is looking at ways to notify policyholders, in a positive way, about the impact of lower interest rates on policy performance, said Jim Renfro, assistant vice president-product planning. It's also considering contacting agents to undertake annual or semi-annual policy reviews.

Meanwhile, ITT Life, Minneapolis, is considering developing a program that analyzes policies and communicates with clients about options, in cases of potential reappearing premium.

It's not only UL policies that are vulnerable, stressed Mr. Ridge. It can happen to any interest sensitive policy written on a vanish basis, including dividend-paying whole life.

Some people viewed the reappearing premium more as a UL problem than a WL problem, he suggested, because UL was initially more sensitive to falling interest rates, due to its heavy reliance on new money rates—which, in the 1980s, were

very high. (Today, the interest sensitivity of the two are more comparable, he added, because ULs are invested in longer-term obligations, as are WLs.)

Another reason for the UL focus: "The premium that comes back was vanished UL, is often larger than the original premium, and it's on a contract that has an underlying cash value," said Mr. Miller.

The policy essentially becomes an annual renewable term plan with high premiums, "added Mr. Renfro.

By contrast, said Mr. Ridge, the most an ordinary life policyholder will be asked to pay is the actual premium, if there are no outstanding policy loans. (But they may need to repay the premium for several years.)

The problem can be compounded, for both UL and WL contracts, "if the interest sensitivity of contracts wasn't explained to clients very well in the first place," said Mr. Harr.

"If companies and agents do nothing and let the policy lapse notices do the talking for them," warned Mr. Miller, "the bad faith/lawsuit potential will be much larger."

REDACTED - ATTORNEY
CLIENT

MP401107096S



**Jim L Rayl**
08/25/97 01:55 PM

To:     KATHLEEN SCHOOS [NYVK.NEPIKS] @ SNAPI, Jim Ancharski/Ind/MetLife/US, Bill
        Barnewold/Bsg/MetLife/US
cc:     Richard Anderson/Bsg/MetLife/US, Jim L Judd/Ind/MetLife/US, Jerri McCraw/Bsg/MetLife/US
Subject: AP Program

Kathy

I am not exactly certain what all issues we will attempt to address on the Tuesday conference call, but I would like to share a few thoughts and concerns. First of all, I cannot help but wonder if senior MetLife management really has any grasp of exactly what is happening. Based on all the comments and dialogue, it would appear that their expectation was similar to mine, in that it was believed that a proactive program was being developed to effectively deal with our policyholders on this issue.

During the OCR meeting in New York, ███████

███████████████████████████████████████████████ Based on
what was presented in New York at the AP meeting, the program is definitely not a comprehensive or fully proactive program to deal with AP. I cannot help but wonder if MetLife's senior management fully recognizes that fact or if they are under the impression that it is much more aggressive than it really is.

It seemed obvious to me that the design and implementation of the current program is far more geared to providing options to the existing representatives who, for whatever reason, have to deal with their own clients on this issue. This is as opposed to developing a program to fully address the concerns of ALL the affected policyholders. There was no proactive effort mentioned whereby representatives would contact anyone other than their own clientele.

I suspect that for the vast majority of the policyholders affected by the AP issue, the writing representative is long gone. Consequently, the existing program is clearly not going to be a proactive effort to contact ALL policyholders currently on AP or those who might be expecting their policies to be eligible for AP at some specific future date. I suspect that the contacts made by the agency force involving their own clientele will be no more than 10% to 20% of the affected customer base if even that.

I suppose some may see the letter going to the L95 policyholders as being a proactive AP effort. However, I see that letter as being so vague that most policyholders will not understand the significance of calling to explore or discuss the "options." While it may serve as some form of legal "notification" to those policyholders, I suspect that few will comprehend the significance of the letter or the situation. Furthermore, it was obvious that no real consideration was given to addressing those policyholders who come directly to the administrative organization either through the call center or through direct correspondence. While it was stated that an attempt should be made to refer them to "their rep," this will not be a viable option for the orphans. And, I suspect it will not be a viable option in any situation where the "servicing rep" is also not the "writing rep."

Consequently, I see these as still leaving some very big issues on the table with respect to AP for MetLife and the administrative side of the house. I believe there are some very fundamental issues

**CONFIDENTIAL**



DEPOSITION
EXHIBIT
47

to address. And, I see most of these as requiring a very high level decision within Individual Business. These would include:

- If the current (Field) program is not going to proactively or even reactively address the AP situation for the vast majority of affected policyholders, is there any intent to have or design a program that will?

