## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD GONDA, | : | CIVIL ACTION NO. 00-2286 |
| | : | |
| Plaintiff, | : | |
| v. | : | CHIEF JUDGE AMBROSE |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY AND , | : | |
| Defendants. | : | |

**METROPOLITAN LIFE INSURANCE COMPANY AND WILLIAM FRIEDT, JR.'S
BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE
UNRELATED TESTIMONY AND EXHIBITS OF JAMES RAYL**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company and William Friedt, Jr. ("defendants"),

by and through their attorneys, McCarter & English, LLP, hereby submit the following Brief in

Support of Motion in Limine to Exclude from Evidence Unrelated Testimony and Exhibits of

James Rayl, which are attached to the Motion as Exhibits. Plaintiff has identified a deposition of

Rayl (the "Rayl transcript") from an unrelated litigation. However, Rayl was a disgruntled

employee with an axe to grind who unsuccessfully tried to sue MetLife. His testimony and

exhibits, listed in Plaintiff's exhibit nos. 43 and 44, are irrelevant to this matter and will only

serve to inflame the jury.

Plaintiff's claims arise from the 1992 sale of a Whole Life insurance policy. Plaintiff

alleges that in 1992, MetLife sales representative William Friedt, Jr. made misrepresentations at

the sale of Policy No. 925 207 015 A (the "1992 policy"). Specifically, plaintiff alleges that Mr.

Friedt made misrepresentations regarding the replacement of an existing Pruco life insurance

policy which was used to partially fund the 1992 policy, and that Mr. Friedt misrepresented that

-2-

the 1992 policy would be fully funded by making monthly payments of $50.50 for ten years.

Plaintiff also alleges that Mr. Friedt represented that the 1992 policy would accumulate a certain

cash value and death benefit after forty years.

Rayl's testimony in Rayl v. Metropolitan Life Insurance Co., Inc., CV 97-505, consists of

over 300 pages, all relating to his perceived career problems at MetLife. Rayl's testimony is

wholly unrelated to this lawsuit, irrelevant, highly prejudicial, and inadmissible pursuant to

Federal Rules of Evidence 401, 402, and 403.

Rayl's deposition exhibits contain memoranda drafted by Rayl that reflect his opinions on

AP sales prior to 1990 and policies that were to become eligible for AP in 1990-1995. Plaintiff's

AP allegation is in connection with the 1992 sale of a Whole Life ("WL") policy. The 1992 sale

is prior to most of Rayl's written opinions. As these exhibits do not apply to the transactions and

describe events that are not temporally related to the 1992 sale, the evidence is irrelevant under

Federal Rule of Evidence 401[1] and therefore inadmissible at trial under Federal Rule 402. [2]

Even if admissible, the Rayl exhibits should be excluded under Federal Rule of Evidence 403 as

highly prejudicial.[3]

The Rayl testimony and exhibits are inadmissible as "bad acts" under Rule 404(b). The

Rayl exhibits also contain inadmissible hearsay and hearsay within hearsay that does not fall

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[3] Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Any probative value that the Rayl testimony or the AP-related exhibits could possibly provide is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982)(excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

within any exception to the general hearsay rule under Federal Rules of Evidence 803 or 804,

including Federal Rule of Evidence 803(6) Records of Regularly Conducted Activity.

**ARGUMENT**

**I.    THE USE OF RAYL'S UNRELATED TESTIMONY IS IRRELEVANT TO THE
LITIGATION, IS HIGHLY PREJUDICIAL, AND THEREFORE INADMISSIBLE
PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

The use of the Rayl testimony from his unrelated lawsuit against MetLife is irrelevant to

this litigation and therefore contrary to the Federal Rules of Evidence 401 and  402, and 403.

The only portion of Rayl's testimony that addresses any specific sales practices merely relates to

Rayl's concerns that his communications to MetLife about AP and "vanishing premiums" had a

negative effect on his career.  See Ex. A, Rayl testimony at 253:1-262:17.  However, Rayl's

concerns regarding alleged discrimination in connection with his employment at MetLife are

completely irrelevant and only will serve to inflame the jury.  Rayl does not have firsthand

knowledge of the transaction at issue in this case.  He was not present or in any way involved in

the 1992 sale.  Nor does he have firsthand knowledge regarding any of the policy sales that

formed the basis for his unsubstantiated opinions regarding sales practices.

**II.    THE DOCUMENTS ACCOMPANYING THE TESTIMONY ARE LIKEWISE
IRRELEVANT, UNFAIRLY PREJUDICIAL TO DEFENDANTS, AND
INADMISSABLE**

The documents themselves, attached as exhibits to Rayl's testimony, have no relation to

the transactions at issue, are not relevant to MetLife's or the sales representative's conduct

during or leading up to the transactions at issue, and should be stricken in their entirety.

Furthermore, most of them involve policies sold in the 1980s that should have been eligible for

AP in the early 1990s, according Rayl's accounts.  For the same reasons as discussed above, the

documents are irrelevant and highly prejudicial as they apply to sales made substantially prior to

plaintiff's 1992 policy.

