IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD GONDA, | : CIVIL ACTION NO. 00-2286 |
| Plaintiff, | : |
| v. | : CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY and WILLIAM FRIEDT, JR., | : |
| Defendants. | : |

**METROPOLITAN LIFE INSURANCE COMPANY'S AND WILLIAM FRIEDT'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFF'S EXHIBIT NOS. 33, 34, 35, 41, 47, 48, 51, 54, AND 61, DOCUMENTS AUTHORED BY AND RELATING TO JAMES RAYL**

**PRELIMINARY STATEMENT**

Defendant Metropolitan Life Insurance Company ("MetLife") and William Friedt, Jr. (collectively "defendants") by and through their attorneys, McCarter & English, LLP, hereby submit the following Brief in Support of Motion in Limine to Exclude from Evidence Plaintiff's Exhibit nos. 33, 34, 35, 41, 47, 48, 51, 54, and 61, documents authored by and relating to James Rayl, copies of which are attached to the Motion as Exhibits.

Plaintiff has identified numerous documents authored by former MetLife employee James Rayl (the "Rayl Documents"). However, these documents are dated subsequent to April 1992, when plaintiff purchased his policy. As these documents cannot establish that MetLife was on notice of the alleged sales practices at the time of the 1992 sale, the documents are completely irrelevant to this matter.

Plaintiff's claims arise from the 1992 sale of a Whole Life insurance policy. Plaintiff alleges that in 1992, MetLife sales representative William Friedt, Jr. made misrepresentations at the sale of Policy No. 925 207 015 A (the "1992 policy"). Specifically, plaintiff alleges that Mr. Friedt made misrepresentations regarding the replacement of an existing Pruco life insurance policy which was used to partially fund the 1992 policy, and that Mr. Friedt misrepresented that the 1992 policy would be fully funded by making monthly payments of $50.50 for ten years. Plaintiff also alleges that Mr. Friedt represented that the 1992 policy would accumulate a certain cash value and death benefit after forty years.

The primary subject matter of the Rayl documents is AP for whole life policies sold substantially prior to 1992, and the effect of dividend scale reductions in 1992-1994 on policies that were already on AP. As these documents do not apply to the Gonda's transactions, they are irrelevant under Federal Rule of Evidence 401[1] and therefore inadmissible at trial under Federal Rule 402.[2] Even if admissible, the Rayl documents should be excluded under Federal Rule of Evidence 403 as highly prejudicial and likely to confuse the jury.[3]

Rayl had no knowledge of or experience regarding complaints from Pennsylvania. Rayl's documents allegedly contained his experiences while he was working in the Tulsa, Oklahoma Teleservices Call Center from 1986 to 1996. See Ex. A, Portion of Rayl Transcript at

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[3] Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Any probative value that the Rayl documents could possibly provide is negligble when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982)(excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

46:9-11, 47:6-13, 51:17-25. The Tulsa Call Center did not handle customer service for Pennsylvania. See Ex. A, Rayl Transcript at 46:9-47:5, 47:6-13, 51:17-25. The Rayl documents listed in plaintiff's exhibits were authored between 1992 and 1995 when Rayl worked in the Tulsa Call Center and after the sale of plaintiff's policy. As such, none of these exhibits relate to Pennsylvania.

The Rayl documents are also inadmissible as "bad acts" under Rule 404(b). Additionally, they contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule under Federal Rules of Evidence 803 or 804, including Federal Rule of Evidence 803(6) Records of Regularly Conducted Activity.

