UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOM PRIVETT and LINDA PRIVETT,

    Plaintiffs,

vs.                                        Case No. 8:00-cv-2244-T-23TBM

METROPOLITAN LIFE INSURANCE CO.,
KEITH MORRIS, DANNY THOMASON,
RANDALL NEWCOMB and BOB ROSS,

    Defendants.
_____/

## REPORT AND RECOMMENDATION OF SPECIAL MASTER

THIS MATTER came on for hearing on all pending motions April 6, 2001 before the undersigned special master. The pending motions are: plaintiffs' motion to remand (dkt. 16); defendants' motion to dismiss (dkt. 5, 7, 10) ; plaintiffs' "motion to strike motion to dismiss complaint, or in the alternative to stay the time to respond after determination of subject matter jurisdiction of this court" (dkt. 15); defendants' unopposed motion for leave to file brief in excess of twenty pages in opposition to plaintiffs' motion to remand and motion to strike (dkt. 30); and motion by defendants to file reply in further support of their motion to dismiss the amended complaint (dkt. 34).

The latter two motions (dkts. 30 and 34) are not opposed and should be granted. All memoranda have been considered in reaching the recommendation set out herein. The undersigned does not believe that plaintiffs' "motion to strike"defendants' motion to

363a

Exhibit 1

dismiss is a proper motion. See Rule 12(f), Federal Rules of Civil Procedure. However, it is rendered moot by this report and recommendation.

## STATEMENT OF THE CASE

Plaintiff filed this action on March 24, 2000 in the Circuit Court of Lonoke County, Arkansas. The original complaint alleged various wrongful practices, violations of Arkansas statutes and breaches of contract in connection with three MetLife insurance policies. The case was removed to the United States District Court for the Eastern District of Arkansas. That removal was predicated upon the All Writs Act, 28 U.S.C. §1651. Shortly after removing the action, defendants filed a motion to transfer the case to this court and a motion to dismiss. Plaintiffs filed a motion to remand which was granted, the district court in Arkansas finding that it did not have jurisdiction under the All Writs Act. That court also denied the defendants' motions to dismiss and transfer.

The order of remand was entered October 17, 2000. On October 23, 2000 plaintiffs filed and served their second amended and restated complaint, substantially changing their claims. Defendants filed a notice of removal to this court on October 27, 2000 and moved to dismiss on November 3, 2000. Plaintiffs moved to remand and moved to strike or, alternatively, to stay consideration of defendants' motion to dismiss until this court determines whether it has subject matter jurisdiction.

The motion to dismiss, filed by defendants MetLife and Ross, and joined in by the other defendants, contends this action is barred in part by principles of res judicata

-2-

364a

and release because of the settlement in Horton v. Metropolitan Life Ins. Co., Civil No. 93-1849-CIV-T-23A.(M.D. Fla., Oct. 25, 1994). Defendants also contend that the case should be dismissed because it interferes with the orderly administration of the Horton settlement and violates the Horton permanent injunction. Plaintiffs' motion to remand is based upon numerous grounds contesting the Court's subject matter jurisdiction.

The order of referral herein directs and authorizes the special master to conduct any proceedings deemed necessary and to prepare a report and recommendation:

(1)  as to whether the plaintiff is a member of the Horton class and whether he should be bound by the orders and judgment in that case, and

(2)  as to any pending motions for which the findings on the Horton issues are determinative.

## THE HORTON CLASS ACTION AND SETTLEMENT

On October 25, 1994, after notice and hearing, this Court rendered an order approving a class action settlement in Horton. The order, which provided that the "Settlement Agreement is and shall be binding on all settlement class members," certified a settlement class consisting of:

> all persons who purchased a MetLife whole life insurance policy as a retirement and/or other savings plan or vehicle, based in whole or in part on written materials or other solicitations that allegedly did not fully disclose that these plans were life insurance products, from (a) the Rick Urso & Associates Sales Office (or its predecessor office) between January 1, 1988 and October 31, 1993, or (b) any

-3-

365a

> other sales office of MetLife between January 1, 1990 and October 31, 1993.

Horton, Order Approving Class Action Settlement, p.1.

The order also dismissed with prejudice the claims of the settlement class and discharged MetLife and its employees from any other claims by members of the settlement class. By order dated November 8, 1995, this Court permanently enjoined Horton class members and others from continuing to litigate in any other forum claims "that were or could have been raised" in Horton. Order Granting Perm. Injunction ¶6.

