IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD M. GONDA, | ) | Civil Action No. 00-2286 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY and WILLIAM FRIEDT, JR., | ) ) ) | |
| Defendants | ) | |

---

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE PENNSYLVANIA MARKET CONDUCT EXAMINATION OF METROPOLITAN LIFE INSURANCE COMPANY**

---

Filed on Behalf of Plaintiff by:

Kenneth R. Behrend
Attorney I.D. No.: 37961
Union Bank Building
306 Fourth Avenue
Suite 300
Pittsburgh, PA 15222
(412) 391-2515
Attorney for Plaintiffs

## PRELIMINARY STATEMENT

This Court has previously considered the exact legal arguments presented in Defendants' Motion in Solarchick v. MetLife, Civil Division No. 01-444.  In Solarchick, this Court held that those portions of the Market Conduct Examinations which discussed the sales practices used on the Solarchicks in that case, were relevant and admissible.  Plaintiff contends that as the same law is applicable in the instant case, Defendants' Motion should be denied for those reasons considered by this Court in Solarchick.  See May 10, 2006, Order attached hereto as Exhibit 1.  Indeed, Defendants' Brief in Support of this Motion in Limine raises identical arguments to that filed in Solarchick

Plaintiff seeks to introduce evidence of the relevant deceptive marketing habits, customs and business practices of MetLife in Pennsylvania, which were used in the sale of the life insurance policies at issue to Ronald Gonda.  This evidence of course of dealings is admissible as tending to prove deceptive and fraudulent business practices where Plaintiff alleges these very practices were used against them.[1]  One of the key documents which Plaintiff contends demonstrates Defendants'

---

[1] The issue of the admissibility of evidence of the habit, custom and business practices of MetLife has been extensively briefed in Plaintiffs' Memorandums of Law in response to Defendants' numerous Motions in Limine all designed to restrict the introduction of MetLife's marketing techniques.  See Aspen - Handbook of Pennsylvania Evidence, § 4.06[B] Habit and Routine Practice in Business and Organizations, sets forth:

> **Courts are inclined to leniency in admitting evidence of business custom.** There is no confusion with character, and **the business nature of the behavior in question is a greater guarantee of regularity than in the case of purely personal, voluntary acts. As a practical matter, large organizations cannot exist unless much of their work is routinized.** In Commonwealth v. Porter, 659 F.2d 206 (3d Cir. 1981), cert. denied, 458 U.S. 1121 (1982), the court admitted evidence of a pattern of civil rights violations. **This pattern or routine practice occurred over more than two years prior to the filing of the suit and also subsequent to the litigation. The Court held this evidence relevant to showing a routine practice of the defendant.**

marketing practices also used to sell insurance policies to them were widespread and deliberate company business practice is the Pennsylvania Insurance Department's Report of Market Conduct Examination of Metropolitan Life Insurance Company, issued on February 11, 1994. ("PaMCE").

The PaMCE covered the period from January 1, 1990 through December, 31, 1992 and addressed the Pennsylvania Insurance Departments findings upon review of MetLife's management, marketing and sales practices in Western Pennsylvania. See PaMCE, pp. 4-5. The findings of the Insurance Department are particularly relevant in this case as Mr. Gonda's Whole Life Policy was sold in Western Pennsylvania in 1992.

MetLife seeks to preclude introduction of the PaMCE on the grounds that the documents constitute "one-sided investigations" which lack the inherent trustworthiness of an official record and that the relevance of the document is immaterial given the "overwhelming prejudicial impact" introduction of the document would have on MetLife. Neither of these arguments have merit.

