## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD M. GONDA, | ) | Civil Action No. 00-2286 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY and WILLIAM FRIEDT, JR., | ) | |
| | ) | |
| Defendants | ) | |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE FLORIDA MARKET CONDUCT EXAMINATION OF METROPOLITAN LIFE INSURANCE COMPANY

---

Filed on Behalf of Plaintiff by:

Kenneth R. Behrend
Attorney I.D. No.: 37961
Union Bank Building
306 Fourth Avenue
Suite 300
Pittsburgh, PA 15222
(412) 391-2515
Attorney for Plaintiffs

## PRELIMINARY STATEMENT

This Court has previously considered the exact legal arguments presented in Defendants'

Motion in <u>Mohney v. MetLife</u>, Civil Division No. 96-186 and <u>Tran v. MetLife</u>, Civil Division No.

01-262 and <u>Solarchick v. MetLife</u>, Civil Division No. 01-444. In both cases, this Court properly

determined that those portions of the Market Conduct Examinations which discussed the sales

practices used on the Plaintiffs in that case, were relevant and admissible[1]. Plaintiff contends that

as the same law is applicable in the instant case, Defendants' Motion should be denied for those

reasons considered by this Court in <u>Solarchick</u>. <u>See</u> Exhibit 1.

## <u>ARGUMENT</u>

### I.     THE FLORIDA MARKET CONDUCT EXAMINATION IS ADMISSIBLE

#### 1.     Government records created in official function can be cited and relied upon by experts in the field.

Initially, it should be observed that the FlaMCE is not inadmissible hearsay, to the contrary

the FlaMCE is admissible pursuant to Federal Rule of Evidence 803(8)(c)(official records exception)

and can be relied upon by an expert, as a source of information that would be regularly relied upon

by an expert in the field. Indeed, the Federal Rules of Evidence recognize that records kept by

government entities are generally excepted from the hearsay rule and therefore are admissible. The

Third Circuit has stated that where "[t]he Report was based on a factual investigation conducted by

---

[1]In <u>Mohney</u> and <u>Solarchick</u>, this Court determined that the Florida Report, while relevant, should be excluded pursuant to Federal Rule of Evidence 403 as it had "great potential to confuse the jury." Plaintiff maintains that the Court's holding as to the Florida Report was error, and that the relevance of the document to the instant case far outweighs the risk of potential confusion on the part of the jury.

a public agency" it is admissible under an exception to the hearsay rule for public records and

reports. Fed.R.Evid. 803(8)(C). Rule 803(8)(C) permits evidence of "factual findings resulting from

an investigation made pursuant to authority granted by law, unless the sources of information or

other circumstances indicate lack of trustworthiness.". See Goodman v. Pennsylvania Turnpike

Comm., 293 F.3d 655 (3rd Cir. 2002).

The investigation, documents, and findings in the FlaMCE, are relevant to Defendant's habit

or business practice of deceptively selling life insurance policies. The FlaMCE was prepared

pursuant to the Florida Insurance Commission's official duty as the state regulatory body charged

with enforcing the regulations of the state of Florida, and was created as the result of an investigation

into the sales practices of Defendants. The FlaMCE does not demonstrate any circumstances which

would indicate that it lacks trustworthiness as such, the FlaMCE is admissible as to the facts found

within and the fact that such an investigation took place.

In Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988), the United States Supreme Court

has further held that:

> Statements in the form of opinions or conclusions are not by that fact excluded from
> the scope of Rule 803(8)(C). The Rule's language does not call for the distinction
> between "fact" and "opinion" drawn by Smith, supra, and other proponents of a
> narrow interpretation of the Rule's "factual findings" phrase, since "finding of fact"
> is commonly defined to include conclusions by way of reasonable inference from the
> evidence, and since in specifying the kinds of reports that are admissible the Rule
> does not create a distinction between "fact" and "opinion." Nor is any such
> distinction required by the intent of the Rule's framers, as expressed in the Advisory
> Committee's Notes on the Rule. This conclusion is strengthened by the analytical
> difficulty of drawing such a distinction. Rather than requiring that some inevitably
> arbitrary line be drawn between the various shades of fact/opinion that invariably will
> be present in investigatory reports, the Rule instructs courts — as its plain language
> states — to admit "reports . . . setting forth . . . factual findings." Appropriate
> limitations and safeguards lie in the fact that the Rule's requirement that reports
> contain factual findings bars the admission of statements not based on factual

investigation, and in the Rule's trustworthiness requirement. Thus, as long as a conclusion satisfies the latter requirements, it should be admissible along with other portions of the Report

Id.

