IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD M. GONDA, | ) Civil Action No. 00-2286 |
| Plaintiffs, | ) |
| v. | ) Chief Judge Donetta W. Ambrose |
| METROPOLITAN LIFE INSURANCE COMPANY and WILLIAM FRIEDT, JR., | ) |
| Defendants | ) |

---

**PLAINTIFFS' BRIEF IN RESPONSE TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE EXHIBITS 115 AND 116**

---

## PRELIMINARY STATEMENT

In this Motion in Limine, Defendants argue that evidence of internal audits done of MetLife sales practices submitted in July 19, 1996, Exhibit 113, and December 4, 1998, Exhibit 114 are evidence of subsequent remedial measures, other "bad acts" committed by MetLife and are hearsay. These same documents were the subject of a Motion in Limine by Defendant MetLife in Solarchick v. MetLife, Civ Div No. 01-444 wherein this Court determined that the July 19, 1996 was admissible as it "speaks of 'serious concerns . . .with regard to the fulfillment of IB E & C's mission to ensure that business practices employed by the Career Agency Sales force are ethical, fair and in full compliance with all applicable laws and regulations." See May 12, 2006 Opinion and Order of Court attached hereto as Exhibit 1. It is Plaintiff's position that both documents are relevant and admissible. Indeed, they are both business records of MetLife and are subject to the business records exception of the hearsay rule. See F.R.E. 803(6).

Exhibits 115 and 116 are necessary for plaintiff's ability to offer evidence in rebuttal of MetLife's defense that because an enhanced compliance program was instituted in 1994 the sales practices problems were eliminated and no liability should be found as well as no punishment damages should be awarded. However, the Audits demonstrate the exact opposite occurred.

Exhibit 115 demonstrates that the enhanced compliance program was not working. For example, stated in the Conclusions section of the Audit Report is the following finding:

> Serious concerns were raised with regard to the fulfillment of IB E&C's [Individual Business - Ethics and Compliance] mission to ensure that business practices employed by the career Agency sales force are ethical, fair and in full compliance with all applicable laws and regulations. With specific regard to new business policy transactions, actions taken by IB E&C do not adequately safeguard the financial welfare of policy owners. For example, recommended corrective action plans are not always adhered to when an ATR [Additional Transaction Review] raises questions regarding the original policy transaction. IB E&C does not ensure compliance with all regulatory disclosure law or evaluate the potential repercussions of unapproved sales materials.

See Exhibit 115, p.2, Bates No. MP925000017437.

In the instant case, plaintiffs were sold policies that negatively affected the financial welfare of plaintiffs from the use of unethical sales tactics that were not in full compliance with all applicable laws and regulations. Exhibit 115 demonstrates that this was an ongoing problem of MetLife that continued after the sales to plaintiffs in 1990 and 1995.

Exhibit 116 is an Audit of Policy Illustrations - Compliance submitted December 4, 1998 and demonstrates that there are "significant concerns" over the misuse of sales illustrations. For example, in the OPINION/CONCLUSION section of the Audit is the following finding:

> There are significant concerns with the controls over the following areas of the sales illustration process:
>
> \*        the Company does not ensure that all account representatives are

|   |   |
|---|---|
| | using the most current version of sales illustration software; |
| * | signed illustrations are not reviewed to ensure that illustrations used are current or that the preparation date of the signature page is consistent with the other pages; |
| * | follow-up to ensure the receipt of outstanding illustrations is not effective; |
| * | changes made to illustration software, and the authorization of those changes, were not always documented. |

See Exhibit 114, p.2, Bates No. MP9250000156671.

Again, MetLife offers as a defense that the use of the NAIC model by MetLife assists in eliminating any misuse of sales illustrations. However, the Audit demonstrates otherwise.

Indeed, MetLife's expert's consistently opine that the institution of the enhanced compliance program in 1994 is the one of the reasons why no punitive damages should be awarded in these cases.[1] Evidence of how the old compliance program and how the enhanced compliance programs functioned is relevant and admissible to proof of plaintiffs claims for liability and punitive damages.

## ARGUMENT

Exhibits 113 and 114 cannot realistically be considered evidence of subsequent remedial action by MetLife, and is therefore not excludable under Rule 407. To the contrary, at best, the Audits were performed in the regular course of business of MetLife. Additionally, MetLife intends to introduce evidence that an Enhance Compliance program was instituted in February of 1994 that increased MetLife's ability to monitor its sales force. MetLife does not admit that the prior compliance program was a failure, rather they argue that the prior program was good and the enhanced program is better. In reviewing the admissibility of post-event tests of reports, such as the

---

[1] Whether punitive damages should be awarded is not a proper area of opinion by MetLife's expert since it invades the province of the jury's decision making process as to one of the ultimate issues in the case; was defendants' conduct outrageous and should defendants be punished based on their conduct.

Audits of MetLife, the Tenth Circuit in **Rocky, Helicopters v. Bell Helicopters**, 805 F.2d 907, 918 (10th Cir. 1986), held that they were admissible since excluding the reports creates "the danger of depriving 'injured claimants of one of the best and most accurate sources of evidence and information.'" The Tenth Circuit Curt held:

> It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. It might be possible in rare situations to characterize such reports as "measures" which, if conducted previously, would reduce the likelihood of the occurrence. Yet it is usually sounder to recognize that such tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test. . . .
>
> We believe that the policy considerations that underlie Rule 407, such as encouraging remedial measures, are not as vigorously implicated where investigative tests and reports are concerned. To the extent that such policy concerns are implicated, they are outweighed by what the Westmoreland court referred to as the danger of depriving "injured claimants of one of the best and most accurate sources of evidence and information." 601 F. Supp. at 68.

