IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD M. GONDA, | ) Civil Action No. 00-2286 |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Chief Judge Donetta W. Ambrose |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) |
| COMPANY and WILLIAM FRIEDT, JR., | ) |
| | ) |
| Defendants | ) |

_____

**PLAINTIFFS' BRIEF IN RESPONSE TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFFS' EXHIBIT NOS. 33, 34, 35, 47, 48, 51, 54 and 61, DOCUMENTS AUTHORED BY JAMES RAYL**
_____

**PRELIMINARY STATEMENT**

In this Motion in Limine, Defendants argue that evidence of letters written by former MetLife employee James Rayl, head of MetLife's Tulsa Ok, Customer Service Center during relevant time periods to this case. This Court permitted the introduction of these same documents during the trial of Tran v MetLife, et al. Civil Action No. 01-262 and in Solarchick v. MetLife, Civil Action no. 01-444. In both these cases this Court found that the documents were relevant and admissible. See May 12, 2006 Order of court attached hereto as Exhibit 1. Also, Plaintiff intends to read in the same transcript excerpts from Mr. Rayl's testimony as were permitted by this Court to be introduced into evidence in the Tran case. Exhibits 33, 47, 48, 51, 54 and 61 are exhibits thereto.

Mr. Rayl's testimony is directly on point for the use of the deceptive sales tactic in the 1992 sale of a whole life policy to Mr. Gonda that was to be paid-up in 10 years, after which the premiums

"vanish."

Plaintiff was provided a "vanishing" premium illustration for the whole life policy. The evidence plaintiffs seek to introduce supports the fact that MetLife had a regular business practice of selling "vanishing" premium policies.

The identical problem that occurred in the APP sales in the 1980's continued into the mid-1990's and the plaintiffs are evidence of this problem. The sales illustration provided to plaintiff is identical to the sales illustration provided to Mr. Tran and to the Kintners and the sales presentation is identical, i.e. after 14 years the sales illustration demonstrates that no further cash outlay is required and uses the word "NONE."

The sales methods used in the instant case are identical to the sales methods that Mr. Rayl was concerned about as being deceptive. Indeed, the evidence demonstrates that the same deceptive sales practices were used by Metropolitan Life sales agents on a national basis. Therefore, the fact that Mr. Rayl is not specifically mentioning Pennsylvania is irrelevant.

Mr. Gonda alleges that MetLife had a business practice of selling whole life policies based upon misrepresentations as to the number of years that the policyholder would be required to make out-of-pocket premium payments on their life insurance policies. See Complaint. The evidence will demonstrate that MetLife, through its sales agents, used this deceptive business practice routinely, widely and repeatedly, and further MetLife condoned this business conduct either directly through awards and bonuses, or tacitly by not taking appropriate measures to stop such practices once senior management had knowledge they were occurring.

Moreover, this very same business conduct occurred in the sale of the policy at issue in this case and plaintiff was harmed thereby. This evidence will tend to prove the allegations of plaintiffs

are true and supports the credibility of the plaintiffs and the lack of credibility of the defendants.

Furthermore, plaintiff seeks to introduce this evidence for the purpose of establishing the context of MetLife's knowledge, intent and corporate culture which permitted this business practice of selling life insurance policies by misrepresenting the actual cost of the policies. The pattern and practice evidence demonstrates that MetLife is liable for the sale to the plaintiffs through misrepresentations as to the performance and cost of the three universal life policies and the whole Life life insurance policy.

The testimony of the former and current MetLife executives, as well as the documents sought to be introduced by the plaintiffs, are relevant to the plaintiffs' claims and should be admitted by this Court as they were admitted in the Tran and Solarchick cases.

Finally, MetLife is incorrect in its reading of Rule of Evidence 404(b). Indeed, this Court properly found that these documents are relevant and admissible in the Tran and Solarchick case. All evidence is prejudicial and the documents tend to prove plaintiff's claims.

**ARGUMENT**

**I.   THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE.**

MetLife's argument is premised on a contorted concept of the relevance of evidence in a fraud case. This Court has already rejected these exact same legal arguments repeatedly. See generally the rulings made in Tran v MetLife, Solarchick v. MetLife and Kintner v. MetLife.

Significantly, the Rayl documents address the fact that whole life policies were improperly sold as "paid-up" policies after a set number of years of payments.

