IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD M. GONDA, | ) | Civil Action No. 00-2286 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY and WILLIAM FRIEDT, JR., | ) | |
| | ) | |
| Defendants | ) | |

---

**PLAINTIFFS' BRIEF IN RESPONSE TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFFS' EXHIBIT NOS. 47, 48 AND 49, APPROVAL PROCESS OF ACCELERATED PREMIUM PLAN-RELATED DOCUMENTS**

---

**PRELIMINARY STATEMENT**

In this Motion in Limine, Defendants argue that evidence of letters and memorandum written that disclose MetLife's thought process in the design, creation and implementation of the use of the Accelerated Payment Plan are irrelevant and prejudicial because too much time has elapsed between the creation of APP in the early 1980's and the APP sale to plaintiffs took place in 1995 and the sales materials developed over time. MetLife ignores the fact that the problems discussed in the creation of APP are the same problems that manifested themselves in the sales to the policyholders including the plaintiffs. In other words, the exact problems identified by MetLife personnel in the creation process for APP, MetLife failed to cure and were manifested in APP sales throughout the 1980's and 1990's including the 1992 sale to plaintiff. This Court has previously denied an identical motion in the case of <u>Solarchick v. MetLife</u>, Civ. Action No. 01-444. <u>See</u> May 11, 2006 Order.

Exhibit 47 contains a letter dated January 29, 1980 from an employee in MetLife's Personal

Insurance Consulting Services to an actuarial employee in MetLife's Personal Insurance Contract Bureau. The letter identifies a problem with the proposed illustration format in that it creates the impression that no more premium is due. The proposed illustration format is attached to the letter and contains a page that sets forth the columns of numbers demonstrating the payments and future projected values. The proposed format in 1980 for the demonstration of the payments and projections of future values is virtually identical to the 1992 illustration used in the sale to plaintiff. The one difference in the "cash outlay" column is that instead of using the word "NONE," the number "0" is used. This difference is not material in that it leaves the identical impression that no payments are required by the policyholder after defined number of years.

In the letter a change to the illustration format is strongly suggested to add one more column that demonstrates that premiums are paid every year of the policy term, so MetLife "would still be conveying the idea that there is a premium amount to be paid which will be withdrawn from the cash value of additional insurance of from the dividends with interest as the case may be. This may necessitate an additional page of the illustration, however, **as the illustration stands now, there is no indication that a premium is still due each year.**" See Bates No. MP4011149717, pgh.3.

This strongly suggested recommendation was never adopted and as result thereof policyholders were mislead into believing that there were no more out-of-pocket premium payments required to be made by the policyholder after the defined number of years. This problem identified in 19809 is the exact problem that occurred to the plaintiffs in the use of the 1990 and 1995 illustrations, that is the policies were paid-up in a defined number of years that no additional out-of-pocket premium payments were required. This document is relevant to demonstrate MetLife's awareness of the potential for the "vanishing" premium illustrations to mislead customers existed

in 1980 before the illustrations were used to market policies.

Exhibit 48, the June 9, 1980 memorandum demonstrates that the "Short Term Payment Plan" name was changed to the "Accelerated Payment Plan." See Bates No. MP4011149691. This document clarifies for the jury that Exhibit 16 relates to the APP illustration used in the sale to plaintiffs and to the other evidence related to APP to be provided to the jury during the trial.

The plaintiffs allege that MetLife had a business practice of selling whole life policies based upon misrepresentations as to the number of years that the policyholder would be required to make out-of-pocket premium payments on their life insurance policies. See Complaint. The evidence will demonstrate that MetLife, through its sales agents, used this deceptive business practice routinely, widely and repeatedly, and further MetLife condoned this business conduct either directly through awards and bonuses, or tacitly by not taking appropriate measures to stop such practices once senior management had knowledge they were occurring.

Moreover, this very same business conduct occurred in the sale of the policy at issue in this case and plaintiffs were harmed thereby. This evidence will tend to prove the allegations of plaintiffs are true and supports the credibility of the plaintiffs and the lack of credibility of the defendants.

Furthermore, plaintiffs seek to introduce this evidence for the purpose of establishing the context of MetLife's knowledge, intent and corporate culture which permitted this business practice of selling life insurance policies by misrepresenting the actual cost of the policies. The pattern and practice evidence demonstrates that MetLife is liable for the sale to the plaintiffs through misrepresentations as to the performance and cost of the three universal life policies and the whole Life life insurance policy.

The documents sought to be introduced by the plaintiffs are relevant to the plaintiffs' claims

and should be admitted by this Court as similar documents were admitted in the <u>Tran</u> case.

**ARGUMENT**

**I.      THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE**.

MetLife's argument is premised on a contorted concept of the relevance of evidence in a fraud case. This objection is without merit, since the evidence is relevant to the Plaintiff's claims that MetLife had a business pattern and practice to sell policies with "vanishing premiums" that was also used on the plaintiffs. This Court previosuly rejected these exact same legal arguments in <u>Tran v MetLife</u> and <u>Kintner v. MetLife</u>.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." <u>Garvey v. Dickinson College</u>, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The evidence demonstrates MetLife's knowledge of problems with the APP illustrations have a tendency to mislead policyholders yet chose to use the APP illustrations anyway and plaintiffs were among the policyholders who were not told that the premiums would not "vanish" as represented to induce the sale.

The documents also tend to prove plaintiffs claims for punitive damages by demonstrating MetLife's knowledge of a fundamental problem with the APP illustrations that could mislead policyholders into believing that the premiums would "vanish" despite the fact that premiums never "vanish."

MetLife's argument is premised on a contorted concept of the relevance of evidence in a fraud case. This Court has already rejected these exact same legal arguments repeatedly. <u>See</u> <u>generally</u> the

rulings made in <u>Tran v MetLife</u> and <u>Kintner v. MetLife</u>.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." <u>Garvey v. Dickinson College</u>, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The documents provide evidence of MetLife's corporate knowledge as to the extent of the use of the business practices of the defendant sales agents, and as such, are relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue. They also tend to establish the elements of proof of punitive damages, that is, did the defendants act intentionally or in reckless disregard to the rights of plaintiffs and should the repeated use of these sales tactics and MetLife's condoning of the same be punished.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in <u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977. The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

<u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979). This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> **. . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific

occasion by evidence of routine practice.  Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401.  See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121.  United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990).

The business records of MetLife are relevant and admissible to demonstrate the defendant sales agents regular sale practices.  See Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1524 (11th Cir. 1985) ("Habit evidence is considered to be highly probative. . . .").  Moreover, evidence of a routine practice is highly probative and persuasive. Loughan, 749 F.2d at 1524. It is particularly persuasive in the business context because "the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." McCormick on Evidence § 195, at 351.  Accordingly, the documents demonstrate the necessary trustworthiness and should be admitted into evidence.

## **CONCLUSION**

For all the foregoing reasons, Defendants Motion in Limine should be denied

                        Respectfully Submitted,

                        /s/Kenneth R. Behrend
                        Kenneth R. Behrend
                        PA I.D. # 37961
                        Behrend and Emsberger, P.C.
                        306 Fourth Ave.  - Suite 300
                        Pittsburgh, PA 15222
                        (412) 391-2515   (phone)
                        (412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the within Plaintiffs' Memorandum of Law in Response to Defendants' Motion In Limine was served upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 7th day of May, 2006.

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Ernsberger, P.C.
Union Bank Building  - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762   (Fax)