# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD M. GONDA, | ) | Civil Action No. 00-2286 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY and WILLIAM FRIEDT, JR., | ) | |
| | ) | |
| Defendants | ) | |

---

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO BIFURCATE AND EXCLUDE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

---

Kenneth R. Behrend
Pa. I.D. No. 37961
Behrend & Ernsberger, P.C.
Firm ID No. 018
Union National Bank Building
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222
(412) 391-2515

## PRELIMINARY STATEMENT

This Court has previously considered the exact legal arguments presented in Defendants'
Motion in <u>Mohney v. MetLife</u>, Civil Division No. 96-186 and <u>Tran v. MetLife</u>, 01-262 and
<u>Solarchick v. MetLife</u>, Civil Division No. 01-444.  In both <u>Mohney</u> and <u>Tran</u>, this Court properly
determined that the legal arguments set forth herein were without merit and denied the identical
Motion in Limine.  Plaintiff contends that as the same law is applicable in the instant case,
Defendants' Motion should be denied for those reasons considered by this Court in <u>Mohney</u> and <u>Tran</u>
and <u>Solarchick.</u>  <u>See</u> Exhibit 1.

As Defendants did in <u>Solarchick</u>, <u>Mohney</u> and <u>Tran</u>, Defendants in the instant case insert
several sweeping characterizations about the present litigation in their Motion that Plaintiff cannot
allow to remain unchallenged.  First, it should be made clear that MetLife is attempting to bifurcate
proof of liability, by requesting this Court to preclude evidence of MetLife's business practice of
selling whole life policies as investments.  Contrary to MetLife's unsupported assertions, there is no
recognized procedure to bifurcate liability.  Second, MetLife claims Plaintiff seeks to introduce
evidence of national sales practices unrelated to sales practices that occurred to the Plaintiffs in this
case.  This assertion is not true.  Plaintiffs seeks to introduce evidence of MetLife's business
practices identical to specific practices used by MetLife and its agents in this case to induce the sale
of a life insurance policies to the Plaintiffs in order to prove liability.

Third, Plaintiffs seeks to introduce the business practices evidence for the purpose
establishing the liability of MetLife.  Plaintiffs must prove that MetLife's intent in the instant case
for the proof of the elements of fraud and violations of the Unfair Trade Practices and Consumer
Protection Law.  Also, this evidence is relevant and admissible to support the credibility of the

parties. Indeed, Plaintiff must prove not only the use of the fraudulent sales methods by MetLife's agent, but also must prove MetLife's knowledge of the same in order to prove liability. The evidence sought to be introduced relates to the actual deceptive practices utilized by MetLife and its agents in the sale of the policies purchased by the Solarchicks.

Some of this identical evidence for proof of the elements of fraud in the liability phase of the case, will also be used again to establish punitive damages. Bifurcation of the case will not serve judicial economy in this case, it will cause additional expense to the litigants to recall witnesses and reintroduce the same evidence. Judicial economy is not served by bifurcation since the same practices, evidence, and legal standards apply equally to both compensatory and punitive damage awards. Jury instructions, therefore, should be used to guide the jury as to the significance and purpose of why the evidence has been admitted for their consideration.

Next, MetLife contends that it should not be subjected to repetitive or multiple punishment for the same conduct based upon the settlement of the federal multi-district litigation class action ("MDL class settlement"). This contention is incorrect for several reasons. First, MetLife "settled" the "MDL class settlement," but made no admission of misconduct. MetLife asserts the settlement should be considered as part of a finding by this court that MetLife has already received a "grossly excessive" punishment for its egregious deceptive sales conduct, even though MetLife agreed to the terms of settlement and did not admit to any liability. Second, MetLife has yet to pay a punishment damage award. Again, MetLife agreed to the MDL class settlement and did not have a punitive award imposed against it. Third, MetLife cannot point to any portion of the MDL class settlement that specifically relates to an amount paid as punitive damages which is required before it may assert that it has been punished earlier for the very same conduct. Fourth, MetLife does not represent to

the Court the amount actually paid by MetLife as punitive damages in the MDL settlement, instead MetLife refers to the total "value" of the settlement. "Value" is not actual payment.

