# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD M. GONDA, ) | Civil Action No. 00-2286 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Chief Judge Donetta W. Ambrose |
| ) | |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY and WILLIAM FRIEDT, JR., ) | |
| ) | |
| Defendants ) | |

___

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES**
___

Plaintiff seeks to both compensatory and punitive damages, along with statutory damages against Defendant Metropolitan Life Insurance Company (MetLife). The allegations in the Complaint set forth the MetLife engaged in a pattern and practice of deceptive sales practices, specifically, the one used on the Plaintiffs of selling policies with "vanishing premiums."

MetLife asserts that it has already paid punitive damages for this conduct, but does not submit sufficient proof necessary to support its assertion. At the time of settlement of a prior deceptive life insurance case MetLife had to a designate in that case settlement and release the particular dollar amount that was specifically paid for the settlement of punitive damages claims in that case. MetLife failure to offer this definitive type of evidence destroys their assertion that they have paid repeated punitive damages awards. See Dunn v. HOVIC, 1 F.3d 1371, 1389-90 (3d Cir.) (en banc), modified in part, 13 F.3d 58 (3d Cir. 1993).

The evidence to be submitted at trial by Plaintiffs directly has a "nexus" to the claims of

Plaintiff and is therefore, relevant and admissible. Defendant's reference to <u>State Farm Mutual Automobile Ins. Co. v. Campbell</u>, 538 U.S. 208 (2003), on page one of its Brief, does not preclude the jury's consideration of the relevant and admissible evidence of MetLife's business practices which have a "nexus" to Plaintiffs claims for the jury to determine issues of liability and the degree of reprehensibility of MetLife's conduct.

## ARGUMENT

**I.  EVIDENCE OF UNLAWFUL HABIT, PRACTICE AND CUSTOM OF BUSINESS CONDUCT REPEATEDLY HAS BEEN HELD TO PERMIT MULTIPLE PUNITIVE DAMAGE AWARDS IN SEPARATE CASES.**

Plaintiffs seek punitive damages for deliberate and deceptive conduct by MetLife that induced the Plaintiffs to purchase the insurance products. The purchases caused Plaintiffs financial detriment and benefitted Defendants financially. The deceptive sales were made pursuant to a corporate marketing scheme that involved selling life insurance policies pursuant to deceptive and unfair business practices. In the federal MDL class action filed against MetLife there were twenty-five enumerated types of deceptive sales practices which were described in the Release. <u>See</u> Final Order Approving Class Action Settlement, pp.10-13. Plaintiffs seek to offer evidence of MetLife's business practices that resulted in the use of the sales practices which were undertaken against the Plaintiffs regarding "vanishing premiums" and "performance" claims.

Plaintiffs seek to introduce this evidence for the purpose of establishing the context of MetLife's state of mind, including its knowledge, intent and corporate culture that permitted and encouraged the use of these deceptive sales practices schemes. The proffered scheme evidence demonstrates that MetLife is liable for the deceptive sales methods used to sell the policies purchased by Plaintiffs.

This case is not a case in which the jury easily could confuse issues of damages and liability. The conduct is the same but is viewed for clear and distinct purposes. Moreover, the jury is not likely to confuse and misapply damages arguments to liability issues since only one plan or scheme of deception in sales of insurance policies, the use of the "vanishing premium" sales techniques pursuant to MetLife's Accelerated Payment Plan, is at issue. Circumstantial evidence of fraud, when considered with breach of promise to perform, is sufficient to support a finding of fraudulent intent. See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987

### I.A. NO PRIOR PUNITIVE DAMAGE AWARD HAS BEEN IMPOSED AGAINST METLIFE FOR ITS DECEPTIVE BUSINESS PRACTICES.

Federal appellate caselaw and similarly the Supreme Court of Texas addressing this issue have held that a defendant is prohibited from introducing a class settlement "value" to the jury as a factor reduce the amount of punitive damages that may be awarded. See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35 (Tex. 1998), citing with approval Dunn v. HOVIC, 1 F.3d 1371, 1389-90 (3d Cir.) (en banc), modified in part, 13 F.3d 58 (3d Cir. 1993)(Defendant's "failure to designate particular amounts of the [prior] settlements as representing punitive damages makes inclusion of these amounts problematic . . . [thus Defendant] has failed to prove that the aggregate award of punitive damages against it has been sufficient to meet the twin goals of punishment and deterrence underlying such awards.").

