IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD M. GONDA, ) | Civil Action No. 00-2286 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Chief Judge Donetta W. Ambrose |
| ) | |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY and WILLIAM FRIEDT, JR., ) | |
| ) | |
| Defendants ) | |

---

**PLAINTIFFS' BRIEF IN RESPONSE TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR "BAD ACTS" BY WILLIAM FRIEDT**

---

**PRELIMINARY STATEMENT**

In this Motion in Limine, Defendants argue that evidence of the regular sales methods of the defendant sales agents provided by MetLife's regular business records and previous testimony by Mr. Friedt regarding his sales preactices is irrelevant, unrelated to the individual transactions, is prejudicial and therefore inadmissible.

The 1992 sale to the plaintiffs was a replacement sale made by Defendant Friedt while he worked for MetLife in which plaintiff alleges that he made material misrepresentations regarding the terms of the policies, failed to adequate disclose basic information, induced the plaintiff to surrender his existing insurance policy and that false statements were made in the applications for the purpose of making a commission. See Complaint.

The business records of MetLife demonstrate that William Friedt used replacement of existing policies as a regular sales tactic. Replacements of existing policies took place in the sales to plaintiffs. The fact that MetLife only tracts internal replacements does not negate the fact that Mr.

Friedt used replacement of existing policies as a regular sales tactic. The fact that Mr. Friedt regularly sold policies through replacement is relevant and that Metropolitan Life knew of this conduct for years is relevant and material to prove the claims against Metropolitan Life and Mr. Friedt, as well as it tends to prove elements of the punitive damages claims. With regard to Mr. Friedt's previous testimony the discussions regarding replacement are not limited to internal replacement, but to the contrary, discuss the "churning" of policies as a sales practice used by Mr. Friedt and MetLife's Butler office. See Defendants' Exhibit A, Tr. p. 28:2-29:1; 30:1-14; 36:11-37:18.

Thus, the very same business conduct that is contained in the business records of MetLife and testimony occurred in the sale of the policy at issue in this case and plaintiffs were harmed thereby. This evidence will tend to prove the allegations of plaintiffs are true and supports the credibility of the plaintiffs and the lack of credibility of the defendants.

Furthermore, plaintiff seek to introduce this evidence for the purpose of establishing the context of MetLife's knowledge, intent and corporate culture which permitted this business practice of selling life insurance policies by misrepresenting the actual cost of the policies. The pattern and practice evidence demonstrates that MetLife is liable for the sale to the plaintiffs through misrepresentations as to the performance and cost of the three universal life policies and the whole Life life insurance policy.

**ARGUMENT**

**I.   EVIDENCE OF THE BUSINESS PRACTICES OF THE DEFENDANT AGENTS AND METLIFE'S AWARENESS OF THE SAME IS RELEVANT AND ADMISSIBLE**.

MetLife's argument is premised on a contorted concept of the relevance of evidence in a

fraud case. This Court has already rejected these exact same legal arguments repeatedly. See generally the rulings made in Tran v MetLife and Kintner v. MetLife.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The documents provide evidence of MetLife's corporate knowledge as to the extent of the use of the business practices of the defendant sales agents, and as such, are relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue. They also tend to establish the elements of proof of punitive damages, that is, did the defendants act intentionally or in reckless disregard to the rights of plaintiffs and should the repeated use of these sales tactics and MetLife's condoning of the same be punished.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in Com. of Pa. v. Porter, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977. The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

Com. of Pa. v. Porter, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979). This reasoning was upheld by

the United States Court of Appeals for the Third Circuit, finding:

> **. . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990).

The business records of MetLife are relevant and admissible to demonstrate the defendant sales agents regular sale practices. See Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1524 (11th Cir. 1985) ("Habit evidence is considered to be highly probative. . . ."). Moreover, evidence of a routine practice is highly probative and persuasive. Loughan, 749 F.2d at 1524. It is particularly persuasive in the business context because "the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." McCormick on Evidence § 195, at 351. Accordingly, the documents demonstrate the necessary trustworthiness and should be admitted into evidence.

