IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD M. GONDA, | Civil Action No. 00-2286 |
| Plaintiffs, | |
| v. | Chief Judge Donetta W. Ambrose |
| METROPOLITAN LIFE INSURANCE COMPANY and WILLIAM FRIEDT, JR., | |
| Defendants | |

**PLAINTIFF'S RESPONSE TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE EXHIBIT 95/107**

Kenneth R. Behrend
Pa. I.D. No. 37961
Behrend & Ernsberger, P.C.
Firm ID No. 018
Union National Bank Building
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222
(412) 391-2515

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD M. GONDA, | ) | Civil Action No. 00-2286 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY and WILLIAM FRIEDT, JR., | ) ) | |
| | ) | |
| Defendants | ) | |

---

**PLAINTIFFS' BRIEF IN
RESPONSE TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S
MOTION IN LIMINE TO EXCLUDE EXHIBIT 95/107**

---

**PRELIMINARY STATEMENT**

Plaintiffs have identified as an Exhibit in the instant case, a videotape produced by Defendant MetLife which consists of the recorder discussions between MetLife Sales Representatives in September of 1996 regrading customer confusion resulting from the manner in which Policies were sold under MetLife's APP program, i.e. Policyholders confusion over the number of premiums which would be required to be paid out-of-pocket by the policyholder.. MetLife's sale of policies through misrepresentations as to the number of premiums which would be required to be paid out-of-pocket by Mr. Gonda is a central issue of the alleged fraud in this case. As such, MetLife's knowledge that consumers were being misled regarding the use of the APP program is relevant to the instant case.

This Court has previously considered the admissibility of the videotape at issue and

determined that portions of the tape were both relevant and admissible in **Tran v. MetLife**, Civil Action No. 01-444 where Plaintiff was alleging sale practices similar to those sales practices alleged by Plaintiffs in the instant case. Defendant's arguments to exclude the 1996 videotape are meritless.[1]

### I.   FEDERAL RULE OF EVIDENCE 407 DOES NOT REQUIRE EXCLUSION OF THE VIDEOTAPE

The videotape at issue cannot realistically be considered evidence of a subsequent remedial action by Defendant MetLife, and is therefore not excludable under Rule 407. To the contrary, at best, the videotape and the discussions between the sales representatives contained therein constitute a study into possible concerns with the APP program and the manner in which MetLife agents were representing insurance policies as requiring only a limited number of out-of-pocket premium payments. It is well settled that Federal Rule of Evidence 407 serves only to exclude evidence of measures taken after a harm or injury occurs which, if taken prior to the injury, would have made the harm or injury less likely to occur. See Federal Rule of Evidence 407.

The videotape at issue does not constitute a remedial measure in any way. To the contrary, it is a meeting of MetLife employees attempting to clarify the nature of the problem and convince the company to take steps to rectify the situation. The Tenth Circuit has held that

> It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. It might be possible in rare situations to characterize such reports as "measures" which, if conducted previously, would reduce the likelihood of the occurrence. Yet it is usually sounder to recognize that such tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test. . . .

---

[1] Plaintiff intends to introduce the same portions of the which were considered and ruled upon by this Court in Solarchick v. MetLife, Civ. Action No. 01-444.

> We believe that the policy considerations that underlie Rule 407, such as encouraging remedial measures, are not as vigorously implicated where investigative tests and reports are concerned. To the extent that such policy concerns are implicated, they are outweighed by what the Westmoreland court referred to as the danger of depriving "injured claimants of one of the best and most accurate sources of evidence and information." 601 F. Supp. at 68.

**Rocky, Helicopters v. Bell Helicopters**, 805 F.2d 907, 918 (10th Cir. 1986)

Clearly considering a discussion attempting to analyse the scope of the problems associated with the sale of APP Policies, and even discussion regarding possible remedies for the situation as a remedial measure by MetLife in relation to the problem strains the underlying purposes of Rule 407. Such a broad interpretation of the Rule should be rejected by this Court.