- Once the new program is officially introduced, what is the responsibility/obligation of the Business Unit to inform affected policyholders that new and different options exist? How does this apply to the following groups of affected policyholders:

  - Those policyholders currently on AP with collapse dates within five years and options already provided on the billing statement.

  - Those policyholders currently on AP with collapse dates beyond five years with no options indicated on the billing statement

  - Those policyholders who are or were expecting their policy to be eligible for AP on some past, present or future date but remain ineligible because of the dividend inadequacies.

- What are sales offices going to be instructed to do when policyholders affected by AP call the sales office and are either not in force in that office or who do not have a representative assigned to service them from that office?

- Is Field Management and/or the sales offices going to be given specific responsibilities with respect to what "servicing" reps are expected to handle with regard to AP issues and inquiries?

- What will the responsibilities will/should the call center have in attempting to administer this program? The quick answer in New York was that the CSC could sent them a brochure and/or to refer them back to "their" rep. But what constitutes "their" rep. The "writing" rep or a "servicing" rep?

- Based on the sentiments voiced by some of the Product Wholesalers, it is questionable whether "servicing" reps, who are not also the writing rep, will really deal with customers on the AP issue. Consequently, does it make sense for the call center to refer the policyholder back to the rep whenever the "servicing rep" is not the "writing rep?" My concern is that this will only set an expectation with the customer that will not be met, thereby further aggravating the customer and making the situation worse.

- Consequently, whenever a call or complaint is received regarding AP (either before or after a brochure is mailed), should the CSC be required to check and see if the policy is still serviced by the writing rep before referring the policyholder back to the rep?

- And, perhaps more importantly, what about all the customers who do not have either a writing rep OR a servicing rep? How are they to be handled?

- Should new and different procedures be established for the call center with respect to handling some or all of the AP related calls? While it was mentioned that the first step may be to just have the call center mail the brochure, what about phone calls received after the brochure has been sent? Does the call center handle them? If so, should it be restricted to a limited number of CSCs? Or, do they refer them to the administrative operation?

- Under what circumstances does a given AP situation or call become the responsibility of the administrative "back office?"

CONFIDENTIAL

MP401010966

- Under what circumstances does either the CSC and/or the back office tell policyholders questioning any aspect of the AP arrangement that there are options available?

- Will orphan policyholders responding to the L95 letter be told something different from other policyholders questioning the arrangement? In other words, it would appear that the Company is fully obligated to tell all L95 policyholders receiving the letter about ALL the options available. This may or may not be true for other policyholders.

- In those situations where the full options will be explained, who will handle the calls? Should this be a fully detailed process whereby the customer is presented with illustrations of all the options and then given the opportunity to discuss them? If so, by call back or appointment?

- Will this expectation be changed if licensing is required?

Kathy, I suppose I could go on and on. But, the real question remains, to what length or degree is the administrative operation going to go in terms of addressing the entire AP issue. And, to what degree will additional resources be available to deal with this program?

Jim Rayl

CONFIDENTIAL

MP4011070967

**Return Receipt**

Your document:   AP Program
was received by:   Richard Anderson/Bsg/MetLife/US
at:                        08/29/97 05:32:52 PM EDT

MP401107096B

**CONFIDENTIAL**

**Return Receipt**

Your document:   AP Program
was received by:  Bill Barnewold/Bsg/MetLife/US
at:                    03:02:16 PM EDT Today

MP401107D969

**CONFIDENTIAL**

**Return Receipt**

Your document:   AP Program
was received by:  Jim Ancharski/Ind/MetLife/US
at:                      03:06:57 PM EDT Today

MP4011070970

CONFIDENTIAL

**Return Receipt**

Your document:   AP Program
was received by:  Jim L Judd/Ind/MetLife/US
at:                   02:00:07 PM Today

MP40110709I1

**CONFIDENTIAL**

**Return Receipt**

Your document:  AP Program
was received by: KATHLEEN SCHOOS[NYVK.NEPIKS]
at:              05:35:00 PM EDT Today

MP401107 0972

**CONFIDENTIAL**

Metropolitan Life Insurance Company
One Madison Avenue, New York, NY 10010-3690
Tel 212 578-6630



Joseph W. Jordan
Senior Vice-President

Re     Accelerated Payment Arrangement (AP) Option Program

To     The Field Force

The purpose of this letter is to introduce the AP Option Program.

There are currently more than 175,000 customers who have elected the Accelerated Payment arrangement. Based on the 1997 dividend scale, almost 1/3 of those customers will have to make additional out-of-pocket premium payments at some point in order to keep their policy on this arrangement. More than 15,000 may need to make out-of-pocket premium payments within the next five years. Of course, there are other customers (we currently can not identify) who may have planned to opt for the AP arrangement or have not been able to because of insufficient dividend values; this program applies to them as well.