**A.      EXHIBIT 38 TO RAYL'S DEPOSITION DOES NOT RELATE TO
           PLAINTIFF'S AP ALLEGATIONS AND IS HIGHLY IRRELEVANT TO THE
           LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND
           INADMISSABLE**

Exhibit 38 to Rayl's deposition concerns Rayl's interpretation of the findings of

the Pennsylvania Market Conduct Exam.  See Ex. B, Rayl Dep. Ex. 38.  MetLife references and

incorporates herein all arguments set forth in its Motion in Limine to Exclude the PA Market

Conduct Exam.  Consequently, exhibit 38 to Rayl's deposition should be excluded as irrelevant,

prejudicial, and likely to confuse the jury under Federal Rules of Evidence 401-403.

**B.      EXHIBITS 42, 43, 44, 45, AND 46 TO RAYL'S DEPOSITION DO NOT RELATE
           TO PLAINTIFF'S AP ALLEGATIONS AND ARE HIGHLY IRRELEVANT TO
           THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND
           INADMISSABLE**

Exhibit Nos. 42, 43, 44, 45, and 46 to Rayl's deposition are compilations of over 100

pages of various AP-related documents with Rayl's impressions of how the AP Plan was

conveyed to policyholders in sales that took place substantially prior to 1992.  See Ex. C, Rayl

Dep. Ex. 42, 43, 44, 45, and 46.  Rayl discussed sales that occurred around the mid-1980s for

these policies to have been eligible for AP in 1990-1995, and as such, his documents are

irrelevant to plaintiff's 1992 sale for the reasons set forth in MetLife Motion in Limine to

Exclude Plaintiff's Exhibit Nos. 33, 45, 47, 48, 51, 54, and 61, documents authored by and

relating to James Rayl.

Exhibits 42, 43, 44, 45, and 46 are also irrelevant because they relate to informing

existing AP customers and those who would have been eligible for AP in 1990-1993, that their

AP status was delayed or would not last.  See Ex. C, Rayl Dep. Ex. 42.  Rayl's opinions about

informing policyholders already on AP or about to be on AP in the early 1990s is completely

-4-

irrelevant to plaintiff's 1992 sale. As such, admission of the irrelevant Rayl documents listed in Rayls exhibit 42 would be highly prejudicial and likely to confuse the jury under Federal Rules of Evidence 401-403.

### III.    THE RAYL TESTIMONY AND DEPOSITION EXHIBITS ARE INADMISSABLE AS "BAD ACTS" EVIDENCE UNDER FEDERAL RULE 404(b).

Plaintiff will most likely attempt to use the Rayl exhibits to show unrelated alleged "wrongs" or "bad acts" of MetLife to show that MetLife behaved in the same manner in this case. This evidence would be inadmissible under Federal Rule of Evidence 404(b). In order for "bad acts" evidence to be admissible to establish a common plan exception to the rule, Plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible. See id.

If Plaintiff argues that Federal Rule of Evidence 404(b) permits this type of evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," it is without merit. To show that improper bad acts evidence is admissible to show intent, this Court has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker, 207 F.3d at 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999))(emphasis added).

### IV.    THE RAYL DEPOSITION EXHIBITS CONSTITUTE INADMISSABLE HEARSAY AND HEARSAY WITHIN HEARSAY

The documents that Rayl authored on AP are classic hearsay. In order for Rayl's documents to be admitted into evidence, Plaintiff must satisfy his burden of showing that they fit within an exception to the hearsay rule. Plaintiff has failed to meet that burden. The documents

authored by Rayl do not fall within the "business records" exception to the general hearsay rule under federal Rule 803(6). Even if they did, the sources of the information indicate a "lack of trustworthiness." Rayl's documents are rife with personal opinions.

The documents also contain hearsay within hearsay as Rayl is re-telling his version of various complaints, for which he has no first-hand knowledge. Because the Rayl documents fail to satisfy the requirement of trustworthiness, and, constitute inadmissible hearsay, these documents should be excluded from evidence.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of James Rayl's testimony and exhibits to James Rayl's testimony listed in Plaintiff's exhibit nos. 43 and 44.

Respectfully Submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendants
Metropolitan Life Insurance Company
and William Friedt, Jr.

Dated: June 19, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of June, 2006, a true and correct copy

of the foregoing **METROPOLITAN LIFE INSURANCE COMPANY AND WILLIAM**

**FRIEDT, JR.'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE**

**FROM EVIDENCE UNRELATED TESTIMONY AND EXHIBITS OF JAMES**

**RAYL** was served upon the following via electronic delivery:

Kenneth R. Behrend, Esquire
BEHREND & ERNSBERGER, P.C.
Union National Bank Building, 3rd Floor
306 Fourth Avenue
Pittsburgh, Pennsylvania  15222
*(Attorneys for Plaintiff)*

s/ B. John Pendleton, Jr.