## ARGUMENT

I. **THE RAYL DOCUMENTS REFERENCED IN PLAINTIFF'S EXHIBIT NOS. 33, 47, 48, 51, 54, AND 61, ARE IRRELEVANT TO PLAINTIFF'S SPECIFIC AP ALLEGATIONS, WERE CREATED SUBSEQUENT TO PLAINTIFF'S 1992 SALE, INVOLVE AP SALES SUBSTANTIALLY PRIOR TO THE 1992 SALE AND ARE HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

Plaintiff has identified as trial exhibits a number of documents authored by former MetLife employee James Rayl (the "Rayl Documents") that serve no purpose other than to illustrate that MetLife was on notice of the alleged "vanishing premium" sales practices set forth in plaintiffs' Complaint. See Ex. B, Pls. Ex. Nos. 33, 47, 48, 54 and 61.[4] Specifically, the Rayl

---

[4] **Pls. Ex. 33** - dated December 7, 1992, from Rayl to T LaBadia (Policy Administration & Customer Service), complaints surfacing re: alleged prior sales using "paid-up" in connection with current (1992) delayed AP dates.
**Pls. Ex. 47** - dated September 29, 1994, from Rayl to F. Lynch, (Senior Vice-President, P.I. Customer Service) "AP collapse dates," and policies expected to be on AP in 1992 are going to be eligible later.
**Pls. Ex. 48** - dated October 28, 1994, from Rayl to B. Gardner, (MetLife Customer Service Center - Tulsa) existing policyholders who are currently expecting to be eligible for AP do not understand AP because it was not explained at the time of sale.
**Pls. Ex. 51** - dated January 3, 1995, from Rayl to B. Barnewold (Sr. Business Systems Consultant, Bridgewater, NJ) "We are going to great lengths to make certain our new AP customers understood the arrangement."
**Pls. Ex. 54** - dated January 11, 1995, from Rayl to B. Gardner (MetLife Customer Service Center - Tulsa), policyholders currently going on AP should have more information.

Documents indicate Mr. Rayl's concerns with how the elements of the Accelerated Payment plan were conveyed to policyholders. Id. However, these documents were authored between November 7, 1992 and January 11, 1995, subsequent to the transaction at issue. Id. These documents have no relation to the transactions at issue, are not relevant to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue, and should be stricken in their entirety. Further, because they are dated after the transactions at issue, these documents cannot establish MetLife's knowledge of the alleged sales practices at issue at the time of the sale. See Maleski v. Metropolitan Life Ins. Co., A.D. No. 95-10451, Order of Court (C.C.P. Butler Cty., April 26, 2004) ("All witnesses are precluded from testifying to transactions not at issue involving other non-party complaints, <u>unless the transactions put MetLife on notice of any impropriety within the corporation and its agents in relation to the plaintiffs</u>") (emphasis added), Ex. A; see also Maleski v. Metropolitan Life Ins. Co., A.D. No. 95-10451, Order of Court (C.C.P. Butler Cty., April 6, 2004) ("Against MetLife, such evidence that put MetLife on notice of any possible misconduct by Defendant Phillips is admissible . . . However, <u>other evidence, upon a showing that it was not brought to the MetLife's [sic] attention, may not be admissible</u>") (emphasis added).

Furthermore, these Rayl documents concern sales that had to have occurred around the mid-1980s for these policies to have been eligible for AP in 1990-1993. As such, they are irrelevant to plaintiff's 1992 sale, which was not allegedly eligible for the AP plan until 2002. In a 1995 memorandum, Rayl states, **"We are going to great lengths to make certain our new AP customers understood the arrangement.** Why shouldn't we do the same with [customers

---

**Pls. Ex. 61** - dated November 7, 1992, from Rayl to T. LaBadia (Policy Administration & Customer Service), "reappearing premiums on existing AP cases," and policies expected to be on AP in 1992 are going to be eligible later.

currently on the AP Arrangement.]" [emphasis added] Id. at Pls. Ex. No. 51. In light of Rayl's own statement, it would be extraordinarily prejudicial and confusing to the jury to allow the above-listed Rayl documents into evidence because these documents relate to irrelevant AP sales that took place approximately ten years before plaintiffs' 1992 sale.[5]

Plaintiff's exhibit nos. 33, 47, 51, 54, and 61 are additionally irrelevant because they relate to informing existing AP customers and those who would have been eligible for AP in 1990-1993 that their AP status was delayed or would not last. See Ex. B, Pls. Ex. Nos. 33, 47, 51, 54, and 61, see also footnote 4. As such, admission of the irrelevant Rayl documents listed in Plaintiff's exhibit nos. 33, 47, 51, 54, and 61 would be highly prejudicial and likely to confuse the jury under Federal Rules of Evidence 401-403.