## DISCUSSION

> The Record Fails to Establish that the Court Has Jurisdiction Under the All Writs Act, 28 U.S.C. § 1651, in this Case.

A. Preface

In considering this case, the undersigned has reviewed all of the motions and memoranda filed by the parties and heard argument of counsel at the hearing held April 6, 2001. Procedurally, the first motion to consider is the plaintiffs' motion to remand, but the arguments and points contained therein are also made or opposed in the defendants' motion to dismiss and in plaintiffs' opposition thereto. All of the motions and memoranda have been considered. While this report and recommendation goes no further than the motion to remand, it is a substantive decision regarding the matters of fact and law discussed and subsumed in all of the motions.

-4-                                366a

B. The Issue

In their motion to remand, plaintiffs raise numerous grounds to contest this Court's jurisdiction. Many of those points, e.g., failure of the defendants to comply with 28 U.S.C. § 1446 procedures and the so-called "last in time" rule, have been raised and rejected before. However, this case should be remanded to the Circuit Court in Lonoke County, Arkansas, because the record does not establish any current violation of the Horton injunction or danger to the Horton settlement. Thus, the basis upon which jurisdiction can be invoked under the All Writs Act, 28 U.S.C. 1651, does not here exist.

The second amended and restated complaint removed from Arkansas state court does not contain any Horton claims. Accordingly, plaintiffs submit it should be remanded. On the other hand, defendants claim plaintiffs have amended their complaint to "plead around" Horton and that the Court should look to the original complaint to see that plaintiffs are asserting Horton claims and, thus, interfering with the Horton settlement and injunction.

Therefore, the issue presented in this case is whether a plaintiff who meets the Horton class definition, and who raises Horton-like claims, may drop the Horton claims and then pursue non-Horton claims against MetLife with regard to a "Horton" whole life policy? To answer this question, one must first address whether non-Horton claims may be pursued at all under a whole life policy otherwise falling within the Horton class definition.

367a

C. The Policies and the Allegations

Thomas Privett was the owner a $75,000 MetLife whole life policy which he acquired in 1975. In December of 1991 Privett used that policy to purchase a $150,000 universal life flexible premium life policy. At that time Linda Privett acquired a $100,000 policy of the same kind and Thomas Privett bought a $40,000 whole life policy on his daughter, Lisa.

The two plaintiffs are here suing with regard to alleged wrongs and breaches regarding these three separate policies. Tom Privett's $150,000 universal life flexible premium life policy is not a "<u>Horton</u>" policy because it is not a whole life policy. Linda Privett's $100,000 policy of the same kind is likewise not a "<u>Horton</u>" policy. However, the $40,000 whole life policy which Thomas Privett purchased on the life of his daughter, Lisa, falls within the <u>Horton</u> time frame and is the type of policy, i.e., a whole life policy, covered by the settlement. It is, therefore, a "<u>Horton</u>" policy.

In plaintiffs' original complaint <u>Horton</u>-like allegations were made regarding sales representations by MetLife agents that these policies were sold as "investment plans" (see, e.g., ¶¶ 45, 49 and 81). With these allegations, and since one of the policies was a whole life policy purchased between January 1, 1990 and October 31, 1993, there was a basis for removal of the original action to this court under the All Writs Act, 28 U.S.C. § 1651. However, the case was removed not to this court, but to the Eastern District of

-6-    368a

Arkansas. There it was remanded for lack of jurisdiction. Before the case was removed here, the plaintiffs amended their complaint to excise all Horton-like allegations.

Defendants contend this is improper, i.e., that plaintiffs are attempting to "plead around" the Horton case or "manipulate their pleadings" to avoid the fact that Mr. Privett is a Horton class member. See defendants' Brief In Support of Motion to Dismiss the Amended Complaint pp. 8, 10. This is, of course, one way to view plaintiffs' amendments to the pleadings, since certainly plaintiffs anticipated the prospect of having their case removed to this forum and sought to avoid it. On the other hand, how does one keep from violating the Horton injunction? Obviously, by not making Horton claims or, if such claims have been made, by dropping those claims. That is not necessarily a sinister act, but can also be construed simply as compliance with this Court's injunction of November 8, 1995.