The Legislatively enacted administrative procedures used by the Insurance Department have been tested and found to afford constitutional due process protections by the Pennsylvania appellate courts. See Mercy Regional Health Sys. v. Dept. of Heatlh, 645 A.2d 924, 930[fn11] (Pa. Cmwlth. 1994). Pursuant to the statutory procedure outlined by the Legislature, after the Pennsylvania Insurance Department investigates a company's sales practices, it issues a report to which the insurance company may respond. Thereafter, based upon the company's response to the report, the Insurance Commissioner either holds a due process hearing in a judicial capacity and makes findings of fact and conclusions of law, if the insurance company contests the findings in the Report or, if the

---

See Aspen - Handbook of Pennsylvania Evidence, Chapter 4 Relevancy and Its Limits § 4.06 Habit and Routine Practice, p. 132 (Emphasis added).

insurance company does not contest the findings made in the Report, they are adopted as a final order and adjudication.[2]  A review of the history of the PaMCE indicates that the Pennsylvania Legislature authorized the Insurance Commissioner through the Department of Insurance to perform market conduct examinations to determine under this procedure whether suspected violations of Pennsylvania's insurance laws were taking place. See 40 P.S. 323.1.

In the instant case, the Insurance Department's investigation of Metropolitan Life spanned the period of time between January 1, 1990 through December 31, 1992. See Defendant's Exhibit A, PaMCE p.4.  However, the findings were not limited to this time period., since MetLife was required to "ensure similarly situated policyholders outside the examination period who come forward are accorded restitution consistent with the Report's Recommendations. See Defendant's Exhibit A, PaMCE Order, ¶5.  In August of 1993, the Market Conduct Examination began.  Pursuant to the statutory procedures, the Insurance Department submitted findings of fact of multiple deceptive sales practices which were committed on Pennsylvania consumers.  These factual findings in the Report, according to the statutorily prescribed procedures, were submitted to Metropolitan Life for review which had an opportunity to either litigate the findings through a due process hearing, or to accept them.

Upon confirmation through its own internal investigation, MetLife's senior management determined that it could not credibly oppose these findings and allowed them to become final and binding without opposition, i.e. MetLife did not appeal the Final Order of the Insurance Department. Indeed, MetLife chose to not request a hearing on the factual findings and agreed to waive its

---

[2]Accordingly, an opportunity to litigate is afforded, together with the right to appeal to the Commonwealth Court.

statutory right to contest the findings.  See Defendant's Exhibit A, Section XIII. Company Response, letter of February 14, 1994 to Harry P. Kamen, Chairman and C.E.O. of MetLife from Thomas S. Buzby, Deputy Insurance Commissioner. ("Since we have agreed on the revision, [on pages 164-165 of the Report], and pursuant to our meeting at the Department this morning with MetLife representatives, including Larry Vranka [Vice President and liaison with the Insurance Department] and outside counsel, Michael L. Browne, **it is our understanding that MetLife has agreed not to contest the Examination Report and therefore will not request any hearing on this matter.**") (Emphasis added).  As will be shown herein MetLife's waiver of rights to a hearing to contest the findings of the Department resulted in the entrance of a Final Order by the Commissioner that precludes challenge by MetLife in subsequent civil litigation.

Where an Administrative Agency's findings are not contested or appealed they result in a final order.  See City of Philadelphia v. Lindy, 455 A.2d 278 at 280 (Pa Cmwlth. 1983) citing Elkin v. Bell Telephone Co. of Pa., 420 A.2d 371 at 377 (Pa. 1980)(**The administrative decision became final "by reason of absence of any appeal."**)(Emphasis added).  After the administrative findings become final, the findings are afforded the preclusive effect of collateral estoppel in subsequent civil proceedings involving the same issues.  See Safeguard Mutual Insurance Company v. Williams, 345 A.2d 664 (Pa. 1975)(defining the elements of collateral estoppel in Pennsylvania).  Thus, the findings of an administrative agency made in a judicial capacity, such as the Pennsylvania Insurance Department, are considered to have the same weight and effect as a judgment of a court of competent jurisdiction.  The final order of the Agency may not be collaterally attacked in a subsequent civil action.  This is true even where the company chooses not to appeal the administrative order.  See Erie Human Relations Commission v. Erie Insurance Exchange, 348 A.2d 742 (Pa. 1975); see also

Commonwealth, Etc. v. Wheeling-Pitts. Steel Corp., 348 A.2d 765 (Pa. Cmwlth. 1975).