MetLife's argument that the FlaMCE is inadmissible under Federal Rule of Evidence 403 as "highly prejudicial" is without merit. The Advisory notes to the Federal Rules of Evidence define prejudice as ". . . an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." See Advisory Committee Note to Rule 403; See also U.S. v. Rutland, 372 F.3d 543 (3rd Cir. 2004); See also Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis added)( "As **this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged."**)

Despite, Defendants' contention, there is little to suggest that the introduction of relevant evidence which tends to show that Defendants engaged in a regular practice of misrepresenting the terms of insurance policies substantially similar to those sold to the Plaintiff will cause the fact finder to ignore the facts surrounding the present case and make a decision based upon his prior actions. Instead, the proffered evidence will only support Plaintiff's contention that the policy was sold in the manner alleged pursuant to Defendants' regular habit or practice of manipulating insurance sales to benefit the agent and MetLife through the misrepresentation of the polices being sold.

The Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information.

-3-

In **U.S. v. Driggs**, 823 F.2d 52 (3rd Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.

> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40,62 (3rd Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1976).

**U.S. v. Driggs**, 823 F.2d 52 (3d Cir. 1987).

Moreover, such arguments go more to more to the weight accorded by the jury to this evidence rather than whether the jury should be precluded from considering it. Any potential prejudice can be cured by redacting irrelevant or unduly prejudice portions of the report and curative instructions can limit the effect and jury's use of this evidence.

## 2. Evidence of MetLife's business practices to show its tacit knowledge and approval is admissible.

The Florida Insurance Commission's regulatory action against MetLife are relevant and admissible to demonstrate that MetLife engaged in a systematic scheme to defraud existing and potential customers of MetLife, including the Solarchicks. This evidence tends to prove intent and tacit knowledge and approval of the improper business practices. The FlaMCE specifically made findings as to MetLife's management's failure to control the deceptive sales and/or awareness of the use of the deceptive sales practices. See Defendant's Exhibit B, FlaMCE, pp. 32-33 VII. MET'S OSTRICH APPROACH TO THE PROBLEM ("The tenor of the meeting and the lack of follow-up are typical of Met's management style, that of ignoring the problem in the hope it will disappear, like

-4-

an ostrich burying it head in the sand.  No consideration was given to the effect that Urso's practices had no policyholders or the possibility of sanctions against wrongdoers.").

As evidence tending to show intent and approval of the sales practices by MetLife,  Plaintiffs should not be precluded from introducing evidence of the Insurance Commission's regulatory actions against MetLife where these actions demonstrate that MetLife engaged in a regular practice of misrepresenting the nature of insurance products sold.

### 3.    Other Acts Evidence is Admissible.

Plaintiff intends to introduce the Reports as evidence of the knowledge of MetLife, the training by MetLife  of its sales agents and the use of the business practice by MetLife of selling polices with "vanishing premiums"through the MetLife "Accelerated Payment Plan."  The Plaintiffs were provided an "Accelerated Payment Plan" illustration to induce the sale pursuant to the "vanishing premium" deceptive business practice.

Instantly, MetLife engaged in a national scheme of fraud and deception through the use of misleading sales illustrations containing "vanishing premiums." As was set forth in the prior section, the evidence of similar business practices of the sale of policies through the use of "vanishing premiums" by MetLife is relevant and admissible for proof in this case.   A federal appellate case, Com. of Pa. v, Porter, 659 F.2d 306  (3rd Cir.1981), held, as to the admission of evidence of a business practice under Rule 406 and Rule 404(b):

> . . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design.  It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization."  This ruling was correct.

Com. of Pa. v, Porter, 659 F.2d at 320, (Citations omitted).

-5-

The Third Circuit in <u>Com. of Pa. v. Porter</u>, <u>Id.</u> at 320, also found this ruling was correct based upon the decision of the United States Supreme Court in <u>Hazelwood School District v. United States</u>, 433 U.S. 299, 309-10 n.15, 97 S.Ct. 2736, 2742, n.15, 53 L.Ed.2d 768 (1977); <u>Arlington Heights v. Metropolitan Housing Dev. Corp.</u>, 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977); and <u>Williams v. Anderson</u>, 562 F.2d 1081, 1086 n.7 (8th Cir. 1977).

Federal Rule of Evidence 404(b) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". <u>Id.</u> (Emphasis added).

The FlaMCE is relevant to the Plaintiffs' claims that MetLife was engaged in a corporate scheme to defraud its policyholders and potential policyholders through the use of deceptive sales practices, including the Solarchicks and should be admitted by this Court.