**Id**., 805 at 918.

Additionally, since the Solarchicks were sold policies in both 1990 and in 1995, evidence of how the old compliance program used in 1990 and how the enhanced compliance program used after February 1994 functioned is relevant and admissible to proof of plaintiffs claims for liability and punitive damages. **see Wigmore on Evidence Chapter 13, Other Offenses or Similar Acts, as Evidence of Knowledge, Design, or Intent, § 302. Theory of Evidencing Intent**. p, 245, ftnt1 ("Where other acts are offered as evidentiary of intent under the rule heretofore mentioned, it matters not whether they are subsequent or prior in time. Regina v. May, 1 Cox Cr. 236 (1845); Shreve v. United States, 103 F.2d 796 (9 Cir., 1939).").

Evidence demonstrating MetLife's knowledge of the use and continued of the sales methods

regarding the sale of policies through the use of the "vanishing" premium scheme is directly relevant to the issue of whether Defendants' conduct was egregious. As the United States Supreme Court has determined:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** See [TXO] id., at 462, n. 28. Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. 559 at 576-77 (emphasis added).

In TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the United States Supreme Court addressed the relevancy and admissibility of similar improper out-of-state business conduct. If out-of-state business conduct is relevant to the harm suffered by the plaintiff, so is in-state improper business conduct. Thus, this out-of-state and in-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages. The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> **TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

TXO, 509 U.S. at 462, fn28. (emphasis added). The decision in Haslip is referenced with approval in the Pennsylvania Suggested Standard Civil Jury Instructions. See Chapter XIV Punitive Damages,

p.9. ("Although <u>Haslip</u> dealt with an Alabama punitive damage award, the opinion provides guidance in assessing punitive damage awards under Pennsylvania law").

Furthermore, the holding in <u>TXO</u> was not altered by the decision in <u>State Farm v. Campbell</u>, 538 U.S.408,123 S.Ct. 1513, 1522 (2003)("**...[O]ut-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious**, but that conduct must have a nexus to the specific harm suffered to the plaintiff.")(emphasis added).

MetLife's interpretation of F.R.E. Rule 407 strains the underlying purposes of Rule 407. Such a broad interpretation of the Rule should be rejected by this Court.

**II.   THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE**.

    **A.   Relevancy of Evidence under Rule 401 and 406.**

As previously discussed, the documents are relevant to establish MetLife's knowledge and intent, as well as whether defendants conduct was outrageous for consideration of an award of punitive damages.

MetLife's argument is premised on a contorted concept of the relevance of evidence in a fraud case. This Court has already rejected these exact same legal arguments repeatedly. <u>See generally</u> the rulings made in <u>Tran v MetLife</u> and <u>Kintner v. MetLife</u>.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." <u>Garvey v. Dickinson College</u>, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The documents provide evidence of MetLife's corporate knowledge as to the extent of the

use of the business practices of the defendant sales agents, and as such, are relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue. They also tend to establish the elements of proof of punitive damages, that is, did the defendants act intentionally or in reckless disregard to the rights of plaintiffs and should the repeated use of these sales tactics and MetLife's condoning of the same be punished.

  Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in Com. of Pa. v. Porter, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977. The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

Com. of Pa. v. Porter, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979). This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> . . . **Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to

"give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

  Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; <u>McWhorter v. Birmingham</u>, 906 F.2d 674, 679 (11th Cir. 1990).

The business records of MetLife are relevant and admissible to demonstrate the defendant sales agents regular sale practices. <u>See</u> <u>Loughan v. Firestone Tire & Rubber Co.</u>, 749 F.2d 1519, 1524 (11th Cir. 1985) ("Habit evidence is considered to be highly probative. . . ."). Moreover, evidence of a routine practice is highly probative and persuasive. <u>Loughan</u>, 749 F.2d at 1524. It is particularly persuasive in the business context because "the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." <u>McCormick on Evidence § 195</u>, at 351. Accordingly, the documents demonstrate the necessary trustworthiness and should be admitted into evidence.

Accordingly, the documents demonstrate the necessary trustworthiness and should be admitted into evidence.

## **CONCLUSION**

For all the foregoing reasons, Defendants Motion in Limine should be denied

                Respectfully Submitted,

                <u>/s/Kenneth R. Behrend</u>
                Kenneth R. Behrend
                PA I.D. # 37961
                Behrend and Ernsberger, P.C.
                306 Fourth Ave. - Suite 300
                Pittsburgh, PA 15222

(412) 391-2515   (phone)
(412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the within Plaintiffs' Memorandum of Law in Response to Defendants' Motion In Limine was served upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 26th day of June, 2006.

B. John Pendleton, Jr., Esquire  
McCARTER & ENGLISH, LLP  
Four Gateway Center  
100 Mulberry Street  
P.O. Box 652  
Newark, NJ 07101-0652  

/s/Kenneth R. Behrend  
Kenneth R. Behrend  
PA I.D. # 37961  
Behrend and Emsberger, P.C.  
Union Bank Building  - Suite 300  
306 Fourth Ave.  
Pittsburgh, PA 15222  
(412) 391-2515   (phone)  
(412) 391-2762   (Fax)