The letters written in 1994 discuss the sale of a whole life policy using the APP sales presentation made to plaintiff. The fact that these letters are dated after the sale to the Plaintiff is

immaterial, the problems with "vanishing" premium sales detailed in the letters are identical to the "vanishing" premium sales problem with the sale to plaintiff in 1992. The premiums did not disappear when the dividend and interest rates were reduced, and MetLife had no reasonable basis for using either the interest or dividend rates that were used in the illustrations since the rates of returns could not be projected with any accuracy beyond one year. The interest rates on UL policies were decreased after the sale to plaintiff as were the dividend rates decreased after the sale to plaintiffs.

Also, MetLife attempts to ignore the "source" of the payment issue by asserting the Mr. Gonda admits payments were due for his lifetime. As in a typical "vanishing" premium case the insured is told that premiums are due for the entire time of the policy, but after the out-of-pocket premium payments are done the premiums will be paid by the vales in the policy along with dividends and interest. This exact issue was addressed by the Third Circuit in <u>Dilworth v. Metropolitan Ins. Co.</u>, 418 F.3d 345 (3rd Cir. 2005), where the Court held:

> The [district] court erroneously focused on the fact that the policy set forth the number of payments it required but did so without examining whether the policy articulated **the source of those payments**. Though the policy indicated that 86 years of payments would be necessary, even if Dilworth had been aware of this provision it would not have been inconsistent with the agent's representation that after the first nine or ten years of payments the remaining 77 or 76 years of payments would come from the accrued dividends, accumulated cash value, and interest.

<u>Id</u>. at 351-352 (emphasis added).

Finally, the evidence will show that plaintiffs were amongst the uninformed policyholders and were not told that the premiums would not "vanish" as represented to induce the sale.

As to the legal argument in support of this issue, rather than restate everything already presented to this Court, on the relevance issue under the Federal Rules of Evidence, plaintiffs refer

the court to the legal arguments made in detail in Plaintiffs' brief in response to Metropolitan Life Insurance Company's motion in limine to exclude from evidence plaintiffs' exhibit nos. 32, 41, 120 and adopt them herein as if set forth at length.

Mr. Rayl's testimony is directly on point for the use of the deceptive sales tactic in the 1990 sales to plaintiffs concerning underfunded Universal Life policies that were to be paid-up in 12 years, after which the premiums "vanish," as well as the 1995 sale of a whole life policy that was to be paid-up in 14 years, after which the premiums were to "vanish."

Contrary to MetLife's assertions that Exhibit 35 relates to a complaint if for a sale made in Ohio, Exhibit 35 is a "key" document that demonstrates that both of MetLife's Customer Service Centers, Tulsa, OK and Warwick, RI both were experiencing the same problem, that is, that the sale of policies as "paid-up" after a limited number of years was a widespread problem occurring throughout the entire United States. See Ex. 35. Exhibit 35 is a letter from Mr. Rayl to Kathy Schoos, Director of the MetLife Customer Service Center in Warwick RI., thanking her for writing a letter of support to the Home Office demonstrating that there was a widespread problem with the MetLife sales force making "vanishing" premium sales throughout the entire country. Id. In the Tran case, MetLife attempted to assert that the problem with "vanishing" premium sales was only a widespread problem west of the Mississippi since only Jim Rayl was complaining. However, Exhibit 35 destroys this argument since it demonstrates that "vanishing" premium sales were also a widespread problem east of the Mississippi. Id.

Similarly, Exhibit 34 is an important document since it speaks to the "vanishing" premium problem in the companywide sense. See Ex. 34. Mr. Rayl states: "From our perspective, the problem has been seriously compounded because of the marketing strategy used to sell or explain the concept

of AP. It is very apparent from our experience that a substantial percentage of these policyholders were told that once AP took effect, they were "*paid up*" policies." Id. This is the identical marketing tactic used in the sales to the plaintiffs. Therefore the documents are relevant and should be admitted just as they were admitted in the Tran and Solarchick cases.

II.      **THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE**.

     A.      **Relevancy of Evidence under Rule 401 and 406.**

Further, this Court has permitted the admission of these exact same documents in the Solarchick case, where the identical objections were raised by MetLife and rejected by this Court.