Civil fines are not considered as payment of punitive damages. Civil fines are paid to the state for violations of the states statutes. On the other hand, punitive damages are paid as punishment for the egregious conduct visited upon the individual plaintiff.

Additionally, MetLife may indeed be held accountable multiple times as punishment for the same conduct. No limitation on multiple awards for civil punishment exists in federal or state case law, and the United States Congress has not addressed a limitation as a legislative matter.

Finally, any concern of gross excessiveness or constitutional due process concerns are addressed through remitur and through a reduction in the size of an award rather that by precluding punitive damages from the outset. There is no authority for a reduction in the potential amount of punitive damages awarded, prior to the jury's considering the matter.

Accordingly, this Court should admit evidence of defendants' business conduct for proof of liability, compensatory and punitive damages and should allow the jury to consider such evidence both for compensatory and punitive damages without bifurcation of these issues.

## ARGUMENT

I.    **THE UNLAWFUL HABIT, PRACTICE AND BUSINESS CONDUCT HAS BEEN REPEATEDLY HELD TO PERMIT MULTIPLE PUNITIVE DAMAGE AWARDS.**

Plaintiff seeks punitive damages for deliberate and deceptive conduct by MetLife through its sales agent that induced the Solarchicks to purchase insurance products to their financial detriment and the Defendants' financial benefit. The deceptive sales were done pursuant to a corporate marketing scheme of selling life insurance policies under the premise that the out-of-

pocket premiums due on a particular policy would "vanish" after a set number of years and that the policy would then be fully funded by a combination of dividends and interest earned by the policy. In the federal MDL class action, there were twenty-five enumerated types of deceptive sales practices which were released.  <u>See</u>  Final Order Approving Class Action Settlement, pp.10-13.  The Solarchicks do not claim and is not attempting to prove that all twenty-five sales practices occurred in this case.  To the contrary, the Solarchicks have alleged and intend to prove at trial only the relevant deceptive sales practices which applied to the Solarchicks' purchase of life insurance policies.

Plaintiff seeks to introduce this evidence for the purpose of establishing the context of MetLife's knowledge, intent and corporate culture which permitted these deceptive sales practices schemes to occur.  The scheme evidence demonstrates that both MetLife and its agents are liable for the deceptive sales which were used by Defendants to sell the Solarchicks life insurance policies.

### I.A.    THERE HAVE BEEN NO PRIOR PUNITIVE DAMAGE AWARDS AGAINST METLIFE FOR ITS DECEPTIVE BUSINESS PRACTICES

Controlling appellate caselaw prohibits MetLife from introducing the federal MDL class settlement "value" amount for consideration by the jury to limit the amount of punitive damages possibly awarded in this case since the MDL settlement does not designate any particular amount for the payment of punitive damages.  See <u>Dunn v. HOVIC</u>, 1 F.3d 1371, 1389-90 (3d Cir.) (en banc), modified in part, 13 F.3d 58 (3d Cir. 1993) (Defendant's "failure to designate particular amounts of the [prior] settlements as representing punitive damages makes inclusion of these amounts problematic . . . [thus Defendant] has failed to prove that the aggregate award of punitive damages against it has been sufficient to meet the twin goals of punishment and deterrence

-4-

underlying such awards.")

MetLife does not cite to, or refer to, any prior punitive damage awards against it that relate to the deceptive sales practice which occurred on a national basis and to the Solarchicks. Instead, on pages 4 and 5 of its brief, MetLife represents that there was a federal national class action settlement, ("MDL class settlement"), which MetLife contends encompassed punishment damages. MetLife argues that "the MDL settlement had a total **value** in excess of $1.645 billion to the class." (Emphasis added). However, this sum does not represent how much money actually was paid as punitive damages to the class in settlement of the claims. <u>See</u> Defendants' Brief, p. 4 and 5. The MDL class action release does not even mention the word "punitive damage," but instead refers to a release of all claims set forth in the Class Action Complaint. <u>See</u> Class release, p. 59 -68. Indeed, at an average of $235 per class member ($1.645 billion divided by 7 million class members) it is difficult to believe that any of the settlement "**value**" amount is punitive, let alone "grossly excessive or arbitrary punishment."