It is submitted that the Federal MDL settlement agreement by MetLife does not designate any specific dollar amount as actually paid as punitive damages. Also, MetLife fails to cite, or refer to any prior punitive damage awards against it that relate to the deceptive sales practices which

occurred on a national basis for "vanishing premium" sales. Instead, beginning on the first paragraph of page 4 of its brief, MetLife represents that there was a federal national class action settlement, ("MDL class settlement"), which MetLife contends encompassed punishment damages.[1] MetLife argues that "the MDL settlement had a total **value** in excess of $1.645 billion to the class." (Emphasis added). See MetLife's Brief, p.5. However, most importantly, the amount of **value** to the class does not represent the specific dollar amount that actually was paid for punitive damages in the class settlement.

The MDL class action release does not even mention the word "punitive damage," but instead refers to a release of all claims set forth in the Class Action Complaint. See Class release, p. 59 -68. Also, at an average of $235 per class member ($1.645 billion divided by 7 million class members) it is difficult to believe that any of the settlement "**value**" amount is punitive, let alone "grossly excessive or arbitrary punishment." The burden to show the specific amount paid for settlement of the punitive damages claims through the MDL settlement, so they may be used in subsequent litigation, is on MetLife. Owens-Corning Fiberglas, Id., Dunn v. HOVIC, Id.

Moreover, MetLife points to no authority in support of its position that a class action settlement can be considered as part of this Court's due process determination whether a "grossly excessive or arbitrary punishment" has taken place in prior litigation through the award of punitive damages.[2] Indeed, there is no case law MetLife cites to support its position because a settlement is

---

[1] Oddly, MetLife refers to allegations of "savings and retirement claims." The instant case is based on "vanishing premium" and "performance" claims.

[2] Again, MetLife is not addressing an "award" of punitive damages; instead MetLife is twisting the concept by arguing that a settlement of class action claims should be credited as equivalent to an "award" by a jury for punitive damages to prevent multiple punitive damage "awards" for the same egregious conduct. However, these two concepts (a class action

-3-

just that: a settlement of disputed claims, agreed to by plaintiff and defendants, and it is not a "grossly excessive or arbitrary punishment" of any nature or kind. MetLife consented and agreed to the MDL class settlement terms and cannot now recast them as anything other than a settlement.

Further, appellate case law exists that refutes MetLife's argument that settlement amounts could be included for consideration of whether a "grossly excessive or arbitrary punishment" has taken place in prior litigation. See Owens-Corning Fiberglas, citing favorable to Simpson v. Pittsburgh Corning Corp., 901 F.2d 277, 281-82 (2d Cir. 1990) (rejecting argument that actual damage awards and settlements can be aggregated to establish that successive punitive damages awards are unconstitutional), and Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 839 (2d Cir. 1967)("[I]t is hard to see what even the most intelligent jury would do with this [evidence about the potential number of similar actions], being inherently unable to know what punitive damages, if any, other juries in other states may award other plaintiffs in actions yet untried.").

Also, federal appellate courts have recognized that the impact of other punitive damages awards can only be measured if they have actually been paid. See, Dunn, 1 F.3d at 1389-90 (requiring proof of punitive damages "actually paid in the past" and **rejecting consideration of** "non-final awards of punitive damages" and of **settlements where [defendant] OCF did not segregate settlement amounts paid as punitive damages**)(Emphasis added); Johnson v. Celotex Corp., 899 F.2d 1281, 1287-88 (2d Cir. 1990) (rejecting defendant's request that appellate court take

---

settlement and a punitive damage award) are entirely different. In the MDL settlement there was no finding that any egregious conduct occurred to warrant the award of punitive damages. Indeed, MetLife admitted to no liability in the settlement of the MDL class action. Since there was no liability admitted, and the settlement terms were agreed to by MetLife, then it follows there is no support to MetLife's assertion that the MDL settlement was a "grossly excessive or arbitrary punishment." See MDL class release, page 19-20.

judicial notice of other punitive damage awards because defendant did not provide any documentation about "exactly how much money they have actually paid in punitive damages").