As to additional legal argument in support of this issue, rather than restate everything already presented to this Court, on the relevance issue under the Federal Rules of Evidence, plaintiffs refer

the court to the legal arguments made in detail in Plaintiffs' brief in response to Metropolitan Life Insurance Company's Motion in Limine to Exclude from Evidence Plaintiffs' Exhibit nos. 32, 41, 120 and adopt them herein as if set forth at length.

Additionally, the rationale provided by plaintiffs in the brief in support of permitting the admission of the Pennsylvania Market Conduct Examination Report of Metropolitan Life into evidence is applicable to the arguments raised herein regarding the admissibility of the Consent Order and other documents from the Insurance Department sent to John Daley regarding his sales tactics and is adopted as if set forth at length herein.  That is, the Consent Order is also admissible under the government records exception to the hearsay rule, just as the Market Conduct Examination is admissible under the government records exception. See F.R.E. 803(8) Public records and reports. (" Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ©) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law").

Whether governmental reports are admissible under Fed.R.Civ.P. 803(8)© was interpreted by the Supreme Court in Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988).  In Beech Aircraft, the Court held that investigatory reports of this nature and the statements contained in the reports are admissible if they are based on a factual investigation and the report, or any portion that is admitted, is sufficiently trustworthy. 488 U.S. at 170; see also Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 45 (1st Cir. 1991). "Trustworthiness in this context refers to matters such as whether the evidence is self-authenticating or contemporaneously compiled by a person of adequate skill and experience." Blake v. Pellegrino, 329 F.3d 43, 48 (1st Cir. 2003). In determining whether an investigative report is trustworthy a court may consider, among other factors, "(1) the timeliness of the investigation; (2)

the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." Beech Aircraft, 488 U.S. at 168 n. 11.

Furthermore, as the Supreme Court observed, there should be little concern over conclusions contained in such reports because they are "subject to the ultimate safeguard — the opponent's right to present evidence to contradict or diminish the weight of those conclusions." Id. 488 U.S. at 168, 109 S.Ct. 439.

Therefore, evidence should be admitted in this case.

## II. APPLICATION OF RULE 404(B)(2) PERMITS THE ADMISSION OF PLAINTIFF'S RELEVANT EVIDENCE.

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage. Evidence of other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in Brennan v. The Paul Revere Life Insurance Company, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line." In Brennan, the Plaintiff offered evidence that the insurance company had a business practice to target high amount claims and Defendants sought through fourteen motions in limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the first hand knowledge of the individual sale, the insurer in Brennan filed the same motion. "Their third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies. Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled other claims made by other people at other times." Id. The District Court rejected this motion,

p:holding:
bq:**Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in <u>Simplex</u> and <u>Rosenburg</u>.** Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly. Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, **plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case. Though defendants dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence.** Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line.
p:<u>Id.</u> (emphasis added). Likewise, in the instant case, plaintiffs seek to introduce relevant evidence to establish liability of the injury caused by MetLife's business practices.
p:Just because the evidence of the custom, habit and business practice demonstrates that negligent and/or fraudulent conduct took place as a regular business practice does not mean that it is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the elements of negligence and fraud as well as aids in establishing the credibility of the parties. **See Rohm and Haas Co. v. Continental Cas. Co.**, 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial
cen:-9-

evidence may result in a much more compelling conclusion."); **General Equipment Manufacturers v. Westfield Insurance Co.**, 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with MetLife, the plaintiff must prove that MetLife knew about not only the activity of its employee sales agents for some time, but also the regular business practices used by its employee sales agents and should have been more responsive to the situation. The plaintiff also must prove that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, plaintiff must establish that the Defendants had some form of notice. Thus, it is important for plaintiff to demonstrate that other incidents of the use of the same sales practices has occurred involving other sales agents who may have been similarly situated within MetLife and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a defendant, along with the manner in which it supervised its employees. The inability to present any evidence of the business practices and knowledge of MetLife itself would prejudice and harm plaintiffs' proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to plaintiffs.