## II. EXHIBIT 95/107 IS RELEVANT TO THIS LITIGATION

### A. Relevancy of Evidence under Rule 401 and 406.

MetLife has objected to the admissibility of Exhibit 95/107 on the basis that the discussion in the videotape does not directly refer to the sale to the Mr. Gonda. This objection is without merit, since the evidence is relevant to the Plaintiff's claims that MetLife had a business pattern and practice to sell policies with "vanishing premiums" that was also used on the plaintiffs.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The discussions which take place on the videotape provide evidence of MetLife's corporate knowledge as to the extent of the use of the business practices, as such, the evidence is relevant

-4-

under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly Plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in <u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977.  The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations.  **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design.  It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

<u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979).  This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> . . . **Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design.  It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization."  This ruling was correct.**

<u>Com. of Pa. v, Porter</u>, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); <u>see also</u>, <u>Rosenburg v. Lincoln Am. Life Ins. Co.</u>, 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); <u>United States v. Quezada</u>, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his

agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham,

906 F.2d 674, 679 (11th Cir. 1990). Therefore, the evidence should be admitted in this case as it was admitted previously in the Tran case.

**II.   APPLICATION OF RULE 404(B)(2) PERMITS THE ADMISSION OF PLAINTIFF'S RELEVANT EVIDENCE.**

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage. Evidence of other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526,

1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in <u>Brennan v. The Paul Revere Life Insurance Company</u>, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line."  In <u>Brennan</u>, the Plaintiff offered evidence that the insurance company had a business practice to target high amount claims and Defendants sought through fourteen motions in limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the first hand knowledge of the individual sale, the insurer in <u>Brennan</u> filed the same motion. "Their third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies.  Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled other claims made by other people at other times."  <u>Id.</u>  The District Court rejected this motion, holding:

> **Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in <u>Simplex</u> and <u>Rosenburg</u>.**  Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan)

>and then marshaling evidence to support the termination, rather than dealing with the claims fairly.  Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, **plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case. Though defendants dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence.**  Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line.

Id. (emphasis added).  Likewise, in the instant case, plaintiffs seek to introduce relevant evidence to establish liability of the injury caused by MetLife's business practices.

Just because the evidence of the custom, habit and business practice demonstrates that negligent and/or fraudulent conduct took place as a regular business practice does not mean that it is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the elements of negligence and fraud as well as aids in establishing the credibility of the parties. **See Rohm and Haas Co. v. Continental Cas. Co.**, 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial evidence may result in a much more compelling conclusion."); **General Equipment Manufacturers v. Westfield Insurance Co.**, 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when  relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in

accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with MetLife, plaintiffs must prove that MetLife knew about not only the activity of its employee sales agents for some time, but also the regular business practices used by its employee sales agents and should have been more responsive to the situation. Plaintiffs also have to prove that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, plaintiffs must establish that the Defendants had some form of notice. Thus, it is important for plaintiffs to demonstrate that other incidents of the use of the same sales practices has occurred involving other sales agents who may have been similarly situated within MetLife and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a defendant, along with the manner in which it supervised its employees. The inability to present any evidence of the business practices and knowledge of MetLife itself would prejudice and harm plaintiffs' proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to plaintiffs.

This principal of permitting evidence of the business practices in fraud cases is based upon the concept that evidence of similar business practices evidence is admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish

the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that plaintiffs seeks to offer at trial. The Pennsylvania Supreme Court in Commonwealth v. Peterson, further held that where evidence relates **to any one of these five issues** it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** Id. at 307 A.2d 264 at 269-270 (Emphasis added).

Moreover, there is a procedure for resolving any possibility of confusion or misunderstanding of the jury as to purpose of the admission of the evidence. Any possible misunderstanding can be clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for another, the trial judge should instruct the jury on the restricted purpose for which the evidence has been admitted. F.R.E. 105 requires the judge to give such and instruction if a party requests it. A party should request that instructions be given to insure that the jury make the proper use of the evidence and that it is not used for an improper purpose. This exact issue was also discussed and explained in Commonwealth v. Peterson, and the Pennsylvania Supreme Court held that any possible confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. **At the close of trial**

> **an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.**

Commonwealth v. Peterson, 307 A.2d 264 at 271.