The goals of the AP Option Program are: (a) to equip you with materials to help you explain why dividends have been reduced, and (b) to provide clients with options to adjust their premium payment patterns.

Details of the AP Option Program are provided on the following pages. Please note that the single premium life insurance policy developed for the "Reduce Face–PAY NONE" option must be approved by the policy owner's state of residence before this option can be illustrated and elected by the policy owner. Accordingly, even though you will have the ability to illustrate this option, you may not do so until you have been notified that the policy form has been approved. An election of this option will not be processed and will be returned if it is used in a jurisdiction which has not approved the policy form.

The Program was developed based on substantial research and input from your associates. We think it's a great Program, but that does not mean it cannot be improved. If you have any ideas along these lines, please let me know.

Sincerely,

Joseph W. Jordan
Senior Vice-President

August 18, 1997

Attachment

CONFIDENTIAL

_DETAILS_

**YOUR ACCELERATED PAYMENT ARRANGEMENT CUSTOMERS**

Lists of all current Accelerated Payment arrangement policy owners will be distributed at the end of the month to your Regional Vice-President, who will in turn forward this information to you. These lists will identify, based on the 1997 dividend scale (including the enhancement), both customers whose values are sufficient and those whose values are insufficient to pay all future premiums. In addition, for the customers with insufficient values, the report will indicate the year in which additional out-of-pocket premium payments are expected to be needed for these customers. The listing will identify customers assigned to an active account representative regardless of where the policy owner resides. Policy owners who are not currently assigned to an active account representative and who reside in your region/agency will also be listed. The listings will include information about other MetLife products inforce in the household. This information will be distributed annually at the beginning of each year. Appendix B shows a sample report.

In addition, you will receive notification on a weekly basis via the anniversary statement/billing process about policies that, based on the current dividend scale, are expected to become "insufficient" within 5 years. Additional details are provided below under "Anniversary Processing".

**THE OPTIONS**

**Pay None**

- "Wait & See"
  Existing policy values may be sufficient to pay premiums for several more years before any out-of-pocket premium payments might be necessary. Because capital markets are so dynamic, there is a possibility that dividend scales in the future could increase sufficiently such that, by waiting, no out-of-pocket premium payments may be needed. By waiting, however, if dividends do not increase, the total out-of-pocket premium payment required would be more than if some out-of-pocket premium payments were made now.

  Remember, premium dollars paid today will provide substantially more value than future premiums would. Therefore, this option is probably not a good choice for a policy owner who would have to make an out-of-pocket premium payment within the next couple of years.

- "Reduce the Face Amount of Coverage" (L@95 only)
  By reducing the face amount by no more than 30% of the original amount, we can guarantee that no further out-of-pocket premium payments will be needed. Depending on the cash value of the policy at the time the option is elected, the reduced coverage will be provided as a reduced paid-up (RPU) nonforfeiture option or, if the amount of RPU is less than 70% of the original face amount, a 1035 exchange to a newly designed single premium life policy. Please refer to Appendix C for a description of the new Single Premium Life (SPL) policy. Note: Even when the SPL policy provides a greater initial death benefit than the reduced paid-up (RPU) nonforfeiture option, long term, the death benefit under the RPU could grow to an amount equal to or greater than what will be provided under the SPL policy. This can happen because the

CONFIDENTIAL                                    1

MP4011070974

RPU is participating and the SPL policy is not. Therefore, it will be important to illustrate (see below) both approaches if this option is being considered.

The "Reduce Face" (SPL policy) option will be made available only to Life @95 policy owners who have paid premiums **out-of-pocket** in full for at least the following number of years after issue:

| # of Years | Policy Type | Underwriting Class |
|---|---|---|
| 7 | Life @95 | Preferred or Standard—Nonsmokers |
| 8 | Life @95 | Preferred or Standard—Smokers & Rated 1 or 2—Nonsmoker |

It will also be made available to policy owners whose Paid-up Additions Rider (PUAR) premiums were sufficient to pay premiums the number of years indicated in the above table and, in fact, were withdrawn to pay such premiums, i.e., withdrawals from PUAR will be considered "out-of-pocket" premiums for this purpose.