## II. RAYL'S TULSA CALL CENTER DID NOT RECEIVE CALLS FROM PENNSYLVANIA AND RAYL'S DOCUMENTS ARE HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.

The Rayl documents listed in Plaintiff's exhibit nos. 33, 47, 48, 51, 54, and 61, are irrelevant as Rayl had no knowledge or experience regarding complaints or other customer service issues from Pennsylvania. Rayl's documents allegedly contained his experiences while he was working in a customer service call center in Tulsa, Oklahoma, from 1986 to 1996. See Ex. A, Rayl Transcript at 46:9-11, 47:6-13. The Tulsa Call Center did not handle customer service for Pennsylvania. Id. at 46:9-47:5, 51:17-25. The Rayl documents listed in plaintiff's exhibits were all authored between 1992 and 1995, when Rayl worked in the Tulsa Call Center, and they do not reference calls from Pennsylvania. See Ex. B, Pls. Ex. Nos. 33, 47, 48, 51, 54, and 61; see also footnote 4.

---

[5] MetLife reserves any rights to use Pls. Ex. No. 51 in rebuttal to plaintiffs if Rayl documents are allowed into evidence.

### III. EXHIBIT NOS. 34 AND 35 RELATE TO SALES OUTSIDE OF PENNSYLVANIA AND ARE HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.

Plaintiff's exhibit no. 34, dated December 23, 1992, from Rayl to D. Martin in the MidAmerica Territory, specifically relates to a policyholder complaint from the Highland Heights, Ohio branch office. Plaintiff's exhibit no. 35 also was authored by Rayl, to K. Schoos of the Warwick, Rhode Island Call Center in connection with the same Ohio complaint. Ohio and Pennsylvania were not in the same sales territory at the time of the complaint or at the time of Rayl's letter.

The policyholder complaint referenced in exhibit nos. 34 and 35 is not in any way related to or consistent with plaintiff's allegations at issue in this matter. Plaintiff's exhibit no. 34 relates to the 1992-1993 dividend scale affecting AP eligibility for a policy sold in 1990, and references "paid-up." Plaintiff's exhibit no. 35 contains Rayl's speculations regarding the use of the words "paid-up" by MetLife sales representatives.

Exhibits 34 and 35 are also irrelevant as Rayl had no knowledge or experience regarding complaints or other customer service issues from Pennsylvania. Exhibit Nos. 34 and 35 were authored in 1992, when Rayl worked in the Tulsa Call Center, and they do not reference calls from Pennsylvania. See Ex. C, Pls. Ex. Nos. 34, 35; see also Ex. A, Rayl Transcript at 46:9-11, 47:6-13. The Tulsa Call Center did not handle customer service for Pennsylvania. Id. at 46:9-47:5, 51:17-25. As such, admission of the irrelevant documents listed in Plaintiff's exhibit nos. 34 and 35 would be highly prejudicial and likely to confuse the jury under Federal Rules of Evidence 401-403.

IV. **PLAINTIFF'S EXHIBIT NO. 41, DOES NOT RELATE TO SALES PRACTICES AND IS HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

Plaintiff's exhibit no. 41 is a January 19, 1994, six-page memorandum from Rayl to Robert Crimmins, then the Executive Vice-President of Personal Insurance. See Ex. D, Pls. Ex. No. 41. The memorandum was drafted in connection with Rayl's perceived problems with his career, the development of customer services and the MetLife call centers. Id. It is filled with Rayl's prejudicial and biased opinions, such as "God help us, the customers and the Company," "I fully expect to be out of here," "I hope this does not come across as just being my frustration or that I am just griping and complaining." Id.