It is worth noting that, notwithstanding its Horton-like allegations,[1] the gravamen of the plaintiffs' original complaint was that the policies were sold based upon promises that they could be purchased "without any out of pocket cost" (¶¶ 24, 25) and that they would "...accumulate cash surrender value and pay dividends or interest on the accumulated cash surrender value" (¶ 23) and that these promises were false. Moreover, the original complaint alleged that when the Privetts inquired about the cancellation

---

[1] Plaintiffs' counsel has referred to the inclusion of Horton-like claims in the original complaint as "inadvertent". See plaintiff's motion to remand ¶ 35. Whether that is so is not material to the decision recommended herein.

-7-   369a

notices they had received for non-payment of premiums. MetLife's representatives falsely promised to "look into" the problems but, in essence, concealed from them the problems with the policies. (¶¶ 33, 34).

D. Non-Horton Claims Are Not Barred

Of the three policies involved in this case, only the $40,000 policy on Lisa is a whole life policy. Defendants contend Horton bars all claims with regard to the Lisa whole life policy.[2] If that is true, then consistent with this Court's prior orders it would continue to have jurisdiction under the All Writs Act to enjoin or dismiss prosecution of claims under that policy. Plaintiffs' dropping Horton-like allegations as they did here would be to no avail.

There is some support for defendants' position in the language of this Court's orders. Both the order approving the class action settlement and the order granting permanent injunction in Horton speak of the release or injunction of all claims that:

> have been, could have been, may be or could be alleged or asserted by any of the Named Plaintiffs, other settlement class members or the settlement class against MetLife...arising out of, or related in whole or in part to any or all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in this action or that are related to sales solicitations described in the Second Amended Complaint...or the purchase of Whole Life

---

[2] Defendants also submit that the remaining claims under the Privett's two non-Horton universal life policies should be dismissed because they "interfere" with the Horton settlement.

-8-    370a

> <u>Policies</u>...including without limitation any and all claims for damages rescission, equitable and legal relief...(emphasis supplied)

See Order Approving Class Action Settlement, p. 3, and Order Granting Permanent Injunction, p. 3.

This broad language reads like that of a typical general release. The question is: was it? In other words, did the <u>Horton</u> settlement, and the final judgment approving it, thereafter bar all claims of any kind of all persons who had purchased MetLife whole life policies between January 1, 1990 and October 31, 1993? Defendants contend this question must be answered in the affirmative. However, this contention does not square with the facts or the law.

First of all, and perhaps most importantly, defendants' current position is inconsistent with MetLife's position at the time the <u>Horton</u> settlement was proposed. MetLife's counsel Lorna G. Schofield stated at the fairness hearing held on July 18, 1994:

> ...the class is not made up of all purchasers of whole life insurance. It is made up of a class of purchasers of whole life insurance who were– who bought life insurance as savings or retirement plans pursuant to sales solicitation plans that have been alleged to be misleading.

Hearing transcript, p. 58. At pages 95-96 of the transcript she goes on to state, in responding to objectors' criticism that the class notice required settlement participants to state they were "misled":

371a

-9-

> Moreover, it's not appropriate for every whole life policyholder or even every whole life policyholder who bought their product as a savings plan or vehicle to participate in the settlement, because the crux of the allegations in this case is not that it was improper to sell whole life insurance or to point out that there were savings aspects to it, but the real crux of some of the allegations was that some people, we are told, and we certainly don't admit, were not told or did not understand that what they were buying were life insurance policies.
>
> And it's only appropriate, in our view, that those people be permitted to participate in the settlement. Those are the people who have the claims that have been asserted in this case. And so it's for that reason that the claim form was designed in the way that it was.
>
> So as I said, for all those reasons, I think it's maybe a little bit academic who has standing to object here and who doesn't given all we've been through, but I hope I've at least clarified the class definition.

Thus, the <u>Horton</u> settlement was limited to the <u>Horton</u> class which was limited to the retirement or savings claims defined. As is crystal clear from Ms. Schofield's comments above, the settlement did not include <u>any</u> other misrepresentation claims that might arise under the sale of whole life policies.

Consequently, the following notice submitted by the parties was approved. It required class members to state under oath that all of the following were true:

a. I purchased a MetLife whole life insurance policy that was sold to me as a retirement and/or savings plan or vehicle.