All that is required to afford due process is an **opportunity** to litigate. Thus, no adjudicative hearing with the introduction of evidence, testimony and cross examination is required so long as the opportunity for the hearing was provided. See Safeguard Mutual Insurance Company v. Williams, 345 A.2d 664 (Pa. 1975)("the party against whom it is asserted has had a full and fair **opportunity** to litigate the issue in question in a prior action."); see also University of Tenn v. Elliott, 478 U.S. 788 at 799 (1986)("Accordingly, we hold that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate **opportunity** to litigate,' federal courts in subsequent actions must give that agency's fact finding preclusive effect.").

In Parklane Hosiery v. Shore, 439 U.S. 322 (1979), the United States Supreme Court held where an administrative adjudicatory hearing was offered to refute findings of the administrative agency and waived, due process was afforded and use of collateral estoppel of the findings of fact made by that administrative agency in a subsequent civil action was permissible. Under the holding, in certain defined circumstances, (which are present in the Allegheny County cases), plaintiffs are permitted to use the findings of an administrative body as offensive collateral estoppel in subsequent litigation. As shown in detail in this brief, those defined circumstances exist in the present litigation.

Further, MetLife's arguments as to the absence of sworn testimony, cross-examination, and hearsay with respect to the PaMCE, lack merit. The PaMCE cites certain generic scenarios that occurred based on the Insurance Department Investigation and makes factual findings and legal conclusions. Second, MetLife waived any objection to the fact that the administrative findings relied on hearsay or unsworn testimony by failing to object or appeal those findings.

Third, Plaintiffs seek to introduce the findings of fact and conclusions to show a course of conduct as evidence tending to demonstrate a state of mind and tacit knowledge and approval of certain practices by MetLife, as opposed to testimony regarding how the actual prohibited practices occurred. Each of the deceptive sales practices cases involved an employee of MetLife and utilized the very practices outlined in the PAMCE in the sales to the Allegheny County policyholder/plaintiffs. The agents therefore are bound by the decision of their employer, MetLife, to accept the administrative findings of the Insurance Department and its failure to appeal. The agents are in privity and stand in the shoes of MetLife. Thus, the employees of MetLife are bound by the findings made in the PaMCE of MetLife. See Transamerica Occidental Life Ins. v. Aviation, 292 F.3d 384 at 393 (3rd Cir. 2002).

Finally, under the official records exception to the hearsay rule, Federal Rule of Evidence 803(8)(B) the PaMCE is admissible as a record of "matters observed pursuant to a duty imposed by law. . . ", and can be relied upon by an expert, as a source of information that would be regularly relied upon by an expert in the field. See Shapiro v. State Board of Accountancy, 856 A.2d 864 (Pa. Cmwlth. 2004) (Contents of administrative adjudication trustworthy where they were developed through a process during which "Petitioners were afforded an opportunity to be heard and to challenge." Refusal of opportunity does not imperil trustworthiness.); See also Thorne v. Department of Transportation, 727 A.2d 1205 (Pa. Cmwlth. 1999)

Accordingly, as the findings of both the PaMCE and the Florida Report possess the requisite trustworthiness required for admissibility they should be admissible as evidence tending to prove Defendants' habits, customs and business practices in the sale of life insurance policies pursuant to a misrepresentation as to the period for which premiums are due and for the purpose of establishing

intent and approval of the use of these practices in the sale of policies to the Plaintiffs.