## II.    THE MARKET CONDUCT EXAMINATIONS ADDRESS RELEVANT SALES PRACTICES

The Florida Market Conduct Examination (FlaMCE) is replete with findings relevant to the deceptive marketing of life insurance.   In fact,  MetLife not only was found to have violated the insured's rights through deceptive sales practices, they were fined and ordered to cease and desist using misleading marketing methods.

The FlaMCE accurately describes that a common thread existed in the deceptive marketing techniques used by MetLife as a business practice, not just whole life policies sold to "nurses" as investments, where it stated:

> ... Urso's Plan, as well as many other marketing programs in use at Met, distorted the financial facts and compromised the interests of clients for the sake of

commissions.  Even more deplorable, however, is that this concept selling approach appealed to a financial need, falsely promised a solution and, in the end, ignored the objectives of the client.

See FlaMCE, p. 14.

It can be said of all of the deceptive marketing techniques, whether "churning," "vanishing premium," or "investment plan," that the objectives of the consumers were ignored, distorted financial facts were used to induce the sale, falsely promised solutions to the consumers' needs and objectives were represented, and the interests of the consumers were compromised, all for the sake of commissions and the benefit of MetLife.

Although Defendant MetLife was aware of the deceptive sales practices of selling life insurance policies disguised as retirement/savings plans, they chose to ignore the same.

In the course of this investigation, Crimmins confirmed that the Lynch memo accurately reflected his assessment of both the meeting and the situation.  The tenor of the meeting and lack of follow-up are typical of Met's management style, that of ignoring the problem in the hope it will disappear, like an ostrich burying its head in the sand.  No consideration was given to the effect that Urso's practices had on policyholders or the possibility of sanctions against wrongdoers.  Rather, Urso, the most successful salesman in the MetLife organization, received absolution; Met looked forward as usual. Despite the widespread awareness of the problems associated with Urso's marketing techniques, and despite an audit report dated May 14, 1993, finding that Urso was not operating at an acceptable level of control, Met effectively viewed the situation as resolved as of July 15, 1993.  **Met focused only on Urso's profitability and remained unperturbed until the Florida Department filed its Notice and Order to Show Cause on August 27, 1993.  Were it not for the kick delivered by this filing, Met would have taken no action in response to the Urso situation, would not have sanctioned anyone, and would not have made policyholders whole.**

See Exhibit B, p. 33 (Emphasis added).

Metropolitan Life's own investigations and review determined that deceptive sales practices of selling life insurance policies as savings and/or retirement plans occurred in Pennsylvania and throughout the country.

Given the above described findings of the FlaMCE, it is clear that the FlaMCE provides relevant evidence of the deceptive marketing of life insurance which took place in the instant case.

## **CONCLUSION**

The findings in the FlaMCE demonstrate violations related to the deceptive representation that a life insurance policy could be funded through a limited number of out-of-pocket premium payments. MetLife did not appeal the findings in the Report and they became final orders and the findings were adopted and made public by the Insurance Commission. The FlaMCE also does not show any sign of bias or any indication that it lacks the trustworthiness generally associated with a report prepared by a government agency in the course of fulfilling its legislatively mandated responsibilities. The FlaMCE contains findings of fact based upon the findings of the investigators, facts again which were not appealed by MetLife. As such the FlaMCE clearly falls into the public records exception to the hearsay rule. Additionally, the FlaMCE provides evidence of a habit or practice by MetLife involving the use of deceptive marketing practices in the sale of its insurance policies, evidence of this type is both relevant and admissible under Pennsylvania Law. Finally, the disputed evidence is admissible for the purposes of proving that the Defendants conduct was so outrageous as to permit the recovery of punitive damages on the part of the Plaintiffs. The recovery of punitive damages requires that Plaintiffs demonstrate the nature of defendant's egregious conduct so as ro permit the fact finder to punish the defendant's conduct and deter others from similar conduct.

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion In Limine Regarding the Exclusion of Evidence Regarding the Florida Market Conduct Examinations of

Metropolitan Life Insurance Company be denied.

Respectfully submitted,

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
306 Fourth Ave.  - Suite 300
Pittsburgh, PA 15222
(412)391-2515   (phone)
(412)391-2762    (Fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the

foregoing Brief in Support of  Plaintiffs' Response to Defendants' Motion in Limine to Exclude

Evidence Regarding the Pennsylvania and Florida Market Conduct Examinations of Metropolitan

Life Insurance Company was served upon the below listed counsel and parties by U.S. First Class

mail, postage pre-paid on the 13th day of January, 2006.


B. John Pendleton, Jr., Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973)622-4444


/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
306 Fourth Ave.  - Suite 300
Pittsburgh, PA 15222
(412)391-2515   (phone)
(412)391-2762    (Fax)