MetLife's argument is premised on a contorted concept of the relevance of evidence in a fraud case. This Court has already rejected these exact same legal arguments repeatedly. See generally the rulings made in Tran v MetLife and Kintner v. MetLife.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The documents provide evidence of MetLife's corporate knowledge as to the extent of the use of the business practices of the defendant sales agents, and as such, are relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue. They also tend to establish the elements of proof of punitive damages, that is, did the defendants act intentionally or in reckless disregard to the rights of plaintiffs and should the repeated use of these sales tactics and MetLife's condoning of the same be punished.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in Com. of Pa. v. Porter, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977.  The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations.  **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design.  It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

Com. of Pa. v. Porter, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979).  This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> **. . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design.  It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization."  This ruling was correct.**

Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff,

Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990).

The business records of MetLife are relevant and admissible to demonstrate the defendant sales agents regular sale practices. See Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519,

1524 (11th Cir. 1985) ("Habit evidence is considered to be highly probative. . . ."). Moreover, evidence of a routine practice is highly probative and persuasive. Loughan, 749 F.2d at 1524. It is particularly persuasive in the business context because "the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." McCormick on Evidence § 195, at 351. Accordingly, the documents demonstrate the necessary trustworthiness and should be admitted into evidence.

Defendants cite to no caselaw in support of the premise that the business records of MetLife are inadmissible hearsay. They only reference generically to Federal Rule of Evidence 803(6). As the documents objected to by the Defendants are not privileged and are admissible under the Business Records Exception to the hearsay rule, the fact that the documents were made at or near the time of the events it purports to relate; generated as a regular practice of the business; and trustworthy as to the source of information or the method or circumstances of preparation, the business records of MetLife are clearly admissible.

The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and "[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision." McCormick on Evidence § 286 5th ed.). The business records exception to the hearsay rule applies only if the person who makes the statement "is himself acting in the regular course of business." Florida Canal Industries, Inc. v. Rambo, 537 F.2d 200, 202 (5th Cir. 1976).

In U.S. v. Pelullo, 964 F.2d 193 (3d Cir. 1992), the United States Court of Appeals for the Third Circuit addressing Rule 803(6) explained when business records are admissible:

> The business records exception permits admission of documents containing hearsay provided foundation testimony is made by `the custodian or other qualified witness,' that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business.

Id. at 200.

The documents meet all four requirements: (1) Jim Rayl, through sworn testimony authenticates the letters and he describes that he personally wrote the letters based upon his knowledge and information gained as the head of the Tulsa Customer Service Center; 2) he wrote the letters in the early nineties when the problems regarding the sales agents selling policies as paid-up when they were not was taking place; (3) he wrote the letters in the regular course of business to bring the information regarding the numerous complaints received in the Customer Service Center regarding the use of deceptive sales tactics of "paid-up" policies to the attention of his superiors; and (4) records regarding complaints in the manner in which sales agents are selling policies are kept in the regular course of business - they are required to be kept by every Insurance Department in the country.

Additionally, these documents should be admissible under either Rule 801(d)(2)(A) (statement by a party offered against that party) or Rule 803(6) (business records exception). The letters and testimony of Jim Rayl are of an employee of MetLife concerning events that took place in the company and was communicated to the highest levels of the company and also comprises a statement of MetLife offered against MetLife.

Therefore, the documents are admissible as business records. However, MetLife objects that they are not trustworthy documents. They provide no support for this accusation, that one of their

own employees reports of wrongdoing in the sale of policies as paid-up policies, which was confirmed by MetLife's own internal investigation as well as investigations of various insurance departments, e.g. Pennsylvania, Connecticut and Florida.

The basic requirements (regular business with regularly kept record; source with personal knowledge; record made in a timely fashion; foundation testimony) are enough in the run of cases to justify the conclusion that the record is trustworthy. The phrasing of the exception points toward this conclusion: It applies unless problems of trustworthiness appear. The objecting party bears the burden of raising the trustworthiness issue and showing the record is untrustworthy. Shelton v. Consumer Products Safety Commission, 277 F.3d 998, 1109 (8th Cir. 2001) (in enforcement suit against maker and importer, admitting private laboratory report to show that fireworks were banned hazardous substances; **party objecting to evidence fitting exception bears burden of raising trustworthiness issues and showing that record is untrustworthy**)(emphasis added). MetLife cites to no specific material reasons or any caselaw in support thereof as to why the materials are untrustworthy. Indeed, MetLife ignores that fact that Mr. Rayls observations were supported by several Insurance Commissioners, who also found that MetLife was deceptively selling policies as paid-up policies, e.g. Pennsylvania, Connecticut and Florida. Thus, MetLife has failed to meet its burden.