Moreover, MetLife points to authority in support of its position that a class action settlement can be considered as part of this Court's due process determination whether a "grossly excessive or arbitrary punishment" has taken place in prior litigation through the award of punitive damages.[1] Indeed, there is no case law which supports MetLife's position, because a settlement is just that: a

---

[1]Again, MetLife is not addressing an "award" of punitive damages; instead MetLife is twisting the concept by arguing that a settlement of class action claims should be credited as equivalent to an "award" by a jury for punitive damages to prevent multiple punitive damage "awards" for the same egregious conduct. However, these two concepts (a class action settlement and a punitive damage award) are entirely different, in that in a settlement there is no finding that any egregious conduct occurred to warrant the award of punitive damages. Indeed, MetLife admitted to no liability in the settlement of the MDL class action. <u>See</u> MDL class release, page 19-20.

settlement of disputed claims, agreed to by both parties and is not a "grossly excessive or arbitrary punishment" of any nature or kind.  MetLife agreed to the settlement terms and it cannot now recast them as anything other than a settlement.  Moreover, there is appellate case law which refutes MetLife's argument that settlement amounts could be included for consideration of whether a "grossly excessive or arbitrary punishment" has taken place in prior litigation.  See  Simpson v. Pittsburgh Corning Corp., 901 F.2d 277, 281-82 (2d Cir. 1990) (rejecting argument that actual damage awards and settlements can be aggregated to establish that successive punitive damages awards are unconstitutional); Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 839 (2d Cir. 1967) ("[I]t is hard to see what even the most intelligent jury would do with this [evidence about the potential number of similar actions], being inherently unable to know what punitive damages, if any, other juries in other states may award other plaintiffs in actions yet untried.").

Federal appellate courts have recognized that the impact of other punitive damages awards can only be measured if they have actually been paid. See, Dunn, 1 F.3d at 1389-90 (requiring proof of punitive damages "actually paid in the past" and **rejecting consideration of** "non-final awards of punitive damages" and of **settlements where [defendant] OCF did not segregate settlement amounts paid as punitive damages**)(Emphasis added); Johnson v. Celotex Corp., 899 F.2d 1281, 1287-88 (2d Cir. 1990) (rejecting defendant's request that appellate court take judicial notice of other punitive damage awards because defendant did not provide any documentation about "exactly how much money they have actually paid in punitive damages").

Thus, courts have held that the following evidence is not relevant, or is not unduly prejudicial and thus, not admissible by a defendant to mitigate punitive damages: (1) actual damage amounts paid by settlements or by judgments; (2) the number of pending claims filed against a defendant for

the same conduct; (3) the number of anticipated claims for the same conduct; (4) insurance coverage; (5) unpaid punitive damages awards for the same course of conduct; and (6) evidence of punitive damages that may be levied in the future. See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 42 (Tex. 1998). None of these has occurred with MetLife and accordingly, MetLife should be precluded from using the MDL class settlement as either evidence of prior punishment damages paid or for mitigation of any award for punishment damages.

The same holds true to the civil fines paid by MetLife. Civil fines are not prior punitive damage awards since they are paid to the state in recognition of violations committed of the state's laws and regulations. In contrast, punitive damages are not paid to the state and are awarded to punish the egregious conduct towards the individual plaintiff. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)(describing punitive damages as "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence").

MetLife also argues that "[R]epetitive awards of punitive damages for the same conduct violate a defendant's due process rights." See MetLife's brief page 3.[2] This statement of the law is

---

[2]For this proposition MetLife improperly relies upon the New Jersey federal district court opinion in Juzwin v. Amtorg Trading Corp., 718 F.Supp. 1233, 1234 (D.N.J. 1989), where its present counsel made the same argument and lost. The federal district court expressly rejected this argument and ultimately found that repeated punitive damages may be awarded, since there is no federal legislation restricting multiple awards of punitive damages for the same tortious conduct. The district court specifically held that a defendant can be repeatedly punished for its outrageous conduct:

> Therefore, although the court has concluded that there has been or may be a violation of defendants' due process rights through repetitive awards of punitive damages, the court can conceive of no remedy absent a uniform law to implement the conclusions reached herein.[fn2] Therefore, the defendants' motions to dismiss the punitive damages claims based upon prior punitive damages awards against them is denied.

incorrect and a clear misstatement since no court has reached this holding. <u>See</u> 11 ALR 4th at 1262

"Propriety of Awarding Punitive Damages to Separate Plaintiffs bringing Successive Actions Arising

out of Common Incident or Circumstance Against Common Defendant or Defendants ("One Bite"

or "First Comer" Doctrine)."  The Annotation states:

> The reported cases collected in this annotation have generally held that **no principle exists which prohibits a plaintiff from recovering punitive damages against a defendant or defendants simply because punitive damages have previously been awarded against the same defendant or defendants for the same conduct**, or because other actions are pending against the same defendant or defendants which could result in an award of punitive damages.