Thus, courts have held that the following evidence is not relevant, or is unduly prejudicial and thus, not admissible by a defendant to mitigate punitive damages: (1) actual damage amounts paid by either settlements or by judgments; (2) the number of pending claims filed against a defendant for the same conduct; (3) the number of anticipated claims for the same conduct; (4) insurance coverage; (5) unpaid punitive damages awards for the same course of conduct; and (6) evidence of punitive damages that may be levied in the future. See Ownens-Corning Fiberglas Corp., Supra, 972 S.W.2d at 42. Accordingly, MetLife should be precluded from using the MDL class settlement **"value"** as either evidence of prior punishment damages paid or for mitigation of any award for punishment damages. Again, the fact that must be established by MetLife is the actual amount paid as punitive damages in the MDL class settlement and asserting some nebulous concept of **"value"** to the class fails to meet this burden. Johnson v. Celotex Corp., supra, Simpson v. Pittsburgh Corning Corp., supra, Dunn v. HOVIC, supra.

The same holds true to the civil fines paid by MetLife. Civil fines are not prior punitive damage awards since they are paid to the state in recognition of violations committed of the state's laws and regulations. The $20 million in fines referenced by MetLife all relate to selling whole life insurance policies as retirement and savings plans levied through the National Association of Insurance Commissioner, pursuant to the Florida Insurance Department's investigation into the deceptive sale of nurses retirement plans nationwide out of the Tampa, Florida office of MetLife. See MetLife's Brief at p.5. These fines have absolutely noting to do with punishment for the deceptive sale of policies using the "vanishing premium" sales tactic and therefor are irrelevant to

the instant case and present no evidence that should be considered by the jury.

Also, any fines paid to state regulatory bodies are not evidence of prior punitive damage awards. In contrast to the payment of fines, punitive damages are not paid to the state and are awarded to punish the egregious conduct towards the individual plaintiff. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)(describing punitive damages as "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence"). However, even though evidence of the payment of fines is not admissible evidence to limit the amount of punitive damages, that fact that civil fines were paid may be considered by the court after punitive damages are awarded by the jury as one of the guideposts used to determine whether the amount of punitive damages awarded by the jury is appropriate in relation to the claim. See State Farm v. Campbell, 538 U.S. 408, 428 (2003)("The third guidepost in Gore is the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.' Id., at 575.").

MetLife also argues that "[R]epetitive awards of punitive damages for the same conduct violate a defendant's due process rights", and cites to Juzwin v. Amtorg Trading Corp., 718 F. Supp. 1233 (D.N.J. 1989), but fails to mention this argument was rejected in the exact case it cites as authority. See MetLife's Brief at p.2. Indeed, the rejected argument in Juzwin was made by present counsel for MetLife.[3] This statement of the law is incorrect and a clear misstatement since no court

---

[3]For this proposition MetLife improperly relies upon the New Jersey federal district court opinion in Juzwin v. Amtorg Trading Corp., 718 F.Supp. 1233, 1234 (D.N.J. 1989), where its present counsel made the same argument and lost. **The federal district court expressly rejected this argument and ultimately found that repeated punitive damages may be awarded since there is no federal legislation restricting multiple awards of punitive damages for the same tortious conduct.** The district court specifically held that a defendant can be repeatedly punished for its outrageous conduct:

> Therefore, although the court has concluded that there has been or may be

-6-

has reached this holding. See 11 ALR 4th at 1262 "Propriety of Awarding Punitive Damages to Separate Plaintiffs bringing Successive Actions Arising out of Common Incident or Circumstance Against Common Defendant or Defendants ("One Bite" or "First Comer" Doctrine)." The Annotation states:

> The reported cases collected in this annotation have generally held that **no principle exists which prohibits a plaintiff from recovering punitive damages against a defendant or defendants simply because punitive damages have previously been awarded against the same defendant or defendants for the same conduct**, or because other actions are pending against the same defendant or defendants which could result in an award of punitive damages.