This principal of permitting evidence of the business practices in fraud cases is based upon the concept that evidence of similar business practices evidence is admissible to prove a course of

conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that plaintiffs seeks to offer at trial. The Pennsylvania Supreme Court in Commonwealth v. Peterson, further held that where evidence relates **to any one of these five issues** it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** Id. at 307 A.2d 264 at 269-270 (Emphasis added).

Moreover, there is a procedure for resolving any possibility of confusion or misunderstanding of the jury as to purpose of the admission of the evidence. Any possible misunderstanding can be clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for another, the trial judge should instruct the jury on the restricted purpose for which the evidence has been admitted. F.R.E. 105 requires the judge to give such and instruction if a party requests it. A party should request that instructions be given to insure that the jury make the proper use of the evidence and that it is not used for an improper purpose. This exact issue was also discussed and explained in Commonwealth v. Peterson, and the Pennsylvania Supreme Court held that any possible

confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. **At the close of trial an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.**

Commonwealth v. Peterson, 307 A.2d 264 at 271.

Moreover, in a fraudulent misrepresentation, the standards of evidence are relaxed for plaintiffs to prove their claims. As Henry on Pennsylvania Evidence stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud.** Thus allegations of misrepresentations as to financial condition and of conveyance of property to defraud creditors may be supported by showing similar misrepresentations to others and transfers of other property as a series of acts constituting a general scheme to defraud. And **where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given.** If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p.73 (Emphasis Added); See also Wigmore on Evidence, Third Edition, Vol. II, § 367; Lisenba v. The People of the State of California, 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 179 (1941); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); Gee v. CBS, Inc., 471 F. Supp. 600, 617-634 (E.D. Pa., 1979).

Evidence of prior acts to establish and prove a system or method of fraud is admissible also to demonstrate that a party's conduct was consistent with a general course of conduct on their part,

a general design, or purpose:

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence on the question of whether or not a similar particular act was done by the same person.** Even though an act is so remote in point of time from that charged that the statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

Pennsylvania Evidence by Henry, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of Conduct, p.67. (emphasis added).

There is no merit to Defendants argument that the admission of this testimony and the documents in his possession would violate Pa.R.E. 403. To the contrary, evidence is not prejudicial for purposes of Rule 403 merely because it is 'detrimental to a party's case." See Whistler Sportswear, Inc. v. Rullo, 433 A.2d 40,47 (Pa. Super 1981). The Superior Court has further stated that the exclusion of relevant evidence as prejudicial is only necessary where the evidence would:

> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.

Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997).

The testimony, and the documents supporting the testimony of MetLife's knowledge of the use of the sales methods regarding the sale of policies through the use of the "vanishing premium scheme" are also directly relevant to the issue of whether Defendants' conduct was egregious. As the United States Supreme Court has determined:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** See [TXO] id., at 462, n. 28. Our holdings that

> **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. 559 at 576-77 (Emphasis added).

In TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the United States Supreme Court addressed the relevancy and admissibility of similar improper out-of-state business conduct. If out-of-state business conduct is relevant to the harm suffered by the plaintiff, so is in-state improper business conduct. Thus, this out-of-state and in-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages. The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> **TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

TXO, 509 U.S. at 462, fn28. (Emphasis added). The decision in Haslip is referenced with approval in the Pennsylvania Suggested Standard Civil Jury Instructions. See Chapter XIV Punitive Damages, p.9. ("Although Haslip dealt with an Alabama punitive damage award, the opinion provides guidance in assessing punitive damage awards under Pennsylvania law").

Furthermore, the holding in TXO was not altered by the decision in State Farm v. Campbell, 538 U.S.408,123 S.Ct. 1513, 1522 (2003)("**...[O]ut-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where**

**it is tortious**, but that conduct must have a nexus to the specific harm suffered to the plaintiff.")(Emphasis added).

## CONCLUSION

For all the foregoing reasons, Defendants Motion in Limine should be denied

Respectfully Submitted,

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
306 Fourth Ave. - Suite 300
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the within Plaintiffs' Memorandum of Law in Response to Defendants' Motion In Limine was served upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 7th day of May, 2006.

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652


/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Ernsberger, P.C.
Union Bank Building  - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762   (Fax)