Moreover, in a fraudulent misrepresentation, the standards of evidence are relaxed for plaintiffs to prove their claims. As Henry on Pennsylvania Evidence stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud.** Thus allegations of misrepresentations as to financial condition and of conveyance of property to defraud creditors may be supported by showing similar misrepresentations to others and transfers of other property as a series of acts constituting a general scheme to defraud. And **where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given.** If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p.73 (Emphasis Added); See also Wigmore on Evidence, Third Edition, Vol. II, § 367; Lisenba v. The People of the State of California, 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 179 (1941); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); Gee v. CBS, Inc., 471 F. Supp. 600, 617-634 (E.D. Pa., 1979).

Evidence of prior acts to establish and prove a system or method of fraud is admissible also to demonstrate that a party's conduct was consistent with a general course of conduct on their part, a general design, or purpose:

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence on the question of whether or not a similar particular act was done by the same person.** Even though an act is so remote in point of time from that charged that the

statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

<u>Pennsylvania Evidence by Henry</u>, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of Conduct, p.67. (emphasis added).

### III THE VIDEOTAPE IS NOT BARRED BY FEDERAL RULE OF EVIDENCE 403

There is no merit to Defendants argument that the admission of this testimony and the documents in his possession would violate Pa.R.E. 403. To the contrary, evidence is not prejudicial for purposes of Rule 403 merely because it is 'detrimental to a party's case." See <u>Whistler Sportswear, Inc. v. Rullo</u>, 433 A.2d 40,47 (Pa. Super 1981). The Superior Court has further stated that the exclusion of relevant evidence as prejudicial is only necessary where the evidence would:

> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.

<u>Commonwealth v. Palmer</u>, 700 A.2d 988, 992-993 (Pa. Super. 1997).

The Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information. In **U.S. v. Driggs**, 823 F.2d 52 (3rd Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where

a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40, 62 (3rd Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1976).

**Id.**

Evidence of MetLife's knowledge of the use of the sales methods regarding the sale of policies through the use of the "vanishing premium scheme" are also directly relevant to the issue of whether Defendants' conduct was egregious. As the United States Supreme Court has determined:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** See [TXO] id., at 462, n. 28. Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. 559 at 576-77 (Emphasis added).

In TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the United States Supreme Court addressed the relevancy and admissibility of similar improper out-of-state business conduct. If out-of-state business conduct is relevant to the harm suffered by the plaintiff, so is in-state improper business conduct. Thus, this out-of-state and in-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages. The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> **TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are**

> **typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

TXO, 509 U.S. at 462, fn28. (Emphasis added). The decision in Haslip is referenced with approval in the Pennsylvania Suggested Standard Civil Jury Instructions. See Chapter XIV Punitive Damages, p.9. ("Although Haslip dealt with an Alabama punitive damage award, the opinion provides guidance in assessing punitive damage awards under Pennsylvania law").

Furthermore, the holding in TXO was not altered by the decision in State Farm v. Campbell, 538 U.S.408,123 S.Ct. 1513, 1522 (2003)("**...[O]ut-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious**, but that conduct must have a nexus to the specific harm suffered to the plaintiff.")(Emphasis added)**.**

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion in Limine to Exclude Plaintiffs' Exhibit 95/107 be denied.

                                                                    Respectfully submitted,

                                                          /s/Kenneth R. Behrend
                                                          Kenneth R. Behrend
                                                          PA I.D. # 37961
                                                          Behrend and Emsberger, P.C.
                                                          Union Bank Building  - Suite 300
                                                          306 Fourth Ave.
                                                          Pittsburgh, PA 15222
                                                          (412) 391-2515   (phone)
                                                          (412) 391-2762    (Fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the foregoing Brief Response to Defendants' Motion in Limine to Preclude Plaintiffs' Exhibits 95 and 107 was served upon the below listed counsel via the electronic filing system on the 26th of June, 2006.

B. John Pendleton, Jr., Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973)622-4444

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
Union Bank Building  - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762    (Fax)