The "Reduce Face" (SPL policy) option will not be available:
- For L@95 policies in underwriting classes of Rated 2—Smoker and below
- For L@95 policies with outstanding policy loans and/or on which dividend balances have been withdrawn
- For L@ 95 policies on which the dividend option at any time since issue has been other than Additional Insurance or Dividends With Interest
- For Metromatic L@95 policies

This option is appropriate when there are reduced insurance needs, if the policy owner cannot afford to pay additional premiums out-of-pocket, and when a guaranteed death benefit is more important than dividends and cash values. Accordingly, it will be generally inappropriate to re-direct premiums to a new policy when this option is chosen. If this occurs and the transaction is determined to be unsuitable, commissions on the new policy will be rescinded and other action will be taken as necessary.

Also, please note, when the reduce face option is chosen, <u>state replacement requirements apply</u>. We are required by regulation to notify all policy owners who are eligible for this option. A copy of the letter we are using is provided in Appendix A.

**Pay Some**

*Remember: The more premiums paid the more total life insurance protection and cash value; also, the more cushion against the possible need to resume paying out-of-pocket premiums in the future.*

- "Pay Full Premium"
  By paying a premium now and maybe for a few more years, values could increase sufficiently based on the current dividend scale to enable the Accelerated Payment arrangement to fully engage again in the future.

- "Pay the Difference"
  The out-of-pocket premium paid would be the difference between the full premium and the current annual dividend. While this out-of-pocket premium payment is less than the full premium, it would result in out-of-pocket premium payments being needed for a longer period of time than the "Pay Full Premium" option described above.

CONFIDENTIAL

2

MP401107G975

- **"Pay Part of the Full Premium"**
  The out-of-pocket premium calculated will be the out-of-pocket premium needed each year for the remaining number of policy years, based on the current dividend scale, to make up the shortfall that the Accelerated Payment arrangement is insufficient to pay. Once calculated, it is expected that the premium will be paid for the remainder of the life of the policy. However, if the dividend scale decreases in the future, a larger partial premium amount might be needed.

- **"Pay A Full Premium Every 4 Years"**
  This "Leap Year" option is only available when current policy values are determined to be sufficient, based on the current dividend scale, to pay premiums in the other three years via the Accelerated Payment arrangement.

## SUPPORT

The following mechanisms have been or are being developed to support these options.

**Inforce Illustrations**

The traditional life in-force illustration system has been enhanced to allow you to illustrate the options.

The enhancements to the current in-force illustration facility will:
- Apply only when the current dividend option is AI or DWI
- Ignore any scheduled Paid-Up Additions Rider (PUAR) payments
- Not allow changes in dividend options
- Apply only to policies without an outstanding loan balance
- Apply beginning on the next policy anniversary, except for the Reduce Face option, which will also be available as of the prior anniversary.
  Note: The prior anniversary capability is intended for situations where (i) the prior anniversary is within three months of the date of the illustration, and (ii) the policy owner would have been eligible for the Reduce Face option on the prior anniversary.

The AP input option will provide the following choices based on the current dividend scale. In addition, for all options except the Reduce Face option, you may choose to illustrate the options using a reduced dividend scale.

⇒ Reduce Face–The illustration will indicate the amount of face reduction (up to 30%) required to eliminate the need for further out-of-pocket premium payments under the SPL policy. When you illustrate this option the nonforfeiture reduced paid-up (RPU) option will automatically be illustrated too. It is important to note that even when the SPL policy provides a greater initial death benefit than the (RPU) option, long term, the death benefit under the RPU could grow to an amount equal to or greater than what will be provided under the SPL

CONFIDENTIAL

3

MP401107097876



**Inforce Illustrations (continued)**

policy because the RPU is participating and the SPL policy is not.

⇒ Wait & See–The illustration will indicate how many more years existing values would be sufficient to pay premiums and, therefore, the years when additional out-of-pocket premiums may be needed.

⇒ Pay Full–The illustration will solve for the fewest additional years out-of-pocket premium payments are needed to eliminate the insufficiency (natural AP). It will also allow you to select the AP year (if the AP year selected is not sufficient, it will still be used and the illustration will resemble a "Wait & See" one after the AP collapses).

⇒ Pay the Difference–The illustration will indicate the out-of-pocket premium payment required after reduction by the amount of the annual dividend based on the current dividend scale. It will show the year when out-of-pocket premiums could be stopped, if ever, based on the payment pattern. It is not available for policies with PUAR.

⇒ Partial Payment Each Year–The illustration will solve for the minimum amount of out-of-pocket premium payment required each year (based on the current dividend scale) with the balance of the premium being paid by the Accelerated Payment arrangement.