Plaintiff's exhibit no. 41 only contains two sentences referencing AP in its total of six pages. See Ex. D, Pls. Ex. No. 41 at 2. Rayl stated, "Based on complaints received in the past three years, I tried to convince people we were (and are) sitting on a time bomb with the way Accelerated Payment was presented and sold to our customers. We are now moving, albeit very slowly, to address this issue, but again nobody wanted to listen until it was serious." [emphasis omitted] Id. The memorandum was authored in December 1994, two years after plaintiff's 1992 sale. Consequently, exhibit no. 41 should be excluded as irrelevant, prejudicial, and likely to confuse the jury under Federal Rules of Evidence 401-403. The document does not fall within the "business records" exception to the general hearsay rule under federal Rule 803(6). Even if they did, the sources of the information indicate a "lack of trustworthiness." Exhibit 41 is rife with personal opinions. If plaintiffs' introduced Rayl as a witness, he would not be allowed to testify as to his opinions, such as they are expressed in his documents, since he is not an expert.

V. **THE RAYL DOCUMENTS LISTED IN PLAINTIFFS' EXHIBITS ARE INADMISSABLE AS "BAD ACTS" EVIDENCE UNDER FEDERAL RULE 404(b).**

Plaintiff will most likely attempt to use the Rayl documents to show unrelated alleged "wrongs" or "bad acts" of MetLife to show that MetLife behaved in the same manner in this case. This evidence would be inadmissible under Federal Rule of Evidence 404(b). In order for "bad acts" evidence to be admissible to establish a common plan exception to the rule, Plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible. See id.

If Plaintiff argues that Federal Rule of Evidence 404(b) permits this type of evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," it is without merit. To show that improper bad acts evidence is admissible to show intent, this Court has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker, 207 F.3d at 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999))(emphasis added).

VI. **THE RAYL DOCUMENTS LISTED IN PLAINTIFF'S EXHIBITS CONSTITUTE INADMISSABLE HEARSAY AND HEARSAY WITHIN HEARSAY**

The documents that Rayl authored on AP are classic hearsay. In order for Rayl's testimony and documents to be admitted into evidence, the Plaintiff must satisfy their burden of showing that they fit within an exception to the hearsay rule. The Plaintiff failed to meet that burden. The documents authored by Rayl do not fall within the "business records" exception to the general hearsay rule under Federal Rule of Evidence 803(6). Even if they did, the sources of

the information indicate a "lack of trustworthiness." Rayl's documents are rife with personal opinions, emotional outbursts, and were clearly not written in the regular course of his employment duties. If plaintiffs' introduced Rayl as a witness, he would not be allowed to testify to his opinions, such as they are expressed in his documents, since he is not an expert.

The documents also contain hearsay within hearsay as Rayl is re-telling his version of various complaints, for which he has no first-hand knowledge. Because the Rayl documents fail to satisfy the requirement of trustworthiness and they constitute inadmissible hearsay, these documents should be excluded from evidence.

## **CONCLUSION**

For the foregoing reasons, MetLife and Willaim Friedt, Jr. respectfully request that this Honorable Court enter an Order barring the introduction or use of Plaintiff's exhibit nos. 33, 34, 35, 41, 47, 48, 51, 54, and 61 documents authored by and relating to James Rayl.

                                                  Respectfully Submitted,

                                                  s/ B. John Pendleton, Jr.
                                                  B. John Pendleton, Jr.
                                                  McCARTER & ENGLISH, LLP
                                                  Four Gateway Center
                                                  100 Mulberry Street
                                                  Newark, NJ 07102
                                                  (973) 622-4444

                                                  Attorneys for Defendants
                                                  Metropolitan Life Insurance Company and
                                                  William Freidt, Jr.

Dated: June 19, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of June, 2006, a true and correct copy of the foregoing **METROPOLITAN LIFE INSURANCE COMPANY'S AND WILLIAM FRIEDT'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFF'S EXHIBIT NOS. 33, 34, 45, 41, 47, 48, 51, 54 and 61 DOCUMENTS AUTHORED BY JAMES RAYL** was served upon the following via electronic delivery:

>Kenneth R. Behrend, Esquire
>BEHREND & ERNSBERGER, P.C.
>Union National Bank Building, 3rd Floor
>306 Fourth Avenue
>Pittsburgh, Pennsylvania 15222
>*(Attorneys for Plaintiff)*

>s/   B. John Pendleton, Jr.

ME1\5691692.1