372a

-10-

  b.  At or prior to the time that I made the purchase, I received from a MetLife representative a sales solicitation that did not fully disclose to me that the product I would receive was a life insurance policy.

  c.  I was misled by this sales solicitation, and I did not understand that I was buying a life insurance policy at the time I bought it.

See p. 7, Findings of Fact and Conclusions of Law Regarding Fairness of Class Action Settlement. People who could not agree with the above statements were not members of the class.[3] If you were not a member of the class, you could not participate in the settlement.

MetLife now contends that other types of claims of whole life policyholders during the Horton time frame based, for example, upon "churning" or accelerated payment misrepresentations or performance misrepresentations, are all barred by a settlement in which those policyholders could not have participated. Not only would this result seem unfair and raise anew substantial "commonality" and "adequacy of representation" issues, discussed infra, but the MDL 1091 case shows that obviously didn't happen.

This is so because clearly, there were various non-Horton claims of MetLife whole life policy holders for the Horton time period later included in the MDL 1091

---

[3] The Court has found, however, that "[a]wareness that the product included life insurance" does not necessarily exclude one from the class. See Horton v. Metropolitan Life Ins. Co., Case No. 93-1849-Civ-T-23A, (Order dated Oct. 25, 1994, p. 2).

class. See Final Judgment, In re Metropolitan Life Insurance Company Sales Practices Litigation, MDL 1091, Misc. Docket No. 96-179, (W.D. Pa. Dec. 28, 1999) ("MDL 1091"). The types of claims Tom Privett makes in this case are like the "replacement claims", "accelerated payment claims" and the "performance claims" catalogued in Exhibit A to the Stipulation of Settlement in MDL 1091. Those types of claims were never contemplated to be barred by the settlement in this case. As is clear from the statements of MetLife's counsel at the fairness hearing, the whole life policy claims in Horton were limited to "savings or retirement" type claims.

Accordingly, in MDL 1091, the non-Horton claims of MetLife whole life policyholders during the Horton time period were not excluded or limited. Rather, only those who had actually obtained relief in Horton - which was a full refund of premiums, plus interest- were excluded from MDL 1091. See MDL 1091, Final Judgment, p. 2. In other words, if a person purchased a whole life policy within the relevant time period based upon both Horton-like deceptions and, for example, "accelerated payment" deceptions, Horton would not bar the latter claim in MDL 1091 unless that party had actually participated in Horton relief.

The Horton settlement and judgment does not bar the assertion of non-Horton claims on whole life policies purchased between January 1, 1990 and October 31, 1993. This is because the settlement and release in Horton, regardless of the breadth of its language, is limited by the nature of the class action brought and the class defined. The

374a

Federal Rules of Civil Procedure, including the class action mechanisms of Rule 23, "shall not abridge, enlarge or modify any substantive right." See the Rules Enabling Act, 28 U.S.C. § 2072(b).

It is acknowledged that a settlement may properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action but depending upon the same set of facts. See National Super Spuds, Inc. v. New York Mercantile Exchange, 660 F. 2d 9 (2nd Cir. 1981); TBK Partners, Ltd. v. Western Union Corp., 675 F. 2d 456, 460 (2nd Cir. 1982). However, what defendants propose occurred here would be a settlement of claims far beyond the "same set of facts."

Plaintiffs and the class certified here were persons who possessed savings and retirement claims, not accelerated payment claims or performance claims or various and sundry other possible claims. Class plaintiffs could not release those claims for absent class members because they did not possess them. The "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) [quoting, Schlesinger v. Reservists Comm To Stop the War, 418 U.S. 208, 216 (1974)]. Class representatives are not adequate and their claims lack commonality if their interests conflict with those they purport to represent. See Amchem Products, Inc. v.

Windsor, 521 U.S. 591, 625-626 (1997). As stated by Judge Friendly in National Super Spuds, Inc., supra, 660 F. 2d at 16:

> The most fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class.

The issue providing "commonality" to the plaintiff class here was not that they bought a whole life policy, but that they bought a whole life policy "as a retirement and/or savings plan or vehicle, based in whole or part on written materials or other solicitations that allegedly did not fully disclose these plans were life insurance products." Defendants cannot be heard to contend that the plaintiff class released claims which it never possessed. To have done so would have made the class representatives far less than adequate. Again, Judge Friendly:

> An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class.

Id. at 19. The Horton settlement could not release non-Horton claims and Horton is not res judicata as to such claims.