## ARGUMENT

**I.     THE PENNSYLVANIA MARKET CONDUCT EXAMINATION IS ADMISSIBLE**

    **1.     Government records created in official function can be cited and relied upon by experts in the field.**

Initially, it should be observed that under the PaMCE is admissible, under the official records exception, Federal Rule of Evidence 803(8)(c) and can be relied upon by an expert, as a source of information that would be regularly relied upon by an expert in the field. Indeed, the Federal Rules of Evidence recognize that records kept by government entities are generally excepted from the hearsay rule and therefore are admissible. The Third Circuit has stated that where "[t]he Report was based on a factual investigation conducted by a public agency, and was admitted under an exception to the hearsay rule for public records and reports. Fed.R.Evid. 803(8)(C). Rule 803(8)(C) permits evidence of "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.". See Goodman v. Pennsylvania Turnpike Comm., 293 F.3d 655 (3rd Cir. 2002).

The Insurance Commission investigation, documents, and findings in question, as discussed in detail above, are relevant to Defendant's habit or business practice of deceptively selling life insurance policies. They were prepared pursuant to the Commission's official duty as the state regulatory body charged with enforcing the regulations of Pennsylvania, were created as the result of an investigation into the sales practices of Defendants and do not demonstrate any circumstances which would indicate that they lack trustworthiness the documents are admissible as to the facts found within and the fact that such an investigation took place.

In Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988), the United States Supreme Court

has further held that:

> Statements in the form of opinions or conclusions are not by that fact excluded from the scope of Rule 803(8)(C). The Rule's language does not call for the distinction between "fact" and "opinion" drawn by Smith, supra, and other proponents of a narrow interpretation of the Rule's "factual findings" phrase, since "finding of fact" is commonly defined to include conclusions by way of reasonable inference from the evidence, and since in specifying the kinds of reports that are admissible the Rule does not create a distinction between "fact" and "opinion." Nor is any such distinction required by the intent of the Rule's framers, as expressed in the Advisory Committee's Notes on the Rule. This conclusion is strengthened by the analytical difficulty of drawing such a distinction. Rather than requiring that some inevitably arbitrary line be drawn between the various shades of fact/opinion that invariably will be present in investigatory reports, the Rule instructs courts — as its plain language states — to admit "reports . . . setting forth . . . factual findings." Appropriate limitations and safeguards lie in the fact that the Rule's requirement that reports contain factual findings bars the admission of statements not based on factual investigation, and in the Rule's trustworthiness requirement. Thus, as long as a conclusion satisfies the latter requirements, it should be admissible along with other portions of the Report

Id. at

Next MetLife contends that the PaMCE evidence is inadmissible hearsay and unduly prejudicial. This argument also is erroneous. The Advisory notes to the Federal Rules of Evidence define prejudice as ". . . an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." See Advisory Committee Note to Rule 403; See also U.S. v. Rutland, 372 F.3d 543 (3rd Cir. 2004);  See also Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis added)( "As **this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.**")[3]

---

[3] Additionally, Defendants' recitation of the holding of the Commonwealth Court in Sherman v. Maleski, No. 39 M.D. 1994 (PA Cmwlth. Aug 30, 1994) does not lend credence to

Despite, Defendants' contention, there is little to suggest that the introduction of relevant evidence which clearly tends to show that Defendants engaged in a regular practice of misrepresenting the terms of insurance policies substantially similar to those sold to the Plaintiff will cause the fact finder to ignore the facts surrounding the present case and make a decision based upon his prior actions. Instead, the proffered evidence will only support Plaintiff's contention that the policy was sold in the manner alleged pursuant to Defendants' regular habit or practice of manipulating insurance sales to benefit the agent and MetLife through the misrepresentation of the polices being sold.

The Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information. In U.S. v. Driggs, 823 F.2d 52 (3rd Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40, 62 (3rd Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1976).