In Hertz v. Luzenac America, Inc., 370 F.3d 1014 (10th Cir. 2004), the Tenth Circuit set forth the necessary indicia of trustworthiness for a document to be admitted as a business record, holding: "We have identified several factors that relate to trustworthiness: (1) the business significance of the document outside the litigation context, (2) the level of experience of the preparer in creating such documents, and (3) the neutrality of the preparer." Id. at 1020; see also 4 Christopher B. Mueller &

Laird C. Kirkpatrick, Federal Evidence § 450, at 534-36 (2d ed. 1994) (listing as factors showing trustworthiness "extent to which the matter recorded is important to the business outside the context of litigation," experience of preparer, and absence of motive on behalf of preparer).

Again, instantly all of the elements exist as to the evidence; (1) there is business significance of the documents outside of the litigation since it is presumed that MetLife Senior Management would want to know that the sales force is using deceptive and illegal sales techniques; (2) Mr. Rayl worked a MetLife for over twenty years in various capacities prior to the promotion to rune the Tulsa Customer Service Center and he oversaw 200 employees; and (3) Mr. Rayl was an employee of MetLife and was not writing the document in preparation for litigation, he was writing the letters based upon his personal knowledge obtained as the supervisor of the Tulsa Customer Service Center.

Although satisfying the basic requirements brings the exception into play, many more decisions cite trustworthiness as a reason to admit records than untrustworthiness as a reason to exclude. Many factors support a finding of trustworthiness: Foremost among them is the extent to which the matter recorded is important to the business outside the context of litigation. United States v. Frazier, 53 F.3d 1105, 1110 (10th Cir. 1995) (audit report having use in areas other than suit and prepared by neutral party); Coates v. Johnson & Johnson, 756 F.2d 524, 549-550 (7th Cir. 1985) (disciplinary memoranda kept for routine business purpose). A point that is especially persuasive if the report was acted on in some serious, costly, or elaborate way that tends to verify the point it is offered to prove. Matador Drilling Co. v. Post, 662 F.2d 1190, 1198-1199 (5th Cir. 1981) (oil drilling rig reports, relied on for payroll); United States v. Ullrich, 580 F.2d 765, 771-772 (5th Cir. 1978) (inventory schedule used to keep track of collateral in floor-plan financing).

The fact that a record was prepared with no eye toward litigation counts. See Selig v. United

States, 740 F.2d 572, 578 (7th Cir. 1984); Tupman Thurlow Co. v. S.S. Cap Castillo, 490 F.2d 302, 310 (2d Cir. 1974). Also tending to show trustworthiness is the fact that a record was prepared by trained or experienced people. American Intl. Pictures, Inc. v. Price Enters., Inc., 636 F.2d 933, 935 (4th Cir. 1980) (reports by checkers surveying attendance at movie theaters; officers detailed procedures for selecting, training, and supervising checkers), cert. denied, 451 U.S. 1010; United States v. Stonehouse, 452 F.2d 455, 459 (7th Cir. 1971)(cable diagrams; likelihood of misunderstanding or misdescription was remote).

Independent corroborative evidence helps too. Extensive corroboration supports an inference that the record as a whole is trustworthy, and specific corroboration of the point the record is offered to prove also alleviates trustworthiness concerns. See United States v. Cincotta, 689 F.2d 238, 243 (1st Cir. 1982) (admitting driver notebook; delivery tickets signed by commercial customers corroborated notebook), cert. denied, 459 U.S. 991; United States v. Wigerman, 549 F.2d 1192, 1193-1194 (8th Cir. 1977) (admitting records of motel registrations, car rentals, airline shipments; witnesses corroborated documents).

Further, this Court has permitted the admission of these exact same documents in the Tran and Solarchick cases, where the identical objections were raised by MetLife and rejected by this Court.

Accordingly, the documents demonstrate the necessary trustworthiness and should be admitted into evidence

**CONCLUSION**

For all the foregoing reasons, Defendants Motion in Limine should be denied

      Respectfully Submitted,


      /s/Kenneth R. Behrend
      Kenneth R. Behrend
      PA I.D. # 37961
      Behrend and Emsberger, P.C.
      306 Fourth Ave. - Suite 300
      Pittsburgh, PA 15222
      (412) 391-2515   (phone)
      (412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the within Plaintiffs' Memorandum of Law in Response to Defendants' Motion In Limine was served upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 26th day of June, 2006.

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
Union Bank Building  - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762   (Fax)