11 ALR 4th at 1262 (Emphasis added).

The cases relied upon by MetLife are inapposite.  These cases involve reduction of a punitive

damage award after it is imposed, but do not address precluding or limiting the amount of the award

prior to submitting the issue of punitive damages to the jury, as Defendants' seek to do.  Moreover,

MetLife is proposing that this Court should be the first court to bar the award of punitive damages

in successive litigation based upon similar egregious conduct.  This determination is one left to the

legislature to make. <u>See</u> <u>Juzwin v. Amtorg Trading Corp.</u>, <u>supra</u>. (It is for the legislature to preclude

the award of multiple punitive damages for the same conduct).  There is a specific procedure

established for judicial review of verdict amounts to ensure a punitive damage award in Pennsylvania

comports with constitutional due process and the 14th Amendment Rights of the Defendants.  The

Defendants have a right to request judicial review of any punitive damage award after the amount

---

<u>See</u> <u>Juzwin v. Amtorg Trading Corp.</u>, at 1236.

Indeed, counsel for Defendants has a duty of candor towards the tribunal to reveal to the court that the same argument previously was made and rejected.  <u>See</u> <u>Rules of Professional Conduct</u> Rule 3.3 Candor Toward the Tribunal, "(a) A lawyer shall not knowingly: (1) make a false statement of ... law to a tribunal."

initially is set by the jury and request remittur. Kirkbride v. Lisbon Contractors, Inc., 555 A.2d at 803-804. Also, the Due Process Clause "prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor." BMW of North America, Inc. v. Gore, 517 U.S. 559,116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). (establishing three "guideposts" for determining whether a punitive damages award is unconstitutionally excessive, that come into play **after** a punitive damage award is made by the jury).

It is also difficult to consider the civil fines entered against MetLife as "grossly excessive or arbitrary punishment" when MetLife argues the fines were not fines, but rather they are settlements of claims which were disputed by MetLife and there was no admission of any wrongdoing by MetLife in the payment of the fines.

MetLife's argument fails for the exact same reasons as previously articulated, i.e. the court must look to the totality of the circumstances surrounding the award of punishment damages in the instant case, the amount, the egregiousness of the conduct, the financial worth of the corporation, and the amount of the prior fines or punitive damage awards in the context of considering all of the factors. See TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Thus, the question for review by the court after the jury awards punishment damages, is whether the payment of the $1.5 million dollar fine in Pennsylvania along with the punitive damages awarded in the instant case, constitutes a "grossly excessive or arbitrary punishment" and violates due process, in light of the totality of the circumstance. Again, MetLife attempts to place the cart before the horse.

Of note, MetLife has filed a motion in limine at cross purposes to their argument herein. MetLife requests that this Court bar the Plaintiff from any use of the findings and the order entered

in the Pennsylvania Market Conduct Examination, yet also alleges that the payment of the $1.5 million dollar fine was a settlement and the Insurance Department Final Order and findings of fact of improper, unlawful conduct was disputed by MetLife. This position is duplicitous. First, MetLife fails to mention that MetLife never appealed the Final Order, after the Final Order was entered by the Insurance Department, even though MetLife had the right to appeal to the Commonwealth Court so that the Order became final and binding with regard to MetLife's conduct. See Philadelphia v. Lindy, 455 A.2d 278 (1983) (Pennsylvania Supreme Court is unwilling to permit a collateral attack of an administrative agency's findings in subsequent civil litigation, where the party failed to appeal the administrative order).  Second, MetLife seeks to preclude reference to this fine  and the findings of fact by the Insurance Department regarding it sales practices, but herein cites and relies upon the fine as a prior punishment to bar further punishment.