11 ALR 4th at 1262 (Emphasis added).

On pages 2-4 of its brief, MetLife then cites to numerous cases which are inapposite. These cases involve the reduction of a punitive damage award, after it is imposed, but do not address precluding or limiting the amount of the award prior to submitting the issue of punitive damages to the jury. Moreover, MetLife is proposing that this Court should be the first court to bar the award of punitive damages in successive litigation based upon similar egregious conduct. This determination is one left to the legislature to make. See Juzwin v. Amtorg Trading Corp., supra. (It

---

> a violation of defendants' due process rights through repetitive awards of punitive damages, the court can conceive of no remedy absent a uniform law to implement the conclusions reached herein.[fn2] Therefore, the defendants' motions to dismiss the punitive damages claims based upon prior punitive damages awards against them is denied.

See Juzwin v. Amtorg Trading Corp., at 1236.

The Defendant's representations of the holding of Juzwin that multiple punitive damages may not be awarded are not supported by the holding in Juzwin. Counsel for Defendants has a duty of candor towards the tribunal to reveal that it made this exact same argument and it was rejected in Juzwin. See Rules of Professional Conduct Rule 3.3 Candor Toward the Tribunal, "(a) A lawyer shall not knowingly: (1) make a false statement of ... law to a tribunal."

is for the legislature to preclude the award of multiple punitive damages for the same conduct); Owens-Corning Fiberglas Corp., supra, at 52-53 (at a post-trial conference, the court may then consider whether the award of any substantiated repetitive punitive damage awards for the same conduct should be considered to reduce the award of punitive damages, taking into consideration various elements, "(1) the degree of reprehensibility of the defendant's misconduct; (2) the profit earned by the defendant from its misconduct; (3) the defendant's financial position; and (4) criminal sanctions, if any, imposed for the same conduct. See BMW, 517 U.S. at 574-75, 116 S.Ct. 1589; Haslip, 499 U.S. at 22, 111 S.Ct. 1032").

Thus, a specific procedure has been established for judicial review of verdict amounts to ensure a punitive damage award in Texas comports with constitutional due process and the 14th Amendment Rights of the Defendants. The Defendants have a right to request judicial review of any punitive damage award after the amount initially is set by the jury and request remittur. Owens-Corning Fiberglas Corp., supra. Also, the Due Process Clause "prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor." BMW of North America, Inc. v. Gore, 517 U.S. 559,116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)(establishing three "guideposts" for determining whether a punitive damages award is unconstitutionally excessive, that come into play **after** a punitive damage award is made by the jury).

It is also difficult to consider the civil fines entered against MetLife as "grossly excessive or arbitrary punishment" when MetLife argues the fines were not fines, but rather they are settlements of claims disputed by MetLife in which no admission of any wrongdoing was made by MetLife in the payment of the fines.

MetLife's argument fails for the exact same reasons previously articulated, i.e. the court must

look to the totality of the circumstances surrounding the award of punishment damages in the instant case, the amount, the egregiousness of the conduct, the financial worth of the corporation, and the amount of the prior fines or punitive damage awards in the context of considering all of the factors. See TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).  Thus, the question for review by the court after the jury awards punishment damages, is whether the payment of the $1.5 million dollar fine in Pennsylvania, when the instant case is based upon deceptive conduct that occurred in Texas, along with the punitive damages awarded in the instant case, constitutes a "grossly excessive or arbitrary punishment" and violates due process, in light of the totality of the circumstance. Again, MetLife attempts to place the cart before the horse.