⇒ "Leap Year"–Based on the current dividend scale, the illustration will show, if a full annual premium is paid on the next anniversary and every 4 years thereafter whether any additional out-of-pocket premiums will be needed in the other years and, if so, how much.

**Changes to Anniversary Processing Immediately Available**

For policies on the Accelerated Payment arrangement, when an additional out-of-pocket premium payment is expected to be needed within 5 years: (a) the anniversary statement will indicate the expected insufficiency (this information will be provided to you at the same time it's released to the policy owner); and (b) the following information will be available to you via SONIC:

⇒ The message will indicate whether or not the policy owner is eligible for the Reduce Face option. When the policy owner is not eligible for the Reduce Face option, SONIC will indicate that it is not available and why, e.g., "not available, outstanding loan", "not eligible because not L@95", "not available, Metromatic", etc.

⇒ A new AP year until which out-of-pocket premiums would need to be paid based on the current dividend scale.

⇒ The out-of-pocket partial premium payment needed for the remaining policy years with the balance of the premium being paid by the Accelerated Payment arrangement.

⇒ Whether premiums can be paid once every 4 years with the first payment on the next anniversary.

⇒ If 1 out-of-pocket premium is paid, the Accelerated Payment arrangement will then pay premiums until (date).

⇒ If 2 out-of-pocket premiums are paid, the Accelerated

CONFIDENTIAL

MP4011070977



Payment arrangement will then pay premiums until (date).
⇒ If 3 out-of-pocket premiums are paid, the Accelerated Payment arrangement will then pay premiums until (date).



Once an option is elected, future (i.e., 1998 and later) billing notices/anniversary statements will recognize the option elected. For example, if the policy owner elected to pay $250 of a $1,000 annual premium out-of-pocket, the bill will request payment of $250 of the premium and state that $750 will be deducted from their dividend/PUAR balance. Of course, there will always be an option for the policy owner to pay the full premium out-of-pocket. Further, if future dividend scale reductions occur, such that the partial out-of-pocket premium payment becomes insufficient within the next five years, the bill will indicate the new date of insufficiency. Note: For the "Leap Year" option, billing will be in sync with the option and illustration only when values are sufficient to be able to pay premiums in full in the other three years, based on the current dividend scale.

*Option Election Form*

An easy to complete request for a modified Accelerated Payment arrangement has been developed and is now available. A sample is provided in Appendix D. When an option is elected, in addition to submitting the election form, please submit a copy of the illustration provided to the customer in connection with the option elected. For options other than "Reduce Face", these items should be submitted to Tampa if there is a payment attached; otherwise, they should be sent to the Customer Service Center you normally send materials to (i.e., Tulsa or Warwick).

For the "Reduce Face" option, these items should be sent to the New Business office you normally send materials to (i.e., Pearl River, Aurora, Tampa). Please also send the original Life @ 95 policy and, if there is a change in beneficiary, owner or address, a completed Part A of the Change application.

**PACKAGING**

To help you understand and explain the AP Option Program we have developed the following materials:

| | |
|---|---|
| • Track Book (order # APTB (1/97)) | • Customer Brochure (order # APBRO1/97)) |
| • Video (order # APVIDEO (1/97)) | • Option Election Form (order # 036-ET (1/97)) |

These materials are also available as a package (order # APPACK 1/97).

**CONFIDENTIAL**

Appendix A

Dear Policy owner

We are pleased that you are a MetLife policy owner. Your policy records demonstrate that you appreciate the protection and value your policy provides. You have paid your premiums to date and have used your dividends wisely to increase the protection as well as the cash value of your policy.

The dividends we distribute each year are based on the following formula:

*Premiums + Investment Income – Operating Expenses*
*– Mortality Expenses – Other Expenses*

Essentially, it is the net effect of these dividend components that determine if dividends increase, decrease or stay the same.

Interest rates have had a considerable effect on MetLife's dividends in the last few years and we want you to understand why. As you know, interest rates were at double-digit levels in the 1970s and early 1980s. However, interest rates began to decline sharply by the mid-1980s.

MetLife's philosophy, and our legal obligation, is to protect the long term interests of our policy owners. Therefore, much of our portfolio is invested in longer term bonds that has resulted in a slower and less dramatic decline in our investment return, as compared to a number of investment and capital market indices. Because of that return, MetLife did not have to lower dividends until 1992.

We truly value you as a MetLife customer. We urge you to contact your MetLife representative if we can be of service in any way or if you want additional information about dividends and options for keeping your policy in force. You may also contact us at 1-800-MET-5000.

Your business is important to us–please be sure to let us know if there is any way we can better meet your needs.

CONFIDENTIAL