E. Tom Privett's Non-Horton Claims Are Not Barred.

Here, however, Horton-like claims were actually made with regard to Lisa's $40,000 whole life policy in the initial complaint, but then dropped. Did Tom Privett, by asserting Horton-like claims with respect to a Horton policy thereby preclude himself forever from pursuing non-Horton claims with regard to the same policy? Not in the

undersigned's opinion. By dropping the Horton-like claims, plaintiff Tom Privett simply complied with this Court's orders. Had he not done so, the undersigned would recommend, as has been done before, that the Court dismiss the Horton claims with prejudice and remand the balance. As stated by the Court in its order adopting the Special Master's Report and Recommendation in Coulter, et al v. Metropolitan Life Insurance Co., Case No. 96-2391-CIV-T-23E (M.D. Fla. July 30, 1999):

> The Special Master has indicated repeatedly that a complaint on behalf of plaintiffs who are not barred and for claims that are not barred is readily transferable. I agree.

The fact that Mr. Privett may have also possessed a Horton claim which he did not timely assert does not prohibit him from pursuing other claims on his daughter's whole life policy. Mr. Privett may not have been "misled" with regard to the character of that policy. He may have been keenly aware that it was life insurance, and not a savings plan or investment vehicle.[4] If so, he could not have participated in the Horton settlement. It would seem only logical, if not obvious, that if one cannot participate in a class action because one's claim does not fall within the class definition, that claim is not barred by the class action. By the same token, if you have a defined claim which you choose not to assert, or assert it belatedly, there is no good reason why that fact should prevent you from asserting other claims that are not covered by the class settlement and

---

[4] It was so stated in the affidavits filed by plaintiffs before the Arkansas District Court, specifically contradicting the allegations of their complaint.

release. There should be no penalty for dropping a claim when one learns it has been precluded. Tom Privett does not come before this Court as a <u>Horton</u> class member because his claims are not <u>Horton</u> claims.

In summary, the rights affected by the class settlement are limited by the definition of the class itself. All claims of misrepresentation regarding the purchase of a whole life policy between January 1, 1990 and October 31, 1993 based upon it being a retirement or savings vehicle are barred, but other claims for other types of misrepresentations, e.g., purchases made because an agent misrepresented a policy's cost or potential cash value, are not. Those are not <u>Horton</u> claims.

Since the plaintiffs' second amended and restated complaint contains no <u>Horton</u> claims, there is no predicate for jurisdiction under the All Writs Act and it is recommended that this case be remanded to the Circuit Court of Lonoke County, Arkansas. By this remand, the remaining motions are here rendered moot.

F. Epilogue.

In updating the research for this report and recommendation, the case of <u>Henson v. Ciba-Geigy Corp. et al.</u>, 14 FLW Fed C1094 (11th Cir., Case No. 99-6021, August 14, 2001) has come to light. It holds that the All Writs Act does not provide a basis for removal jurisdiction. Whether there will be a rehearing in <u>Henson</u> is unknown at this writing. However, if that decision remains the law of this Circuit, then this case should

be remanded based upon <u>Henson</u> alone, without need for further consideration of the other reasons for remand.

Respectfully recommended this 6th day of September, 2001.

_____
Wayne Lee Thomas, Special Master
Post Office Box 1834
Tampa, Florida 33601-1834
Telephone: (813) 229-3638
Fax: (813) 223-5204

379a

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copy hereof has been furnished by U.S. mail this 6th day of September, 2001 to:

Morgan E. Welch, Esquire
Eubank, Welch, Baker & Schulze, LLP
620 West Third Street, Suite 100
Post Office Drawer 3685
Little Rock, Arkansas   72203-3685

Byron Freeland, Esquire
Mitchell, Williams, Selig, Gates & Woodyard
425 Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

Scott J. Lancaster, Esquire
Friday, Eldredge & Clark
400 W. Capitol, Suite 2000
Little Rock, Arkansas   72201

H. C. Martin, Esquire
James R. Wallace & Associates
212 Center Street, Suite 100
Little Rock, Arkansas   72201

Charles Wachter, Esquire
Fowler, White, Gillen, Boggs,
   Villareal and Banker, P.A.
501 E. Kennedy Boulevard, Suite 1700
Post Office Box 1438
Tampa, Florida   33601-1438

_____
Wayne Lee Thomas, Special Master