---

the statement that the PaMCE is biased as to Defendant MetLife. In fact, it was not the report which was found to be biased, but rather the later statements by the insurance commissioner. Additionally, MetLife fails to note that the Commonwealth Court, in a subsequent ruling, determined that the Rule to Show Cause could proceed after the resignations of Insurance Commissioner Cynthia Maleski, in fact, in direct contradiction to Defendant Sherman's portrayal, there is no indication that either the Market Conduct Examination, nor the subsequent Rule to Show Cause were the result of the Insurance Commissions alleged bias toward Agent Sherman. See Sherman v. Kaiser, 664 A.2d 221 (Pa. Comm. 1995).

Id.

Moreover, such arguments go more to more to the weight accorded by the jury to this evidence rather than whether the jury should be precluded from considering it. Any potential prejudice can be cured by redacting irrelevant or unduly prejudice portions of the report and curative instructions can limit the effect and jury's use of this evidence.

   **2.   Evidence of MetLife's business practices to show its tacit knowledge and approval is admissible.**

The Insurance Commissions' regulatory actions against MetLife are relevant and admissible to demonstrate that MetLife engaged in a systematic scheme to defraud existing and potential customers of MetLife, including the Plaintiffs in Allegheny County. This evidence tends to prove intent and tacit knowledge and approval of the improper business practices. Both Market Conduct Examination Reports made findings as to MetLife's management's failure to control the deceptive sales and/or awareness of the use of the deceptive sales practices. See Defendant's Exhibit A, PaMCE, p. 38, ("From analysis of MetLife consumer complaints, audit reports and FIP reports, it was clear management failed to utilize or integrate available internal control mechanisms to detect and control improper replacement activity.").

As evidence tending to show intent and approval of the sales practices by MetLife, Plaintiffs should not be precluded from introducing evidence of the Insurance Commissions' regulatory actions against MetLife where these actions demonstrate that MetLife engaged in a regular practice of misrepresenting the nature of insurance products sold.

   **3.   Other Acts Evidence is Admissible.**

Plaintiff intends to introduce the Report as evidence of the knowledge of MetLife, the

training by MetLife of its sales agents and the use of the business practice by MetLife of selling polices with "vanishing premiums" through the MetLife "Accelerated Payment Plan." The Plaintiffs were provided an "Accelerated Payment Plan" illustration to induce the sale pursuant to the "vanishing premium" deceptive business practice.

Instantly, Met Life engaged in a national scheme of fraud and deception through the use of misleading sales illustrations containing "vanishing premiums." As was set forth in the prior section, the evidence of similar business practices of the sale of policies through the use of "vanishing premiums" by MetLife is relevant and admissible for proof in this case. A federal appellate case, Com. of Pa. v, Porter, 659 F.2d 306 (3rd Cir.1981), held, as to the admission of evidence of a business practice under Rule 406 and Rule 404(b):

> . . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.

Com. of Pa. v, Porter, 659 F.2d at 320, (Citations omitted).

The Third Circuit in Com. of Pa. v. Porter, Id. at 320, also found this ruling was correct based upon the decision of the United States Supreme Court in Hazelwood School District v. United States, 433 U.S. 299, 309-10 n.15, 97 S.Ct. 2736, 2742, n.15, 53 L.Ed.2d 768 (1977); Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977); and Williams v. Anderson, 562 F.2d 1081, 1086 n.7 (8th Cir. 1977).

Federal Rule of Evidence 404(b) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". Id. (Emphasis

-11-

added).

As demonstrated below, both the PaMCE is relevant to the Plaintiff's claims that MetLife was engaged in a corporate scheme to defraud its policyholders and potential policyholders through the use of deceptive sales practices, including Mr. Gonda and should be admitted by this Court.