## II.    SIMILAR OUT-OF-STATE CONDUCT IS ADMISSIBLE EVIDENCE.

MetLife seeks to exclude similar out-of-state conduct and practices of MetLife from being considered by the jury.  MetLife misconstrues and intertwines concepts of punitive damage law and proof of liability in an attempt to bar the introduction of relevant and material evidence necessary to prove the habit custom and business practices of MetLife.  Proof of similar out-of-state conduct may be admitted to proof liability, and punishment damages.  In TXO, supra, the United States Supreme Court determined where out-of-state business conduct is relevant to the harm suffered by the plaintiff, then this out-of-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages.  The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

**TXO also contends that the admission of evidence of its alleged wrongdoing in**

-10-

**other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in <u>Haslip</u> included both**. <u>See</u> <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

<u>TXO</u>, 509 U.S. at 462, fn28. (Emphasis added). The decision in <u>Haslip</u> is referenced with approval

in the Pennsylvania Suggested Standard Civil Jury Instructions. <u>See</u> Chapter XIV Punitive Damages,

p.9. ("Although <u>Haslip</u> dealt with an Alabama punitive damage award, the opinion provides guidance

in assessing punitive damage awards under Pennsylvania law").

    MetLife on page 7 of its brief relies upon <u>BMW v. Gore</u>, 517 U.S. 559 (1996) to contend

that unlawful out-of-state conduct cannot be the basis for a punishment damage award. This reliance

is misplaced. The U.S. Supreme Court in <u>BMW</u> held that unlawful out-of-state conduct can be

considered where relevant and cited its prior holding in <u>TXO</u> with approval in support of this

holding.[3] Specifically, the U.S. Supreme Court opined:

---

[3] MetLife on page 6 of its brief cites to language from <u>BMW v. Gore</u>, which sounds as if it supports MetLife's position that no evidence of out-of-state conduct is permissible for an award of punitive damages. However, the language should be read in context of the U.S. Supreme Court's reference to "these principles," otherwise the U.S. Supreme Court's holding in <u>BMW</u> concerning the use of evidence of out-of-state conduct on pages 576-77 of the opinion and also the holding in the <u>TXO</u> opinion that out-of-state conduct is permissible as evidence in support of an award of punitive damages would be nonsensical. <u>See</u> <u>BMW v. Gore</u>, 517 U.S. at 576-77 and <u>TXO</u>, 509 U.S. at 462, fn28.

    The referenced "principles" relate to the fact that a state may not impose its will upon another state, but this does not change the fact that Pennsylvania has an interest in determining whether MetLife has engaged in a scheme to defraud consumers on a nationwide basis, including Pennsylvania. The extent and widespread nature of the scheme tends to prove the deliberateness and extent to which the Defendants are willing to go to defraud consumers. Pennsylvania does have an interest in punishing MetLife taking into account the totality of the circumstances, if warranted. <u>See</u> <u>Kirkbride</u>, 555 A.2d at 803 (To determine whether punitive damages are appropriate the following factors may be considered: (1) the character of the act; (2) **the nature**

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law. See [TXO] id., at 462, n. 28.** Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. at 576-77 (Emphasis added).

Not only is unlawful out-of-state conduct admissible and relevant, but as the U.S. Supreme Court in State Farm v. Campbell, 538 U.S. 408, 123 S.Ct. 1513 (2003) determined that lawful out-of-state conduct, which is unlawful in the subject state, is also admissible and relevant to the proof of compensatory and punitive damages, as long as the out-of-state conduct has a nexus to the unlawful conduct of the forum state in the subject litigation. The decision in State Farm is consistent with the decision in TXO and BMW and permits the introduction of evidence of similar out-of-state conduct. If found relevant to the harm suffered by the plaintiff, the out-of-state conduct, therefore, properly may be considered by a jury relative to an award of punitive damages. In State Farm the U.S. Supreme Court held that defendant's lawful out-of-sate conduct was admissible for consideration by the factfinder to prove the "deliberateness and culpability" of defendant's action in the subject state, where the conduct had a "nexus" to the harm suffered by the plaintiff. Id. at 1522 ("**Lawful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious**, but that conduct must have a nexus to the specific harm suffered to the plaintiff.")(Emphasis added).