Of note, MetLife has filed a motion in limine at cross purposes to their argument herein. MetLife requests that this Court bar the Plaintiff from any use of the findings and the order entered in the Pennsylvania Market Conduct Examination, yet also alleges that the payment of the $1.5 million dollar fine was a settlement and the Insurance Department Final Order and findings of fact of improper, unlawful conduct was disputed by MetLife.  This position is duplicitous.  First, MetLife fails to mention that MetLife never appealed the Final Order, after the Final Order was entered by the Insurance Department, even though MetLife had the right to appeal to the Commonwealth Court so that the Order became final and binding with regard to MetLife's conduct. See Philadelphia v. Lindy, 455 A.2d 278 (1983) (Pennsylvania Supreme Court is unwilling to permit a collateral attack of an administrative agency's findings in subsequent civil litigation, where the party failed to appeal the administrative order).  Second, MetLife seeks to preclude reference to this fine and the findings of fact by the Insurance Department regarding it sales practices, but herein cites and relies upon the fine as a prior punishment to bar further punishment.

-9-

Accordingly, MetLife has not paid any prior punitive damage awards in deceptive life insurance sales practices cases and the Motion in Limine should be denied.

## II.     SIMILAR OUT-OF-STATE CONDUCT IS ADMISSIBLE EVIDENCE.

MetLife seeks to exclude similar out-of-state conduct and practices of MetLife from being considered by the jury. MetLife misconstrues and intertwines concepts of punitive damage law and proof of liability in an attempt to bar the introduction of relevant and material evidence necessary to prove the habit custom and business practices of MetLife. Proof of similar out-of-state conduct may be admitted to prove state of mind, liability, and punishment damages. In TXO, supra, the United States Supreme Court determined where out-of-state business conduct is relevant to the harm suffered by the plaintiff, then this out-of-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages. The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> **TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

TXO, 509 U.S. at 462, fn28. (Emphasis added).

MetLife on page 6 of its brief relies upon the decision in BMW v. Gore, 517 U.S. 559 (1996) to contend that unlawful out-of-state conduct cannot provide the basis for an award of punishment damages. This reliance in BMW v. Gore is misplaced. In BMW, the U.S. Supreme Court held that unlawful out-of-state conduct can be considered where relevant, and cited its prior holding in TXO

-10-

with approval in support of this holding.[4]  Specifically, the U.S. Supreme Court opined:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** See [TXO] **id., at 462, n. 28.** Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. at 576-77 (Emphasis added).

Not only is unlawful out-of-state conduct admissible and relevant, but the United States Supreme Court in State Farm v. Campbell, 538 U.S.408,123 S.Ct. 1513 (2003), determined that lawful out-of-state conduct, which is unlawful in the subject state, also is admissible and relevant to the proof of compensatory and punitive damages.  So long as the out-of-state conduct has a "nexus" to the unlawful conduct of the forum state in the subject litigation, the decision in State

---

[4] MetLife on page 6 of its brief cites to language from BMW v. Gore, which appears at first blush to support MetLife's position that no evidence of out-of-state conduct is permissible for an award of punitive damages.  However, the language cited should be read in context of the U.S. Supreme Court's reference to "these principles;" otherwise, the U.S. Supreme Court's holding in BMW concerning the use of evidence of out-of-state conduct on pages 576-77 of the opinion and also the holding in the TXO opinion, that out-of-state conduct is permissible as evidence in support of an award of punitive damages would be nonsensical. See BMW v. Gore, 517 U.S. at 576-77 and TXO, 509 U.S. at 462, fn28.