## II. THE MARKET CONDUCT EXAMINATIONS ADDRESS RELEVANT SALES PRACTICES

### 1). The PaMCE addresses the same sales practices used in the present case

The Insurance Department's investigation of Metropolitan Life concerned the very same sales practices used in the sale of the policies to the Plaintiffs and encompasses the same time period as many of the sales. MetLife's assertion to the contrary is inaccurate. In the instant case,

The Insurance Department, as the experts in Pennsylvania on insurance marketing practices made multiple findings regarding the deceptive use of marketing practices by MetLife. For example in the PaMCE Report, the following findings were reached regarding Metropolitan Life's use of deceptive sales practices in Pennsylvania; specifically relative to MetLife's sales of policies pursuant to the vanishing premiums scheme. See Defendant's Exhibit A, PaMCE, p. 69. (The sale of a whole life policy "was solicited through the promise of a paid-up policy after payments of $14,000.00 ($2,000 per year for a period of seven (7) years."). The Insurance Department found that this sales practice was a violation:

> Section 637 of the Insurance Department Act prohibits misrepresentation of terms of policy and future dividends by agents, brokers, or solicitors. "No agent or solicitor of any insurance company, association, or exchange, and no insurance broker, shall issue, circulate, or use, of cause or permit to be issued, circulated or used, any written or oral statement or circular misrepresenting the terms of any policy issued or to be issued by such company, association, or exchange, or make an estimate, with intent to deceive, of the future dividends payable under such policy."

> The referenced examples clearly demonstrate the noted pattern of sales practices and procedures used by MetLife sales representatives in utilizing sales illustrations based upon non-guaranteed projected values. . . .

See Defendant's Exhibit A, PaMCE, p.72.

Accordingly, the deceptive marketing of life insurance policies through the use of "vanishing premium" sales practices are identified in the PaMCE as deceptive and illegal sales practices. This evidence is relevant and material to proof of the state of mind, intent, habits, customs and business practices of MetLife, as well as goes to the credibility of the parties.

## **CONCLUSION**

The findings in the PaMCE demonstrate violations related to the deceptive representation that a life insurance policy could be funded through a limited number of out-of-pocket premium payments. MetLife did not appeal the findings in the Reports and they became final orders and the findings were adopted and made public by the Insurance Departments. The Reports also do not show any sign of bias or any indication that they lack the trustworthiness generally associated with a report prepared by a government agency in the course of fulfilling its legislatively mandated responsibilities. The Reports contain findings of fact based upon the findings of the investigators, facts again which were not appealed by MetLife. As such the Reports clearly fall into the public records exception to the hearsay rule. Additionally, the Reports provide evidence of a habit or practice by MetLife involving the use of deceptive marketing practices in the sale of its insurance policies, evidence of this type is both relevant and admissible under Pennsylvania Law. Finally, the disputed evidence is admissible for the purposes of proving that the Defendants conduct was so outrageous as to permit the recovery of punitive damages on the part of the Plaintiff. The recovery of punitive damages requires that Plaintiff demonstrate the nature of defendant's egregious conduct

so as ro permit the fact finder to punish the defendant's conduct and deter others from similar conduct.

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion In Limine Regarding the Exclusion of Evidence Regarding the Pennsylvania Market Conduct Examination of Metropolitan Life Insurance Company be denied.

                Respectfully submitted,

                /s/Kenneth R. Behrend
                Kenneth R. Behrend
                PA I.D. # 37961
                Behrend and Emsberger, P.C.
                306 Fourth Ave.  - Suite 300
                Pittsburgh, PA 15222
                (412) 391-2515   (phone)

## CERTIFICATE OF SERVICE

    I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the foregoing Brief in Response to Defendants' Motion in Limine to Exclude Evidence Regarding the Pennsylvania Market Conduct Examination of Metropolitan Life Insurance Company was served upon the below listed counsel and parties via electronic filing on the 26th day of June, 2006.

B. John Pendleton, Jr., Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973)622-4444

                              /s/Kenneth R. Behrend
                              Kenneth R. Behrend
                              PA I.D. # 37961
                              Behrend and Emsberger, P.C.
                              Union Bank Building  - Suite 300
                              306 Fourth Ave.
                              Pittsburgh, PA 15222
                              (412) 391-2515   (phone)
                              (412) 391-2762   (Fax)