MetLife also raised this same issue, that evidence of MetLife's national sales practices cannot

---

**and extent of the harm caused**; and (3) the wealth of the defendant. (citing Restatement (Second) of Torts § 908(2))(Emphasis added); see also TXO, 509 U.S. at 462, fn28; BMW v. Gore, 517 U.S. at 576-77; and State Farm v. Campbell, 538 U.S. 408, 123 S.Ct. at 1522.

be used in an individual opt-out case, in an attempt to have this Court enter an injunction restraining

Opt-Out Litigant plaintiffs, including the Solarchicks, from taking any discovery, or introducing any

evidence at trial of the national deceptive sales practice, because of the nationwide federal class

action settlement.  In its federal court argument, MetLife relied upon State Farm v. Campbell.  The

United States Third Circuit Court of Appeals in rejecting the injunction request[4] held that MetLife's

argument to preclude the national sales practices evidence based upon the holding in State Farm v.

Campbell, had no merit and was inapposite:

> ... MetLife cites to State Farm Mut. Auto Ins. Co. v. Campbell, 123 S.Ct. 1513(2003), for the proposition that Appellees cannot use evidence of MetLife's national practices in their individual cases. **Campbell, however, is wholly inapposite, as it deals with the determination of whether a large punitive damage award can be based on such evidence, *not* whether such evidence can be at all relevant to an individual's lawsuit.**

See  Drelles v. Metropolitan Life Insurance Company, 357 F.3d 344, 347 fn2 (3rd Cir. 2003)

(Italicized emphasis in the original and boldface is added)

In the instant case, the relevant out-of-state deceptive conduct was unlawful, as well as

having a "nexus" to Plaintiff's claims.  MetLife cannot point to any jurisdiction where it is lawful

to commit deceptive and fraudulent acts to induce the sale of life insurance, because nowhere is such

conduct permitted.  All fifty States adopted insurance statutes to protect consumers from such

deception, and no State permits misrepresentation of the material terms and conditions of the policies

in order to induce sales.  Indeed, MetLife concedes that States Insurance Departments fined MetLife

for this deceptive life insurance sales practices.  See Defendants' Brief p.5.

---

[4]The Third Circuit found that MetLife presented no cases to support the requested injunction. ("In short, MetLife cannot point to any caselaw authorizing an injunction against opt-out plaintiffs like Appellees, who consciously and purposefully refused to join a class action settlement."). See Opinion of December 24, 2003, p.7.

Thus, the appropriate "nexus" can be demonstrated between the specific harm suffered by the Mohneys and evidence of widespread deceptive sales practices and schemes. This evidence is probative since "it demonstrates the deliberateness and culpability of the defendant's action in [Pennsylvania] [] where it is [also] tortious." State Farm v. Campbell, Id. at 1522. Additionally, these same deceptive sales practices occurred on a widespread basis in Pennsylvania. (See Exhibit A the Pennsylvania Market Conduct Examination Report of MetLife attached to Defendants' Motion in Limine to Exclude Evidence of the Pennsylvania Report of Market Conduct Examination of MetLife).

Moreover, the out-of-state conduct provides evidence and a basis to show that MetLife was a recidivist. This evidence demonstrates that MetLife senior management was aware and/or recklessly disregarded multiple, repeated problems with the same deceptive sales practices that occurred in the sales to the Solarchicks. Senior management chose not only to ignore these unlawful sales practices, but chose to condone and benefit from them. This evidence of knowledge, lack of action taken, and implied approval is admissible. See State Farm v. Campbell, Id. at 1523 ("Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance"); see also BMW v. Gore, 517 U.S. at 577("in the context of civil actions courts must ensure the conduct in question replicates the prior transgressions. TXO, 509 U.S., at 462,n.28 (noting that courts should look to the "existence and frequency of similar past conduct'") (quoting Haslip, 499 U.S., at 21-2)).

## III.    HABIT, CUSTOM AND BUSINESS  PRACTICES OF METLIFE PRACTICED ON THE SOLARCHICKS ARE RELEVANT AND ADMISSIBLE EVIDENCE.