The referenced "principles" relate to the fact that a state may not impose its will upon another state but this principle does not change the fact that Pennsylvania has an interest in determining whether MetLife has engaged in a scheme to defraud consumers on a nationwide basis, including Pennsylvania.  The extent and widespread nature of the use of the deceptive business practice tends to prove the deliberateness and extent to which the Defendants would scheme to defraud consumers. Pennsylvania does have an interest in punishing MetLife taking into account the totality of the circumstances, if warranted. See Kirkbride, 555 A.2d at 803 (To determine whether punitive damages are appropriate the following factors may be considered: (1) the character of the act; (2) **the nature and extent of the harm caused**; and (3) the wealth of the defendant. (citing Restatement (Second) of Torts § 908(2))(Emphasis added); see also TXO, 509 U.S. at 462, fn28; BMW v. Gore, 517 U.S. at 576-77; and State Farm v. Campbell,538 U.S.408, 123 S.Ct. at 1522.

Farm is consistent with the decision in TXO and BMW and permits the introduction of evidence of similar out-of-state conduct. If the out-of-state conduct is found relevant to the harm suffered by the plaintiff, it properly may be considered by a jury relative to an award of punitive damages. In State Farm, the United States Supreme Court held that defendant's lawful out-of-sate conduct was admissible for consideration by the factfinder to prove the "deliberateness and culpability" of defendant's action in the subject state, where the conduct had a "nexus" to the harm suffered by the plaintiff. Id. at 1522 ("**Lawful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious**, but that conduct must have a nexus to the specific harm suffered to the plaintiff.")(Emphasis added).

In the instant cases, the relevant out-of-state deceptive conduct was unlawful, and has a "nexus" to the Plaintiffs' claims. MetLife cannot point to any jurisdiction where it is lawful to commit deceptive and fraudulent acts to induce the sale of life insurance, because such conduct is not permitted anywhere. All fifty States have adopted insurance statutes to protect consumers from such deception, and no State permits misrepresentation of the material terms and conditions of the policies in order to induce sales.

Thus, the appropriate "nexus" can be demonstrated between the specific harm suffered by the Plaintiffs and evidence of widespread deceptive sales practices and schemes. This evidence is probative since "it demonstrates the deliberateness and culpability of the defendant's action in [Texas] [] where it is [also] tortious." State Farm v. Campbell, Id. at 1522.

Moreover, the out-of-state conduct provides evidence and a basis to support the contention that MetLife was also a recidivist. This evidence demonstrates that MetLife senior management was aware and/or recklessly disregarded multiple, repeated problems with the same deceptive sales

practices that occurred in the sales to the Plaintiffs. The evidence will be used to prove that Senior management chose not only to ignore these unlawful sales practices, but chose to condone and benefit from them. Evidence of malfeasance proven through knowledge, lack of action taken, and implied approval is admissible to establish the defendant was a recidivist. See State Farm v. Campbell, Id. at 1523 ("Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance"); see also BMW v. Gore, 517 U.S. at 577("in the context of civil actions courts must ensure the conduct in question replicates the prior transgressions. TXO, 509 U.S., at 462,n.28 (noting that courts should look to the "existence and frequency of similar past conduct'") (quoting Haslip, 499 U.S., at 21-2)).

Accordingly, evidence of similar out-of-state conduct is admissible.

### III.  ALL OF THE DOCUMENTS LISTED IN PLAINTIFF'S PRE-TRIAL STATEMENT HAVE A "NEXUS" TO THE HARMS SUFFERED BY THE PLAINTIFFS.

In the Motion in Limine MetLife argues based upon the holding in State Farm v. Campbell that specific documents listed in Plaintiffs' Pre-trial Statement should be excluded as "dissimilar 'sales practices' conduct is irrelevant to the punishment wetting function of punitive damages, and would be highly prejudicial." See MetLife's Brief at p.9. MetLife made this same argument previously that evidence of MetLife's national sales practices cannot be used in an individual opt-out case, in an attempt to have this Court grant an injunction restraining the Plaintiffs from taking any discovery or introducing any evidence of the national deceptive sales practice at trial. In its argument, MetLife relied upon State Farm v. Campbell. This Court denied this request for an injunction request, as did the United States Court of Appeal for the Third Circuit. The Third Circuit