Evidence of MetLife's habit, custom and business practices is admissible to prove MetLife's

intent, knowledge, and background related to the actual sales practices utilized by MetLife and its agents in the sale of the policy in this case. Com. of Pa. v. Porter, 659 F.2d 306 at 320 (3rd Cir.1981)(. . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design.  It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization."); Frey v. Harley Davidson Motor Co., 734 A.2d 1 (Super. Ct. 1999)(Evidence of regular business practice to not inspect previously owned motorcycles was properly admitted); Pa. Rule of Evidence 404(b)(2)(the introduction of evidence of prior acts on the part of a party where those acts may demonstrate ""**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". is proper)[Emphasis added].

    This principal of permitting evidence of prior bad acts in fraud cases is based upon the concept that evidence of similar prior bad acts are admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial.  The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that the Hazens intend to offer at trial. Thus, the evidence of the business custom and practice would tend to prove that MetLife through its sales agents engaged in a regular business practice of misrepresenting the nature of life insurance policies to potential customers in an effort to induce the purchase of the policies. As such, evidence of these practices are relevant and admissible to demonstrate (1) motive, (2) intent, (3) a common scheme in the deceptive sale of life insurance policies; (4) that the Defendants have not merely committed a mistake when they misrepresented the terms and conditions of the policies to the Plaintiffs, and (5) to establish the identity of the person accused of the fraud on trial, "— in other words, where there is such a logical connection between the fraudulent sales that proof of one will naturally tend to show that the accused is the person who committed the other."

Plaintiff's proof of national business practices should not be bifurcated since this evidence relates directly to Defendants' intent, knowledge, and purpose behind the marketing practices actually used against the Hazens. Judicial economy is not served by bifurcation since the same practices, evidence, and legal standards apply equally to both compensatory and punitive damage awards. Jury instructions, therefore, should limit any potential for bias and undue prejudice and prevent confusion between purported bad acts and issues related to Defendants' liability.

In <u>Hutchison</u>, the Superior Court in permitting the prior bad acts evidence held that "The evidence concerning prior acts of molestation by Luddy had the potential to be inflammatory. However, it was also important to an assessment of credibility, where Luddy was denying having had sexual relations with Hutchison." <u>Id.</u> at 841.

The business practices and knowledge of the Diocese itself were at issue, since they were also a defendant, along with the manner in which it supervised its employees. The Superior Court held

-16-

even though the evidence of "pedophilic behavior in the church also had the potential to be inflammatory" it was proper to admit this evidence of prior knowledge of the Diocese to establish whether the Diocese was also liable and not just the employee priest.

¶ 64    Further, the evidence concerning pedophilic behavior in the church also had the potential to be inflammatory. However, the evidence was highly probative to the question of . . . liability on the part of the church defendants, as it showed the church organization's knowledge, or lack thereof, with regard to the church parties' failure to control Luddy. **With regard to evidence of pedophilic behavior within the organization, we find instructive an analogous argument raised in a civil matter cited in Appellee's Substituted Brief on Remand. That case is** <u>**General Equipment Manufacturers v. Westfield Insurance Co.**</u>**, 635 A.2d 173 (Pa.Super. 1993)**, wherein a subcontractor filed suit against a general contractor for nonpayment, and attempted to introduce evidence of the general contractor's failure to pay other subcontractors. On review of the propriety of the admission of such evidence, we stated as follows:

> While the commission of an act charged cannot be proved by showing the commission of a like act at a different time, an exception to this rule exists where knowledge or intent is a material fact to be proved. Under such circumstances, evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. **Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.**

General Equipment, 635 A.2d at 185 (Pa.Super. 1993) (citations omitted).

¶ 65    **The course of dealing of the church organization with pedophilic behavior within the church, if any, could tend to establish how the church reacted to Luddy's pedophilic behavior if the church organization knew or should have known about it**. Luddy testified that his fear of losing a parish could have been affected by the church's having a policy of not acting on complaints of pedophilia, and, in this way, could have affected his engaging in sexual acts with minor males. The trial judge appropriately pointed out that the church defendants would have sought to introduce the evidence that they were challenging if its use would have been more beneficial to them. As an example, the trial judge cited an instance where the church defendants would want to use such evidence to show that they could have had no notice, because Luddy was the only priest engaged in

pedophilic behavior. Trial Court Opinion, 1/12/94, at 7.