Court, in rejecting the injunction request, held that MetLife's argument to preclude the national sales practices evidence based upon the holding in State Farm v. Campbell, had no merit and was inapposite, stating:

> ... MetLife cites to State Farm Mut. Auto Ins. Co. v. Campbell, 123 S.Ct. 1513(2003), for the proposition that Appellees cannot use evidence of MetLife's national practices in their individual cases. **Campbell, however, is wholly inapposite, as it deals with the determination of whether a large punitive damage award can be based on such evidence, *not* whether such evidence can be at all relevant to an individual's lawsuit.**

See Drelles v. Metropolitan Life Insurance Company, 357 F.3d 344, 347 fn2 (3rd Cir. 2003) (Italicized emphasis in the original and boldface is added).[5]

Plaintiff intends to introduce evidence of the knowledge of MetLife, the training by MetLife of its sales agents and the use of the business practice by MetLife of selling polices with "vanishing premiums" through the MetLife "Accelerated Payment Plan." The Plaintiffs were provided an "Accelerated Payment Plan" illustration to induce the sale pursuant to the "vanishing premium" deceptive business practice. Thus, the evidence proffered in the instant case has a direct "nexus" to the claims of the Plaintiffs, unlike the plaintiff in State Farm v. Campbell, who were using evidence of first party misconduct in a third party claim. Id. at 423-424 (" ... the Utah court erred because evidence pertaining to claims that had noting to do with a third-party lawsuit was introduced at length.").

Instantly, Met Life engaged in a national scheme of fraud and deception through the use of misleading sales illustrations containing "vanishing premiums." As was set forth in the prior section,

---

[5]Moreover, the Third Circuit found that MetLife presented no cases to support the requested injunction. ("In short, MetLife cannot point to any caselaw authorizing an injunction against opt-out plaintiffs like Appellees, who consciously and purposefully refused to join a class action settlement."). See Drelles, supra, 357 F.3d at 347.

the evidence of similar business practices of the sale of policies through the use of "vanishing premiums" by MetLife is relevant and admissible for proof in this case. Indeed, this Court has previously determined that "evidence that MetLife encouraged or permitted similar sales techniques have a nexus with the harm suffered by plaintiffs in Texas, renders that evidence admissible. The court disagrees that a blanket ban on evidence of out-of-state activities is appropriate in this case, and will deny the motion in this respect " See Defendants' Exhibit G. Defendants position that this Court's order in Kintner held that evidence of MetLife's national sales practice were dissimilar to the Plaintiffs' allegations is incorrect. To the contrary, this Court specifically held that similar national sales practices, like that evidence proposed by Plaintiff was admissible.

## CONCLUSION

For the foregoing reasons, Plaintiffs' proposed evidence should be admitted by this Court as relevant to the imposition of punitive damages against Defendant MetLife. As demonstrated above, the evidence proposed has a sufficient "nexus" to the Defendant's deceptive conduct that was used in the dale to Plaintiffs to justify its presentation to the jury.

Respectfully submitted,

/s/Kenneth R. Behrend
Kenneth R. Behrend
Pa. ID No. 37961
BEHREND AND ERNSBERGER, PC
Firm ID No. 018
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222
(412) 391-2515
(412) 391-2762 facsimile

-15-

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the foregoing Brief in Support of Plaintiffs' Response to Defendants' Motion in Limine to Exclude Plaintiffs' Claims for Punitive Damages was served upon the below listed counsel and parties on the 26th day of June 2006.

B. John Pendleton, Jr., Esquire
MCCARTER & ENGLISH
Four Gateway Center
100 Mulberry Street
Newark, NJ 07101-0652

BEHREND AND ERNSBERGER, P.C.

BY: /s/Kenneth R. Behrend
    Kenneth R. Behrend
    Pa. ID No. 37961
    BEHREND AND ERNSBERGER, PC
    Firm ID No. 018
    306 Fourth Avenue, Suite 300
    Pittsburgh, PA 15222
    (412) 391-2515
    (412) 391-2762 facsimile
    Attorney for Plaintiffs