¶ 66    Thus, we agree that such evidence was probative of . . . liability on the part of Appellants. The prejudicial impact of the evidence concerning the knowledge of Appellants concerning pedophilic activity of priests within the Diocese was not so prejudicial as to outweigh its probative value. **We find no abuse of discretion on the part of the trial court in ruling that the probative value of the evidence concerning the pedophilic behavior of priests of the Diocese other than Luddy and that the church defendants' knowledge thereof outweighed its prejudicial effect.**

Hutchison, Id., at 842-843 (emphasis added)

The business practices and knowledge of MetLife itself are on trial, along with the manner in which MetLife supervised its employees. Indeed, what the Defendants are proposing would prejudice the Solarchicks by not permitting the admission of relevant and material evidence. Moreover, in a fraudulent misrepresentation and fraudulent concealment case, the standards of evidence are relaxed for plaintiffs to prove their claims. As Henry on Pennsylvania Evidence stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud. . . . where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given. If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.**

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p.73 (Emphasis Added); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); Bickell v. Stein, 435 A.2d 610 (Pa. Super. 1981)("[T]he doctrine of fraudulent concealment has been relaxed considerably with regard to the deceptive intent of defendant's acts and their independence of the underlying, operative facts")

Evidence of the Defendants' custom, habits and business practices is not "beyond the scope of the transaction" as MetLife argues. To the contrary, this evidence of the business practices goes to the heart of Plaintiffs' claims and is permitted for all the reasons set forth, <u>infra</u> and is permitted under Fed. Rule of Evidence 406. Thus, the habit, custom and business practices of Defendants practiced on the Solarchicks are relevant and admissible evidence.

## IV. THE RELEVANT BUSINESS PRACTICES APPLY TO PROOF OF LIABILITY AND COMPENSATORY DAMAGES IN PLAINTIFFS' CASE IN CHIEF AND SHOULD NOT BE BIFURCATED.

Metlife is attempting to bifurcate liability. MetLife again argues that proof of the relevant habits, customs and business practices should be kept from the jury, this time under the guise of "bifurcation." This argument is erroneous.

No matter how MetLife attempts to recast the argument to request preclusion of evidence of relevant national deceptive sales practices that occurred in the sales to the Solarchicks, the result is the same. This evidence is relevant and admissible to the proof of Plaintiff's claims. The Plaintiffs' argument remains the same: that is, the habit, custom and business practices are relevant and admissible to prove liability for compensatory and punitive damages.

Additionally, Judicial economy is not served by bifurcation since the same practices, evidence, and standards apply to both compensatory and punitive damages. <u>See</u> <u>Coleman v. Philadelphia Newspapers</u>, 570 A.2d 552, 555 (Pa. Super. 1990)("Before ordering the separate adjudication of issues, the court should carefully consider the issues raised and the evidence to be presented to determine whether the issues, here liability and damages, are interwoven. <u>Stevenson v. General Motors Corp.</u>, 513 Pa. At 422-23, 521 A.2d at 419. Bifurcation is discouraged in those cases in which evidence relevant to both issues would be excluded in one portion of the trial and

-19-

would result in prejudice to the objecting party. Id.").  Jury instructions should limit any potential

for bias and undue prejudice and prevent confusion between purported bad acts and issues related

to Defendants' liability.  Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 (1983)(same standard of proof

for compensatory and punitive damages).

  WHEREFORE, Plaintiff requests that MetLife's motion in Limine be denied.

      Respectfully submitted,

      /s/Kenneth R. Behrend      
      Kenneth R. Behrend
      Attorney I.D. No.: 37961
      BEHREND AND ERNSBERGER, PC
      306 Fourth Avenue, Suite 300
      Pittsburgh, PA 15222

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, hereby certify that a true and correct copy of the foregoing Plaintiffs'

Brief in Support of Plaintiff's Response to Defendant's Motion in Limine, was served upon the all

counsel of record by U.S. first-class mail, postage pre-paid and/or hand delivery on this 28th day of

April, 2006, as follows:

B. John Pendleton, Jr., Esquire
MCCARTER & ENGLISH
Four Gateway Center
100 Mulberry Street
Newark, NJ 07101-0652


/s/Kenneth R. Behrend
Kenneth R. Behrend
Attorney I.D. No.: 37961
Attorneys for Plaintiffs
BEHREND AND ERNSBERGER, PC
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222
(412) 391-2515
(412) 391-2762 (facsimile)